050304mutualfunds

1

```
1                   IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF MARYLAND
2                           NORTHERN DIVISION

3


4
        IN RE: MUTUAL FUNDS
5       INVESTMENT LITIGATION
        _____/
6

7                       MDL 1586
                   Monday, May 3, 2004
8                   Baltimore, Maryland

9
    Before:  Honorable Catherine C. Blake, Judge
10            Honorable Andre M. Davis, Judge
              Honorable J. Frederick Motz, Judge
11          Honorable Frederick P. Stamp, Judge

12
    Appearances:
13          On Behalf of the Plaintiffs:
              John B. Isbister, Esquire
14            Alan Schulman, Esquire
              Mark C. Rifkin, Esquire
15            Karen L. Morris, Esquire
              Michael D. Braun, Esquire
16            Andrew S. Friedman, Esquire
              Bruce L. Simon, Esquire
17            Deborah Clark-Weintraub, Esquire
              Robert Eisler, Esquire
18            Ira M. Press, Esquire

19          On Behalf of Defendant Janus Capital:
              Mark A. Perry, Esquire
20

21

22

23    Reported by:
      Mary M. Zajac, RPR
24    Room 3515, U.S. Courthouse
      101 West Lombard Street
25    Baltimore, Maryland 21201
```

2

```
1                   JUDGE MOTZ:  Good afternoon.  Hello, Judge Stamp.
```

050304mutualfunds

2      JUDGE STAMP:  Good evening, Judge Motz, Judge Blake,

3   Judge Davis.

4      THE CLERK:  The matter now pending before this Court is

5   MDL 1586, In Re: Mutual Funds.

6      JUDGE MOTZ:  All right.  I don't know how to proceed.

7   We don't know how to proceed.

8      We gave you our indications of the way we thought it

9   ought to look based upon the written submissions.  Mr. Isbister?

10      MR. ISBISTER:  Yes, Your Honor.  I introduced myself at

11   the prior hearing as speaking for a group of plaintiffs' lawyers.

12   I speak for the same lawyers.

13      We would suggest that the Court first hear us on some

14   issues concerning the appointment of lead counsel, specifically

15   the issues that you raised in your letter from last week.

16      JUDGE MOTZ:  We don't want to spend a lot of time

17   hearing what we already know, I can assure you.

18      MR. ISBISTER:  I understand, that, Your Honor.  I don't

19   think we intend to.  We intend to specifically focus on the

20   issues that you left, you highlighted in your letter.  In that

21   regard, let me introduce my co-counsel at issue.

22      David Bershad from the Milberg Weiss firm would have

23   been here but he had a death in his family.  And filling in for

24   him very ably is Deborah Clark-Weintraub from the firm that is

25   now known as Milberg Weiss Bershad and Schulman.  She will be

3

1   addressing this issue, as will Mr. Bruce Simon from Cotchett,

2   Pitre, Simon and McCarthy.  So let me turn the podium over to

3   them.

4      JUDGE BLAKE:  Consistent with what Judge Motz said last

5   time, if everybody could just, despite Mr. Isbister's nice

050304mutualfunds

6    introduction, introduce yourself and the party that you represent

7    for the benefit of the court reporter, that would be helpful.

8            JUDGE MOTZ:  And if you speak, leave with Mary a copy

9    of your business card afterwards so she knows that it was you.

10           MS. CLARK-WEINTRAUB:  Good afternoon, Your Honors.

11   Deborah Weintraub from the Milberg Weiss firm.  We represent the

12   Ohio Tuition Trust Authority in the Putnam track, and also Linda

13   Parker, the proposed lead plaintiff, in the one group track.

14           Your Honor's letter from last Friday left two open

15   issues with respect to the lead plaintiff/lead counsel issue.

16   One referred to the Strong track.  Apparently, our submission was

17   missing the page from Mr. Vellrath's declaration, which provided

18   an individualized breakdown of the ADH calculations for the

19   movants with respect to the Strong subtrack.

20           Your Honor, I would like to hand up, we have a letter

21   that we'll file today and we have the missing page from Mr.

22   Vellrath's declaration.  If I could just hand that up to the

23   Court.

24           JUDGE MOTZ:  Judge Stamp, I don't quite know how we're

25   going to get this to you.  Fax it later.

                                                                4


1            JUDGE STAMP:  I'll do it any way you like.  My fax

2    number here at the courthouse, and my chambers, is 304-233-0402.

3    I don't know, Judge Motz, how voluminous that is or how much of

4    an inconvenience it is to send that.

5            JUDGE MOTZ:  304-233-0402?

6            JUDGE STAMP:  Yes, sir.

7            JUDGE MOTZ:  It's on its way.

8            JUDGE STAMP:  Thank you.

9            JUDGE BLAKE:  Is there anything else, a piece of paper

                            Page 3

050304mutualfunds

10   that's likely to be presented in the next little while?

11         MR. SIMON:  Your Honor, I have a copy of the CFA

12   investment advisor agreement, hand it up to the Court with the

13   relevant positions marked.  I was going to ask to make the

14   supplemental submission on --

15         UNIDENTIFIED SPEAKER:  Whoever is on the call is

16   typing, if you could kindly put your phone on mute, that would be

17   helpful.

18         JUDGE MOTZ:  How big is it?

19         MR. SIMON:  It's only a few pages, Your Honor.

20         JUDGE MOTZ:  Okay.  Ms. Weintraub.

21         MS. CLARK-WEINTRAUB:  As reflected on Exhibit 15, Panel

22   B, which should have been attached to Mr. Vellrath's declaration,

23   and I apologize for that, Your Honors, you can see that the

24   movant with the largest ADH is Steven J. Friedman, who is a

25   client of my firm, the Milberg Weiss firm.  And consistent with

5

1    Your Honor's rulings in connection with the other tracks, we

2    respectfully submit that Mr. Friedman should be designated the

3    lead plaintiff and our firm lead counsel with respect to the

4    Strong track.

5          I just want to add one point with respect to Mr.

6    Friedman's purchases.  The Strong defendants argued in their

7    submission that the only funds that should be considered in

8    connection with the ADH calculation were four funds in which the

9    Canary defendants had traded.  And while we don't agree with that

10   methodology as a matter of course, I would just like to point out

11   for the Court that Mr. Friedman's purchases were in the Strong

12   Growth 20 Fund, which is one of the four funds that the Canary

13   defendants traded in.

Page 4

050304mutualfunds

14          So I think that takes care of the open issue with

15    respect to the Strong funds.  And at this point, I would like to

16    yield the podium to my colleague, Bruce Simon, so he can address

17    the issues concerning his client, California Financial Advisors.

18          JUDGE MOTZ:  Thank you.

19          MR. SIMON:  Thank you, Your Honors.  It's a pleasure to

20    be able to speak to you this morning.  Thank you for the time.

21    I'll be brief.

22          The reason I'm talking to you is because there was a

23    notation in the letter with respect to standing on California

24    Financial Advisors.  California Financial Advisors, by a margin

25    of some five times, under the calculations of Mr. Vellrath has

6

1     the largest financial holdings in the Janus track before Judge

2     Motz.  The only people who put anything in on that is Janus

3     themselves, and it raised questions with respect to the

4     discretion or the authority of California Financial Advisors to

5     act on behalf of its investors.

6           California Financial Advisors total aggregate

7     investments is 61 million dollars.  They are vitally interested

8     in participating in this case and recovering to the extent

9     possible under the law any losses to their investors.  These are

10    individual investors.  These are not large, sophisticated

11    investors within their investment group.  There are several

12    hundred of them.

13          And with respect, I would ask the Court if the Court

14    has questions about the standing issue, we would respectfully

15    request an opportunity to present some supplemental information

16    to the Court.  I presented the agreement itself that has language

17    in there that we believe takes care of the issue.  And I know I

050304mutualfunds

18    can get a declaration in very short order from the client, who

19    would tell the Court in accordance with the cases that the

20    independent investment authority and decisions are made by

21    California Financial Advisors on behalf of its investors.  And I

22    believe that comes within the ambit of the cases that the Court

23    is probably talking about when it put the notation in.

24          This is a very important issue to them.  This is not a

25    lawyer-driven decision at all.  This is a client who is

7

1    interested in this case.  And I would respectfully request an

2    opportunity to do that in short order, Thursday, and then a short

3    hearing on it, if necessary, to address any outstanding issues.

4          JUDGE MOTZ:  That seems perfectly fine.  We'll see how

5    it plays out today.

6          I mean, the reason it was mentioned, I think, was

7    because the Janus defendants, as you noticed, had said something

8    about it.  I think, we haven't had a chance to talk to Judge

9    Stamp about this yet, but we were just discussing out in the hall

10    waiting to come in that if there is an issue that relates to a

11    specific track, we will share with one another what we're doing

12    in case it has impacts across the tracks.  But for efficiency's

13    sake, you wouldn't have to reconvene all of us on this particular

14    issue, you could just address it to me because it's peculiar to

15    Putnam.

16          MR. SIMON:  Your Honor, we can do a very short order.

17    Do it telephonically, if necessary.

18          JUDGE MOTZ:  Thank you, Mr. Simon.

19          MS. CLARK-WEINTRAUB:  Your Honor, Deborah Weintraub

20    again from the Milberg Weiss firm.  There's just one other thing

21    we'd like to point out in connection with, since the Court raised

050304mutualfunds

22    an issue with respect to the standing of a financial advisor with

23    respect to CFA.  It is indicated in our omnibus motion, but

24    Retirement Design and Management, Inc., which is the proposed

25    lead plaintiff in the Nations Bank track, is also a financial

8

1    advisor.  Nobody has raised any question with respect to the

2    standing of this plaintiff.  We don't think there is any.  But we

3    just wanted to alert the Court to that fact.

4            And if the Court would require us or would want us to

5    make any further submission about that proposed plaintiff, we'd

6    be more than happy to do that.

7            JUDGE DAVIS:  You were quite right to raise it, Ms.

8    Weintraub, and I thank you for that.  I don't think it's going to

9    be necessary.

10           MS. CLARK-WEINTRAUB:  Okay.  Thank you, Your Honors.

11           JUDGE MOTZ:  May we infer, because frankly, we weren't

12   sure what was going to happen, that even in light of our letter,

13   your group is holding together?

14           MR. SCHULMAN:  Alan Schulman.  Yes, Your Honor, that's

15   correct.

16           JUDGE MOTZ:  All right.  Mr. Rifkin.

17           MR. RIFKIN:  Your Honors, good afternoon.  My name is

18   Mark Rifkin and I represent the fund derivative plaintiffs in the

19   matter.

20           We certainly appreciate the time the Court took to

21   review the papers and the helpfulness of the letter that Judge

22   Motz sent around on Friday.  And the reason that we are

23   addressing the Court this afternoon is to try to understand some

24   of the nuances of the letter or at least to make sure that our

25   understanding of the letter is correct.  If, as we believe it is,

050304mutualfunds

9

1    then we just have one or two minor issues that we'd like to
2    address with the Court.  And then with that, I think we will
3    probably be in accord with what the Court's initial inclination
4    is.
5          Let me, if I may, just turn directly to the issues,
6    then, that we want to make sure we understand.
7          The first one concerns the provision for filing
8    complaints.  It is our understanding that the Court expects that
9    there will be separate complaints in each of the subtracks for
10   each of the various sub-subtracks.  So by way of explanation, in
11   the Janus subtrack, there would be a Janus family of funds class
12   complaint, a Janus family of funds derivative complaint, a Janus
13   family of funds parent derivative complaint.  And we want to
14   confirm that that's consistent with the Court's intention.
15         JUDGE MOTZ:  Maybe the easiest way to do that is for me
16   to answer, to the extent that I have an answer, and then see if
17   other people agree with me.  Because we haven't discussed all of
18   these.  That's my understanding.
19         MR. RIFKIN:  Thank you, Your Honor.
20         JUDGE BLAKE:  And mine.
21         JUDGE DAVIS:  Absolutely.
22         JUDGE MOTZ:  Judge Stamp?
23         JUDGE STAMP:  That's fine.
24         MR. RIFKIN:  Thank you.
25         JUDGE MOTZ:  We will infer, I will infer agreement.

10

1          JUDGE DAVIS:  Infer agreement.
2          JUDGE MOTZ:  Until somebody beats me over the head.

050304mutualfunds

3          MR. RIFKIN:  Your Honor, I must confess this is a
4     somewhat different position that I find myself in.  Usually I'm
5     answering the questions but not asking them.  But I'm rather
6     enjoying it, so thank you.
7          The next point that we wanted to make sure that we
8     understand correctly is with respect to discovery.  There appear
9     to be some slightly inconsistent provisions in Your Honor's
10    letter.  The first page of the letter provides that each of the
11    different sub-subtrack counsel will have full authority
12    concerning substantive matters falling within their respective
13    jurisdictions.  And by that I assume the Court meant the
14    sub-subtrack claims.
15         And then elsewhere in the letter, there is a, there is
16    a footnote, this is footnote number five on Page Three.  And it
17    says that administrative counsel will be responsible for
18    assigning discovery issues.  And we were not quite entirely sure
19    how assigning discovery issues was to relate to the prior
20    provision.
21         We believe that we have explained the various
22    substantive both legal and factual differences between the class
23    cases and the derivative cases.  And unless the Court wants me
24    to, I don't intend to go over that ground again.
25         In light of that, there are going to be issues where

11

1     one of us is pursuing discovery that the other is not pursuing or
2     vice versa.  And perhaps even more important, there will be times
3     when the class plaintiffs intend to prove one set of facts and
4     the derivative, the derivative plaintiffs intend to pursue
5     another set of facts.
6          For example, when we look at the involvement of and the

050304mutualfunds

7   knowledge of the fund trustees as opposed to the fund advisors,

8   we think that the class plaintiffs have a decidedly different

9   interest in that discovery and the outcome of that discovery than

10   the fund derivative plaintiffs do.  And so we wanted to try to

11   understand the interplay between the statement on the front of

12   the letter about full authority and then the footnote on Page

13   Three where the Court seems to indicate that the class plaintiffs

14   or their counsel will be assigning discovery tasks.

15          JUDGE MOTZ:  Mr. Schulman, I'll give you my reaction.

16          This is a gray area and that's why we put the footnote

17   in.  I mean, we, our intent is to the extent that there is common

18   discovery and you all are pursuing the same interest, we don't

19   want redundancy.  We want one side, we want all of you to pursue,

20   to the extent that you have a common interest, discovery.  We

21   don't want redundancy.  And we were suggesting that the

22   administrative counsel divide that up.

23          I have great respect in your, we all do, in your

24   professionalism.  If, it would seem to me you have identified

25   among yourselves an area where there is a, either one side is not

                                                              12


1   going to pursue it at all, then you could certainly pursue it if

2   the derivative fund, the fund derivative was going to pursue it.

3   Clearly you could do it even though the fund investors were not.

4          And to the extent that you were pursuing different

5   interests, it would seem to me that we'd respect your judgment on

6   that.  And if for some reason there was a disagreement as to

7   whether or not you really were pursuing something differently,

8   then the judge handling the track would make the decision.

9          MR. RIFKIN:  Thank you very much, Your Honor, for

10   helping clarify.

                          Page 10

050304mutualfunds

11          JUDGE MOTZ:  Wait a second.

12          JUDGE BLAKE:  No.  No.  I think that's right.  I think

13     that we just believe that, administratively, it is helpful if

14     there's one person who, at least from an administrative point of

15     view, is in charge of overseeing discovery, coordinating

16     discovery, recognizing within that framework that, to the extent

17     you have a different interest, you must be given the time and the

18     opportunity to pursue that.  That may take you in a different

19     direction from the other people.  We would hope that's something

20     that could be worked out and agreed upon.  And if it isn't, then

21     it has to come back to the Court.

22          But we just believe that there will be so much common

23     discovery, so much need to coordinate, that one counsel should be

24     in charge of that.

25          MR. RIFKIN:  And if I understand the Court's remarks

                                                              13


 1     today, the responsibility, then, that would fall upon this

 2     administrative counsel would be a coordinating effort rather then

 3     a dictating effort.  It's not as if we will be receiving

 4     assignments from class counsel with respect to the discovery that

 5     we're permitted to pursue, is that correct?

 6          JUDGE MOTZ:  Mr. Schulman?

 7          MR. SCHULMAN:  Pardon.

 8          THE COURT:  The dictator.

 9          MR. SCHULMAN:  My name's Alan Schulman.  And just for

10     the record, I represent the City of Chicago Deferred Compensation

11     Plan in the MFS track, the City of Chicago Deferred Compensation

12     Plan in the Invesco/AIM track, and the Ohio Public Employees

13     Compensation Plan in the Pilgrim/Baxter track.

14          We read your letter, Your Honor's letter very

050304mutualfunds

15    carefully.  And we had some discussion this morning about how

16    this hearing would unfold.  And we're very satisfied with the

17    letter, the vision that is laid out in the letter.

18         What I was afraid was going to happen today was exactly

19    what is happening; that Mr. Rifkin, who's a very able lawyer,

20    would stand up here and start saying, well, let me clarify this

21    and what you really mean is that, what you really mean is this.

22    And now he's changed the word "assigned" to the word "coordinate"

23    and not "dictate."  I hope we don't go down this road.

24         We asked the Court to put its imprimatur on a

25    structure.  I think you've done that.  We all can read the words.

14

1    It wasn't ambiguous.  The footnote was very clear.  And I don't

2    want to get involved in a sort of back and forth on this.  We

3    can.  But you know, I hope we don't have to do that.

4         JUDGE MOTZ:  Apparently, for technical reasons we need

5    a one minute interruption.

6         MS. KESSLER:  Yes.  For all of you who are

7    participating by phone, we would really appreciate if you mute

8    your phones.  We're getting a lot of feedback from rustling

9    papers, background noises.  So if you have a mute button, please

10    hit it.

11         JUDGE MOTZ:  Those of you participating by telephone,

12    if we could ask you to press the mute button because we're

13    getting background noise, rustling of papers and things of that

14    nature.  We'd very much like to have you participating but it

15    would help us if you have a mute button to please press it.  If

16    you don't, please don't rustle any papers.

17         MR. RIFKIN:  Your Honors, perhaps I have a practical

18    solution to this that maybe won't require quite as much dialogue

050304mutualfunds

19    today.  But there are two discovery motions that the Court has

20    contemplated built into the schedule.  One is a PSLRA stay motion

21    that the class plaintiffs are going to have to file, and the

22    other is a protective order, which I assume means that the

23    defendants would want to stay discovery in the derivative cases,

24    those cases that are not affected by the PSLRA.  And the schedule

25    that the Court has already created has a briefing schedule that

15

1     puts these issues off for at least a couple of months.

2           So perhaps in the interim what maybe makes sense is

3     that the class plaintiffs give us some idea of what they intend

4     to pursue by way of discovery.  We let them know what we believe

5     we need to pursue by way of our discovery.  And rather than have

6     this dialogue in an abstract sense, we can look at it in a

7     concrete, while we have the opportunity before any discovery is

8     going to happen.  Because surely, there's likely not going to be

9     any discovery until after the Court rules on those motions.  So

10    we have some time to explore this.

11          If in that time we feel that there's common ground,

12    fine, we don't need to burden the Court any more.  But if in that

13    time our view of discovery and the class plaintiffs' view of

14    discovery is so different, then at least at that point we can

15    bring it to the Court.  But there's no harm to anyone since

16    discovery is not going to be proceeding in the immediate future

17    in any event.

18          JUDGE MOTZ:  Certainly, we don't want to be deciding

19    hypothetical academic issues.  I agree with Mr. Schulman, we

20    shouldn't be using this as a legislative history of what the

21    letter means.

22          But as a matter of general principles, I think when

050304mutualfunds

23    you're trying to distinguish between "assignment" and
24    "coordination", I agree with Mr. Schulman.  Obviously, there are
25    going to be some assignments.  If you've got a deposition of

16

1     somebody who's a common defendant, it's going to be up, we
2     envision, I think, the administrative counsel making that
3     assignment.
4             But the other three areas that you mentioned at the
5     beginning, where it wasn't going to be pursued at all, whether it
6     would be a different line, or, I forget what the third was,
7     that's a principled question, and I think everybody's agreed that
8     your implicit position on the issue was correct.
9             MR. RIFKIN:  We have two immediate concerns with that.
10    One has to do, I think, with the question of the role of
11    administrative counsel, which I will address in a moment.  The
12    other has to do, as we said in our response papers, with the
13    limitations that the federal rules and the Court's local rules
14    impose on discovery.
15            There are only so many interrogatories that can be
16    served.  There are only so many document requests that can be
17    served.  Under the federal rules, a deposition is only allowed to
18    last for so long.
19            And our concern, to be perfectly honest with the Court,
20    our concern is that the discovery not be assigned in such a way
21    that it favors the claims that class counsel have brought at the
22    expense of the claims that we have brought on behalf of our
23    clients.  Our clients feel very strongly --
24            JUDGE MOTZ:  We'll take that up when it comes up.  But
25    I can tell you, we may very well be limiting the number of

050304mutualfunds

1   deposition hours you can take, period, like I've done in other
2   litigation, because we're not going to have the money spent
3   taking lots of pointless depositions and certainly no redundancy.
4   So I can assure you that we expect administrative counsel to be
5   responsible in their discovery role and we expect that all lead
6   counsel in the subject matter areas are going to be responsible
7   as well, recognizing administrative counsel have primary
8   administrative responsibility.
9        MR. RIFKIN:  Your Honor, we fully expected that, which
10  is why we said what we said in our response papers.  We are quite
11  concerned, given the limitations that we expect the Court will
12  impose on discovery, that the discovery be pursued in a way that
13  we feel is fair to the claims that our clients have chosen to
14  pursue because, obviously, we have a different view of which of
15  the claims are the more important claims in the case.
16       Our next area of concern is one that's probably within
17  the first page, the part of the letter from Judge Motz that
18  refers to full authority to litigate the claims.  But there's,
19  unlike all the other areas, there was no specific reference to
20  retention of experts.  This is an area that's of critical
21  importance to, I'm sure to the class plaintiffs, but certainly to
22  the derivative plaintiffs.  And we understood the letter to mean
23  that derivative counsel were free in the pursuit of their claims
24  to retain whatever experts they may choose fit.
25       Obviously, ultimately, that's a matter for counsel's

18

1   discretion.  And we wanted to make sure that there was no
2   intention otherwise because of the admission of that reference.

050304mutualfunds

3            JUDGE MOTZ:  I think that will come up as part of the

4       discovery process.  You all talk to one another and see if

5       there's something we have to rule upon.

6            JUDGE BLAKE:  We were not intending in that letter to

7       address the question of expert retention.  Frankly, I think that

8       comes within the overall heading of discovery.  We do have some

9       little time to go down the road.  I would assume expert retention

10      has to happen.

11           But at least initially we would hope that would be

12      something that you would share and coordinate and discuss with

13      counsel.  If you genuinely can't agree, we'll be here.

14           But that falls within the overall heading of discovery.

15      And we certainly don't want duplication of experts any more than

16      we want duplication of depositions.

17           MR. RIFKIN:  Let me now turn to the question of the

18      Court's creation of this, or the population, I should say, of the

19      role of administrative counsel in each of the subtracks.  As we

20      understand it, the Court has indicated that we'll appoint a lead

21      plaintiff, presumably a PSLRA lead plaintiff, to be

22      administrative, or at least that plaintiff's counsel to be the

23      administrative counsel in each of these cases.

24           And this, I think, is an area that relates to one of

25      the comments that I made at the very beginning when we were here

19

1       back on April 2nd.  And it has to do with the perception, at

2       least, that's been expressed by the class plaintiffs and even by

3       the defendants that this case is primarily a securities case and

4       that the claims that we have brought are ancillary claims or

5       niche claims or however they're described.

6            And we are somewhat concerned about that because in

050304mutualfunds

7    every instance, for all 17 or 18 of these cases now, the lead

8    plaintiff and the lead counsel are going to be class counsel who

9    do have rather different views of the way the litigation should

10   proceed than our clients do and certainly than we do.  And for

11   that reason, again, I want to be careful not to go over ground

12   that has been explored in depth now in papers.

13          But we are very concerned because we believe that when

14   the motions to dismiss are decided by the Court, the context of

15   this case will look quite different than it is now.  We believe

16   there are some infirmities in the class claims as they have been

17   pled that do not at all impact upon the claims that the

18   derivative plaintiffs have pled.

19          And we think that when this order is entered, we would

20   ask that the Court make it an interim order pending a resolution

21   of those motions to dismiss because we feel very strongly that

22   this case will look quite different once that happens.

23          JUDGE MOTZ:  That's fair.  Frankly, that occurred to me

24   one night going home and I never talked to my colleagues about

25   it.  If the legal structure of the litigation changes

                                                              20


1    substantially after the Motions to Dismiss, obviously then one

2    would revisit the organization of counsel issue.

3          MR. RIFKIN:  Okay.  And now turning to the ultimate

4    assignment of the administrative counsel.  We do believe that

5    there are two primary constituencies represented here, one the

6    class plaintiffs, and the other the fund derivative plaintiffs.

7    And I don't mean to dismiss or minimize the other plaintiffs.

8    But they are simply not in all the cases. There's only six or so

9    parent derivative cases.  There is only one Janus investor direct

10   parent investor case.  So relatively speaking, the two groups

050304mutualfunds

11    that seem to have the greatest interest in the litigation are the

12    class plaintiffs on the one hand, and the fund derivative

13    plaintiffs on the other.

14           And we would ask the Court to consider appointment of

15    lead counsel in the various cases that recognizes the differences

16    in a more equitable way rather than having in every instance this

17    administrative counsel be PSLRA counsel.  We believe that it

18    would be fairer if the Court at least, again, on an interim

19    basis, would mix up the appointment of administrative counsel so

20    that there's some representation of the derivative plaintiffs'

21    viewpoint right now.

22           Again, I believe that all of this is going to be

23    subject to considerable revision when the motions to dismiss are

24    decided.  It could be that we're on the wrong side of these

25    issues or it could be that the class plaintiffs are on the wrong

21

1    side of these issues.  But I think that at least now in the

2    beginning, the derivative plaintiffs would feel more secure and

3    the public really would benefit from having a more equitable view

4    in these, in these administrative, plaintiffs, in the choice of

5    administrative counsel.

6           That impacts, of course, the Court's creation of the

7    horizontal committee, which we understand to be comprised of all

8    of the administrative counsel.  And that raises a couple of

9    questions, one of which is, there are 18 cases, and in some

10   instances a law firm may have a plaintiff or responsibility for

11   plaintiffs in more than one case.  For example, I think the

12   Schiffrin and Barroway firm has four cases where they've been

13   identified as lead plaintiff.

14           The Court has, again, created a horizontal structure

050304mutualfunds

15   that now has what we think is a significant imbalance.  There

16   will either be six or seven class counsel who will be members of

17   the horizontal committee.  That depends upon how the Cotchett

18   issue plays out.  And there will be one counsel from the

19   derivative fund side, one counsel from the derivative parents

20   side, one counsel from the state side.  And we think there as

21   well, especially if we are thinking about this in terms of

22   awaiting the motions to dismiss, the outcome on the motions to

23   dismiss, if there were more balanced, fairer and more equal

24   representation on that horizontal committee.  The horizontal

25   committee, I think, seems to have mostly coordinating

                                                                22

1    responsibility as opposed to true litigating responsibility.

2         So I think that changing the composition of the

3    horizontal committee does not necessarily impact that greatly on

4    the litigation as it proceeds.  And again, I think it's only for

5    a short period of time.  But it is important enough to our

6    clients that we feel that we should bring that to the Court's

7    attention.

8         And finally, I would say that the Court has suggested

9    the possibility that there be two chairmen of that horizontal

10   committee.  We don't know if the Court had in mind two class

11   counsel.  But again, in the interest of fairness during this

12   interim period, we would suggest that it ought to be counsel for

13   the class side and counsel for the derivative side.  And let's

14   see how that plays out.  If there's a problem, obviously, the

15   Court will find out about it very shortly after it occurs and we

16   can revise or review this issue as need be.  But I think until

17   the case finally settles after the motions to dismiss are

18   decided, I think that's a better way to proceed.

                        Page 19

050304mutualfunds

19          JUDGE MOTZ:  As the author of the letter, I can

20    actually answer one of the questions because I realize that it

21    was somewhat ambiguous as to what, when we left open the

22    possibility of two co-chairs -- I don't know about my

23    colleagues -- recognizing that you would probably be here

24    suggesting that, Mr. Rifkin.

25          You also probably figured out that probably what I had

23

1    in mind was two PSLRA lawyers because of the description of the

2    jobs of the, whatever they were called, chief administrative

3    counsel, was also PSLRA responsibility.  So if I was construing

4    the statute I had written, I would have said what the person who

5    wrote it had in mind was potential co-chairs but both from the

6    PSLRA side.  But that's not to say I'm not listening to you.  I

7    just wanted to tell you --

8          MR. RIFKIN:  That's right, Your Honor.  I was not

9    trying to clarify what I understood to be the Court's intention.

10    Clearly, we understood it to be otherwise.  All I'm suggesting is

11    --

12          JUDGE MOTZ:  I understand.  It's not unreasonable.  Is

13    there evidence in the record of how much financial interest your

14    clients have?

15          MR. RIFKIN:  There is not, Your Honor, because there is

16    no requirement that there be any evidence in the record of the

17    derivative plaintiffs', quote, "interest in the litigation."  I

18    will tell the Court that we have polled some of the documents

19    that we have, and the interests range anywhere from small

20    investors who may only have 5 or 10 or $20,000 invested in any

21    one of these funds, to larger investors who have hundreds of

22    thousands of dollars invested in these funds.

050304mutualfunds

23       We represent collectively on the derivative side of the

24  litigation about 150 different clients, all of whom have

25  different levels of interest but none of whom are required under

24

1   any law or any decision by any court anywhere to have disclosed

2   that.

3       I do find somewhat interesting, however, the question

4   of the financial interest of these large institutional investors,

5   not from the standpoint of the CFA that Janus raised, but from a

6   slightly different standpoint.  And I don't want to do the

7   defendant's work here.

8       But I could not help but notice when I looked at all of

9   these papers that not a single one of the class plaintiffs had

10  said, "we have suffered an out-of-pocket loss as a result of

11  market timing or late trading", not a single one of them.  There

12  were substantial papers submitted by Mr. Vellrath that addressed

13  their average dollar holdings over a five year period of time.

14  But in none of Mr. Vellrath's statements did I see anywhere where

15  Mr. Vellrath calculates a loss for any of these plaintiffs in the

16  sense that they invested a million or two million or five million

17  or 10 million or 20 million and walked away with less money than

18  they invested.

19      While it may be true that they didn't earn as much as

20  they think they should have earned, there is not a suggestion in

21  any of the papers before the Court that any of these

22  institutional investors has an out-of-pocket loss.  And the

23  reason that that's significant is, in the first instance, under

24  Section Eleven --

25      JUDGE MOTZ:  That's all right.  I don't think -- it

25

050304mutualfunds

1    occurs to me that we may be able to solve the organizational
2    problem.  You can join the defense side and become part of the
3    defense lawyers.
4             MR. RIFKIN:  I resisted very much the urge to do that
5    because I don't think it behooves us.  I do, since the Court
6    asked a question about financial interest, I did want to point
7    that out.
8             If the Court has any more questions, I'm happy to
9    answer them.  Otherwise, we have made the comments that we feel
10   appropriate to the letter and we look forward to the Court's --
11            JUDGE MOTZ:  Thank you.
12            JUDGE STAMP:  Judge Motz, could I ask Mr. Rifkin a
13   question?  Make sure that I understand what he's asking?  This is
14   Judge Stamp, Mr. Rifkin.
15            Would you return to the next to the last topic you
16   raised, which was, I think you were pleading for a more equitable
17   distribution of the, as I understood it, the horizontal
18   administrative committee.  Is that the approach you were taking?
19            MR. RIFKIN:  Judge Stamp, what we have suggested is
20   that there ought to be on this interim basis, there ought to be a
21   more equitable distribution of the administrative counsel who
22   are, I think by and large Judge Motz had intended that would be
23   entirely class counsel.  So I think that there ought to be fairer
24   representation for the administrative counsel right now.
25            And the consequence of that is that the horizontal

                                                                  26


1    committee that the Court has suggested will be populated almost
2    entirely by, by class counsel.  And I think there, too, there
3    should be fairer representation of the fund derivative

050304mutualfunds

4    plaintiffs, who are the second of the two significant groups, we

5    think, not to imply any order.  But there are two significant

6    groups here, the class and the fund derivative.

7            JUDGE STAMP:  So removing your advocate's hat as much

8    as possible, how would that equitable distribution lie in your,

9    in your opinion?

10           MR. RIFKIN:  Do you mean in terms of the composition or

11   the outcome?

12           JUDGE STAMP:  Give me an example of how the more

13   equitable distribution would work out most equitable.

14           MR. RIFKIN:  If there are four right now, four or five

15   or six or seven, I believe as the Court has indicated, there will

16   be either six or seven class counsel who would be appointed to

17   the horizontal committee.  In addition to that, there is to be

18   one counsel from each of the different other constituent claims.

19           So depending upon how you count it, you either wind up

20   with a horizontal committee that comprises 11 or 12 members.  And

21   we think that the class counsel ought to have three or four

22   members, the fund derivative counsel ought to be represented by

23   three members, and then the additional constituent cases ought to

24   be represented by the same one.  And that, we think, reflects the

25   difference just in number of the cases that have been brought.

                                                              27

1            We are in all 17 or 18 cases.  The class counsel are in

2    all 17 or 18 cases.  Each of the other groups are in a more

3    limited number of cases.

4            So we think that mathematically, without expanding the

5    size of the horizontal committee, one can populate it with

6    different lawyers that give a more balanced representation to it.

7            If there's nothing further, thank you, Your Honors.

050304mutualfunds

8          JUDGE MOTZ:  Thank you.  Mr. Schulman.

9          MR. SCHULMAN:  Thank you, Your Honors.  Alan Schulman

10     responding for the plaintiffs.

11          Well, I thought we started off with Mr. Rifkin saying

12     that he thought the letter was good and he had just a few little

13     questions of clarification about what was meant by "full

14     authority."  And now we hear that this is essentially asking the

15     Court to redo every piece of this letter.

16          We really have written extensive papers on this on two

17     rounds.  And I can, but I don't think you want me to, go through

18     these arguments again.  And so I won't.

19          Just to address this last point regarding the structure

20     of the horizontal committee.  It's very important, I think we

21     made the point in our papers, I think you've recognized in our

22     letter, that each of the lead plaintiffs in each of the vertical

23     family, fund family subtracks, needs to be represented on the

24     horizontal committee.  And that is what you've done.  That is why

25     there are eight or so seats on the horizontal committee.

28

1          And to address the question you asked, Judge Stamp.

2     There's no imbalance.  It's a function of the logic that Your

3     Honors have applied.  It's the point that the Janus defendants

4     made about needing a structure with a leader.  It's the point

5     that, I think there were two tail wagging, tail wagging the dog

6     metaphors in the papers.  You know, having the derivative counsel

7     elevated to the position they are seeking is having the tail wag

8     the dog here.

9          And the financial interest, you've asked a telling

10     question about their financial interest.  Their financial

11     interest is not revealed.  If you compare that with the financial

050304mutualfunds

12    interest of the PSLRA leads that you've chosen, we're talking

13    about Ohio with a 747 million dollar interest.  You're talking

14    about Ohio with a 17 million dollar financial interest.  You're

15    talking about Retirement Design, 10 million dollars, City of

16    Chicago, six million dollars, on and on.

17            There's a reason that the structure that you've adopted

18    makes sense.  The PSLRA provides a framework that has leadership

19    based on largest financial interest.  And make no mistake about

20    it, we do need leadership, even if it's administrative

21    leadership, we do need leadership.  So we urge you not to tinker

22    with the formula which we think has been carefully balanced in

23    your letter.

24            As far as the chief, the chief administrative counsel

25    for the MDL-wide position, we do request that you appoint

29

1    co-chairs.  We did understand that to be, I thought, a reference

2    to the fact that Mr., that all of the lawyers on our side have

3    agreed that David Bershad of the Milberg Weiss firm and myself

4    would be the co-chairs of the horizontal committee, the chief,

5    chief administrative counsel for the MDL as a whole, as your

6    letter referred to.

7            We do request that you maintain that co-chair position.

8    I am authorized to make the representation to the Court that we,

9    each of us will have full authority to speak for the other.  Mr.

10    Bershad and I have been colleagues practicing law together 17

11    years as partners and the last five years as colleagues.  I think

12    we can do that very effectively and very well.  I think it will

13    enhance the representation and the effectiveness from our side.

14    So we hope that you will agree to that.

15            Also, if I may go over the letter on some small points

050304mutualfunds

16    that I wanted to clarify.  First, on the -- I hope this is an
17    easy one to get out of the way.  On the court liaison counsel
18    role, it appears in several places on here.  We hope that what
19    you had in mind was the same court liaison counsel.  We all agree
20    that it should be Tydings & Rosenberg firm, Mr. Isbister.
21            JUDGE MOTZ:  Our contemplation was one.
22            MR. SCHULMAN:  Okay.  On the track leadership position
23    that you have identified there, we, this is a new one, a little
24    bit of a new one that you threw us in this letter.
25            JUDGE MOTZ:  Incidentally, in the court liaison, I

30

1    don't want to speak for Judge Stamp.  It is possible, although
2    frankly the filing is all going to be here, we haven't had a
3    chance to speak with him, whether or not in West Virginia there
4    are practical reasons that they need somebody.  But that's
5    something Judge Stamp, we haven't had a chance to talk about yet.
6    It occurred to us here just with the electronic filing, it was
7    good to have somebody to call up.
8            MR. SCHULMAN:  That was our view.  There's so much
9    infrastructure being invested right now, Mr. Isbister, in the
10    electronic filing, that there's economies of doing that.
11            On the track leadership position, which is a chair or
12    chief administrative counsel for each track, which is a judge by
13    judge position, again, we would request that in each track, that
14    be either Mr. Bershad or I, and we will inform you if that's
15    acceptable to allocate that between us.
16            We think, again, there's certain economies and
17    efficiencies of doing that if we're going to be co-chief
18    administrative counsel for the entire MDL.
19            In terms of the, one issue in the letter that, it's a

050304mutualfunds

20    recurring question that I have about the letter.

21           JUDGE BLAKE:  Just back up a minute just to be sure on

22    the track leadership.  We had, I think in a footnote we had

23    suggested that it be one of the administrative counsel, whoever

24    was administrative counsel, for the various funds, a family of

25    funds within that track.  I haven't gone back and looked over the

                                                              31


1     list.  Are you or Mr. Bershad represented in each judge by judge

2     track?

3            MR. SCHULMAN:  I think the answer to that is yes,

4     except in your track.  And in your track, we would request that

5     it be Mr. Bershad.  And he is going to be intimately familiar

6     with all of the issues.  If we're talking about coordinating,

7     principally coordinating conference calls and other track, I

8     think it makes sense.  And the other counsel who would be the

9     lead counsel in those tracks have said that was acceptable to

10    them.

11           JUDGE BLAKE:  Acceptable to them?

12           MR. SCHULMAN:  Yes.  Here's an issue that cuts across

13    several of your categories.  I'm a little confused, we're a

14    little confused about the concept of the liaison/administrative

15    counsel for state court actions.  And let me explain the source

16    of my confusion.

17           As I understand it, there's three flavors of state

18    court counsel that are possible, if I may.  First, you have the

19    counsel who filed cases in state court who have now stated that

20    they will not seek remand and they are going to participate in

21    the class, the class complaint as step, as asserting supplemental

22    state law claims.

23           You received a letter from Richard Heimann of the Lieff

                                Page 27

050304mutualfunds

24    Cabraser firm.  Mr. Heimann is having some surgical procedure

25    today, is unable to be here, one of his partners is here.  But

32

1    that's one flavor.

2            If I just may call it, Mr. Heimann represents that

3    group.  They filed claims in state court.  They filed them in, I

4    believe, six family fund tracks.  They have now stated that they

5    will not seek remand and they will be folded into the

6    consolidated complaint that will be filed on the class side as

7    asserting supplemental state law claims.

8            The next flavor you have is, for want of a better term,

9    I'll use Mr. Friedman's, flavor.  Mr. Friedman and his colleagues

10   have filed cases in state court.  I believe they're in Madison

11   County, Illinois.  And they have been up and down.  And so

12   they've been remanded.  And they're staying in state court,

13   barring some act by the Seventh Circuit.  I don't know the status

14   of that.

15           So you have one flavor of state court plaintiffs that

16   are in Federal Court with supplemental claims.  You have one

17   flavor of state court plaintiffs that are in state court and are

18   staying there.

19           Then I guess the third flavor is the, there's a limited

20   category, I believe they filed cases in two family funds, of

21   plaintiffs who have filed in state court, were removed,

22   transferred here, and now they filed an omnibus remand motion.

23           So I guess my question is, who do you mean in this

24   position?  And let me tell you --

25           JUDGE MOTZ:  The collaborators or the contestants?  Is

33

050304mutualfunds

1    that what you're asking?

2           MR. SCHULMAN:  Yeah.  And let me tell you what I think

3    makes sense, having thought about this a lot and discussing with

4    my colleagues.

5           I think you're going to have state law claims asserted

6    in your court under the supplemental jurisdiction of the court.

7    So those are here and they're within the administrative

8    authority, if you will, of the, of what you call the PSLRA

9    counsel.  Another thing I wanted to ask you to do was to just,

10   ask you not to think of it as PSLRA counsel, rather as class

11   counsel.  We're all asserting class claims, class-wide claims.

12          JUDGE MOTZ:  If everybody can agree upon the

13   terminology, you've become class counsel.  Plaintiffs are a

14   little presumptuous.

15          MR. SCHULMAN:  I know, but we have strategic and

16   rhetorical reasons for that.  Believe it, we gave it a lot of

17   thought.  We couldn't come up with one that worked.  But we were

18   named other things by everybody else.

19          So it obviously makes sense for us that on substantive

20   matters relating to state law claims that are in Federal Court

21   that Mr. Heimann is the, is the lead for that.  It also makes

22   sense to us that for cases that remain in the state court, to the

23   extent there should be a liaison function with, between the

24   plaintiffs who are in state court and us, the plaintiffs that are

25   in federal court in the broadest sense, that Mr. Friedman should

34

1    be in that role.  And I think that takes care of those two

2    functions.

3           It just isn't clear to me, for example, why that

050304mutualfunds

 4    function needs a seat on, whether it needs a seat on the

 5    horizontal committee, per se.  You know --

 6        JUDGE MOTZ:  Again, let me, having written it in.  And

 7    my thoughts were not so formed on that.  But I think what I had

 8    in mind when I wrote that was Mr. Friedman's role.  That at least

 9    until issues regarding discovery stays and the remand issues have

10    been resolved, they are a major category of interest that there

11    ought to be some coordination on.  Instead of calling them lead,

12    because obviously they were different state counsel throughout in

13    these, that Mr. Friedman would serve the role of, we could use

14    "lead" for everything but that could have had substantive

15    implications.  But the idea was Mr. Friedman on remand issues and

16    stay issues was going to be the liaison.

17        Now, depending upon what ends up getting ruled on, I

18    mean, it could be that he doesn't have to be here at all.  He

19    doesn't want to be here, I gather, because he wants to be, he

20    wants the cases remanded and he wants to have discovery proceed

21    elsewhere.

22        Now, there still, even if that were to happen, there

23    may have to be some coordination.  And it might be appropriate at

24    the horizontal committee level to have that just because we'll

25    have parallel state proceedings going.

                                                                  35


 1        In terms of, frankly, the Lieff Cabraser role, I'm

 2    still not sure after hearing from you whether you're thinking

 3    that they should have, have a seat on the horizontal committee

 4    because they're going to be representing the supplemental state

 5    law claims or whether you, or whether class counsel generally can

 6    represent them.

 7        MR. SCHULMAN:  The proposal that we did submit in our

050304mutualfunds

8  papers had the Lieff Cabraser firm chairing a substantive
9  committee in the vertical track of, on state law claims.  It's a
10  little bit different formulation than you've provided.  We have
11  class claims, federal class claims, we had derivative claims, and
12  state claims, all in Federal Court, as our three substantive
13  committees.  They did not have a seat on the horizontal
14  committee.  It was the lead, the class counsel lead PSLRA counsel
15  in each track plus a seat for the fund derivative and a seat for
16  the parent derivative.  So --
17        JUDGE MOTZ:  Let me ask this out loud, assuming my
18  colleagues are with me.  Yeah.  That's right.  Mr. Friedman is
19  already remanded.
20        JUDGE BLAKE:  Mr. Friedman is remanded.  I'm wondering
21  if there are a number of people that still want to be remanded.
22        MR. SCHULMAN:  If I may on that.  If they're remanded,
23  then they're back, and Mr. Friedman should be the person who's on
24  the point for coordinating with them.  And we'll do all the
25  coordination with the cases that remain in state court through

36

1  Mr. Friedman.  And whether he's a formal, it doesn't seem to me
2  to make sense for him to be a formal member of the horizontal
3  committee since he's not in federal court.  But he should be a
4  liaison with us.
5        JUDGE BLAKE:  Is he an appropriate liaison?  Up until
6  the point where we make the remand decision.  Right now there are
7  motions that have been filed, that have been responded to that
8  we're going to be hearing, I guess, May 21st. There are remand
9  issues that are already out there.  Is Mr. Friedman the
10  appropriate liaison --
11        MR. SCHULMAN:  I think Mr. Friedman is the appropriate

050304mutualfunds

12    liaison for cases that remain in state court.

13            JUDGE MOTZ:  Let's ask Mr. Friedman.

14            MR. SCHULMAN:  I don't know who's going to be arguing,

15    who's going to be arguing the remand motions, I don't know.  I

16    assume Mr. Fox from the Kaplan Kilsheimer firm is probably the

17    person who's going to argue that remand motion.  But my only

18    point is --

19            JUDGE MOTZ:  No.  No.  We understand.  Let's just

20    follow this for a moment.  Let's ask Mr. Friedman or somebody.

21    Obviously, there are actually, I think, three categories.  There

22    are cases that have already been remanded and there could be

23    other ones that end up being remanded.  They would be state

24    parallel proceedings.  They are the ones that are now going to be

25    asserted as supplemental claims, which is Lieff Cabraser's role,

37

1    as I understand it.

2            Then there is that third category of pending remand

3    motions.  And we were sort of, at least I was de facto putting

4    you as the coordinator on that.  But Judge Blake raises the very

5    appropriate question.  You've already been remanded, so maybe

6    you're not the person to serve that role of coordinating omnibus

7    memorandum.

8            MR. FRIEDMAN:  Your Honors, Andy Friedman on behalf of

9    numerous cases which are in state court.  We had proposed to be

10    liaison between cases in state court and the MDL proceeding.

11    When Your Honor wrote the initial letter on the remand motions,

12    we did step up to coordinate that, realizing that we would not be

13    arguing those motions because they're not our cases.

14            Ultimately, we think it's going to be critical if more

15    cases are remanded or cases are brought and not removed for one

050304mutualfunds

16    reason or another, that you do have interface with the parallel

17    state court proceedings.  That's the role that we envisioned.

18            I tend to agree, although if I were self-aggrandizing I

19    wouldn't make this comment, but I tend to think that we cannot,

20    should not have a formal seat on the horizontal committee because

21    that's really part of the MDL structure per se.  But we do want

22    to confer closely with the horizontal committee and the

23    administrative counsel because much of the essence of

24    coordination involves coordinating strategies and other things

25    that we want to have a dialogue and participation in.

                                                                    38


1            So if you ask me what we envision our role as being, it

2    would be liaison for those cases which are in the state court

3    system and that we would liaise, if that's a verb, with the

4    horizontal committee.

5            JUDGE MOTZ:  And you would deal with the horizontal

6    committee level.  We ought to just call you something else.

7            MR. FRIEDMAN:  Call me whatever you like.

8            JUDGE MOTZ:  While you're there, though, who should we

9    appoint, since you quite nicely, in light of my letter after the,

10   as follow-up, did coordinate on the omnibus?  Is there somebody

11   who you would recommend?

12           MR. FRIEDMAN:  My suggestion would be that Mr. Heimann

13   and his firm role be as described by Mr. Schulman, our role be as

14   liaison for the state court proceedings.  With respect to the

15   remand motions, if they decide who they want to argue their

16   omnibus motion, the chips will fall and they'll fall in one

17   category or the other.

18           JUDGE MOTZ:  In terms of the coordination, that's

19   already been done.  So the work's been done.

                          Page 33

050304mutualfunds

20          MR. FRIEDMAN:  It's been briefed, the responses and
21   their replies will be in.
22          JUDGE MOTZ:  Thank you very much.
23          MR. SCHULMAN:  Pardon me.  Just to put the final point
24   on it.  It just seems to me, then, that depending on the outcome
25   of the remand motions, if you decide to remand the cases, then

                                                                    39


 1   whoever's in state court will be coordinated through Mr.
 2   Friedman.  Whoever's in Federal Court will be, Mr. Heimann will
 3   be the lead for those claims in the vertical tracks.
 4          JUDGE MOTZ:  And you think he should, he should be in
 5   the vertical track and in the horizontal track?
 6          MR. SCHULMAN:  Well, I do not -- again, I don't want to
 7   take anything away from Mr. Heimann that you've given him.  But
 8   the proposal that we've made and the letter that he sent did not
 9   contemplate they would have a seat on the horizontal committee.
10   And I don't think it's necessary.
11          THE COURT:  But you think it should be on the
12   horizontal.
13          MR. SCHULMAN:  Well, I think they have a role on the
14   vertical committee, yes.
15          JUDGE MOTZ:  But not on the horizontal?
16          MR. SCHULMAN:  Yes, I do.
17          JUDGE MOTZ:  So instead, we'll have Mr. Friedman not as
18   a formal member of the horizontal committee, but as a
19   coordinating representative.
20          MR. SCHULMAN:  Exactly.  In a similar role as liaison
21   counsel but would be liaison counsel for state cases.
22          JUDGE MOTZ:  And we don't need that at the family of
23   fund level.

                              Page 34

050304mutualfunds

24          MR. SCHULMAN:  I do not believe you do.

25          JUDGE DAVIS:  And we're going to have two flavors

                                                              40


1     rather than three in just two weeks.

2          MR. SCHULMAN:  Exactly right.  And in the end, they'll

3     shake out in one place or another.  And my vision is to the

4     extent necessary, Mr. Friedman will coordinate directly with the

5     horizontal committee or as necessary with Mr. Heimann, so Mr.

6     Heimann's expert on what's going on in state court.

7          Just check my notes here.  I think, I think that's all

8     I have, Your Honor.  I think the letter is clear and I think we

9     can work in the spirit of your letter.

10         JUDGE MOTZ:  Should we have Mr. Rifkin?

11         JUDGE BLAKE:  Someone who hasn't had a chance.

12         UNIDENTIFIED SPEAKER:  He can continue with the flow of

13    thought.  That's fine, Your Honor.

14         JUDGE MOTZ:  Okay.  Mr. Rifkin.

15         MR. RIFKIN:  Your Honors, thank you, Mark Rifkin.

16    Thank you again.

17         I want to make sure that the Court understands that our

18    view is motivated by our belief that the derivative plaintiffs

19    have asserted claims that nobody else can bring in these cases,

20    claims that regulators haven't brought and can't bring, claims

21    that the class people haven't brought and can't bring.  And to

22    the extent that any of them could, they've indicated that they're

23    not going to.

24         We believe that we need to have some more substantive

25    representation on the horizontal.  And as we were sitting here

                                                              41

050304mutualfunds

1    trying to think about what to do to help the situation, one or
2    two items that we will suggest to the Court as a possible
3    modification to the structure.
4            With respect to the track administrative counsel,
5    although it may make it marginally more difficult, we would like
6    to see co-chairs on those tracks so that there is a class and a
7    derivative counsel representative.  We think that, we do not
8    expect that either Mr. Schulman or Mr. Bershad or any of us on
9    the derivative side will not be able to be as efficient as two.
10           I think adding one more on that track by track
11   administrative committee again helps, especially if as we suspect
12   may be the case, when all is said and done on the motions to
13   dismiss, the cases look a little bit different than they do now
14   and the Court sees that there really are separate and independent
15   claims that the derivative counsel have, the derivative
16   plaintiffs have.
17           We would also suggest that, this is a follow-up to
18   Judge Stamp's question, it is possible to provide for greater or
19   more fair representation on the horizontal committee, not as Mr.
20   Schulman has suggested, by removing one or two of the class
21   counsel, but just simply adding one or two more of the derivative
22   counsel, although it would expand that committee.  I don't think
23   it expands the committee so much so that it becomes an imposition
24   or a burden on the Court or will in any way result in duplication
25   of effort or inefficiency.

42

1            And with that, again, as long as the Court has no other
2    questions, I will sit down.  Thank you.
3            JUDGE MOTZ:  Thank you, Mr. Rifkin.
4            MR. BRAUN:  Good afternoon, Your Honors.  Michael Braun

050304mutualfunds

5      with Stull, Stull and Brody on behalf of the individual fund

6      plaintiffs.  Together with Weiss and Yourman we represent

7      approximately, movants in approximately 185 individual actions.

8              And we've read over your letter, Your Honors, and we

9      don't necessarily want to upset the apple cart in terms of all

10     the hard work the Court put into it.  But we'd like the Court to

11     take a step backwards for a moment and revisit the issue of the

12     plaintiffs, which is why we're really here.  It's not purely

13     about the organization of counsel, which is obviously necessary.

14     But it raises a fundamental issue of fairness, fundamental issue

15     of standing, which we hope the Court would address.

16             Under the PSLRA, the Court is obligated to look at the

17     plaintiff with the largest financial interest in the relief being

18     sought.  It's a two part question.  One, financial interest; two,

19     the relief being sought.  If you did not purchase in a particular

20     fund, you have no damages.  If you have no damages, you don't

21     have any relief being sought.  If you don't have relief being

22     sought, you can't be a lead plaintiff.  It is as simple as that.

23             And I know there is some hesitancy to appoint

24     individuals in the role of lead plaintiff in all 460 individual

25     fund cases but it's critical.

                                                              43


1              We have cited two cases which we hope the Court would

2      give due consideration to.  One is the case, Eaton Vance, in

3      which Judge Harrington addressed this very point.  There were two

4      named plaintiffs, there were four mutual funds that served as

5      defendants.  The two named plaintiffs only -- I'm sorry.  The

6      four named plaintiffs and four mutual funds, they only had

7      purchased in two of the four mutual funds. And Judge Harrington

8      basically dismissed the case.

                            Page 37

050304mutualfunds

9          Went up to the First Circuit.  The First Circuit asked

10   the Court to reconsider its decision in light of Ortiz, and the

11   Court did.  Judge Harrington put out a very well-reasoned

12   decision why it was critical, it was critical for each one of the

13   plaintiffs to have purchased in those mutual funds or at least

14   have one plaintiff purchasing in the mutual fund to have standing

15   in the case.

16          This was also considered by Judge Scheindlin in the IPO

17   cases where, as you will note, there were 300, more than 300

18   individual plaintiffs appointed in each one of these individual

19   cases, even though they were ultimately consolidated and put

20   forward as a consolidated litigation.

21          And what Judge Scheindlin did was -- she felt the same

22   way.  She said standing is critical.  Go out and make sure we

23   have an individual or a group of persons that purchased the

24   particular company at hand.  At the end of the day, there were

25   six companies that didn't have representation.  So what did she

44

1   do?  She asked plaintiffs counsel, you have a month to cure.

2   They took the month.  They found five plaintiffs willing to take

3   on the role as lead plaintiff.  The sixth case, there was nobody.

4   And Judge Scheindlin dismissed the action.  So let it be.

5          If that's the case at hand and no one comes forward to

6   advocate their claim in this action, then far be it from the

7   lawyers, you know, to essentially drive the litigation.

8          And in the few minutes I have left, Your Honors, I

9   would just give you a practical application, a logical

10   application.  Based upon your letter, I noticed, and I just

11   picked one at random, I see the Janus family of funds with the

12   California Financial Advisors.  I was reading the Wall Street

050304mutualfunds

13    Journal last week and it says Janus agrees to a settlement of 226

14    million.  And it basically says they set aside a hundred million

15    dollars to compensate investors and that, it identified ten

16    investors who market timed.  And it identified seven, seven funds

17    that were implicated in this.  We named 26 altogether.

18         So there are 19 funds that we don't know what's going

19    to happen.  Maybe Janus will argue that there was absolutely

20    nothing wrong, there was no market timing impropriety and these

21    cases should be dismissed.  Maybe plaintiffs' side will argue to

22    some degree of success with some respect to those funds.

23         But what it leaves, it leaves in this case California

24    Financial Investors to represent all 26 of those funds.  What

25    happens when California Financial Investors doesn't have a horse

45

1    in the race?  What happens if the funds they invested are not

2    part of these seven or part of any group of funds that, that

3    they've lost any money in?  All of a sudden they've gone from the

4    largest financial interest to no financial interest.

5         And is it fair to expect them to advocate on behalf of

6    a class when they don't have any losses?  I'm not sure if it's

7    even legal for them.  I mean, their fiduciary duties might

8    prohibit them from spending the time acting on behalf of a class

9    of plaintiffs that they have no financial interest in.

10         So as a practical matter, Your Honors, we would ask

11    that the Court reconsider its decision on appointment of lead

12    plaintiffs, not by groups of families but individually.  Because

13    at the end of the day, even though at this point it might take a

14    little more time, at the end of the day, when it comes time to

15    settle these cases, when it comes time to allocate the funds that

16    have been put forward in these cases, this will preserve the

050304mutualfunds

17    sanctity of that settlement, will preserve the fact that it's an

18    arm's length settlement, will preserve the fact that the

19    individual had standing to make a decision in the very cases that

20    they're advocating.  Thank you, Your Honors.

21         JUDGE MOTZ:  Suppose we appointed lead counsel under

22    the PSLRA on a fund-by-fund basis but didn't appoint -- assuming

23    that the counsel we appointed under our organization as

24    administrative counsel also represented, which they did, a

25    plaintiff in one of those families of funds.  Could we tell the

46

1     lead counsel, you're appointed but it's in name only and you just

2     sit tight until, until, if and when we get to a class

3     certification stage?

4          MR. BRAUN:  Well, I don't think it has to do with class

5     certification.  Those are two separate questions.  The PSLRA

6     forces the Court, essentially, to appoint a lead plaintiff.

7     Whether or not a class is ultimately certified --

8          JUDGE MOTZ:  But my question is, this has been, we're

9     going to have to hear from the other lawyers about this, because

10    this is a legal issue.  But my question, as a practical matter,

11    suppose, and I'm not saying we would, that we would have included

12    as Judge Harrington did, that you have to have an individual

13    plaintiff and the person on the PSLRA has to be appointed as

14    individual plaintiff, but at this stage of the litigation was a

15    solely nominal appointment; that since there would be other

16    people in that family of fund subtrack who would serve in the

17    roles that we have discussed, what would be wrong with that?

18         MR. BRAUN:  Well, the whole point, Your Honor, is it

19    shouldn't be nominal.  Even if the structure existed the way

20    you've set it out with respect to counsel --

050304mutualfunds

21          JUDGE MOTZ:  Why shouldn't it be nominal, if and when

22    the point comes when there was really a substantive conflict?  I

23    mean, for example, in your situation where you were dividing up,

24    say there was a settlement and there was a real question whether

25    19 of the Janus funds have been hurt, at that point then the lead

47

1     plaintiff in that, at that juncture, would have, you know, would

2     have a horse in the race.  But up until that point, they really

3     don't.

4          MR. BRAUN:  Well, even if it's a matter of having one

5     lead plaintiff of that group in the family of funds to act on

6     behalf of the others, as long as there is, as long as they're

7     being informed, that's fine.  But if they're not being informed,

8     and it's that nominal, then I would certainly disagree with it

9     because, just to follow up on a hypothetical.

10          You know, let's say, let's say California Financial

11    Advisors is advised and they play the primary role and they don't

12    inform anybody else in the plaintiff group, assuming there's a

13    number of plaintiffs been appointed.

14          All of a sudden you find out that they don't have a

15    horse in the race.  So their ten million dollars in losses is not

16    the largest financial interest.  It has to go to someone else.

17    Then you would be redoing the litigation, trying to catch someone

18    up.

19          I don't think administratively it's very difficult to

20    keep these plaintiffs informed.  You know, this is not something

21    that you need to talk to them on a daily basis.  You can send out

22    a global e-mail.  The Court is extremely efficient at dealing

23    with counsel, numerous counsel.  I would hope that we could be

24    the same.

Page 41

050304mutualfunds

25          And again, the higher purpose here, it's more than

                                                                    48


1    efficiency.  It's an issue of standing.  It's an issue at the end

2    of the day, someone can turn around and say, well, you had no

3    standing to even decide this issue.  How can we assume it's an

4    arm's length settlement?  How can we assume it's fair?  It just

5    doesn't make sense.  Standing is a cornerstone legal principle.

6          And at this point we're early enough in the litigation

7    that we can resolve the lead plaintiff issue without too much of

8    a delay.  And the litigation can then go forward.  At the end of

9    the day, you'll save an amazing amount of time because everybody

10   that has a horse in the race is there.

11          JUDGE MOTZ:  I understand.  Thank you.

12          MS. CLARK-WEINTRAUB:  Deborah Weintraub from the

13   Milberg Weiss firm again.  I think the distinction that has to be

14   drawn here is between the role of lead plaintiffs and, lead

15   plaintiffs and class representatives.  And that's the point that

16   Mr. Braun is missing and confusing in his argument.

17          The PSLRA requires the appointment of a lead plaintiff

18   in the case.  As the IPO decision of Judge Scheindlin recognizes,

19   and other cases have as well, this is sort of an argument that

20   you need a lead plaintiff for each niche claim has been

21   repeatedly rejected.

22          The PSLRA is very clear.  The person with the largest

23   financial interest in the litigation is to be the lead plaintiff.

24          The Eaton Vance case concerned a motion for class

25   certification.  At that stage, you have to have somebody as a

                                                                    49

050304mutualfunds

1    class representative who has standing to assert the claim.  And
2    if Mr. Braun's clients have standing to assert claims with
3    respect to certain funds, they can be added to the consolidated
4    amended complaints as named in representative plaintiffs if there
5    is no other person available who has that claim.
6              So I think we have to keep clear here the distinction
7    between lead plaintiffs under the PSLRA and also the role of
8    class representatives.  That's what's at issue here.
9              We don't think that there is a need for 400 lead
10   plaintiffs in this litigation.  We think the Court's letter and
11   its proposal for one lead plaintiff per track is appropriate in
12   these circumstances.  And the other issue is an issue for class
13   certification.
14             JUDGE MOTZ:  But I mean, somebody who purchased in one
15   fund, one Janus fund doesn't have any right to relief for another
16   fund, do they?  Isn't, in the final analysis, isn't it a fund,
17   isn't it a fund -- assuming it's going to be recovery, it's going
18   to be on a fund-by-fund basis?
19             MS. CLARK-WEINTRAUB:  Well, it may be, Your Honor.  It
20   depends upon the claims, I think, and it's going to depend upon
21   what the evidence is that comes out in the case.  I think we're
22   too early to set hard and fast rules at this point.
23             But I think the point that Mr. Braun was making is you
24   don't want to lose a claim because you don't have somebody who
25   has standing to assert the claim.  And what I'm suggesting is

                                                              50


1    that how that can be addressed is by adding those people as named
2    plaintiffs, proposed class representatives in the consolidated
3    amended complaints.  In this way, they have standing to assert
4    the claim, the claim is preserved.  And then the litigation will

050304mutualfunds

```
 5    move forward and the chips will fall where they may.  And
 6    whatever funds were damaged, whichever shareholders of which
 7    funds were damaged, they will collect ultimately in the process.
 8             JUDGE MOTZ:  I don't disagree with that.  Judge Blake's
 9    had to do it so she knows more than I do about this business.  We
10    do have a responsibility for appointing a lead plaintiff under
11    the PSLRA, correct?
12             MS. CLARK-WEINTRAUB:  I'm sorry, Your Honor, I didn't
13    hear.
14             JUDGE MOTZ:  We obviously have a responsibility for
15    appointing a lead plaintiff under the PSLRA.
16             MS. CLARK-WEINTRAUB:  That's correct.
17             THE COURT:  And that person has to have the largest
18    financial interest in the relief --
19             MS. CLARK-WEINTRAUB:  Sought in the litigation, yes.
20    Yes.
21             JUDGE MOTZ:  If somebody who invested a hundred million
22    dollars in one Janus fund invested no money in another Janus
23    fund, they would have no right to relief as to the second of
24    those funds.  So they could not be appointed under the PSLRA to
25    represent that fund, because isn't the relief finally going to be
```

                                                                   51


```
 1    on a fund-by-fund basis, if there is any?
 2             MS. CLARK-WEINTRAUB:  Well, that may be the case.  But
 3    for example, in the IPO case, Judge Scheindlin recognized that
 4    not every, the lead plaintiff did not necessarily have a claim
 5    for each security that was issued in the case and still found
 6    that there was no need to have separate lead plaintiffs based
 7    upon separate securities that were issued.
 8             I think we have to look at this on a global basis.  And
```

050304mutualfunds

9  here there have been allegations made that this kind of unlawful

10  conduct went across many funds.  And what we've done in our

11  papers, Your Honor, is to present to the Court the most fulsome

12  information we have at this point with respect to the holdings of

13  the proposed lead plaintiffs in all of the funds.

14       And in this way --

15       JUDGE MOTZ:  I understand.  But to the extent there's

16  an issue, can it not be rendered academic, there would be work

17  involved, but we're right now talking about organizing counsel.

18       MS. CLARK-WEINTRAUB:  Yes.

19       JUDGE MOTZ:  It seems it's a terribly onerous task.

20  But why couldn't we appoint 400 different lead plaintiffs but

21  essentially just have that appointment lie absolutely dormant

22  until and when it becomes important to focus upon it on a

23  fund-by-fund basis and have you all keep the organization, the

24  organization of counsel structure exactly the way we have it

25  because, obviously, your group does have a lead plaintiff as to

52

1  each family of funds but maybe not to each fund within that

2  family of funds.

3       But you could still play the role assigned under the

4  organizational structure.  But you wouldn't be, quote,

5  "technically appointed as lead plaintiff."

6       MS. CLARK-WEINTRAUB:  Well, for the same reason that

7  Your Honors determined in the letter you issued last Friday that

8  there should be one lead plaintiff in the litigation.  Because to

9  have a group of 400 lead plaintiffs sort of eviscerates the role

10  as Congress envisioned it under the PSLRA.

11       Congress envisioned that there would be one person or a

12  small group of persons who could perform that role.  And if

Page 45

050304mutualfunds

13    you're going to have 400 lead plaintiffs, then you're going to

14    have no lead plaintiff because there will be nobody at the helm

15    of the litigation.  And I think that that's what Your Honors

16    recognized in the letter that you issued last Friday and that's

17    the issue that we attempted to respond to in the proposals that

18    we made last week as well, to reduce the size of the lead

19    plaintiff groups down to no more than five members.

20         You need to have a lead plaintiff.  You can't have 400

21    lead plaintiffs because that's just not a workable solution.

22         JUDGE MOTZ:  What you really need is a lead lawyer,

23    though.

24         MS. CLARK-WEINTRAUB:  I'm sorry?

25         JUDGE MOTZ:  What you really need is a lead lawyer.

53

1          MS. CLARK-WEINTRAUB:  Well, Congress envisioned that

2    you have a lead plaintiff because they didn't want to have

3    lawyer-driven litigation.  They wanted to have strong lead

4    plaintiffs in control, at the helm of these cases.  Here we have

5    large institutional holders of these funds who are the sole lead

6    plaintiffs in several of the tracks.  And also, we have single

7    individuals who have enormous or very significant personal

8    holdings with respect to the funds as well.

9          So I think the notion to have 400 lead plaintiffs just

10    doesn't jive with what Congress intended in terms of a lead

11    plaintiff when it enacted the PSLRA.

12         JUDGE MOTZ:  Again, I don't want to push this point too

13    far.  But consistent with the purpose of the statute, couldn't

14    you appoint 400 lead plaintiffs but say, our job here, it's

15    partially the formal, what we're really talking about here really

16    is the organization of counsel.  In terms of appointing counsel,

Page 46

050304mutualfunds

17    we pick among the lawyers who represent the various lead

18    plaintiffs, we are picking counsel for the lead plaintiff in that

19    family of funds with the biggest financial interest.  From a

20    management standpoint, that's what makes the most sense.

21          Obviously, you can't have 400 leaders.  You've got no

22    leaders then.  But you could have 400, quote, "lead plaintiffs"

23    fund by fund.  But then when we pick counsel to serve in a lead

24    administrative role, we are picking a single counsel.  And the

25    person we are picking, consistent with the general spirit of the

54

1    PSLRA, is the lawyer for the lead plaintiff in a given family of

2    funds who has the greatest financial interest in that family of

3    funds.

4          I'm just trying to, if there's an issue, that would

5    seem to me to render it academic.  And the only cost involved at

6    this stage would be going through what I think is essentially the

7    meaningless task at this point of finding 400 lead plaintiffs to

8    appoint.

9          MS. CLARK-WEINTRAUB:  I respectfully disagree, Your

10    Honor.  I think that to appoint 400 lead plaintiffs renders the

11    position a nullity.  And the time to take account of Mr. Braun's,

12    Mr. Braun's point is when we file amended complaints and we

13    allege as named plaintiffs or proposed class representatives in

14    the consolidated amended complaints people who have standing to

15    assert claims against the individual funds.

16          I think that is the only concern that Mr. Braun

17    expressed, which is a valid one.  And I think it's dealt with by

18    approaching it in that way.  And I think that that's how, that's

19    how it should be done.

20          To have 400 lead plaintiffs makes no sense.  It's

050304mutualfunds

21    contrary to the intent of the statute.  And as I said, it would

22    render the position of lead plaintiff in the litigation a

23    nullity.  Congress envisioned having a strong, single, small

24    group of lead plaintiffs.  And that's what Your Honor's letter

25    has done.  We believe that that's the structure that should be in

55

1    place in the case.

2    JUDGE BLAKE:  If I'm recalling from the submissions, in

3    fact, some of the proposed lead plaintiffs, large investor

4    groups, have fairly experienced in-house counsel.

5    MS. CLARK-WEINTRAUB:  That's right.

6    JUDGE BLAKE:  People that are quite anxious to be

7    involved and not let you all just run things without having

8    something --

9    MS. CLARK-WEINTRAUB:  That's right.

10   JUDGE BLAKE:  -- to say about it.

11   MS. CLARK-WEINTRAUB:  That's right.  Excuse me for

12   interrupting you.  But for example, for the Nassau County

13   Deferred Pension Plan, Lorna Goodman, who is the counsel there,

14   she was previously involved in the Cendant case, which recovered

15   an enormous amount of money for the class in that case.  She has

16   experience in that regard.  And so again, is very interested in

17   being actively involved in the litigation.  And she should play

18   that role given the enormous stake that the Nassau County plan

19   has in the Franklin funds in this case.

20   And the same is true for my client, the OTTA in the

21   Putnam family.  OTTA has an EDH of over seven million dollars.

22   There is nobody else that comes close to that.  And there's no

23   reason to put together a group of 400 lead plaintiffs.

24   We don't even know, by the way, the individual

Page 48

050304mutualfunds
25    financial interests of Mr. Braun's client.  They haven't put

1    forward that information.

2         So I think that the notion of having 400 lead

3    plaintiffs in the case is simply not workable.  As I said, the

4    time to take account of the point Mr. Braun is making, that no

5    claim be lost as a result of not having a plaintiff who can

6    assert the claim, is at the amended complaint stage, to plead

7    those claims into the complaint, to add those people as

8    additional plaintiffs in the complaint, and thereby protect the

9    claims.

10        JUDGE DAVIS:  And we are not anywhere near a case or

11   controversy kind of problem here.

12        MS. CLARK-WEINTRAUB:  Not at all.  Not at all.

13        JUDGE MOTZ:  All right.

14        MS. CLARK-WEINTRAUB:  And Your Honors, we've cited

15   many, many cases in our submissions where this argument has been

16   rejected repeatedly in these high profile cases that have been

17   brought in the last several years.  There are numerous courts

18   which have rejected this argument.  And we believe that that's

19   the right decision, that it should be followed here as well.

20        JUDGE MOTZ:  I take it that the way you're going to

21   draft your first amended complaint is going to preserve any claim

22   for limitations purposes.

23        MS. CLARK-WEINTRAUB:  Yes.  Absolutely, Your Honor.

24        MR. BRAUN:  I promise to be brief.  I just wanted to

25   address a couple points that Ms. Weintraub had mentioned.  This

1    matter has not been addressed and rejected by numerous courts.

050304mutualfunds

2    There is a distinction between looking at one security with

3    multiple causes of action and whether a plaintiff, for example,

4    can represent a 10(b) claim as well as a Section 11 claim, and

5    whether plaintiffs who own different securities with different

6    ticker symbols can represent one another.

7              And Ms. Weintraub speaks about Congressional intent and

8    about having hundreds of plaintiffs.  On the early days of the

9    PSLRA, some clever lawyer invented the concept of aggregation.

10   And courts were indeed faced with hoveling together of hundreds

11   of plaintiffs who didn't know each other but had one thing in

12   common -- they all purchased the same security.  You don't have

13   that here.

14             You don't have that in the IPO case.  And it's not

15   chaotic.  In fact, the IPO case, Judge Scheindlin's moving

16   forward.  There's a billion dollars on the table.  Much

17   congratulations to Ms. Weintraub's firm.

18             JUDGE BLAKE:  If I can ask two questions.  First of

19   all, where is in the record an identification on your clients on

20   a fund-by-fund basis and what their financial interest is?

21             MR. BRAUN:  It's all in our original paperwork.  It has

22   not been included in the supplemental paperwork.  But it's all in

23   the original paperwork on a fund-by-fund basis.

24             JUDGE BLAKE:  Would you be taking the position that if

25   we went that way and there were 400 lead plaintiffs, that each

                                                               58


1    one would have the right to, subject to some oversight, but would

2    be selecting their own lead counsel, so there would be --

3             MR. BRAUN:  No, I don't, as I said, it was important to

4    get the horse back in front of the cart but not turn the cart

5    over.  The Court has spent a lot of time on creating structure.

050304mutualfunds

6   Perhaps how that structure is populated might change based upon

7   who represents whom.  But we wouldn't want to argue with the

8   structure.  The Court has put in a lot of time and it would not

9   be effective in this litigation.

10          But again, the core issue here is one of standing.

11  Case or controversy.  A plaintiff who files a client has to have

12  standing to sue.  It's as simple as that.

13          And in this situation, we have plaintiffs that are

14  advocating on behalf of a class of people they don't even really

15  represent.  And although Your Honor pointed out that it might be

16  a bit of a pain to identify 400 or so odd plaintiffs, it's

17  crucial, it's crucial that it's done up front.  And even if their

18  role is non, and I wouldn't say nonexistent, I do believe that

19  they have to be informed.  But you can still have a quote-unquote

20  "lead plaintiff" of the family group as long as these people

21  remain informed, to step into the shoes if that lead plaintiff

22  can't do their job because they are not in the fund or they have

23  a conflict of interest.

24          You know, we didn't even touch upon that.  As a

25  practical matter, you know, a lead plaintiff could own shares in

                                                                59

1   one fund.  They've got an issue of allocation.  They don't have

2   an interest in five other funds.  Who's going to represent those

3   five other funds?  Counsel?  In part.  But it's an investor

4   litigation.  It's not a counsel's litigation.

5           We just ask you to reconsider that, that point, Your

6   Honor.  And again, we rest on the cases we cite.  We invite you

7   to look at the Eaton Vance and the IPO cases.  And again, any

8   other cases that address this issue, please keep in mind that the

9   distinction is based on causes of action, not based on whether

050304mutualfunds

10    someone owned a security or not.  Thank you.

11         JUDGE STAMP:  Let me ask you, the gentleman just

12    speaking.  I'm sorry.

13         JUDGE MOTZ:  Mr. Braun.

14         MR. BRAUN:  My apologies, Your Honor.  Michael Braun.

15         JUDGE STAMP:  I didn't catch your name when you first

16    stood.  And I will certainly look at those cases.  But under

17    those cases, we pick up on the question Judge Davis asked, which

18    I think is an important one.

19         If it's a case in controversy situation, a standing

20    situation, then you don't raise that or decide that in a lead

21    counsel order, do you?  You decide that, or one decides that as

22    the result of a Motion to Dismiss.  And then if that occurs, when

23    and if that occurs, then don't we look to the case law to see who

24    takes the place of the lead plaintiff who did, who was found not

25    to have standing to sue.  And if that's the case, then I guess

                                                              60


 1    what the cases say, we should read those and find out who takes

 2    the place of the lead plaintiff.  Is it the next largest monetary

 3    investor with standing?

 4         It seems to me that's the way it works out, not with

 5    respect to the way this order ultimately reads initially.  But

 6    the case order may be sooner than is appropriate, it seems to me.

 7         MR. BRAUN:  You raise a good point and Your Honor is

 8    right.  In the Eaton Vance case they address the case or

 9    controversy issue square on.  It's more of an issue of whether

10    you can have the horseman going headless or not.  If we're in a

11    situation where we've done a Motion to Dismiss and part of that

12    Motion to Dismiss is, guess what, this plaintiff has no standing,

13    then you're back in square one.  You may as well decide the issue

050304mutualfunds

14    now as a matter of efficiency, where all your plaintiffs and all

15    your cases, everyone has standing to sue.

16          And you've got to keep in mind that part of the PSLRA

17    requirement is Rule 23.  It says it right there.  After you

18    decide who has the largest financial interest in the relief being

19    sought, you go through a Rule 23 analysis.  How is a plaintiff

20    that has no standing adequate or typical?  The answer is, he's

21    not.

22          JUDGE STAMP:  Thank you, sir.

23          MR. BRAUN:  Thank you.  Your Honor, I apologize.  I've

24    got you on three screens here and wasn't quite sure where the

25    camera was.

61

1          MS. CLARK-WEINTRAUB:  Just one brief point following up

2    on Judge Stamp's question.  I think it's important to remember

3    that the lead plaintiff under the PSLRA is appointed before a

4    consolidated amended complaint is even filed.  So it's not a case

5    in controversy question.  It is not a standing issue at this

6    stage.

7          It becomes a standing issue later on, once that

8    pleading has been filed.  And if you wouldn't have a person in

9    the complaint asserting that particular claim, there would be a

10   danger that the claim would be lost.  But that's not the intent

11   here.  The intent here is that we will plead in as named

12   plaintiffs in the consolidated amended complaints all plaintiffs

13   who have claims.  And if those are some of Mr. Braun's clients,

14   we will plead them in in order to preserve those claims.

15         So that is the, that is the distinction, I think, that

16   we have to keep in mind.

17         JUDGE MOTZ:  Ms. Weintraub, we spent a lot of time on

050304mutualfunds

18    this.  But the concern I got out of the Janus hypothetical, or
19    it's not even a hypothetical, Mr. Braun mentioned that there's
20    been a settlement and it's only, I forget, that of 19, only 7 out
21    of 19, 7 out of 26 funds or something like that.
22          The first time he spoke, what he focused upon was that
23    the Ohio Authority might not end up in any of those five funds.
24    That wasn't my concern.  But he addressed the concern that did
25    occur to me the second time he stood up.

                                                                    62


 1          What if the, quote, "lead plaintiff" we've appointed
 2    has an interest in one of the six funds involving the Canary
 3    defendants in which Janus admits there was wrongdoing but doesn't
 4    own any shares in any of the other funds?  Isn't there then a
 5    conflict in terms of allocation because, in pursuing its own
 6    interest, the lead plaintiff would want to limit recovery to the
 7    six or seven funds because then their share of recovery would be
 8    higher?
 9          MS. CLARK-WEINTRAUB:  No, Your Honor.  There wouldn't
10    be, because that's what you have class representatives for.  The
11    class representatives will be there to insure that their claims
12    with respect to the particular funds that they are class
13    representatives for will be fully protected.
14          JUDGE MOTZ:  But that's at a later stage.  There will
15    have been facts litigated up to that point which might establish,
16    you know, in terms of litigating that very issue, the discovery
17    would have been done as to whether a particular fund was involved
18    or not.  So that it's too late to say, well, at the very end of
19    the game, then we're going to bring people in because the game
20    may be over because the discovery may have been conducted in such
21    a way by the lead plaintiff to not focus upon the fact that there

050304mutualfunds

22    were 19 other funds involved.

23         MS. CLARK-WEINTRAUB:  Well, I don't think so, Your

24    Honor, for two reasons.  One, we're going to have to name these

25    people as named plaintiffs in the complaint so they're going to

63

1    be there, they're going to be aware of the action and aware of

2    what's going on.

3         Two, class certification comes at a very early stage in

4    the proceedings.  It doesn't come after all the merits discovery

5    is done.  It comes at the earliest stage.  And then ultimately,

6    on top of that, under Rule 23, obviously, any settlement is going

7    to have to be approved by the court.  So there's an additional

8    mechanism in addition to the class representatives protecting the

9    interests of all claimants.

10         So you know, hypothetically the point that Mr. Braun is

11    making, it just will not occur in reality because there are going

12    to be class representatives there who are going to protect those

13    particular claims, and ultimately the court's authority to

14    approve any settlement under Rule 23 is going to be there as

15    well.

16         So I don't think it really is a danger at all.  And I

17    think it's an overstatement to suggest that it is.  Because I

18    think that class certification comes first, then comes discovery.

19    And there can't be any resolution of these cases until there's

20    been some discovery.  And that's not going to happen before class

21    certification.  The class has to be certified in order for a

22    settlement to be approved.

23         JUDGE MOTZ:  And the down side?  I still don't see the

24    down side.  You just name them and then you keep them notified.

25    But you all still call the shots.

050304mutualfunds

1           MS. CLARK-WEINTRAUB:  The down side is that's not what
2      Congress envisioned in the statute.  The Congress envisioned that
3      there be one lead plaintiff, not that there be a group of 400
4      lead plaintiffs.  The Congress wanted a strong investor or a
5      small group of investors at the helm of these cases.  And the two
6      roles are not identical, as Judge Brieant held in the Oxford
7      case.  A lead plaintiff is not necessarily a class representative
8      and vice versa.  The roles are not synonymous.
9           The lead plaintiff role has been defined in the PSLRA
10     as a very specific role for the lead plaintiff.  It is not
11     duplicative in any way of the role of class representative.  They
12     are two distinct roles.  The class representative role provides
13     the protection that Mr. Braun is seeking.
14           MR. RIFKIN:  Your Honors, Mark Rifkin again.  The
15     question that Judge Motz just posed is exactly the reason that we
16     have been so vehement in trying to explain the need for
17     representation now.  And it's an issue that has to do with
18     conflicts interesse among the different class members.  But it
19     particularly has to do with defining the parameters under which
20     the cases will be litigated and the discovery that's going to be
21     pursued, and however these cases are going to develop now as
22     between the class and the derivative plaintiffs because there
23     really are clear conflicts now between them and the sets of
24     claims that they bring.
25           The issues that different class conflicts raise, I

1      think, are more academic and maybe more theoretical than

050304mutualfunds

2     conflicts between the class and the derivative.  And the reason

3     that we're being so concerned about this, the reason we're trying

4     to emphasize our concern is because the control of discovery and

5     the scope of how this case gets litigated from the beginning will

6     determine how we all look at this at the end and whether we can

7     see it at the end the way it should have laid out.  That's why we

8     have been trying to persuade the Court that we need more

9     adequate, more fair representation now.  Thank you.

10            MS. MORRIS:  Karen Morris on behalf of the parent

11     derivative cases.  Your Honor, we just had a question about the

12     role of the administrative counsel and the role of the vertical

13     committees.  It wasn't directly stated in the letter but we take

14     it that the administrative counsel will be convening regular

15     contact to consult with the people on the vertical committees as

16     they take on each responsibility.

17            So for example, if there's going to be a case

18     management order, they would circulate that in advance to the

19     single representatives on the vertical committee, get their

20     input.  Likewise with discovery, parent derivative counsel would

21     have the opportunity to consult with the administrative counsel

22     and say, well, here are our particular interests in the

23     discovery.  We'd like to have that responsibility.  Does that

24     work for you?

25            Is that what you're contemplating will be occurring

66

1     here?

2            JUDGE MOTZ:  Mr. Schulman?  Was that what I'm

3     contemplating?

4            MR. SCHULMAN:  Alan Schulman.  I made my legislative

5     history objection again.

Page 57

050304mutualfunds

6          JUDGE MOTZ:  No.  No.  The answer is I can't speak for

7     the four of us, but I will now.  The answer is yes.  Obviously,

8     it is a, there is a responsibility to consult.  And obviously,

9     Mr. Schulman's going to do that.

10          MS. MORRIS:  And that's so, Your Honor, the only

11     request I would make, then, two requests.  One is that the

12     language from your cover letter be reflected in the order that

13     you issue with respect to the substantive matters, the authority

14     of the lead counsel and the other types of cases for the

15     substantive matters.

16          JUDGE MOTZ:  I suspect that what we contemplated was,

17     since we've established the general principles, that you all are

18     going to come up with a proposed order.  And if you can't, then

19     it will be fleshed out --

20          MS. MORRIS:  Fair enough, Your Honor.  Thank you for

21     the clarification.

22          JUDGE DAVIS:  The language is preserved.

23          MS. MORRIS:  Thank you.

24          MR. PRESS:  Good afternoon, Your Honors.  Ira Press

25     from Kirby McInerney and Squire.  We represent first derivative

67

1     traders who seek to represent a, I guess, sub-subtrack class in

2     the Court's nomenclature of investors, in the common stock of the

3     Janus parent to bring a class action.  And I will not take too

4     much of the Court's time.

5          Just one point of clarification, really.  I believe

6     that we are in complete agreement and accord with the structure

7     proposed in the Court's April 30th letter.  The only point of

8     clarification, as I understand it, we represent one of the claim

9     types or types of claims referred to on Page 4, where there are

050304mutualfunds

10  roles for lead counsel for different types of claims.  Because on

11  Pages Two and Three, and the discussion of the various types of

12  claims, there is a lead counsel for the parent investor action,

13  if any.  And to my knowledge, we are the only parent investor

14  action to have filed papers in this proceeding.

15           And the point of clarification is there are constant

16  references to the PSLRA actions and the PSLRA lead plaintiffs.

17  As I understand it, that's separate and distinct from the parent

18  investor actions.  And the parent investor actions, though,

19  also -- parent investor action, also, is a 10(b)(5) action as

20  governed by the PSLRA and therefore the order that will

21  ultimately memorialize this particular proposed structure should

22  be one that does make an appointment pursuant to the PSLRA of a

23  lead plaintiff and a lead counsel for the Janus parent investor

24  action.

25           Just to be clear about this.  We are not seeking to

                                                              68


1   usurp the role --

2            JUDGE MOTZ:  No.  No.  We understand.  The PSLRA --

3            MR. PRESS:  -- of lead counsel or anything like that.

4            JUDGE MOTZ:  We were talking about you.  I got a seat

5   at the table.  For reasons said before, the class people don't

6   want us, have them called PSLRA, either.  So from now on they are

7   called the class counsel.  Would it be better, fund investors,

8   not the best claim?

9            MR. SCHULMAN:  I think class counsel.  But we -- Alan

10  Schulman.  I'm sorry.  We understood your letter exactly the same

11  way Mr. Press asked for clarification.

12           MR. PRESS:  Thank you very much, Your Honors.

13           JUDGE MOTZ:  Where do we stand?  We keep talking about

050304mutualfunds

14    17 and 18 families of funds.  They're not all here yet, right?

15    So does anybody want to be heard, I guess the Janus, Mr. Perry

16    raised the issue, about the California -- I'm sorry, too many

17    acronyms going on -- investment advisory standing issue.  That is

18    something, Mr. Simon's issue.

19         If nobody really is objecting to that from the

20    plaintiffs' side, if there's no competing lead plaintiff, whether

21    you feel a responsibility to be heard.

22         MR. PERRY:  Thank you, Your Honor.  Mark Perry.  I'll

23    just take a very brief moment.  On behalf of the Janus Capital

24    defendants, first on behalf of all defendants, we'd like to thank

25    the Court for the consideration of all these issues.  It was with

                                                              69


1     some trepidation that we stepped and commented on the other side

2     of the caption.  We think it's working out for the best of all

3     concerned.

4          On the particular issue you raised, Judge Motz, as to

5     the CFA issue, we raised the standing question early just to make

6     sure we have a proper lead plaintiff.  We are happy with whatever

7     lead plaintiff the plaintiff group works out.

8          I haven't seen Mr. Simon's contract.  I would like to

9     see it in light of the case law.  If we're going to do a short

10    supplemental brief, that would be fine.

11         Our only concerns at the early stages, that we have a

12    person that we can negotiate with, whether it's Mr. Simon or

13    someone else.

14         JUDGE MOTZ:  So Mr. Simon, if you would get the

15    contract in with the case law, when would be convenient for you?

16    You've got to go back to the West Coast.

17         MR. SIMON:  I can do it by Thursday, Your Honor.  I

                              Page 60

050304mutualfunds

18    know the Court is interested in getting this resolved quickly.

19    I'll get you a short supplemental submission by Thursday.  If we

20    need further argument --

21            (Yawning sound.)

22            MR. SIMON:  That wasn't somebody from my office.

23            MR. PERRY:  Nor mine, Your Honor.

24            MR. SIMON:  And then any time that's convenient, if I

25    understood you before, we'll discuss this with you and you would

                                                                    70


1    discuss it with the other judges.

2            JUDGE MOTZ:  If you get it in and have Mr. Perry take a

3    look at the submission with the case law.  If he's got problems

4    with it, if you could get something back to us by Monday.

5            MR. PERRY:  And I will make the representation we're

6    happy to talk to Mr. Simon.

7            JUDGE MOTZ:  If you all decided that it looks all

8    right, just submit it and say it looks all right.  Obviously, we

9    want to move it along.  Obviously, they have an important

10    practical interest.  The question is whether their interest is

11    legally sufficient.

12            MR. PERRY:  Thank you, Your Honor.  I would like to

13    make three very brief points.  And here I'm speaking only on

14    behalf of Janus, which has been mentioned several times this

15    morning.

16            The funds are all organized differently.  And this

17    PSLRA issue has really not been extensively litigated in the

18    mutual fund context.  The Janus fund, the retail funds that are

19    in issue in this case, there's a single trust established.  And

20    each what we call a mutual fund is a series of that trust.  So

21    there's only one legal entity that's subdivided within the

050304mutualfunds

22   corporate lawyer's parlance.

23          To go to Judge Davis's question about case or

24   controversy.  We think a lead plaintiff, whether it's one or the

25   other of these that have been identified, satisfies the Article

71

1    Three requirement as having an interest in the trust.  And then

2    we agree with Ms. Weintraub that the interest in the particular

3    series, some people call them portfolios, is a class

4    certification issue because it requires discovery from us to them

5    on which series are affected and so forth, and from them to us on

6    where the investments have been made and the timing of those

7    investments and so forth.

8           So that they are flip sides of a coin.  It's important

9    sides.  We want to preserve the issue that we may be arguing in

10   the future, that a particular plaintiff does not have either true

11   standing in a particular series or prudential standing because

12   there is a better plaintiff.  But that is not ripe, I don't

13   think, at this stage of the litigation.

14          Right now we think that the Vellrath analysis, if you

15   will, provides a useful metric for measuring the plaintiffs'

16   overall interest in the litigation at large and that these other

17   issues can be subdivided as we go forward with the litigation.

18          The 400 lead plaintiffs and put them in the back shelf

19   just doesn't work because then we don't have somebody to

20   negotiate with.  We do have a settlement.  Some of my colleagues

21   have settlements.  It may be that we have an opportunity to talk

22   to Mr. Schulman or Mr. Simon or whoever is the lead counsel in

23   this case about the ramifications of that settlement.

24          The purpose of the, or a purpose of the PSLRA was to

25   allow a plaintiff to be identified early with control over the

050304mutualfunds

1    litigation so that meaningful discussions can be had, not only on
2    procedural matters, but on substantive matters.  We can't have a
3    negotiation with 400 plaintiffs.  We can have a negotiation with
4    Mr. Diemer or the CFA or whoever the right plaintiff is for
5    Janus.  That can be done.
6          So we would urge the Court to stay to --
7          THE COURT:  And obviously, playing that role, the lead
8    counsel or the administrative counsel would have an ethical
9    obligation to look out for the interest of everybody who he or
10   she at that time is representing.
11         MR. PERRY:  That's correct.  In the event that an
12   agreement is reached in advance of class certification, all of
13   the usual protections of notice and settlement classes would kick
14   in.
15         So these are just, these are steps on a road that, what
16   may be a very long or a very short litigation.  But the function
17   that Congress put in place we think is accurately reflected in
18   the Court's letter and particularly Judge Blake's analysis.
19         On that point, the Court's letter points out the
20   importance of a single lead plaintiff with a single lead lawyer,
21   another crucial intent of Congress in enacting that statute.  We
22   think that principle applies to all of the claims, whether one
23   calls them ancillaries or niche or so forth.
24         If we have a lead plaintiff for the derivative
25   claimants, Judge Motz, you asked about who has the greater

1    financial interest on that side, we just don't know.  There may
2    be no legal requirement to do it.  What we're really talking

3    about is practical common sense.

4            There are a lot of lawyers in this room.  There will be

5    at every hearing.  We'd like to have a manageable group that we

6    can relate with and can relate to the Court.  I make that comment

7    and leave it at that.

8            Finally, we have some discussion of the state law

9    counsel, entirely agreeing with those cases that have been

10   remanded to state court, they will be proceeding in parallel.  We

11   welcome Mr. Friedman's offer to serve as that function.

12           JUDGE MOTZ:  I think you probably hope not.

13           MR. PERRY:  I'm sorry?

14           JUDGE MOTZ:  I hope you're probably hoping not, that

15   they're not proceeding at all.

16           MR. PERRY:  We have one that we've got up on appeal to

17   the Seventh Circuit.  Mr. Friedman has a brief due today.  I'm

18   sure there's somebody back at the office working on that.

19           JUDGE MOTZ:  I meant you want everything stayed.

20           MR. PERRY:  We'll work on that.  He's been very

21   cooperative so far.  The other classic cases that are the state

22   law claims in the federal cases, those are class cases, Your

23   Honor.  Those are class claims.  Those can be brought by the

24   plaintiffs who have PSLRA claims.

25           If Mr. Schulman's group wants to associate with Lieff

74

1    Cabraser for substantive expertise and so forth, that's fine, but

2    there shouldn't be a state law lead plaintiff or lead counsel.

3    That's just a duplication of effort.  Not of effort.  The effort

4    may be divided however they see fit.  I'm not going to tell them

5    how to do their jobs.

6            We don't think there should be a separate state law

050304mutualfunds

7   representative because the class plaintiff, the lead plaintiff
8   for now and then the class representative once we get there, he
9   owns or she owns or it owns all the claims that may be asserted
10  directly against the funds or the Advisors.  They're not divided
11  up artificially between state law and federal law.
12          JUDGE MOTZ:  But your point goes to the vertical
13  committee as well as the horizontal committee.
14          MR. PERRY:  It does, Your Honor.  It goes back to my
15  point of, we would like to have as small a universe as possible
16  to work with within our track, within the Janus track.
17          With that, I would like to thank the Court very much
18  for the consideration.  It's been a long hearing already and I
19  won't belabor the Court's patience unless you have questions.
20  Thank you.
21          MR. SCHULMAN:  Alan Schulman, Your Honor.  Just on this
22  very last point.  I don't think it affects the defendants at all
23  on whether or not Lieff Cabraser is a, has a committee position
24  in the vertical track with respect to state law claims if they
25  don't have a position on the horizontal committee.

                                                                75


1           Maybe I'm missing something.  I don't think it matters
2   to defendants.
3           JUDGE MOTZ:  No.  No.  I don't think it probably
4   affects them.  But it does raise a question.  I know it's
5   difficult, because Lieff Cabraser is not here, Mr. Heimann's not
6   here.  But it is part of the class claim.
7           MR. SCHULMAN:  First of all, there is a partner from
8   Lieff Cabraser here.
9           MR. EISLER:  Robert Eisler, Your Honors, from Lieff
10  Cabraser in New York.  I apologize for my partner's abscess.

050304mutualfunds

11    Your Honor, we represent clients in six cases against six fund

12    families exclusively asserting state law cases that haven't been

13    asserted in federal claims, which we believe need to be pushed

14    forward within the context of this MDL.  And we've worked with

15    Mr. Schulman and the other proposed co-leads to carve out an

16    appropriate position, keeping an eye on the efficiency of this

17    litigation.

18          And you know, as counsel for clients who have asserted

19    these claims initially, who have been removed and transferred

20    here and who have decided to stay here and prosecute their claims

21    here, we do have, on behalf of our clients, slightly different

22    interests, perhaps --

23          JUDGE MOTZ:  We'll change your name to just liaison,

24    okay?  Take out administrative.

25          MR. EISLER:  You can pick an appropriate name, Your

                                                                    76


1    Honor.  I think that your letter hit upon an appropriate

2    function.  Thank you.

3          JUDGE MOTZ:  All right.  Where are we?  Are we in a

4    point where we can, subject to our writing a letter telling you

5    what we intend to do, taking Mr. Rifkin's arguments into account,

6    some of the adjustments, which is a major issue, some of the more

7    minor adjustments, we have to make a decision on the 400 headed

8    horse, after we let you know what our final decision is on that,

9    are we in a position where we could ask you all to submit an

10    appropriate order?

11          MR. SCHULMAN:  I believe we are, Your Honor.  I think

12    as soon as we have an endorsement of your letter in whatever

13    final form it's going to appear, I think we're prepared to move

14    forward and negotiate a case management order with the

050304mutualfunds

15    appropriate consultations and interactions from the defendants.

16          MR. RIFKIN:  We agree, Your Honor.

17          JUDGE MOTZ:  Okay.  So we owe that to you as soon as

18    possible.  Mr. Simon's going to get, work out that one issue on

19    the California financial, whatever.

20          And speaking of California, I got a letter -- is the

21    fellow here who wrote it?  Somebody wants to sue all of you under

22    California law.  And it says it was sent to me by fax and e-mail.

23    Have you all been in contact with a Mr. Brian Barry?

24          MR. SCHULMAN:  I understand that Mr. Barry is one of

25    the counsel in the state court cases who's in the omnibus remand

                                                              77

1     motion.  So I hope he doesn't want to sue all of us.

2           MR. PERRY:  He's already sued the rest of us, Your

3     Honor.

4           JUDGE MOTZ:  Excuse me.  All the defendants.  I don't

5     know if anybody got this letter.  That's the problem.

6           MR. ISBISTER:  I don't think we did, Your Honor.  Mr.

7     Barry and his co-counsel have, they're the plaintiffs who filed a

8     California 17-200 claim that involves all the defendants in one

9     complaint.  I haven't seen it.  Is that correct?

10          Everybody up here from the defense side nods their

11    heads up and down.  So that's what he is talking about.

12          And Mr. Schulman is correct.  He is one of the people

13    that is participating in the remand briefing that's going on.  I

14    just know that because I've been helping administratively with

15    their filings.

16          JUDGE MOTZ:  He just placed a call to my chambers and

17    put my law clerk in the middle, frankly.  And then I didn't know.

18    And I've gotten a letter that sets forth what he's saying.

                          Page 67

050304mutualfunds

19          And then he says, based upon a footnote in the omnibus
20   motion to remand, therefore the defendants are on notice that we
21   intend to file an amended complaint.  We believe it's essential
22   that we file our amended complaints forthwith in the interest of
23   justice and judicial economy.  We wish to provide some
24   opportunity to defendants to respond to our amended complaint in
25   their omnibus opposition to remand or supplemental pleading prior

78

1    to the Court's order on the matter.  Further, the alternatives to
2    file an amended complaint later and perhaps bring a renewed
3    motion to remand.  This would surely be a waste of judicial
4    resources.  Our amended complaint resolves any doubt that we are
5    alleging a holder claim, seeking restitution for holders of
6    mutual fund shares and not for purchasers.
7          Everybody here is on notice of whatever, whatever I
8    just, whatever that means.  I will provide a copy of this to Mr.
9    Mathias and Mr. Isbister and you all can do with it what you
10   wish.
11         MR. SIMON:  Your Honor, there is one other bit of
12   housekeeping which I think is a good bit of housekeeping in light
13   of the fact that you may think we like to argue about everything.
14   We, in fact, had been having meet and confer discussions on the
15   protective order.  We submitted a report to the Court on Friday,
16   briefly describing the progress that we've made.  Class counsel
17   has asked me to take the point on that.
18         And I'm working with derivative parent counsel and
19   derivative counsel to have a coordinated plaintiffs' response.
20   We have had meet and confers with defendants.  There were hopes
21   of presenting a stipulated order to you in the near future.
22         JUDGE MOTZ:  We're scheduled to meet next for the

050304mutualfunds

23    remand?

24              MR. ISBISTER:  Yes, Your Honor.  On May 21st, is that

25    hearing, at 9:30 a.m.


                                                            79


1              JUDGE MOTZ:  Judge Stamp, do you have anything?

2              JUDGE STAMP:  No, I think not.

3              JUDGE MOTZ:  Are you going to be there for a few

4    minutes?  Maybe we can call you in about 15 minutes?

5              JUDGE STAMP:  That will be great.

6              JUDGE MOTZ:  Okay.  I guess that's it.  I can't believe

7    it.  Thank you all very much.

8              (Conclusion of Proceedings.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

050304mutualfunds

80

1                     REPORTER'S CERTIFICATE

2

3          I, Mary M. Zajac, do hereby certify that I recorded

4     stenographically the proceedings in the matter of In Re: Mutual

5     Funds Litigation, Case Number(s) MDL 1586, on May 3, 2004.

6              I further certify that the aforegoing pages constitute

7     the official transcript of proceedings as transcribed by me to

8     the within matter in a complete and accurate manner.

9              In Witness Whereof, I have hereunto affixed my

10    signature this _____ day of _____, 2004.

11

12

13

14
                          Mary M. Zajac,
15                        Official Court Reporter

16

17

18

19

20

21

22

23

24

25

                          $
$20,000 - 23:20
         1
10 - 23:20, 24:17,
10(b - 57:4
101 - 1:2467:19

050304mutualfunds

```
12 - 26:20, 57:4
150 - 23:2479:4
17 - 19:7, 27:1, 27:2,
17-200 - 77:8 68:14
27:2, 68:1421:9, 27:1,
19 - 44:18, 46:25,
61:20, 61:21, 62:22
       2
2004 - 1:7, 80:5, 80:10
21st - 36:8, 78:24
23 - 60:17, 60:19, 63:6,
26 - 44:17, 44:24,
2nd - 19:1
       3
3 - 1:7, 80:5
304-233-0402 - 4:2, 4:5
3515 - 1:24
       4
4 - 67:9
52:13, 52:20, 53:9, 2:9,
54:7, 54:10, 54:20,
58:16, 64:3, 71:18, 72:3,
460 - 42:24
       5
5 - 23:20
       6
61 - 6:7
       7
7 - 61:20, 61:21
747 - 28:13
       9
9:30 - 78:25
       A
25:1, 41:90, 13:19,
```

```
abscess - 75:10
56:23utely - 9:21,
51:21utely - 44:19,
academic - 15:19,
acceptable - 30:15,
Acceptable - 31:11
accordance - 6:196
76:5unt - 54:11, 56:4,
accurately - 72:17
act - 6:5, 32:13, 47:5
action - 44:4, 44:6,
67:12, 67:14, 67:19, 3,
actions - 31:15, 42:7,
actively - 55:17
added - 49:36:7
50:1ng - 41:10, 41:21,
additional - 26:23, :8
address - 5:16, 7:3,
27:19, 28:1, 42:15, :7,
addressed - 24:12,
addressing - 3:1, 8:234
Adh - 3:18, 4:24, 5:89
76:7stments - 76:6,
11:22, 12:14, 13:2, 16:2,
18:19, 18:22, 18:23, :8,
```

050304mutualfunds

21:5, 21:8, 23:2, 25:18,
28:24, 29:5, 30:12,
33:7, 37:23, 41:4, 41:11,
65:14, 65:21, 72:8, 75:24
12:13, 47:19, 77:14
admits - 62:38:2
advance - 65:18, 72:12
advisor - 4:12, 7:22,
advisors - 11:7
6:4, 6:6, 6:21, 44:12,
advisory - 68:17
advocate's - 26:745:5
58:14ating - 45:20,
affects - 74:22, 75:45
aforegoing - 80:6


afternoon - 2:1, 3:10,
afterwards - 3:9, 66:24
aggregate - 6:637:18
agree - 5:9, 9:17,
29:14, 29:19, 33:12,
agreed - 12:20, 16:7,
agreeing - 73:9
6:16, 9:25, 10:1, 67:6,
agrees - 44:13
27:9, 66:4, 68:9, 74:21,
allegations - 51:9
alleging - 78:5
allocation - 59:1, 62:5
allowed - 16:17
alternatives - 78:1
amazing - 48:94:17
22:21uous - 14:1,
amended - 49:4, 50:3,
56:21, 61:4, 61:12,
78:2, 78:422, 77:24,
analysis - 49:16, 15
ancillaries - 72:23
Andre - 1:1019:4
Andy - 37:816
25:9, 31:3, 60:20, 66:6,
answering - 10:5
apologies - 59:14
60:23, 75:104:23,
appear - 10:8, 76:13
apple - 42:9- 1:12
44:10cation - 44:9,
applies - 72:22
38:9, 42:23, 45:22, 46:6,
appointed - 26:16,  54:10
46:1, 46:13, 47:13,
appointing - 50:10, 2:1
appointment - 2:14,
46:15, 48:17, 51:21,
appreciate - 8:20, 14:7
approaching - 54:18

050304mutualfunds

34:23, 36:5, 36:10,
75:16, 75:25, 76:1, 60:6,
approve - 63:14
April - 19:1, 67:73:22
17:16, 17:20, 18:24,
17:19 - 16:4, 17:6,
44:19, 44:21, 58:7, 78:13
arguing - 36:14, 36:15,
argument - 48:16,
69:20, 56:15, 56:18,
76:5ments - 27:18,
Article - 70:2548:4
aside - 44:14- 74:11
49:25, 50:3, 54:15, 56:6
40:19, 74:9, 75:13, 75:18
32:7, 33:11, 61:9, 75:12
16:20, 52:313:22,
10:19, 11:1410:18,
16:3, 20:4 - 15:23,
15:25nments - 13:4,
assume - 10:13, 14:22,
assuming - 35:17,  48:4
assure - 2:17,  17:4
attempted - 52:17
author - 22:19:7
10:11, 11:12, 17:18,  ,
66:13, 29:9, 33:8, 63:13,
authorized - 29:8 61:23
average - 24:135
aware - 63:11:22
           B
background - 14:9,
backwards - 42:11
27:6, 28:2221:23,
Bank - 7:25 1:8, 1:25
Barroway - 21:12
77:7y - 76:23, 76:24,
51:6, 58:6, 59:9, 77:19
basis - 20:19, 25:20,
51:1, 51:8, 51:23, 57:20,


              1

beats - 10:2
becomes - 41:23, :13
beginning - 16:5,
behalf - 6:5, 6:21,
45:8, 47:6, 58:14, 65:10,
75:21, 68:24, 70:14,
behooves - 25:51:19
belief - 40:189
Bershad - 2:22, 2:25,
31:5, 41:80, 30:14, 31:1,
better - 22:18, 32:8,
between - 10:22,
33:23, 37:10, 48:14,
65:2, 74:11 64:22, 64:23,
biggest - 53:19
bit - 29:24, 35:10,
78:12, 58:16, 78:11,
4:9, 9:20, 12:12, 18:6,
36:5, 37:4, 40:11, 55:2,

050304mutualfunds

Blake's - 50:8, 72:187:24
46:4, 46:18, 47:4, 48:16,
56:24, 57:21, 58:3,
60:23, 61:19, 63:10,
Braun's - 49:2, 54:11,
breakdown - 3:18:13
Brieant - 64:6
61:1, 68:23, 69:10,
briefed - 38:20
briefly - 78:165, 77:13
40:19, 40:20, 40:21,
broadest - 33:25:3, 78:2
brought - 16:21,
37:15, 40:20, 40:21,
Bruce - 1:16, 3:1, 5:16
burden - 15:12, 41:24
button - 14:9, 14:12,
14:15
          C
35:8, 74:1, 74:23, 75:5,
Cabraser's - 36:25

calculation - 5:85
5:25ulations - 3:18,
5:24, 6:4, 6:6, 6:21, 3,
47:10, 68:16, 76:19,
camera - 60:2577:8
cannot - 37:195:12, 62:2
caption - 69:23
care - 5:14, 6:17, 34:1
carefully - 13:15,
cart - 42:9, 58:4
Case - 58:11, 80:5
17:15, 19:3, 19:15, 2,
22:17, 41:12, 43:2, 43:8,
48:18, 48:24, 49:21, :23,
55:14, 55:15, 55:19, 1,
57:15, 59:19, 59:23,
64:7, 65:5, 65:17, 69:9,
70:23, 71:23, 76:14
10:23, 14:23, 14:24,
20:15, 21:9, 21:12, 0:9,
27:3, 31:19, 32:10, 27:2,
35:25, 36:12, 36:22,
37:15, 38:2, 38:25,
42:25, 43:1, 43:17,
45:16, 45:19, 48:19,
59:7, 59:8, 59:16, 59:17,
64:20, 64:21, 65:11, 4:5,
73:22, 75:11, 75:12,
catch - 47:17, 59:15
36:21ories - 31:13,
34:10, 37:2, 38:17
causes - 57:3, 59:9
certain - 30:16, 49:3
certainly - 8:20, 12:1,
19:10, 47:8, 59:16,
certification - 46:3,
63:18, 63:21, 71:4, 72:12
certify - 80:3, 80:6:21

050304mutualfunds

69:5, 72:4, 7:23, 24:5,
chairing - 35:80:11


chairs - 22:22, 23:5,
chambers - 4:2, 77:16
30:5, 40:118, 30:3,
changed - 13:2275:23
changing - 22:2
charge - 12:15, 12:24
Chicago - 13:10,
chief - 23:2, 28:24,
chips - 38:16, 50:530:17
choose - 17:24
Circuit - 32:13, 43:9,
circulate - 65:18
cite - 59:6es - 49:12
City - 13:10, 13:11,
claim - 44:6, 48:20,
50:4, 51:4, 56:5, 56:6, ,
67:8, 68:8, 75:6, 77:8, ,
claimants - 63:9,
claims - 10:14, 16:21,
17:18, 17:23, 19:4, 19:5,
31:22, 32:3, 32:7, 32:16,
35:9, 35:11, 35:12, 35:5,
40:20, 41:15, 49:2,
61:13, 61:14, 62:11, 6:9,
67:10, 67:12, 72:22,
74:9, 74:24, 75:13,
clarification - 27:13,
68:11, 67:5, 67:8, 67:15,
23:9, 29:162:10, 13:20,
4:21, 7:19, 8:10, 48:12,
50:19, 51:2, 51:18, 52:6,
55:9, 55:11, 56:12, 5:5,
62:23, 64:13, 61:1, 62:9,
1:17, 2:24, 3:10, 4:21,
50:12, 50:16, 50:19, :19,
53:1, 54:9, 55:5, 55:9, ,
56:23, 61:1, 62:9, 62:23,
Class - 78:16
11:3, 11:8, 11:13, 13:4,
16:21, 17:21, 19:2, 19:8,


20:25, 21:16, 22:10,
26:6, 26:16, 26:21, 27:1,
33:11, 33:13, 35:5,
41:6, 41:20, 45:6, 45:8,
48:24, 49:1, 49:8, 49:12,
58:14, 62:10, 62:11,
63:18, 63:20, 63:21, :12,
64:18, 64:22, 64:25,
68:7, 68:9, 71:3, 72:12,
75:62, 73:23, 74:7, 74:8,
classes - 72:13:11
clear - 14:1, 34:3, 40:8,
Clearly - 12:3, 23:107:25

050304mutualfunds

clerk - 77:17
client - 4:25, 5:17,
58:11 6:25, 55:20, 55:25,
19:10, 22:6, 23:14, 13,
61:13, 75:11, 75:18,
close - 55:22
co - 2:21, 22:22, 23:5,
41:6, 75:15, 77:7 30:17,
co-chairs - 22:22,
co-chief - 30:17, 41:6
77:7ounsel - 2:21,
Coast - 69:16:15
collaborators - 32:25
colleagues - 19:24,
32:9, 33:4, 35:18, 71:20
collectively - 23:23
commented - 69:1 73:6
25:9ents - 18:25,
21:17, 21:24, 21:25,
26:17, 26:20, 27:5, 26:1,
29:4, 34:5, 34:24, 35:3,
37:22, 38:4, 38:6, 39:9,
41:11, 41:19, 41:22,
74:23, 74:25, 74:13,
65:13, 65:15 35:13,
11:20, 12:22, 15:11,
companies - 43:25, 73:3


compare - 28:11
Compensation - 13:10,
competing - 68:20
31:21, 32:6, 56:6, 56:7,
62:25, 77:9, 77:21, 1:9,
complaints - 9:8, 9:9,
61:12, 77:2254:12, 54:14,
composition - 22:2, 8
comprised - 21:7
concept - 31:14, 57:9
16:20, 17:16, 54:16,
concerned - 17:11,
69:3, 19:13, 48:24, 65:3,
5:17, 10:12- 2:14,
69:11rns - 9:7, 16:9,
concrete - 15:7:8
conducted - 62:20
conference - 31:78:14
confess - 10:30
conflict - 46:22, 58:23,
conflicts - 64:18,
confused - 31:13,
confusing - 48:16
congratulations -
Congress - 52:10,
54:23, 64:2, 64:4, 72:17,
Congressional - 57:7
7:21ection - 5:1, 5:8,
consider - 20:14:25
consideration - 43:2,
considered - 5:7,
Consistent - 3:4

050304mutualfunds

9:14, 53:13, 53:25
43:19, 43:20, 49:3, 50:2,
constant - 67:1512
constituent - 26:18,
constitute - 80:6
consult - 65:15, 65:21,
consultations - 76:15
contemplate - 39:96:23

2

66:16mplated - 14:20,
65:25, 66:3ng -
contestants - 32:2521
75:14xt - 19:14, 70:18,
contract - 69:8, 69:15
control - 53:4, 65:4,
controversy - 56:11,
70:24, 59:19, 60:9, 61:5,
69:24nient - 69:15,
cooperative - 73:21
13:22, 18:12, 37:12,
coordinated - 39:1,
coordinating - 12:15,
35:24, 37:6, 37:24, 39:19
34:11, 34:23, 35:25,
coordinator - 37:4
core - 58:104:11, 78:8
corporate - 70:225
13:5, 16:8, 50:11, 50:16,
correctly - 10:812
Cotchett - 3:1, 21:17
counsel - 2:14, 2:21,
11:14, 11:22, 12:23, 17,
16:21, 17:4, 17:6, 17:7,
18:22, 18:23, 19:8, 20:2,
20:19, 21:5, 21:8, 21:16,
22:11, 22:12, 22:13,
25:24, 26:2, 26:16,
27:1, 28:6, 28:24, 29:5,
30:18, 30:23, 30:24,
31:19, 33:9, 33:10, 1:18,
35:5, 35:14, 37:23,
41:21, 41:22, 42:13, :15,
45:24, 46:1, 46:20,
53:16, 53:18, 53:23,
59:21, 65:12, 65:14, 8:2,
67:10, 67:12, 67:23,
72:8, 73:9, 74:2, 75:18,
78:18, 78:19 78:16,
count - 26:197:25, 59:4

55:18y - 32:11, 55:12,
56:25e - 15:1, 21:8,
Court - 1:1, 2:4, 2:13,
6:16, 6:19, 6:22, 7:21,
9:8, 10:13, 10:23, 11:13,
14:19, 14:25, 15:9,
17:11, 18:20, 19:14,

Page 77

050304mutualfunds

21:14, 22:8, 22:10,
25:5, 25:8, 26:1, 26:15,
33:20, 35:12, 39:2,
41:14, 41:24, 42:1,
43:1, 43:10, 43:11,
50:17, 51:11, 58:5, 58:8,
72:7, 73:6, 74:17, 78:15,
court - 3:7, 24:1,
31:15, 31:18, 31:19,
32:15, 32:17, 32:21,
33:25, 35:25, 36:3,
37:17, 38:2, 38:14, 39:1,
court's - 63:1310, 76:25
12:25, 16:13, 18:18,
49:10, 67:2, 67:4, 67:7,
courthouse - 4:2:19, 78:1
courts - 56:17, 57:1,
cover - 66:12
creating - 58:5, 21:14
critical - 17:20, 37:14,
crucial - 58:17, 72:21
cuts - 31:12
     D
daily - 47:21
damages - 42:20 50:7
David - 2:22, 29:3:16
9:21, 10:1, 39:25, 56:10,
Davis's - 70:23
de - 37:3:8
dealing - 47:22
death - 2:237
3:11, 7:19, 48:12:24,
48:3, 59:20, 59:21, 5,


decided - 19:14,
decidedly - 11:8:7, 75:20
deciding - 15:18
24:1, 36:6, 43:10, 43:12,
56:19, 76:7, 76:818,
declaration - 3:17,
defendant - 16:1
defendant's - 24:7
5:13, 7:7, 14:23, 19:3,
74:22, 75:2, 76:15, 77:4,
defense - 25:2, 25:3, :20
Deferred - 13:10,
defined - 64:9
degree - 44:2219
deposition - 15:25,
depositions - 17:3,
depth - 19:12
9:13, 10:23, 11:4, 11:10,
17:23, 19:18, 20:6, 20:9,
21:19, 22:13, 23:17,
28:6, 35:11, 35:15, 6:22,
41:15, 41:21, 64:22, 1:9,
66:25, 72:24, 78:18,
described - 19:5,
describing - 78:16
Design - 7:24, 28:15

050304mutualfunds

despite - 3:55:2
determined - 52:7
dialogue - 14:18, 15:6,
dictate - 13:23
dictator - 13:83
difference - 26:25
20:15rences - 10:22,
11:8, 12:4, 12:17, 12:18,
19:15, 19:22, 23:24, 9:9,
34:12, 35:10, 41:13, 7:6,
64:25, 67:10, 75:21
70:16rently - 12:7,
75:5icult - 41:5, 47:19,
direction - 12:19



65:13, 74:10:5, 40:4,
54:9gree - 47:8, 50:8,
disclosed - 24:12:6
10:18, 10:19, 11:1, 11:9,
12:15, 12:16, 12:23,
15:5, 15:7, 15:9, 15:13,
16:20, 17:5, 17:12, 18:4,
62:16, 62:20, 63:4, 4:20,
65:4, 65:20, 65:23, 71:4
discuss - 18:12, 69:25,
discussed - 9:17,
discussing - 7:9, 33:3
67:11, 73:8- 13:15,
78:14ssions - 72:1,
20:7, 20:23, 21:22, 21,
Dismiss - 20:1, 59:22,
dismissed - 43:8,
distinct - 64:12, 67:17
49:6, 57:2, 59:9, 61:15
distribution - 25:17,
District - 1:16:13
divided - 74:4, 74:10
Division - 1:223
documents - 23:18
dollar - 24:13, 28:13,
dollars - 6:7, 23:22,
47:15, 50:22, 55:21,
done - 13:25, 17:1,
51:10, 54:19, 54:25,
63:5, 72:511, 62:17,
doubt - 78:4:21
32:11, 42:2, 52:19,
draft - 56:21 64:1, 77:11
drive - 44:74
due - 43:2, 73:17:3
18:16, 41:24, 74:35,
during - 22:1164:11
duties - 45:7
     E
earliest - 63:5 76:22



57:8, 63:3, 69:5, 69:11,

050304mutualfunds

earn - 24:19
easiest - 9:15
Eaton - 43:2, 48:24,
economies - 30:10,
economy - 77:23
effective - 58:9
effectiveness - 29:13
efficiency - 48:1, 7
efficiency's - 7:12
effort - 13:2, 13:3, 22
eight - 27:25
75:25r - 1:17, 75:9,
26:16, 26:19, 30:14, ,
electronic - 30:6,
elevated - 28:7
elsewhere - 10:15,
emphasize - 65:4
enacted - 53:1112
end - 36:23, 40:2,
48:1, 48:8, 61:23, 62:18,
endorsement - 76:12
enhance - 29:13
enormous - 53:7,
entered - 19:19
entirely - 10:18, 25:23,
entity - 70:21
envisioned - 37:17, 1
54:23, 64:21, 53:1,
equitable - 20:16,
26:13 25:16, 25:21, 26:8,
41:11ially - 21:21,
1:15, 1:16, 1:17, 1:18,
essence - 37:23
essentially - 27:14,
establish - 62:15, 54:6
70:19lished - 66:17,
evening - 2:28
evidence - 23:13, 11
eviscerates - 52:9


                    3

exactly - 13:18, 51:24,
example - 11:6, 21:11,
55:12, 57:3, 65:17, 51:3,
exclusively - 75:12
Exhibit - 4:21, 77:4
expand - 41:229
expands - 41:234
17:11, 41:8, 45:5:5,
expects - 9:8:9
experience - 55:16
expert - 18:7, 18:9,
expertise - 74:1
18:15ts - 17:20, 17:24,
explained - 10:2164:16
explore - 15:10:10
expressed - 19:2,
extensive - 27:16
extent - 6:8, 9:16,
12:16, 33:23, 40:4,
extremely - 47:22

050304mutualfunds

eye - 75:16
          F
fact - 8:3, 29:2, 45:17,
62:21, 78:13, 78:14
facts - 11:3, 11:5,
factual - 10:22
fair - 17:13, 19:23,
fairer - 20:18, 21:23,
fairly - 55:4
fall - 13:1, 38:16, 50:5
falls - 18:1412
families - 45:12, 45:25,
family - 2:23, 9:11,
32:4, 32:20, 39:22, 0:24,
52:2, 53:19, 54:1, 54:2,
far - 28:24, 44:6,
fast - 49:22
Fax - 3:256:21
federal - 16:13, 16:17,
73:22, 74:11, 75:13


35:12, 39:22:16, 33:20,
fellow - 76:218
few - 4:19, 27:12, 44:8,
fiduciary - 45:7
file - 3:21, 14:21,
filed - 31:19, 32:3, 78:2
32:21, 32:22, 36:7, 61:4,
files - 58:1177:7
30:10g - 9:7, 30:2, 30:6,
filling - 2:235
76:8, 76:1323, 49:16,
50:25ly - 22:8, 22:17,
Financial - 5:17, 5:24,
44:24, 44:25, 47:1012,
7:25, 23:13, 24:4, 25:6,
28:14, 28:19, 42:17,
48:23, 50:18, 53:19, :16,
60:18, 73:1, 76:19,
40:13, 47:7, 69:10, 74:1
4:25, 5:3, 7:20, 21:10,
31:24, 35:8, 36:16,
First - 29:16, 31:18,
first - 2:13, 9:7, 10:10,
59:15, 61:22, 63:18,
fit - 17:24, 74:4
24:13, 24:16, 26:14,
59:3, 61:23, 52:19, 59:2,
32:9, 32:15, 32:17, 32:19
fleshed - 66:19, 39:25
flow - 40:12
62:21 - 2:19, 51:22,
folded - 32:522
41:17, 47:9:20, 38:10,
41:17w-up - 38:10,
following - 61:1
11:12, 11:16, 14:1,
forces - 46:6
form - 76:136, 61:20
37:20, 39:18, 53:15,

050304mutualfunds

formula - 28:22


forth - 14:2, 71:5, 71:7,
forthwith - 77:228
44:5, 45:16, 48:8, 50:5,
75:14, 76:14 71:17,
26:14, 26:21, 43:4, 43:6,
Fox - 36:16
28:18work - 12:16,
frankly - 8:11, 30:2,
Frankly - 18:7, 19:23
free - 17:231:10, 1:11
52:7, 52:16, 78:152,
5:2, 32:9, 33:25, 34:13,
35:23, 36:1, 36:9, 36:11,
38:12, 38:20, 39:2, 38:7,
Friedman's - 5:6, 5:11,
front - 11:11, 58:4,
full - 10:11, 11:12,
fully - 17:9, 62:13
function - 28:2, 33:23,
functions - 34:211, 76:2
fund - 8:18, 11:7,
20:12, 21:19, 26:3, 26:6,
35:15, 39:23, 42:5,
45:22, 46:16, 49:15,
50:22, 50:23, 50:25,
57:20, 57:23, 58:22, :23,
70:20, 75:11, 78:6 70:18,
49:18, 51:1, 51:23, ,
fundamental - 42:14
funds - 5:7, 5:8, 5:12,
23:21, 23:22, 30:24, 3,
43:7, 43:13, 44:11, 43:6,
44:24, 45:1, 45:2, 45:15,
50:6, 50:7, 50:24, 51:10,
53:8, 53:19, 54:2, 54:3,
61:21, 61:23, 62:2, 62:4,
68:14, 70:16, 70:18,
future - 15:16, 71:10,
78:21
      G


gather - 34:19
66:17al - 15:22, 53:25,
gentleman - 59:11
given - 12:17, 17:11,
global - 47:22, 51:8
governed - 67:20
great - 11:23, 79:5
greatest - 20:11, 54:2
ground - 10:24, 15:11,
group - 2:11, 3:13,
45:2, 47:5, 47:12, 51:25,
55:23, 58:20, 64:3, 64:5,
groups - 20:10, 26:4,
55:4, 27:2, 45:12, 52:19,

050304mutualfunds

```
guess - 32:19, 32:23,
68:15, 79:6, 60:12, 67:1,
     H
hall - 7:9
4:12, 20:12, 43:24, 44:5
happy - 8:6, 25:8,
hard - 42:10, 49:22
Harrington - 43:3,
hat - 26:71, 46:12
headed - 76:7
headless - 60:1018:14
hear - 2:13, 27:14,
heard - 68:15, 68:21
7:3, 13:16, 35:2, 36:8,
Heimann - 31:23, 5
38:12, 39:2, 39:7, 40:5
held - 64:6 40:6, 75:5
helm - 52:14, 53:4,
help - 14:15, 24:8, 41:1
12:13ul - 3:7, 4:17,
helping - 12:10, 77:14
hereby - 80:3
hesitancy - 42:23
higher - 47:25, 62:8
history - 15:20, 66:5
holder - 78:576:1


holding - 8:13, 78:5
51:12, 53:86:1, 24:13,
honest - 16:19
3:20, 4:11, 4:19, 7:16,
12:9, 17:9, 23:8, 23:15,
46:18, 49:19, 50:12,
58:15, 59:6, 59:14, 60:7,
65:11, 66:10, 66:20,
70:12, 73:23, 74:14,
76:11, 76:16, 77:3, 77:6,
Honor's - 3:14, 5:1,
Honorable - 1:9, 1:10,
Honors - 3:10, 4:23,
27:7, 27:9, 28:3, 37:8,
45:10, 45:20, 52:7, 4:8,
66:24, 68:12, 75:94,
14:3, 18:11, 29:14,
43:1, 47:23, 73:12,
hopes - 78:20
horizontal - 21:7,
22:3, 22:9, 25:17, 25:25,
27:20, 27:24, 27:25,
35:13, 36:2, 37:20, 5:3,
39:9, 39:12, 39:15, 9:5,
41:19, 74:13, 74:25
47:15, 48:10, 58:4, 76:8
hours - 17:10:10
housekeeping - 78:12
hundred - 6:12, 44:14,
hundreds - 23:21,
hurt - 46:25
47:9, 61:18, 61:1919,
hypothetically - 63:10
```

050304mutualfunds

I
identical - 64:615
identified - 11:24, 19
44:16, 70:25, 71:25,
Illinois - 32:11
28:2lance - 21:15,
16:9diate - 15:16,


4

impacts - 7:12, 21:6
implications - 34:15
imply - 26:56:8
72:20tance - 17:21,
17:15, 22:5, 27:20, :2,
70:9, 71:83, 59:18, 61:2,
imposition - 41:23:12
impropriety - 44:20
Inc - 7:24 55:4
inclination - 9:3:25
57:22ded - 46:11,
inconvenience - 4:4
independent - 6:20,
indicate - 11:13
18:20, 26:15, 40:22
individual - 6:10, 42:5,
43:23, 45:19, 46:12,
individualized - 3:18
individuals - 42:24,
inefficiency - 41:25
Infer - 10:1, 9:25
inform - 30:14, 47:12
51:12, 56:1 - 6:15,
58:19, 58:217:7, 47:20,
initial - 9:3, 37:119
instance - 19:7, 20:16,
instances - 21:10
instead - 39:17
24:22, 53:5al - 24:4,
intend - 2:19, 10:24,
77:21 11:4, 15:3, 76:5,
53:10ded - 25:22,
intent - 11:17, 54:21,
intention - 9:14, 18:2, 1
interactions - 76:15
interest - 11:9, 11:18,
22:11, 23:13, 23:17,
28:10, 28:11, 28:12, :9,
34:10, 42:17, 42:18,
50:18, 53:19, 54:2, 8:23,


60:18, 62:2, 62:6, 70:10,
73:1, 77:22 71:16, 72:9,
55:16, 69:18 6:7, 7:1,
interests - 12:5, 23:19,
interface - 37:162, 75:22
20:18, 22:12, 25:2020,
interrogatories - 16:15
interruption - 14:52

Page 84

050304mutualfunds

```
introduce - 2:21, 3:6
introduction - 3:6
Invesco/aim - 13:12
23:22, 24:16, 24:18,
investment - 4:12, 50:22
Investment - 1:57
71:6, 71:7s - 6:7,
55:3, 59:3, 60:3, 64:4,
67:19, 67:23, 67:18,
44:25tors - 44:24,
6:10, 6:11, 6:21, 12:3,
24:22, 44:15, 44:16,
invite - 59:68:7
54:5, 55:7, 55:14, 55:17,
involvement - 11:6
involving - 62:2, 77:8
51:3, 57:14, 57:15, 59:7
Isbister - 1:13, 2:9,
77:6, 78:9, 78:24, 30:9,
issue - 2:21, 3:1, 3:15,
7:10, 7:14, 7:22, 16:8,
30:19, 31:12, 42:11,
48:7, 49:8, 49:12, 51:16,
59:8, 60:9, 60:13, 61:5,
66:13, 68:16, 68:17,
70:19, 71:4, 71:9, 76:6,
issued - 51:5, 51:7,
issues - 2:14, 2:15,
9:1, 9:5, 10:18, 10:19,
20:25, 21:1, 31:6, 34:9,
64:25, 68:25, 71:17
itself - 6:16


        J
Janus - 6:1, 6:2, 7:7,
28:3, 44:11, 44:13, :5,
50:22, 61:18, 62:3, 67:3,
70:14, 70:18, 72:5, 74:16
job - 53:14, 58:22
John - 1:13, 74:5
Journal - 44:13
2:1, 2:2, 2:3, 2:6, 2:16,
4:5, 4:6, 4:7, 4:8, 4:9,
7:4, 7:8, 7:18, 8:7, 8:11,
9:21, 9:22, 9:23, 9:25,
12:12, 13:6, 14:4, 14:11,
18:3, 18:6, 19:23, 22:19,
25:12, 25:14, 25:19,
28:1, 29:21, 29:25, 30:1,
32:25, 33:12, 34:6,
36:13, 36:19, 37:4, 38:5,
39:15, 39:17, 39:22, 9:4,
40:14, 41:18, 42:3, 43:3,
43:21, 44:4, 45:21, 46:8,
48:18, 49:14, 50:8,
51:15, 51:19, 52:22,
55:10, 56:10, 56:13, 5:6,
57:24, 59:11, 59:13,
61:2, 61:17, 62:14,
66:6, 66:16, 66:22, 68:2,
```

050304mutualfunds

70:2, 70:7, 70:23, 72:18,
73:19, 74:12, 75:3,
77:16, 78:22, 79:1, 79:2,
judge - 12:8, 30:12,
judges - 70:1
judicial - 77:23, 78:3
jurisdiction - 33:6
justice - 77:23 10:13
        K
Kaplan - 36:16
keep - 47:20, 49:6,
61:16, 63:24, 68:13
Kessler - 14:66


Kilsheimer - 36:16
kindly - 4:1656:11
knowledge - 11:7,
known - 2:25
knows - 3:9, 50:9
        L
language - 6:16, 7
large - 6:10, 24:4,
larger - 23:215:3, 71:16
28:19, 42:17, 45:4,
60:2, 60:182, 50:17,
16:18, 25:15, 27:19, 4,
52:16, 52:18, 56:17,
late - 24:11, 62:18
29:10, 31:22, 32:7, 33:5,
69:9, 69:15, 70:3, 73:8,
74:24, 75:12, 76:22, :11,
lawyer - 6:25, 13:19,
57:9, 72:205, 53:3, 54:1,
lawyer-driven - 6:25,
lawyers - 2:11, 2:12,
44:7, 46:9, 53:17, 73:4
5:3, 7:25, 17:5, 18:20,
21:13, 27:22, 31:9, 0:15,
35:14, 39:3, 42:22,
45:21, 46:1, 46:6, 46:25,
48:20, 48:23, 49:7, 49:9,
51:4, 51:6, 51:13, 51:20,
52:13, 52:14, 52:18, :9,
52:25, 53:2, 53:3, 53:5,
53:17, 53:18, 53:22,
54:20, 54:22, 54:24, :10,
58:2, 58:20, 58:21, 7:25,
60:2, 61:3, 62:1, 62:6,
64:9, 64:10, 66:14, 4:7,
67:23, 68:3, 68:20, 69:6,
71:22, 72:7, 72:20,
leader - 28:474:7
leadership - 28:18, 22
30:11, 30:22, 29:22,


least - 8:24, 12:14,
18:22, 19:2, 20:18, 21:1,

050304mutualfunds

leave - 3:8, 73:7
left - 2:20, 3:14, 22:21,
legal - 10:22, 19:25,
73:2, 46:10, 48:5, 70:21,
legislative - 15:20,
length - 45:18, 48:4
letter - 2:15, 2:20,
8:21, 8:24, 8:25, 10:10,
13:17, 15:21, 17:17,
25:10, 27:12, 27:15,
29:15, 29:24, 30:19,
38:9, 39:8, 40:8, 40:9,
52:16, 54:24, 65:13, 2:7,
72:18, 72:19, 76:1, 76:4,
level - 34:24, 38:6, 7:18
levels - 23:25
liaison - 29:17, 29:19,
36:4, 36:5, 36:10, 36:12,
39:20, 39:21, 75:23
- 31:14/administrative
Lieff - 31:23, 35:1, 35:8,
75:5, 75:8, 75:9:23,
38:9, 43:10, 69:9, 78:12
Likewise - 65:205:8
limitations - 16:13,
limited - 27:3, 32:19
Linda - 3:126:25
list - 31:1
litigate - 17:18
64:20, 65:5, 70:17
Litigation - 1:5, 80:516
19:25, 20:11, 22:4, 9:9,
44:7, 46:14, 47:17, 48:6,
50:19, 52:8, 52:15, 53:3,
71:13, 71:16, 71:17, 9:4,
local - 16:1375:17
logical - 44:9
look - 2:9, 11:6, 15:6,


                    5

41:13, 42:16, 51:8, 59:7,
72:96, 59:23, 65:6, 70:3,
looking - 57:2 30:25
Lorna - 55:13 70:8
loss - 24:10, 24:15,
losses - 6:9, 45:6,
lost - 45:3, 56:5, 61:10
loud - 35:17
        M
mail - 47:22, 76:22
major - 34:10, 76:6
Management - 7:24
65:18, 76:14 53:20,
margin - 5:24
Mark - 1:14, 1:19,
marked - 4:1364:14, 68:22
44:20t - 24:11, 44:16,
80:14- 1:23, 3:8, 80:3,
1:25land - 1:1, 1:8,
Mathias - 78:9 - 27:4
8:19, 15:22, 17:6, 17:25,

050304mutualfunds

58:25, 60:14, 78:1, 80:4,
matters - 10:12, 33:20,
Mccarthy - 3:272:2, 75:1
Mdl - 1:7, 2:5, 28:25,
37:21, 75:14, 80:5,
mean - 7:6, 11:17,
26:10, 32:23, 34:18,
meaningful - 72:14
means - 14:22, 15:21,
meant - 10:13, 27:13,
measuring - 71:15
meet - 78:14, 78:20,
member - 36:2, 39:18
26:20, 26:22, 26:23,
memorandum - 37:7
mentioned - 7:6, 16:4,
merits - 63:4 70:14
methodology - 5:10
Mfs - 13:11:15


59:14el - 1:15, 42:4,
might - 34:23, 45:7,
61:23, 62:15 58:15,
3:11, 4:25, 7:20, 29:3,
million - 6:7, 24:16,
28:15, 28:16, 44:14,
mind - 22:10, 23:1,
60:16, 61:16 34:8, 59:8,
minimize - 20:7:23
minute - 14:5, 30:21
missing - 3:17, 3:21,
mistake - 28:19
modification - 41:3
36:20, 42:11, 68:23
monetary - 60:20:4
45:3, 50:22, 55:157,
months - 15:1 44:2
70:15ng - 5:20, 13:15,
66:10, 66:20, 66:230,
53:20- 26:13, 51:11,
motion - 7:23, 14:20,
48:24, 77:1, 77:20, 78:3
60:12n - 59:22, 60:11,
19:14, 19:21, 20:23, ,
36:15, 37:3, 37:11,
41:12, 38:15, 38:25,
motivated - 40:18
2:6, 2:16, 3:4, 3:8, 3:24,
5:18, 6:2, 7:4, 7:18, :20,
9:22, 9:25, 10:2, 11:15,
15:18, 16:24, 17:17, :11,
23:12, 24:25, 25:11,
29:21, 29:25, 32:25,
36:13, 36:19, 38:5, 38:8,
39:15, 39:17, 39:22,
45:21, 46:8, 46:21,
50:14, 50:21, 51:15,
53:12, 56:13, 56:20,
63:23, 64:15, 66:2, 66:6,
69:4, 69:14, 70:2, 70:7,

050304mutualfunds

73:19, 74:12, 75:3,
77:16, 78:22, 79:1, 79:3,
movant - 4:24
move - 50:5, 70:9, 7
moving - 57:15
must - 10:3, 12:17
14:9, 14:12, 14:15
43:7, 43:13, 43:14,
Mutual - 1:4, 2:5, 80:4
        N
name - 8:17, 46:1,
75:23, 75:25, 63:24,
named - 33:18, 43:4,
50:1, 54:13, 61:11, 62:25
Nations - 7:25, 55:18
near - 56:10, 78:21
42:9, 51:4, 64:7:3,
8:9, 39:10, 40:4, 40:5,
need - 12:23, 14:4,
28:20, 28:21, 30:4,
48:20, 49:9, 51:6, 52:20,
65:8, 69:20, 75:136,
needs - 27:23, 34:4
71:20, 76:1469:12,
never - 19:24 72:3
New - 75:10, 29:24
17:16, 25:15, 32:8, 60:2,
nice - 3:5
niche - 19:5, 48:20,
night - 19:24
52:14, 55:22, 68:193,
noise - 14:13
nomenclature - 67:2
46:19, 46:21, 47:8
none - 23:25, 24:14
Northern - 1:258:18
note - 43:17:23, 6:23
nothing - 27:7, 44:20
77:20, 78:7:8, 72:13,
notified - 63:244:10


nuances - 8:24 56:2
number - 4:2, 10:16, 3
35:21, 47:13, 27:3,
numerous - 37:9,
47:23, 56:17, 57:1
        O
objection - 66:59
obligation - 72:9
20:1, 22:14, 33:19,
51:25, 63:6, 66:8, 72:7
17:25, 36:21, 53:21,
occur - 61:25, 63:11
occurring - 65:25 30:6
59:22, 59:2315, 25:1,
offer - 73:11

050304mutualfunds

official - 80:7 73:18
Ohio - 3:12, 13:12,
omnibus - 7:23, 32:22,
76:25, 77:19, 77:25
74:8 - 19:22, 61:7,
7:11, 7:20, 9:1, 9:7,
12:14, 12:23, 14:5, 1:25,
19:24, 20:1, 20:5, 20:9,
21:18, 21:19, 21:20,
24:11, 26:18, 26:24,
29:23, 29:24, 30:19,
32:15, 32:16, 33:17,
41:10, 41:20, 41:21, 1:1,
44:5, 44:11, 45:25, 47:4,
50:22, 52:8, 52:11,
58:1, 58:10, 59:1, 59:18,
64:3, 67:5, 67:8, 67:22,
73:16, 76:18, 76:24,
One - 3:16, 14:20,
62:24, 66:11, 43:2,
ones - 36:23, 36:24
22:21- 3:14, 5:14,
opportunity - 6:15,
71:21, 77:2415:7, 65:21,
opposition - 77:25:1


14:22, 19:19, 19:20, 16,
61:14, 63:21, 65:18, :6,
76:10, 76:14, 78:1,
organization - 20:2,
51:24, 53:16, 51:23,
52:4nizational - 25:1,
organizing - 51:17
Ortiz - 43:10:21, 57:23
23:10wise - 18:2,
Otta - 55:20, 55:21
25:20, 25:23, 26:21,
out-of-pocket - 24:10, :6
outcome - 11:9, 21:22,
outstanding - 7:3
71:16ll - 18:8, 18:14,
oversight - 58:115
owe - 76:17nt - 63:17
58:25, 62:4, 62:5
owns - 74:910
Oxford - 64:6
     P
10:10, 17:17 3:21,
67:9 - 10:16, 11:12,
Pages - 67:11 80:6
Panel - 4:21
papers - 8:21, 14:9,
17:10, 19:12, 24:9,
27:21, 28:6, 35:8, 51:11,
paperwork - 57:21,
parallel - 34:25, 36:24,
parameters - 64:19
parent - 9:13, 20:9,
65:20, 67:3, 67:12,
67:19, 67:23, 78:18,

050304mutualfunds

Parker - 3:1319
part - 17:17, 18:3,
59:3, 60:11, 60:16, 75:6,
participate - 31:20
14:7, 14:11, 14:14, 77:13
particular - 7:13, 25


                6

62:12, 62:17, 63:13,
71:10, 71:11, 69:4, 71:2,
72:18cularly - 64:19,
partner's - 75:10
party - 3:629:11, 31:25
peculiar - 7:149
37:2ing - 2:4, 19:20,
People - 55:613
12:19, 35:21, 40:21,
58:14, 58:20, 62:19, 6:7,
77:12, 65:15, 68:5, 71:3,
49:11 34:5, 37:21,
perfectly - 7:4, 16:19
Perhaps - 58:62
15:2, 75:22, 78:24:17,
22:12, 24:131, 22:5,
Perry - 1:19, 68:15,
70:12, 72:11, 73:13, 0:5,
person - 12:14, 23:4, 7:2
46:13, 48:22, 49:5,
61:8, 69:121, 53:25,
persons - 43:23, 52:12
phone - 4:16, 14:7
pick - 53:17, 53:23,
picked - 44:11
53:25ng - 53:18, 53:24,
Pilgrim/baxter - 13:13
place - 40:3, 55:1,
placed - 77:162:17
plaintiff - 3:13, 5:3,
19:8, 21:10, 21:13, 1,
43:14, 44:3, 45:25, 46:6,
47:12, 48:7, 48:17, 47:5,
50:10, 50:15, 51:4,
52:19, 52:20, 53:2, 2:14,
54:22, 56:5, 57:3, 58:11,
59:24, 60:2, 60:12,
62:21, 64:3, 64:7, 64:9,
69:6, 69:7, 70:24, 71:10,
72:20, 72:24, 74:2, 74:7


plaintiff/lead - 3:15
11:4, 11:8, 11:10, 11:13,
17:22, 19:2, 19:18, 20:6,
20:25, 21:2, 21:4, 21:11,
27:22, 32:15, 32:17, :10,
41:16, 42:6, 42:12, 43:4,
44:1, 44:2, 45:9, 45:12,
48:15, 49:4, 49:7, 49:10,
52:9, 52:13, 52:21, 53:4,

050304mutualfunds

```
53:22, 54:7, 54:10, 3:18,
55:3, 55:23, 56:3, 56:8,
58:13, 58:16, 60:14, :25,
64:22, 67:16, 71:18,
Plaintiffs - 1:13, 33:13
15:13, 20:20, 23:17,
78:19, 68:20, 71:15,
13:13, 55:13, 13:12,
play - 47:11, 52:3,
playing - 72:7
22:14 - 7:5, 21:18,
61:14 - 56:6, 61:11,
77:25ing - 25:16, 61:8,
pled - 19:17, 19:18
pocket - 24:10, 24:22
point - 5:5, 5:10, 5:15,
25:6, 27:19, 27:21, 28:3,
38:23, 43:3, 45:13, 6:18,
47:2, 48:6, 48:15, 49:22,
54:7, 54:12, 56:4, 59:5,
67:5, 67:7, 67:15, 72:19,
76:4, 78:175, 74:22,
pointless - 17:3
70:13, 72:1915, 56:25,
populate - 27:5
population - 18:1858:6
posed - 64:1571:3
28:7, 28:25, 29:7, 29:22,
54:11, 54:22, 57:24,
positions - 4:13:16, 76:9
22:22bility - 22:9,
```

```
30:1, 31:18, 41:2, 41:18,
potential - 23:5
44:9, 45:10, 46:10, 0:4,
practicing - 29:10
present - 6:15, 51:11
presenting - 78:216:16
45:17, 45:18, 56:21,
preserved - 50:4,
Press - 1:18, 66:24,
press - 14:12, 14:15
presumptuous - 33:14
primarily - 19:314
47:11ry - 17:7, 20:5,
principle - 48:5, 72:22
principles - 15:22,
problem - 22:14, 25:2,
problems - 70:3
procedure - 31:24
19:10, 22:18, 34:20
37:10, 67:14, 73:10,
Proceedings - 79:8
36:24, 37:17, 38:14,
proceeds - 22:47
professionalism - :7
profile - 56:16
prohibit - 45:86
proper - 69:624
49:11sal - 35:7, 39:8,
```

050304mutualfunds

proposed - 3:13, 7:24,
54:13, 55:3, 66:18, 67:7,
prosecute - 75:20
protected - 62:133:12
protection - 64:13
protective - 14:22,
prove - 11:3
78:8ide - 41:18, 77:23,
provides - 10:10, 5:10
provision - 9:7, 10:20
prudential - 71:11
18:21, 20:17, 23:1, 23:3,


33:10, 35:14, 42:16, 3:8,
48:17, 48:22, 49:7,
52:10, 53:11, 54:1, 57:9,
67:20, 67:22, 68:2, 68:6,
Public - 13:1273:24
purchase - 42:19
43:13, 43:23, 49:14,
purchasers - 78:6
purchasing - 43:14:11
purpose - 47:25,
purposes - 56:22
pursue - 11:4, 11:19,
15:4, 15:5, 17:14, 13:5,
64:21ed - 16:5, 17:12,
12:4, 12:7, 62:5 11:18,
push - 53:12:23
put - 4:16, 6:2, 6:23,
42:10, 43:11, 43:19,
58:8, 71:18, 72:17, 77:17
55:21m - 3:12, 7:15,
putting - 37:3
        Q
questions - 6:3, 6:14,
27:13, 42:2, 46:5, 57:18,
quickly - 69:18
10:18, 14:18, 17:10,
60:24, 19:22, 38:9, 55:6,
53:22, 58:19, 62:14,
quote-unquote - 58:19
        R
47:15, 48:10 47:2,
64:25, 75:4, 59:20, 60:7,
7:21, 8:1, 24:5, 25:16,
raises - 21:8, 37:4,
ramifications - 71:23
range - 23:191
15:5, 19:9, 20:16, 33:10,
Re - 1:4, 2:5, 80:4
reaction - 11:15
42:8, 60:114, 13:25,


reads - 60:5:12
reality - 63:11
realizing - 37:12

050304mutualfunds

14:7, 21:3, 27:16, 37:21,
47:2, 52:22, 52:25,
64:23, 67:5, 68:19,
reason - 5:22, 7:6,
28:17, 37:16, 52:6, 4:23,
reasoned - 43:11:2, 65:3
33:16, 62:24, 68:5:4,
received - 31:23
recognized - 27:21,
recognizes - 20:15,
recognizing - 12:16,
recommend - 38:11
45:11, 59:5- 43:10,
record - 13:10, 23:13,
recorded - 80:3
recovering - 6:84
62:7very - 49:17, 62:6,
redo - 27:1530:20
reduce - 52:187
11:21, 17:3- 11:19,
18:2, 29:1- 17:19,
referred - 3:16, 29:6,
refers - 17:18
72:17cted - 4:21, 66:12,
regard - 2:21, 55:16
34:9rding - 27:19,
regulators - 40:20
56:16, 56:18, 57:1
relates - 7:10, 18:24
relatively - 20:10
relief - 42:17, 42:19,
50:23, 50:25, 60:18,
36:12, 58:2122, 35:25,
32:22, 34:9, 34:15, 36:6,
37:11, 38:15, 38:25, 7:2,
77:25, 78:3, 78:230,
34:20, 35:19, 35:20,


          7

36:23, 37:5, 37:15, 73:10
remember - 61:2
37:15, 75:19:21,
render - 54:5, 54:2220
renders - 54:106
repeatedly - 48:21,
replies - 38:21
Reported - 1:23
Reporter - 80:15
represent - 3:6, 3:11,
42:6, 44:24, 50:25, 35:6,
59:2, 66:25, 67:1, 67:8,
representation -
26:3, 27:6, 29:8, 29:13,
64:17, 65:9, 70:525,
41:7, 49:1, 49:4, 64:7,
representatives - , 74:8
62:10, 62:11, 62:13, :13,
represented - 20:5,
31:1, 45:244, 27:23,
72:10senting - 35:4,
request - 6:15, 7:1, :7

050304mutualfunds

66:11, 29:7, 30:13, 31:4,
66:11sts - 16:16,
required - 23:254:18
60:17, 71:1, 73:216,
resisted - 25:47, 71:4
63:19ution - 19:20,
resolved - 34:10,
resolves - 78:4
respect - 3:15, 3:19,
6:13, 7:22, 7:23, 8:1, :3,
38:14, 41:4, 44:22, 3:4,
60:5, 62:12, 66:13, 74:24
6:14, 7:1, 54:95:2,
respond - 52:17, 77:24
responding - 27:10
17:10, 78:196:12,
responsibility - 13:1,
50:10, 50:14, 65:16, :3,


responsible - 10:17,
rest - 59:6, 77:2
result - 24:10, 41:24,
retail - 70:18
retention - 17:20, 18:7,
Retirement - 7:24,
return - 25:15
review - 8:21, 22:16
revision - 20:23
rhetorical - 33:16:11
Rifkin - 1:14, 8:16,
10:3, 12:9, 12:25, 13:19,
20:3, 22:24, 23:8, 23:15,
25:19, 26:10, 26:14,
40:15, 42:3, 64:14, 76:16
ripe - 71:126:5
72:15- 13:23, 18:9,
role - 16:10, 17:5,
34:13, 35:1, 36:25, 37:6,
39:13, 39:20, 42:24,
52:3, 52:9, 52:12, 53:24,
64:10, 64:11, 64:12,
roles - 46:17, 64:6,
room - 73:4, 67:10
Rosenberg - 29:20
Rpr - 1:237:17
63:6, 63:147, 60:19,
ruled - 34:17
16:17, 49:22, 16:13,
run - 55:75:1
rustling - 14:8, 14:13
        S
sake - 7:13
satisfied - 13:16
save - 48:9 70:25
14:24, 14:254:20,
Scheindlin - 43:16,
Scheindlin's - 57:1551:3
Schulman - 1:14, 2:25,
13:9, 15:19, 15:24, 27:8,

050304mutualfunds

31:12, 33:2, 33:15, 35:7,
38:13, 38:23, 39:6,
39:24, 40:2, 41:8, 41:20,
71:22, 74:21, 75:7, :10,
77:12, 76:11, 76:24,
73:25man's - 66:9,
screens - 60:24
seat - 34:4, 35:3,
39:9, 68:415, 37:20,
second - 12:11, 26:4,
Section - 24:24, 57:4
securities - 19:3, 51:7,
security - 51:5, 57:2,
see - 4:23, 7:4, 9:16,
44:11, 59:23, 63:23, 1:6,
seek - 31:20, 32:5,
seeking - 28:7, 64:13,
seem - 11:24, 12:5,
sees - 41:14 54:5
self - 37:1858:2
37:18aggrandizing -
sense - 15:2, 15:6,
33:19, 33:22, 33:25, 3:3,
73:3, 48:5, 53:20, 54:20,
separate - 9:9, 41:14, 2
74:6, 51:6, 51:7, 67:17,
71:5, 71:11:20, 71:3,
46:16, 53:23, 73:11,
43:4ed - 16:16, 16:17,
46:20, 49:2211:5, 44:14,
settle - 45:1577:18
45:17, 45:18, 46:24,
63:22, 71:20, 71:23, :14,
settlements - 71:21
seven - 21:16, 26:15,
55:21, 62:76, 45:2,
several - 6:11, 29:18,
shake - 40:3 56:17, 70:14
62:7e - 7:11, 18:12,
shares - 58:25, 62:4,


shelf - 71:18
short - 6:18, 7:2, 7:16,
shortly - 22:1519, 72:16
side - 11:19, 11:25,
21:20, 22:13, 23:6,
32:6, 41:9, 44:21, 63:23,
73:1, 77:10, 68:20, 69:1,
signature - 80:109
24:23, 26:4, 26:5, 53:7
Simon - 1:16, 3:1, 3:2,
7:16, 7:18, 69:12, 69:14,
70:6, 71:22, 78:114,
76:18's - 68:18, 69:8,
simply - 20:8, 41:21,
single - 24:9, 24:11,
65:19, 70:19, 72:20

050304mutualfunds

sitting - 40:252
58:13, 59:19, 59:20, 23,
six - 20:8, 21:16,
32:4, 43:25, 62:2, 62:7,
sixth - 44:3
slightly - 10:9, 24:6,
small - 23:19, 29:15,
sole - 53:53, 64:5, 74:15
solution - 14:18, 52:21
someone - 47:16,
Someone - 40:11:10, 69:13
19:6, 22:21, 24:3
sooner - 60:6 76:17
sorry - 43:5, 50:12,
68:16, 73:13, 68:10,
48:19, 52:9, 37:3,
sought - 42:18, 42:19,
sound - 69:21 60:19
Speaker - 4:15, 40:12
20:10, 59:12, 70:13,
speaks - 57:7
64:10fic - 7:11, 17:19,
2:19ifically - 2:14,
spending - 45:8


61:17 - 17:2, 58:5,
square - 60:9, 60:13
stage - 46:3, 46:14,
62:14, 63:3, 63:5, 71:13
stake - 55:181
3:24, 4:1, 4:6, 4:8, 7:9,
25:19, 26:7, 26:12, 28:1,
60:22, 79:1, 79:2, 79:55,
stand - 13:20, 68:132
7:22, 8:2, 42:15, 43:14,
49:1, 49:2, 49:25, 50:3,
59:19, 59:25, 60:3,
61:5, 61:7, 68:17, 69:5,
Standing - 48:5
24:6, 53:20- 24:5,
started - 27:11
31:17, 31:19, 31:22,
32:15, 32:17, 32:21, :12,
33:24, 34:12, 34:25,
36:12, 36:23, 37:9, 5:25,
38:14, 39:1, 39:21, 40:6,
74:6, 74:11, 74:24, 74:2,
statement - 11:11
States - 1:1 24:14
statute - 23:4, 53:13,
stay - 14:20, 14:23,
stayed - 73:195:20
stays - 34:9:12, 32:18
80:4ographically -
42:11, 58:21, 37:12,
steps - 72:151
still - 34:22, 35:2,
63:23, 63:25 52:3, 58:19,
stock - 67:2 78:21
strategic - 33:15:25

050304mutualfunds

Street - 1:24, 44:12
5:4, 5:6, 5:11, 5:15
64:4ng - 53:3, 54:23,
structure - 13:25, 9:21
28:4, 28:17, 37:21, 41:3,

8

54:25, 58:5, 58:6, 58:8,
Stull - 42:5
10:14, 67:1 10:11,
10:14, 67:1k - 10:11,
subdivided - 70:21,
subject - 17:6, 20:23,
submission - 3:16,
70:3, 5:7, 8:5, 69:19,
55:2, 56:15 - 2:9,
70:8, 76:9:2, 35:7,
78:15tted - 24:12,
substantially - 20:1
10:22, 33:19, 34:14,
46:22, 66:13, 66:15,
subtrack - 3:19, 9:11,
subtracks - 9:9, 9:10, :1
success - 44:22
sue - 58:12, 59:25,
sued - 77:21, 77:1
sufficient - 70:11
41:2, 41:17, 63:17:12,
25:19, 26:1, 30:23, 41:20
22:24, 23:10, 49:25
38:12stion - 24:20,
6:15, 31:21, 32:7, 32:16,
69:10, 69:19, 77:2557:22,
Suppose - 45:21
surgical - 31:248:3
symbols - 57:61, 66:16
system - 38:364:8
T
table - 57:16, 68:5
task - 51:19, 54:7
technical - 14:4
telephone - 14:115
ten - 44:15, 47:15:17
term - 32:88, 37:19
terms - 21:21, 26:10,
53:10, 53:16, 62:5, 62:16
themselves - 6:3

thereby - 56:865:1
77:20fore - 67:20,
they've - 21:12, 32:12,
thinking - 21:21, 35:2
37:2d - 16:6, 32:19,
thousands - 23:22
26:23, 31:17, 35:12,
Three - 10:16, 11:13, :13
threw - 29:24
Thursday - 7:2, 69:17,

050304mutualfunds

ticker - 57:6
timed - 44:16
71:6ng - 24:11, 44:20,
today - 3:21, 7:5, 13:1,
73:17, 14:19, 31:25,
together - 8:13, 29:10,
took - 8:20, 44:2
topic - 25:15
touch - 58:24
3:16, 5:4, 6:1, 7:11,
13:13, 29:22, 30:11, :12,
30:25, 31:2, 31:4, 31:7,
41:10, 49:11, 74:16, :4,
tracks - 5:1, 7:12,
53:6, 32:4, 39:3, 41:6,
traders - 67:15:13
transcribed - 80:7
transferred - 32:22,
trepidation - 69:1
55:20, 71:10 24:19,
trust - 70:19, 70:20,
trustees - 11:7
trying - 15:23, 23:9,
65:3, 65:87, 54:4, 64:16,
turn - 3:2, 9:5, 18:17,
turning - 20:3
two - 3:14, 9:1, 14:19,
22:10, 22:22, 23:1, 2:9,
28:5, 32:20, 34:1, 39:25,
41:21, 42:18, 43:1, 43:3,

9

62:24, 64:5, 64:12, 66:11
types - 66:14, 67:9,
typical - 60:20
typing - 4:16
    U
ultimately - 17:25,
63:5, 63:13, 67:21 60:5,
unable - 31:257:14
23:25, 24:23, 33:6,
50:10, 50:15, 50:24,
63:6, 63:14, 64:19, 76:21
understood - 17:22,
68:10, 69:25 25:17,
Unidentified - 4:15,
United - 1:1
unlawful - 51:95
unlike - 17:19, 74:19
unreasonable - 23:12
11:22, 13:20, 16:1, 2,
26:19, 30:7, 30:21,
36:23, 37:12, 38:10,
47:9, 47:18, 58:17, 47:2,
61:25, 62:15, 66:18,
77:11, 74:11, 77:10,
upset - 42:9
72:6 - 25:4, 28:21,
usual - 72:135
usurp - 68:1
    V

050304mutualfunds

Vance - 43:2, 48:24,
various - 9:10, 10:21,
67:11, 30:24, 53:17,
Vellrath - 5:25, 24:12,
vellrath's - 3:17, 3:22,
verb - 38:3
vertical - 27:22, 35:9,
65:15, 65:19, 74:12, :12,
vice - 11:2, 64:8
17:14, 21:3, 30:8, 40:18
views - 19:920:21


9


vision - 13:17, 40:3
voluminous - 4:3
        W
wag - 28:7
Wait - 12:11:5
walked - 24:17
wants - 10:23, 34:19,
waste - 78:3, 76:21
52:18- 2:15, 44:13,
Weintraub - 3:11, 4:20,
57:7, 61:17, 71:2 56:25,
3:10, 4:21, 7:19, 8:10,
50:16, 50:19, 51:2,
54:9, 55:5, 55:9, 55:11,
61:1, 62:9, 62:23, 64:1
Weiss - 2:22, 2:25,
42:6, 48:13 7:20, 29:3,
well-reasoned - 43:11
69:16- 1:24, 30:3,
whichever - 50:6
Whoever's - 39:2
wide - 28:25, 33:11
wind - 26:19:2
Witness - 80:978:10
word - 13:2235:20
work's - 38:19
works - 60:4, 69:756:3
written - 2:9, 23:4,
wrongdoing - 62:3
37:11, 76:21, 34:8,
        Y
Yawning - 69:21
years - 29:11, 56:17
York - 75:10
yourself - 3:6
yourselves - 11:25
        Z
80:14 - 1:23, 80:3,