IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | | |
|---|---|---|
| IN RE MUTUAL FUNDS INVESTMENT | : | MDL No. 1586 |
| LITIGATION | : | |
| This Document Relates to: | : | |
| | : | |
| Martine Stansbery Jr. v. AXA Financial, Inc.,: | | 1:04-md-15862-AMD |
| et al., Civil Action No. 1:04-CV-00586 | : | Judge Andre M. Davis |
| | : | |

**AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS
OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT**

Plaintiff Martine Stansbery Jr. ("Stansbery"), a participant in the Profit Sharing Plan for

Employees of Alliance Capital Management L.P. (the "Plan"), on behalf of himself and a class of

all others similarly situated, alleges as follows:

**INTRODUCTION**

1.      This is a class action brought pursuant to § 502 of the Employee Retirement

Income Security Act ("ERISA"), 29 U.S.C. § 1132, against Plan fiduciaries, including Alliance

Capital Management Corporation ("Alliance" or the "Company").

2.      401(k) plans confer tax benefits on participating employees to incentivize saving

for retirement and/or other long-term goals.  An employee participating in a 401(k) plan may

have the option of purchasing the common stock of, or other investment options created by, his

employer, often the sponsor of the plan, for part of his retirement investment portfolio.  Mutual

funds within the AllianceBernstein family of mutual funds (collectively, the Company's

"AllianceBernstein Funds"), as well as Alliance Holding Units (i.e. the Plan's equivalent of shares of Alliance common stock) are investment alternatives in the Plan.

3.     Plaintiff Stansbery was an employee of Alliance and is a participant in the Plan. Plaintiff's retirement investment portfolio includes AllianceBernstein Funds and Alliance Holding Units.

4.     Plaintiff alleges that defendants, as fiduciaries of the Plan, breached their duties to him and to the other participants and beneficiaries of the Plan in violation of ERISA, particularly with regard to the Plan's holdings of AllianceBernstein Funds and Alliance Holding Units.

5.     During the Class Period, defendants knew or should have known that the AllianceBernstein Funds and Alliance Holding Units were imprudent investment alternatives for the Plan.  Defendants played an active role in implementing unlawful mutual fund trading methods utilized at Alliance to artificially dilute the value of certain investment alternatives within the Plan, namely, the AllianceBernstein Funds (and, ultimately, Alliance Holding Units) or had intimate knowledge of these activities.

6.     Defendants are liable under ERISA to restore losses sustained by the Plan participants as a result of their breaches of their fiduciary obligations.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

8.     Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan was administered in this district, some or all of the fiduciary

breaches for which relief is sought occurred in this district, and/or some defendants reside or

maintain their primary place of business in this district.

## PARTIES

**Plaintiff**

9.      Plaintiff Stansbery was an Alliance employee, is a participant in the Plan pursuant

to § 3(7) of ERISA, 29 U.S.C. § 1102(7), and continues to hold AllianceBernstein Funds and

Alliance Holding Units in his retirement investment portfolio.

**Defendants**

10.     Defendant Alliance conducts a diversified investment management services

business.  Alliance's principal place of business is located at 1345 Avenue of the Americas, New

York, NY 10105.

11.     Alliance is a fiduciary of the Plan within the meaning of ERISA.  The Company

exercises discretionary authority with respect to management and administration of the Plan

and/or management and disposition of the Plan's assets.  Alliance at all times acted through its

officers and employees, including its Chief Executive Officer ("CEO") and members of any

Board oversight and/or Plan administrative committee, appointed by the Company to perform

Plan-related fiduciary functions in the course and scope of their employment.  Upon information

and belief, Alliance had, at all applicable times, effective control over the activities of its officers

and employees, including over their Plan-related activities.  Alliance, through its Executive

Officers, its Board or otherwise, had the discretionary authority to hire and terminate said officers

and employees.  Alliance, through its Executive Officers, its Board or otherwise, also had the

discretionary authority to appoint, monitor, and remove officers and employees from their

3

individual fiduciary roles with respect to the Plan.  By failing properly to discharge their

fiduciary duties under ERISA, the officer and employee fiduciaries and/or members of any Board

oversight and/or Plan administrative committee, including but not limited to certain of the

individual defendants named herein, breached duties they owed to Plan participants and their

beneficiaries.  Accordingly, the actions of the Plan's Administrator, Administrative Committee

and/or any other employee fiduciaries are imputed to Alliance under the doctrine of *respondeat*

*superior*, and Alliance is liable for these actions.

12.     Defendant Alliance Capital Management Holding L.P. ("Alliance Holding")

conducts its diversified investment management services business through Alliance Capital

Management L.P.  Alliance Holding's principal place of business is located within this judicial

district at 1345 Avenue of the Americas, New York, NY 10105.  Upon information and belief,

Alliance Holding was a fiduciary of the Plan within the meaning of ERISA to the extent it was

entrusted with the discretionary authority to manage and/or dispose of the Plan's assets.

13.     Defendant Alliance Capital Management L.P. (the "Partnership") provides

diversified investment management and related services globally to a broad range of clients

including institutional investors, private clients, individual investors and institutional investors.

Alliance Capital Management also provides a broad offering of investment products, global in

scope, with expertise in both growth- and value-oriented strategies, coupled with a fixed income

capability in both taxable and tax-exempt securities.  Alliance Capital Management operates in

four business segments: Institutional Investment Management Services, Private Client Services,

Retail Services and Institutional Research Services.  Alliance Capital Management also

maintains its principal place of business at 1345 Avenue of the Americas, New York, NY 10105.

4

Upon information and belief, Alliance Capital Management was a fiduciary of the Plan within the meaning of ERISA to the extent it was entrusted with the discretionary authority to manage and/or dispose of the Plan's assets.

14.     Defendant AXA Financial, Inc. ("AXA Financial") is engaged in financial protection and wealth management.  The Company operates primarily in Western Europe, North America and the Asia-Pacific region, and, to a lesser extent, in other regions including the Middle East, Africa and South America.  AXA Financial is a Delaware corporation which maintain its principal place of business at 1290 Avenue of the Americas, New York, New York 10104.  Upon information and belief, AXA Financial was a fiduciary of the Plan within the meaning of ERISA to the extent it was entrusted with the discretionary authority to manage and/or dispose of the Plan's assets.

15.     Defendants Alliance Capital Management Holdings L.P., Alliance Capital Management Corporation, Alliance Capital Management L.P., and AXA Financial, Inc. are hereinafter collectively referred to as "Alliance Capital."

16.     Defendant Bruce W. Calvert ("Calvert") served as Chairman of the Board and CEO of Alliance during the Class Period.  Calvert was a member of the Board Compensation Committee.  Upon information and belief, Calvert was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets, including but not limited to, the discretionary authority to add and/or remove investment options under the Plan, and was charged with the concomitant responsibility to evaluate each investment option under the Plan.

17.     Defendant Robert H. Joseph, Jr. ("Joseph") served as a Senior Vice President and Chief Financial Officer ("CFO") of Alliance during the Class Period.  Defendant Joseph also signed the Form 11-K that Alliance filed with the Securities and Exchange Commission ("SEC") on June 30, 2003 for the fiscal year ended December 31, 2002, (the "2002 11-K").  Upon information and belief, Davis was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets, including but not limited to, the discretionary authority to add and/or remove investment options under the Plan, and was charged with the concomitant responsibility to evaluate each investment option under the Plan.

18.     Defendant Christopher M. Condron ("Condron") served as a Director of Alliance during the Class Period.  Condron was a member of the Board Compensation Committee.  Upon information and belief, Condron was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets, including but not limited to, the discretionary authority to add and/or remove investment options under the Plan, and was charged with the concomitant responsibility to evaluate each investment option under the Plan.

19.     Defendant Benjamin D. Holloway ("Holloway ") served as a Director of Alliance during the Class Period.  Holloway was a member of the Board Compensation Committee.  Upon information and belief, Holloway was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets, including but not limited to, the

discretionary authority to add and/or remove investment options under the Plan, and was charged with the concomitant responsibility to evaluate each investment option under the Plan.

20.     Defendant Lorie A. Slutsky ("Slutsky") served as a Director of Alliance during the Class Period.  Slutsky was a member of the Board Compensation Committee.  Upon information and belief, Slutsky was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets, including but not limited to, the discretionary authority to add and/or remove investment options under the Plan, and was charged with the concomitant responsibility to evaluate each investment option under the Plan.

21.     Defendants include named and <u>de facto</u> fiduciaries with respect to the Plan.  Upon information and belief, all defendants exercised discretionary authority or control regarding management of the Plan, management of the Plan's assets, and/or administration of the Plan.

**THE PLAN**

22.     The Profit Sharing Plan for Employees of Alliance Capital Management Holding L.P. is an "employee pension benefit plan," as defined by § 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A).  The relief requested in this action is for the benefit of the Plan and its participants/beneficiaries.

23.     According to Alliance's 2002 11-K, effective October 29, 1999, Alliance Holding reorganized by transferring its business to Alliance Capital Management L.P., a newly formed private partnership (the "Partnership"), in exchange for all of the units of the Partnership.  The Partnership recorded the transferred assets and assumption of liabilities at the amounts reflected in Alliance Holding's books and records on the date of transfer.  Alliance, an indirect wholly-

owned subsidiary of AXA Financial, is the general partner of both Alliance Holding and the

Partnership.  The Partnership is a registered investment adviser under the Investment Advisers

Act of 1940.  Alliance Holding units are publicly traded on the New York Stock Exchange.  The

Partnership units do not trade publicly and are subject to significant restrictions on transfer.  In

connection with the Reorganization, all employees of Alliance Holding became employees of the

Partnership effective October 29, 1999 and the Partnership assumed sponsorship of the Plan.  On

October 2, 2000, the Partnership acquired the business and assets of SCB Inc., an investment

research and management company formerly known as Sanford C. Bernstein, Inc. ("Bernstein"),

and assumed the liabilities of Bernstein.

24.     According to Alliance Holding's Annual Return/Report of Employee Benefit

Plan, filed with the Internal Revenue Service ("IRS") on or about December 9, 2002 for calendar

year 2001 (the "2001 Form 5500"), the Partnership is the Plan sponsor and Joseph signed the

submission in the space reserved for the Plan's administrator.  As the administrator of the Plan,

Joseph (and/or an administrative committee of which he is a member) has overall responsibility

for the operation and administration of the Plan including the power to construe and interpret the

Plan, decide all questions that arise thereunder, and to delegate responsibilities.

25.     According to the Company's 2002 11-K, the Plan is a defined contribution plan

covering most of the employees of the Partnership and certain of its subsidiaries.  According to

the Company's annual report for the fiscal year ended December 31, 2002, filed with the SEC on

Form 10-K on March 27, 2003 (the "2002 10-K"), the amount of annual contribution to the plan

is determined by "a committee" of the Board of Directors of Alliance.  Elsewhere in the

Company's Form 10-K, it is stated that the Board Compensation Committee (the "Committee")

8

"is responsible for compensation and compensation related matters, including, but not limited to,

responsibility and authority for determining bonuses, contributions and awards under most

employee incentive plans or arrangements, amending or terminating such plans or arrangements

or any welfare benefit plan or arrangement or adopting any new incentive, fringe benefit or

welfare benefit plan or arrangement." Upon information and belief, the Committee is responsible

for oversight of the Plan.

26. According to the Company's 2002 11-K, participants may elect to contribute to

the Plan from one to five percent of their annual salary on a pre-tax basis in the form of voluntary

salary reductions. The Partnership makes an annual matching contribution to the Plan in an

amount determined by the Board of Directors of the Company prior to the close of each Plan

year. In 2002 and 2001, the matching contribution was equal to 100% of the aggregate match-

eligible voluntary salary reductions made by participants under Section 401(k) of the Internal

Revenue Code. The Partnership may make an annual discretionary contribution to the Plan in an

amount determined by the Board of Directors of the Company prior to the close of each Plan

year. For 2002 and 2001 the Partnership's contribution amounted to 5% and 8%, respectively, of

each eligible participant's eligible earnings.

27. Participants may direct the investment of their account balances in one or more

registered open-end investment companies for which the Partnership serves as investment

advisor (i.e. the AllianceBernstein Funds), a pool of common stocks ("Special Equity"), Alliance

Holding Units and the Alliance Hedge Fund option. The Alliance Hedge Fund option invests in

off-shore mutual funds for which the Partnership serves as advisor ("Alliance Off-Shore Funds").

Investments in the AllianceBernstein Mutual Funds, the Alliance Off-Shore Funds included in

the Alliance Hedge Fund, and Alliance Holding Units are held by custodian banks; common stocks are held in custody by State Street Bank and Trust Company.

28.      According to the 2002 11-K, AllianceBernstein investment alternatives within the Plan include:  AllianceBernstein Balanced Shares, AllianceBernstein Quasar Institutional Fund, AllianceBernstein Government Reserves, AllianceBernstein U.S. Government Portfolio, AllianceBernstein Technology Fund, AllianceBernstein Premier Growth Institutional Fund, AllianceBernstein Americas Government Income Trust, AllianceBernstein Mid-Cap Growth Fund, AllianceBernstein Real Estate Investment Institutional Fund, AllianceBernstein Bond Fund - Corporate Bond Portfolio, AllianceBernstein High Yield Fund, AllianceBernstein Growth Investors Fund, AllianceBernstein Conservative Investor Fund, AllianceBernstein Growth Fund, AllianceBernstein New Europe Fund, AllianceBernstein Emerging Market Debt Fund, AllianceBernstein U.S. Growth Opportunities Fund, AllianceBernstein Advanced Value Hedge Fund, AllianceBernstein High Grade Strategy Fund, AllianceBernstein Growth & Income Fund, AllianceBernstein All-Asia Investment Fund, AllianceBernstein Global Strategic Income Trust, AllianceBernstein Health Care Fund, AllianceBernstein Select Investor Series Premier Portfolio, AllianceBernstein International Premier Growth Fund, AllianceBernstein Value Fund, AllianceBernstein Small Cap Value Fund, AllianceBernstein International Value Fund, AllianceBernstein Global Value Fund, AllianceBernstein Dynamic Growth Fund, and AllianceBernstein U.S. Large Cap Fund.

29.      According to the its 2002 11-K, the Plan's investments in AllianceBernstein Mutual Funds, AllianceBernstein Off-Shore Funds and Alliance Holding Units, as of December 31, 2002, were valued at $170,906,518, or 90% of the Plan's total invested assets.

30.     As a result of defendants' treating certain mutual fund investors differently than other mutual fund investors; failing to follow their disclosed policy and procedures of preventing market timing, affirmatively allowing certain investors to engage in timing in exchange for investing in defendants' funds; and failing to disclose their true practices and procedures to plaintiff and the Class, defendants materially diluted the value of these assets of the Plans.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of himself and the following class of persons similarly situated (the "Class"):

> All persons who were participants in or beneficiaries of the Alliance Plan at any time between October 2, 1998 [subject to change] and the present (the "Class Period") and whose accounts included investments in AllianceBernstein Funds and Alliance Holding Units.

32.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to plaintiff at this time, and can only be ascertained through appropriate discovery, plaintiff believes there are, at a minimum, thousands of members of the Class who participated in, or were beneficiaries of, the Plan during the Class Period.

33.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

> (a)     whether defendants each owed a fiduciary duty to plaintiff and members of the Class;

(b)     whether defendants breached their fiduciary duties to plaintiff and members of the Class by failing to act prudently and solely in the interests of the Plan's participants and beneficiaries;

(c)     whether defendants violated ERISA; and

(d)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

34.     Plaintiff's claims are typical of the claims of the members of the Class because plaintiff and the other members of the Class each sustained damages arising out of the defendants' wrongful conduct in violation of federal law as complained of herein.

35.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action, complex, and ERISA litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

36.     Class action status in this ERISA action is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

37.     Class action status is also warranted under the other subsections of Rule 23(b) because: (i) prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for defendants; (ii) defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole; and (iii) questions of law or fact common to members of the Class predominate over any

12

questions affecting only individual members and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## DEFENDANTS' FIDUCIARY STATUS

38.      During the Class Period, upon information and belief, defendants had discretionary authority with respect to the management of the Plan and/or the management or disposition of the Plan's assets.

39.      During the Class Period, all of the defendants acted as fiduciaries of the Plan pursuant to § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and the law interpreting that section.

40.      ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan."  § 402(a)(1), 29 U.S.C. § 1102(a)(1).  Upon information and belief, at least Alliance is a named fiduciary of the Plan.

41.      Upon information and belief, instead of delegating all fiduciary responsibility for the Plan to external service providers, Alliance chose to internalize this fiduciary function.

42.      ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), but also any other persons who act in fact as fiduciaries, *i.e.*, performed fiduciary functions.  Section 3(21)(A)(I) of ERISA, 29 U.S.C. §1002(21)(A)(I), provides that a person is a fiduciary "to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of disposition of its assets . . . ."  During the Class Period, defendants performed fiduciary functions under this standard, and thereby also acted as fiduciaries under ERISA.

## DEFENDANTS' CONDUCT

A.     **The AllianceBernstein Funds and Alliance Holding Units Were Imprudent Investments for the Plan**

43.     Plaintiff hereby incorporates by reference in their entirety the allegations contained in the sections entitled "HOW MARKET TIMING HURTS MUTUAL FUND INVESTORS," "THE SCHEME AT ALLIANCE," and "THE MISCONDUCT AT ALLIANCE BEGINS TO BE REVEALED" of the Consolidated Amended Complaint against Alliance and the individual defendants herein for securities law violations filed with the Court in the In Re Alliance track of the In Re Mutual Funds Investment Litigation, MDL 1586, Civil Action No. 1:04-md-15862-AMD.

B.     **Defendants Knew or Should have Known that the AllianceBernstein Funds and Alliance Holding Units Were Not Prudent Plan Investments**

44.     Throughout the Class Period, Alliance and Alliance employees knowingly engaged in illegal conduct involving timing of the AllianceBernstein Funds, as described above, which constituted the vast majority of the available investment alternatives in the Plan.

45.     Alliance's illegal timing activities materially diluted the value of the AllianceBernstein Funds.

46.     Throughout the Class Period, the defendants knew that the AllianceBernstein Funds (and, therefore, the Alliance Holding Units) investment alternatives were diluted in value as a result of Alliance's regular practice of allowing entities to time its mutual funds.

47.     At all relevant times, defendants knew or should have known that Alliance was improperly diluting the revenues of the AllianceBernstein Funds by devising and implementing a scheme to obtain substantial fees and other income for themselves and their affiliates by allowing

14

Canary and other favored investors to engage in timing of the AllianceBernstein Funds

throughout the Class Period and in violation of their fiduciary duties to the Plan participants.

48.     Defendants failed to conduct an appropriate investigation into whether the

AllianceBernstein Funds and Alliance Holding Units were prudent investments for the Plan and,

in connection therewith, failed to provide the Plan participants with information regarding the

true financial health of the AllianceBernstein Funds and Alliance Holding Units, such that other

fiduciaries and the Plan participants could make informed decisions regarding the

AllianceBernstein Funds and Alliance Holding Units and otherwise failed to protect the Plan and

its participants against inevitable losses.

49.     Defendant Calvert's failure in this regard is particularly acute.  As a result of his

role as Alliance's CEO and Board Chairman, Calvert knew or should have known of the

Company's improper practices.  Yet, upon information and belief, despite his obligation to

properly and materially inform Plan participants of the true risks involved with holding

AllianceBernstein Funds and Alliance Holding Units, he remained silent.

50.     An adequate investigation by defendants would have revealed to a reasonable

fiduciary that investment by the Plan in the AllianceBernstein Funds and Alliance Holding Units,

under these circumstances, was imprudent.  A prudent fiduciary acting under similar

circumstances would have acted to protect participants against unnecessary losses, and would

have made a different investment decision.

51.     Because defendants knew or should have known that the AllianceBernstein Funds

and Alliance Holding Units were not prudent investment options for the Plan, they had an

obligation to protect the Plan and its participants from unreasonable and entirely predictable

losses incurred as a result of the Plan's investment in AllianceBernstein Funds and Alliance

Holding Units.

52.     Defendants had available to them several different options for satisfying this duty,

including:  making appropriate public disclosures as necessary; divesting the Plan of the

AllianceBernstein Funds and Alliance Holding Units; consulting independent fiduciaries

regarding appropriate measures to take in order to prudently and loyally serve the participants of

the Plan; or resigning as Plan fiduciaries to the extent that as a result of their employment by

Alliance they could not loyally serve Plan participants in connection with the Plan's acquisition

and holding of AllianceBernstein Funds and Alliance Holding Units.

**C.     Defendants Regularly Communicated with Plan Participants Concerning Purchases
of the AllianceBernstein Funds and Alliance Holding Units, Yet Failed to Disclose
the Imprudence of Investment in AllianceBernstein Funds and Alliance Holding
Units**

53.     Upon information and belief, Alliance regularly communicated with Plan

participants about Alliance's performance, future financial and business prospects, and the

AllianceBernstein Funds, collectively, the largest single asset in the Plan, as well as Alliance

Holding Units.  During the Class Period, the Company fostered a positive attitude toward the

AllianceBernstein Funds and Alliance Holding Units, and/or allowed Plan participants to follow

their natural bias towards investment in the mutual funds and shares of their employer by not

disclosing negative material information concerning investment in the AllianceBernstein Funds

and Alliance Holding Units.  As such, Plan participants could not appreciate the true risks

presented by investments in the AllianceBernstein Funds and Alliance Holding Units and

therefore could not make informed decisions regarding investments in the Plan.

16

## CLAIMS FOR RELIEF UNDER ERISA

54.     At all relevant times, defendants were and acted as fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

55.     ERISA § 502, 29 U.S.C. §1132, provides, in pertinent part, that a civil action may be brought by a participant for relief under ERISA § 409, 29 U.S.C. §1109.

56.     ERISA § 409(a), 29 U.S.C. §1109(a), "Liability for Breach of Fiduciary Duty," provides, in pertinent part, that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

57.     ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), provides, in pertinent part, that a fiduciary shall discharge his duties with respect to a plan *solely in the interest of the participants* and beneficiaries, for the *exclusive purpose of providing benefits to participants* and their beneficiaries, and *with the care, skill, prudence, and diligence* under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

58.     These fiduciary duties under ERISA § 404(a)(1)(A) and (B) are referred to as the *duties of loyalty, exclusive purpose and prudence* and are the "highest known to the law." They entail, among other things,

a. The duty to conduct an independent and thorough investigation into, and continually to monitor, the merits of all the investment alternatives of a plan, including in this instance the AllianceBernstein Funds and Alliance Holding Units, to ensure that each investment is a suitable option for the plan;

b. A duty to avoid conflicts of interest and to resolve them promptly when they occur.  A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor;

c. A duty to disclose and inform, which encompasses:  (1) a negative duty not to misinform; (2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

59. ERISA § 405(a), 29 U.S.C. § 1105(a), "Liability for breach by co-fiduciary," provides, in pertinent part, that:

> "...in addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (A) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (B) if, by his failure to comply with section 404(a)(1), 29 U.S.C. §1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (C) if he has knowledge of a breach by such other fiduciary, unless he

makes reasonable efforts under the circumstances to remedy the
breach."

60.     Plaintiff therefore bring this action under the authority of ERISA §502 for Plan-
wide relief pursuant to ERISA § 409(a) to recover losses sustained by the Plan arising out of the
breaches of fiduciary duties by the defendants.

## CAUSATION

61.     The Plan suffered millions of dollars in losses because substantial assets of the
Plan were imprudently allowed to be put at great risk by defendants, through Plan asset
investment in the AllianceBernstein Funds and Alliance Holding Units, during the Class Period,
in breach of defendants' fiduciary duties.  This loss is reflected in the diminished account
balances of the Plan's participants.

62.     Defendants are responsible for losses caused by participant direction of
investment in the AllianceBernstein Funds and Alliance Holding Units, because defendants
failed to take the necessary and required steps to ensure effective and informed independent
participant control over the investment decision-making process, as required by ERISA § 404(c),
29 U.S.C. § 1104(c), and the regulations promulgated thereunder.  Defendants concealed
material, non-public facts from participants, and provided misleading, inaccurate, and incomplete
information to them regarding the true health and ongoing profitability of the AllianceBernstein
Funds and Alliance Holding Units, misrepresenting its soundness as an investment vehicle.  As a
consequence, participants did not exercise independent control over their investments in the
AllianceBernstein Funds and Alliance Holding Units, and defendants remain liable under ERISA
for losses caused by such investment.

19

63.     Had the defendants properly discharged their fiduciary and/or co-fiduciary duties, including the provision of full and accurate disclosure of material facts concerning investment in the AllianceBernstein Funds and Alliance Holding Units as investment alternatives when it became imprudent, and divesting the Plan from the AllianceBernstein Funds and Alliance Holding Units when maintaining such an investment became imprudent, the Plan would have avoided a substantial portion of the losses that it suffered through its continued investment in AllianceBernstein Funds and Alliance Holding Units.

64.     Had the defendants not breached their fiduciary and/or co-fiduciary duties by treating certain mutual fund investors differently than other mutual fund investors; failing to follow their disclosed policy and procedures of preventing market timing, affirmatively allowing certain investors to engage in timing in exchange for investing in defendants' funds; and failing to disclose their true practices and procedures to plaintiff and the Class, the Plans would have avoided a substantial portion of the losses suffered through continued investment in Alliance Funds.

**COUNT ONE**

**Violations of ERISA § 404**

65.     Plaintiffs incorporate by reference all allegations of this Complaint as set forth in the paragraphs above.

66.     The duties of loyalty, exclusive purpose and prudence provided for in ERISA § 404(a)(1) require, among other things, that fiduciaries of ERISA plans conduct adequate and diligent fiduciary reviews of the investment policies of plans they serve, and monitor those policies and investments so that the plan assets remain prudently invested; and that fiduciaries

not place themselves in a conflicted position such that they compromise their ability to fulfill their ERISA duties to the plan and participants, for whom they are obligated to serve loyally and exclusively, with an "eye single."

67.     These fiduciary obligations required Alliance, and at least a subset of named and unnamed individual defendants, to determine if the AllianceBernstein Funds and Alliance Holding Units remained suitable and prudent investment options during the Class Period considering the unlawful timing  practices that Alliance engaged in which were known to these defendants.

68.     The prudence and necessity of conducting an adequate and diligent fiduciary review to determine whether to maintain the AllianceBernstein Funds as investment alternatives was particularly acute since the AllianceBernstein Funds, collectively, are, at all times relevant, the largest single investments of the Plan; an inherently risky single equity "wager" for the Plan's retirement savings portfolio.

69.     By virtue of all the facts and events alleged herein, defendants, each of them a fiduciary of the Plan, failed to discharge their ERISA-mandated fiduciary duties with respect to the Plan/Plan participants loyally, prudently and for the exclusive benefit of the Plan and its participants and beneficiaries, in violation of ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), and at all times beginning at least October 2, 1998, if not before, and thereafter, by, among other things:

a.     Failing to conduct an adequate and diligent fiduciary review to determine whether the AllianceBernstein Funds and Alliance Holding Units were prudent and suitable investment options when they knew or should have

21

known that new shares of the AllianceBernstein Funds and Alliance
Holding Units purchased after October 2, 1998, were an imprudent
investment as a result of Alliance's engagement in unlawful timing
activities;

b.      Causing the Plan to continue to offer the AllianceBernstein Funds and
Alliance Holding Units as investment alternatives at a time when they
knew or should have known that shares of the AllianceBernstein Funds
and Alliance Holding Units purchased during the Class Period were
imprudent plan investments as a result of Alliance's unlawful timing
activities;

c.      Causing the Plan to continue *to acquire* new shares of AllianceBernstein
Funds and Alliance Holding Units after October 2, 1998 when such
acquisitions were clearly no longer prudent and was occurring at per share
prices that exceeded fair market value and therefore represented more than
adequate consideration for such shares;

d.      Failing to provide adequate information to participants and beneficiaries of
the Plan with respect to the AllianceBernstein Funds and Alliance Holding
Units, and the underlying true risk of such investment alternatives in light
of the facts known to them during the Class Period;

e.      Concealing from participants and beneficiaries of the Plan material facts
regarding Alliance's unlawful timing  activities, which prevented

participants of the Plan from exercising independent control over investments in the AllianceBernstein Funds and Alliance Holding Units;

f.    Permitting the Plan and its participants to invest in, acquire, accumulate and hold shares of the AllianceBernstein Funds and Alliance Holding Units during the Class Period, at such a time when investment in the AllianceBernstein Funds and Alliance Holding Units was no longer suitable or prudent as investment alternatives under the Plan.

70.    As a result of the above enumerated breaches of duty of loyalty, exclusive purpose and prudence in violation of ERISA § 404(a)(1), Alliance and at least a subset of the named and unnamed individual defendants caused losses to the Plan which they are legally obligated to restore pursuant to ERISA § 409(a).

71.    Beginning at least as early as October 2, 1998 and through to the present, the AllianceBernstein Funds and Alliance Holding Units, became and remained an imprudent and unsuitable retirement investments.

72.    During this time frame, upon information and belief, these defendants improperly permitted the Plan to invest millions of dollars in the AllianceBernstein Funds and Alliance Holding Units.

73.    In lieu of investing in the AllianceBernstein Funds and Alliance Holding Units while the alleged timing  activity was occurring, the Plan should have been investing in other suitable replacement investment alternatives.

74.    Had the Plan invested in investments other than the AllianceBernstein Funds and Alliance Holding Units, from at least October 2, 1998 and thereafter, the overall account

balances of Plan participants would have been worth far more today than the actual current value
of their accounts.

75.     Defendants are legally required pursuant to ERISA § 409(a) to restore to the Plan
the losses resulting from their breaches determined by comparing the actual value of the Plan
participant accounts imprudently invested in the AllianceBernstein Funds and Alliance Holding
Units during the Class Period to what such accounts would have been worth today had Plan
assets been invested in suitable investment alternatives.  Such loss amount shall be proven at
trial, applying ERISA loss analysis and standards in which the measure of loss considers the most
profitable investment alternative and ambiguities in loss calculation are resolved against the
breaching fiduciaries and in favor of the plaintiff.

76.     Defendants may not avail themselves of any defense under ERISA § 404(c) to
relieve them of liability for their ERISA violations insofar as: (a) ERISA § 404(c) does not
relieve fiduciaries of the responsibility under ERISA §404(a)(1)(A) and (B) to select prudent and
suitable investment options in the first instance, and to monitor those selections, and therefore
the fiduciaries of the Plan had ongoing fiduciary liability with respect to the selection of
investment options, including the choice of the AllianceBernstein Funds and Alliance Holding
Units, even if participants were permitted to direct the investment of their accounts; (b) the Plan
participants never exercised "independent control," within the meaning of 29 C.F.R. §
2550.404(c)-1(c)(2), over investment decisions regarding the AllianceBernstein Funds and
Alliance Holding Units, as required by ERISA § 404(c), because participants were not provided
with adequate and truthful information concerning investment in the AllianceBernstein Funds
and Alliance Holding Units as investment options selected and offered by certain defendants as

24

Plan fiduciaries; (c) the Plan did not satisfy the administrative requirements under Department of

Labor regulations for the application of ERISA § 404(c); and (d) any Plan provision which

purports to relieve fiduciaries of the obligation to select and monitor prudent investment options,

and transfer such liability to participants, would be void as against public policy and be in

violation of ERISA § 410, 29 U.S.C. § 1110.

      **WHEREFORE**, plaintiff prays for relief as set forth below.

**COUNT TWO**

**Violations of ERISA § 406 –  Prohibited Transactions**

77.     Plaintiff incorporates by reference all allegations of this Complaint as set forth in

the paragraphs above.

78.     By virtue of all the facts and events alleged herein, defendants, in connection with

their actions and omissions in authorizing and causing the Plans to treat certain mutual fund

investors differently than other mutual fund investors; failing to follow their disclosed policy and

procedures of preventing market timing, affirmatively allowing certain investors to engage in

timing in exchange for investing in defendants' funds; and failing to disclose their true practices

and procedures to plaintiff and the Class, caused the Plans to engage in transactions that

constituted a direct or indirect sales or exchanges of property between the Plans and a party-in-

interest, in violation of ERISA §§ 406(a), 29 U.S.C. §§ 1106(a).

79.     Because the price Plan fiduciaries caused to be paid by the Plan for such shares

and by participants for "participation interests" exceeded fair market value and was for more than

adequate consideration, the prohibited transactions are not exempt under the provisions of

ERISA § 408(e)(1), 29 U.S.C. § 1108(e)(1).

80.     At such time as Alliance engaged in unlawful timing  activities, shares of the

AllianceBernstein Funds and Alliance Holding Units remained inflated in value and the

fiduciaries of the Plan continued to engage in prohibited transactions by causing the Plan to pay

more than adequate consideration for the shares of the AllianceBernstein Funds and Alliance

Holding Units.

81.     During this time frame the Plan invested, upon information and belief, at least

millions of dollars, in shares of the AllianceBernstein Funds and Alliance Holding Units at prices

that exceeded fair market value and adequate consideration. The Plan and its participants paid

more than adequate consideration for their "participation interests" in the Plan.

82.     Because the acquisition of shares of the AllianceBernstein Funds and Alliance

Holding Units and participation interests by the Plan and its participants for more than adequate

consideration was a prohibited transaction which is a "per se" violation of  ERISA §§406(a), 29

U.S.C. §§ 1106(a), under ERISA §§ 409(a) and 502(a)(2) and (3), 29 U.S.C. §§ 1109(a) and

1132(a)(2) and (3), the Court has the power to redress such violations by undoing the prohibited

transaction.  In the present case, the appropriate remedy would be for the Court to restore to the

Plan the consideration which was paid by the Plan and its participants to acquire shares of the

AllianceBernstein Funds and Alliance Holding Units and participation interests at inflated prices

and for more than adequate consideration.

83.     In addition, in order to fully restore the Plan and its participants to the position

they would have been in had the fiduciaries of the Plan and Alliance as parties-in-interest not

engaged in the prohibited transactions alleged in this Complaint, the Plan is entitled to recover

the amount the contributions used to purchase shares of the AllianceBernstein Funds and

Alliance Holding Units would have earned had such amounts been instead invested in suitable investment alternatives.

WHEREFORE, plaintiff prays for relief as set forth below.

## COUNT THREE
### Violation of ERISA § 404 – Duty to Monitor

84.     Plaintiff incorporates by reference all allegations of this Complaint as set forth in the paragraphs above.

85.     By virtue of the foregoing facts and events alleged herein, Alliance, as well as the named and unnamed individual defendants including the Director defendants, failed to discharge their duties with respect to the Plan loyally, prudently and for the exclusive benefit of the Plan and its participants and beneficiaries, in violation of ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), and at all times beginning at least as early as October 2, 1998 and thereafter, by, among other things:

a.      Failing to adequately monitor the Plan to ensure that Plan administration was in compliance with the terms of the Plan and ERISA statutory standards, and satisfied the needs of the Plan, when defendants knew or should have known that the Plan's investments in the AllianceBernstein Funds and Alliance Holding Units were not prudent as a result of the illegal timing  activities going on during the Class Period;

b.      Failing to adequately monitor the Plan to ensure that Plan fiduciaries and/or participants were provided with adequate and truthful information

concerning investments in the AllianceBernstein Funds and Alliance Holding Units; and

c.    Failing to prevent the Plan from acquiring new shares of the AllianceBernstein Funds and Alliance Holding Units at inflated per share prices when they knew or should have known such purchases were made at greater than fair market value and represented more than adequate consideration for such shares.

86.    As a result of the above-enumerated breaches of ERISA duties of loyalty, exclusive purpose and prudence in violation of ERISA § 404(a)(1), the individual defendants caused losses to the Plan which they are legally obligated to restore pursuant to ERISA § 409(a).

87.    Had the Plan invested all contributions and Plan holdings that were steered toward the AllianceBernstein Funds and Alliance Holding Units in other available and/or potentially available investment vehicles, the overall value of Plan assets would have been worth far more today than the actual value of Plan assets which were vastly depreciated by the improvident investment in Alliance equity.

88.    Had the Plan invested all contributions and Plan holdings that were steered toward the AllianceBernstein Funds and Alliance Holding Units in other available and/or potentially available investment vehicles, the overall value of Plan assets would have been worth far more today than the actual value of Plan assets which were vastly depreciated by the improvident investment in the AllianceBernstein Funds and Alliance Holding Units.

89.    Defendants are legally required pursuant to ERISA §409(a) to restore to the Plan the losses determined by comparing the actual value of the Plan assets which included the

improper investment in the AllianceBernstein Funds and Alliance Holding Units, to what Plan assets would have been worth today had Plan contributions and existing Plan holdings in the AllianceBernstein Funds and Alliance Holding Units instead been invested in suitable investment alternatives.  Such loss amount shall be proven at trial, applying ERISA loss analysis and standards in which all ambiguities in loss calculation are resolved against the breaching fiduciaries and in favor of the plaintiff.

**WHEREFORE**, plaintiff prays for relief as set forth below.

<u>**COUNT FOUR**</u>

**Claim for Relief Against All Plan Fiduciaries for Co-Fiduciary Liability in Violation of ERISA § 405, and Against Alliance under Agency Principles**

90.     Plaintiff realleges and incorporates by reference all allegations of this Complaint as set forth in the paragraphs above.

91.     By virtue of all the facts and events alleged herein, all defendant-fiduciaries, by failing to comply with their specific fiduciary responsibilities under ERISA § 404(a)(1) enabled their co-fiduciaries to commit violations of ERISA and, with knowledge of such breaches, failed to make reasonable efforts to remedy the breaches.  Accordingly, defendant-fiduciaries are each liable for the others' violations pursuant to ERISA §§ 405(a)(2) and (3), 29 U.S.C. §§ 1105(a)(2) and (3).

92.     Information not present in this Complaint about the acts and omissions of the defendant-fiduciaries that give rise to co-fiduciary liability under this Count is exclusively within the possession and/or knowledge of the defendants-fiduciaries, and will be determined and developed during the discovery phase of this litigation.

**WHEREFORE**, plaintiff prays for relief as set forth below.

29

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for:

A.      A Declaration that the defendants, and each of them, have breached their ERISA fiduciary duties to the Participants;

B.      A Declaration that the defendants, and each of them, are not entitled to the protection of ERISA § 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B);

C.      An Order compelling the defendants to make good to the Plan all losses to the Plan resulting from defendants' breaches of their fiduciary duties under all applicable ERISA provisions, including losses to the Plan resulting from imprudent investment of the Plan's assets, and to restore to the Plan all profits the defendants made through use of the Plan's assets, and to restore to the Plan all profits which the Participants would have made if the defendants had fulfilled their fiduciary obligations;

D.      Imposition of a Constructive Trust on any amounts by which any defendant was unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty;

E.      An Order enjoining defendants, and each of them, from any further violations of their ERISA fiduciary obligations;

F.      Actual damages in the amount of any losses the Plan suffered, to be allocated among the Participants' individual accounts in proportion to the accounts' losses;

G.      An Order that defendants allocate the Plan's recoveries to the accounts of all Participants who had any portion of their account balances invested in the AllianceBernstein Funds and Alliance Holding Units, maintained by the Plan in proportion to the accounts' losses

attributable to the decline in the price of the AllianceBernstein Funds and Alliance Holding Units;

      H.     An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

      I.     An Order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

      J.     An Order for equitable restitution and other appropriate equitable monetary relief against the defendants.

DATED: September 29, 2004

**WECHSLER HARWOOD LLP**


By:     /S/                             
            Robert I. Harwood
            Samuel K. Rosen
            Matthew M. Houston
            Peter W. Overs, Jr.
        488 Madison Avenue
        New York, NY 10022
        Tel.: (212) 935-7400
        Fax: (212) 753-3630

        Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I, Cary Savitz, hereby certify that I am not a party to the action, am over the age of eighteen years, am employed by the law firm of Wechsler Harwood LLP, attorneys for plaintiff, and that on September 29, 2004, I served the foregoing **AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT** in the within action, by causing a true and correct copy of the same to be electronically mailed to counsel for defendants on the attached service list.

/S/ _____

Cary Savitz

## ALLIANCE CAPITAL SERVICE LIST

**Robert J Jossen**
Swidler Berlin Shereff Friedman LLP
The Chrysler Bldg 405 Lexington Ave
New York, NY 10174
12128919304
Fax : 12128919225
Email: **rjjossen@swidlaw.com**

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam B Rowland**
Swidler Berlin Shereff Friedman LLP
The Chrysler Bldg 405 Lexington Ave
New York, NY 10174
12128919230
Fax : 12128919519
Email: **abrowland@swidlaw.com**

*ATTORNEY TO BE NOTICED*

**David Stanley Frankel**
Kramer Levin Naftalis and Frankel LLP
919 Third Ave
New York, NY 10022-3852
12127159221
Fax : 12127158000
Email: **dfrankel@kramerlevin.com**

*ATTORNEY TO BE NOTICED*

**Gary Philip Naftalis**
Kramer Levin Naftalis Nessen Kamin and Frankel
919 Third Ave
New York, NY 10022
12127159253

Fax : 12127159238
Email: **gnaftalis@kramerlevin.com**

*ATTORNEY TO BE NOTICED*


**Andrew Gendron**
Venable Baetjer and Howard LLP
Two Hopkins Plz Ste 1800
Baltimore, MD 21201
14102447400
Fax : 14102447742
Email: **agendron@venable.com**

*ATTORNEY TO BE NOTICED*


**Anthony Zaccaria**
Pollack and Kaminsky
114 W 47th St
New York, NY 10036
12125754700
Fax : 12125756560
Email: **azaccaria@pollacklawfirm.com**

*ATTORNEY TO BE NOTICED*


**Breon S Peace**
Cleary Gottlieb Steen and Hamilton
One Liberty Plz
New York, NY 10006
12122252059
Fax : 12122253999
Email: **bpeace@cgsh.com**

*ATTORNEY TO BE NOTICED*

**Charles Evan Stewart**
Brown Raysman Millstein Felder and Steiner LLP
900 Third Ave
New York, NY 10022
12128952670
Fax : 12128952900
Email: estewart@brownraysman.com

*ATTORNEY TO BE NOTICED*


**Christopher MacNeil Murphy**
McDermott Will and Emery
227 W Monroe St
Chicago, IL 60606
13129843607
Fax : 13129842099
Email: cmurphy@mwe.com

*ATTORNEY TO BE NOTICED*


**Craig Herrington Kuglar**
Alston and Bird LLP
One Atlantic Cntr
1201 W Peachtree St
Atlanta, GA 30309-3424
14048817432
Fax : 14042538249
Email: ckuglar@alston.com

*ATTORNEY TO BE NOTICED*


**Daniel A Pollack**
Pollack and Kaminsky
114 W 47th St Ste 1900
New York, NY 10036
12125754700
Fax : 12125756560
Email: dapollack@pollacklawfirm.com

3

*ATTORNEY TO BE NOTICED*


**David Clarke, Jr**
Piper Rudnick LLP
1775 Wiehle Ave
Reston, VA 20190
17037734000
Fax : 17037735000
Email: **david.clarke@piperrudnick.com**

*ATTORNEY TO BE NOTICED*


**David B Hamilton**
Ober Kaler Grimes and Shriver
120 E Baltimore St
Baltimore, MD 21202-1643
14106851120
Fax : 14105470699
Email: **dbhamilton@ober.com**

*ATTORNEY TO BE NOTICED*


**David M Morris**
Fried Frank Harris Shriver and Jacobson LLP
One New York Plz
New York, NY 10004
12128598204
Fax : 12128598583
Email: **morrida@friedfrank.com**

*ATTORNEY TO BE NOTICED*


**Dominick L Schirripa**
Fried Frank Harris Shriver and Jacobson LLP
One New York Plz
New York, NY 10004

4

12128598407
Fax : 12128598583
Email: **schirdo@friedfrank.com**

*ATTORNEY TO BE NOTICED*


**Edward T McDermott**
Pollack and Kaminsky
114 West 47th St
New York, NY 10036
12125754700
Fax : 12125756560
Email: **etmcdermott@pollacklawfirm.com**

*ATTORNEY TO BE NOTICED*


**Eric Anders Tirschwell**
Kramer Levin Naftalis and Frankel LLP
919 Third Ave
New York, NY 10022
12127158404
Fax : 12127158000
Email: **etirschwell@kramerlevin.com**

*TERMINATED: 09/15/2004*
*ATTORNEY TO BE NOTICED*


**G Stewart Webb, Jr**
Venable Baetjer and Howard LLP
Two Hopkins Plz Ste 1800
Baltimore, MD 21201
14102447400
Fax : 14102447742
Email: **gswebb@venable.com**

*ATTORNEY TO BE NOTICED*

5

**George Carruthers Covington**
Kennedy Covington Lobdell and Hickman LLP
214 N Tryon St 47th Fl
Charlotte, NC 28202
17043317505
Fax : 17043353205
Email: **boamulti@kennedycovington.com**

*ATTORNEY TO BE NOTICED*


**Gregory Scott Spencer**
Bank of American NA
555 California St Eighth Fl
San Francisco, CA 94104
14156226041
Fax : 14159331334
Email: **gregory.s.spencer@bankofamerica.com**

*ATTORNEY TO BE NOTICED*


**Hillel I Parness**
Brown Raysman Millstein Felder and Steiner LLP
900 Third Ave
New York, NY 10022
12128952000
Fax : 12128952900
Email: **hparness@brownraysman.com**

*ATTORNEY TO BE NOTICED*


**James D Mathias**
Piper Rudnick LLP

6

6225 Smith Ave
Baltimore, MD 21209-3600
14105803000
Fax : 14105803208
Email: **james.mathias@piperrudnick.com**

*ATTORNEY TO BE NOTICED*


**Jefferson V Wright**
Miles and Stockbridge PC
10 Light St
Baltimore, MD 21202-1487
14107276464
Fax : 4103853700
Email: **jwright@milesstockbridge.com**

*ATTORNEY TO BE NOTICED*


**Jeffrey M Wintner**
Wachtell Lipton Rosen and Katz
51 W 52nd St
New York, NY 10019
12124031000
Fax : 12124032000
Email: **jmwintner@wlrk.com**

*ATTORNEY TO BE NOTICED*


**Jennifer Carolyn Voss**
Skadden Arps Slate Meagher and Flom LLP
One Rodney Sq
Wilmington, DE 19899
13026513175
Fax : 13026513001
Email: **jvoss@skadden.com**

*ATTORNEY TO BE NOTICED*

7

**Jerome S Hirsch**
Skadden Arps Slate Meagher and Flom LLP
Four Times Sq
New York, NY 10036-6522
12127353000
Fax : 12127352000
Email: **jhirsch@skadden.com**
*ATTORNEY TO BE NOTICED*

**Joanna Shally**
Shearman and Sterling
599 Lexington Ave
New York, NY 10022
12128484700
Fax : 16468484700
Email: **jshally@shearman.com**

*ATTORNEY TO BE NOTICED*

**Joel A Blanchet**
Ungaretti and Harris
3500 Three First National Plz
Chicago, IL 60602
13129774131
Fax : 13129774405
Email: jablanchet@uhlaw.com
*ATTORNEY TO BE NOTICED*

**John Patrick Killacky**
McDermott Will and Emery
227 W Monroe St
Chicago, IL 60606
13129847528
Fax : 13129847700
Email: jkillacky@mwe.com

8

*ATTORNEY TO BE NOTICED*

**John Gerard Moon**
Chadbourne and Parke LLP
30 Rockefeller Plz
New York, NY 10112
12124081117
Fax : 16467101117
Email: jmoon@chadbourne.com
*ATTORNEY TO BE NOTICED*

**Joseph Gerald Fisher**
McDermott WIll and Emery
227 W Monroe St
Chicago, IL 60606
13129846974
Fax : 13129847700
Email: jfisher@mwe.com
*ATTORNEY TO BE NOTICED*

**Kenneth M Kramer**
Shearman and Sterling LLP
599 Lexington Ave
New York, NY 10022
12128484172
Fax : 16468484172
Email: kkramer@shearman.com
*ATTORNEY TO BE NOTICED*

**Kiran Harshraj Mehta**
Kennedy Covington Lobdell and Hickman LLP
214 N Tryon St 47th Fl
Charlotte, NC 28202
17043317437

Fax : 17043353137
Email: boamulti@kennedycovington.com
*ATTORNEY TO BE NOTICED*


**Laurie A Hand**
Morrison and Foerster LLP
1650 Tysons Blvd Ste 300
McLean, VA 22102
17037607725
Fax : 17037607777
Email: **lhand@mofo.com**
*ATTORNEY TO BE NOTICED*


**Lewis J Liman**
Cleary Gottlieb and Hamilton
One Liberty Plz
New York, NY 10006
12122252550
Fax : 12122253999
Email: lliman@cgsh.com
*ATTORNEY TO BE NOTICED*


**Mark A Perry**
Gibson Dunn and Crutcher LLP
1050 Connecticut Ave NW Ste 900
Washington, DC 20036-5306
12028873667
Fax : 12025309696
Email: mperry@gibsondunn.com
*ATTORNEY TO BE NOTICED*


**Martin JE Arms**
Wachtell Lipton Rosen and Katz
51 W 52nd St

New York, NY 10019
12124031101
Fax : 12124032101
Email: mjearms@wlrk.com
*ATTORNEY TO BE NOTICED*

**Michael S Winograd**
Wachtell Lipton Rosen and Katz
51 W 52nd St
New York, NY 10019
12124031140
Fax : 12124032140
Email: mswinograd@wlrk.com
*ATTORNEY TO BE NOTICED*

**Nelson A Boxer**
Dechert LLP
30 Rockefeller Plz
New York, NY 10112
12126983863
Fax : 12126983599
Email: districtofmaryland@dechert.com
*ATTORNEY TO BE NOTICED*

**Nichole Michele Galvin**
Neuberger Quinn Gielen Rubin and Gibber
One South St 27th Fl
Baltimore, MD 21202-3282
14103328550
Fax : 14109516031
Email: nmg@nqgrg.com
*ATTORNEY TO BE NOTICED*

**Paul K Rowe**

Wachtell Lipton Rosen and Katz
51 W 52nd St
New York, NY 10019
12124031000
Fax : 12124032000
Email: pkrowe@wlrk.com
*ATTORNEY TO BE NOTICED*


**Price O Gielen**
Neuberger Quinn Gielen Rubin and Gibber PA
One South St 27th Fl
Baltimore, MD 21202-3282
14103328550
Fax : 4103328594
Email: pog@nqgrg.com
*ATTORNEY TO BE NOTICED*


**Richard Joel Rosensweig**
Goulston and Storrs PC
400 Atlantic Ave
Boston, MA 02110
16175743588
Fax : 16175747505
Email: rrosensweig@goulstonstorrs.com
*ATTORNEY TO BE NOTICED*


**Robert E Juceam**
Fried Frank Harris Shriver and Jacobson LLP
One New York Plz
New York, NY 10004
12128598040
Fax : 12128598585
Email: jucearo@friedfrank.com
*ATTORNEY TO BE NOTICED*

**Sarah Fern Meil**
Wachtell Lipton Rosen and Katz
51 W 52nd St
New York, NY 10019
12124031000
Fax : 12124032000
Email: sfmeil@wlrk.com
*ATTORNEY TO BE NOTICED*

**Stephen Michael Colangelo**
Morrison and Foerster LLP
1650 Tysons Blvd Ste 300
McLean, VA 22102
17037607702
Fax : 17037607777
Email: scolangelo@mofo.com
*ATTORNEY TO BE NOTICED*

**Stephen R DiPrima**
Wachtell Lipton Rosen and Katz
51 W 52nd St
New York, NY 10019
12124031000
Fax : 12124032000
Email: srdiprima@wlrk.com
*ATTORNEY TO BE NOTICED*

**Steven Marc Malina**
Ungaretti and Harris
3500 Three First National Plz
Chicago, IL 60602
13129779254
Fax : 13129774405
Email: smmalina@uhlaw.com

*ATTORNEY TO BE NOTICED*

**Steven Samuel Scholes**
McDermott Will and Emery
227 W Monroe St
Chicago, IL 60606
13129847762
Fax : 13129847700
Email: sscholes@mwe.com
*ATTORNEY TO BE NOTICED*

**Strider Dickson**
Piper Rudnick LLP
6225 Smith Ave
Baltimore, MD 21209
14105804173
Fax : 14105803173
Email: Strider.dickson@piperrudnick.com
*ATTORNEY TO BE NOTICED*

**Theodore J Sawicki**
Alston and Bird LLP
1201 W Peachtree St
Atlanta, GA 30309-3424
14048817639
Fax : 14042538278
Email: tsawicki@alston.com
*ATTORNEY TO BE NOTICED*

**Thomas Lee Allen**
Reed Smith LLP
435 Sixth Ave
Pittsburgh, PA 15219
14122883066

14

Fax : 14122883063
Email: tallen@reedsmith.com
*ATTORNEY TO BE NOTICED*


**Thomas J Allingham, II**
Skadden Arps Slate Meagher and Flom LLP
One Rodney Sq PO Box 636
Wilmington, DE 19899
13026513000
Fax : 13026513001
Email: tallingh@skadden.com
*ATTORNEY TO BE NOTICED*


**Thomas J Moloney**
Cleary Gottlieb Steen and Hamilton
One Liberty Plz
New York, NY 10006
12122252460
Fax : 12122253999
Email: MDL1586@cgsh.com
*ATTORNEY TO BE NOTICED*


**Wesley R Powell**
Clifford Chance US LLP
31 W 52nd St
New York, NY 10019
12128788000
Fax : 12128788375
Email: wesley.powell@cliffordchance.com
*ATTORNEY TO BE NOTICED*


**Donna Christine Goggin**
Latham and Watkins LLP

885 Third Ave
New York, NY 10022
12129061240
Fax : 12127514864
Email: donna.goggin@lw.com
*ATTORNEY TO BE NOTICED*


**Michele Rose**
Latham and Watkins LLP
Two Freedom Sq Ste 500
11955 Freedom Dr
Reston, VA 20901
17034561000
Fax : 17034561001
Email: michele.rose@lw.com
*ATTORNEY TO BE NOTICED*


**Mark A Kirsch**
Clifford Chance US LLP
31 W 52nd St
New York, NY 10019
12128788000
Fax : 12128788375
Email: mark.kirsch@cliffordchance.com
*ATTORNEY TO BE NOTICED*


**Sara Beth Brody**
Clifford Chance US LLP
One Market Steuart Tower Ste 800
San Francisco, CA 94105
14157785423
Fax : 14157784701
Email: sara.brody@cliffordchance.com
*ATTORNEY TO BE NOTICED*

16

**Sean M Murphy**
Clifford Chance US LLP
31 W 52nd St
New York, NY 10019
12128788000
Fax : 12128788375
Email: sean.murphy@cliffordchance.com
*ATTORNEY TO BE NOTICED*


**Danielle Dawn Fredericks**
Omelveny and Myers LLP
2765 Sand Hill Rd
Menlo Park, CA 94025
16504732690
Fax : 16504732601
*TERMINATED: 07/14/2004*
*ATTORNEY TO BE NOTICED*


**Meredith Nelson Landy**
OMelveny and Myers LLP
2765 Sand Hill Rd
Menlo Park, CA 94025
16504732671
Fax : 16504732601
Email: mlandy@omm.com
*ATTORNEY TO BE NOTICED*

**Michael Bruce Miller**
Sullivan and Cromwell
125 Broad St
New York, NY 10004
12125584417
Fax : 12125583588
Email: millerm@sullcrom.com
*ATTORNEY TO BE NOTICED*