IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| IN RE MUTUAL FUNDS INVESTMENT LITIGATION | MDL 1586 |
|---|---|
| IN RE ALLIANCE, FRANKLIN/TEMPLETON, BANK OF AMERICA/NATIONS FUNDS, and PILGRIM BAXTER | Case No. 04-md-15862 (Judge Davis) |
| [Franklin Templeton Subtrack] | |
| Sharkey IRO/IRA v. Franklin Resources, et al. | Case No. 04-md-1310 |

**FRANKLIN DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO
FILE SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

## OVERVIEW

The Franklin Defendants ("Franklin") strongly oppose the motion by Lead Plaintiff Deferred Compensation Plan for Employees of Nassau County ("Plaintiff") for leave to file a Second Consolidated Amended Class Action Complaint ("Proposed Amended Complaint"), to introduce a new theory of the case, more than **five years** after commencement of this action, and more than six months after the stipulated deadline for fact discovery, December 31, 2008.[1]

---

[1] Franklin does not object to those limited portions of the Proposed Amended Complaint that (1) drop parties, (2) drop claims, and (3) add so-called "evidentiary detail" to the existing theory of the case, i.e. failure to disclose alleged secret agreements with known market-timers.

The Plaintiff now seeks to add, at this late stage, a new theory of the case based on an alleged non-disclosure that is wholly different from those contained in the Consolidated Amended Class Action Complaint ("Complaint") which has framed this action for the past **five years**.

In the Complaint, the Plaintiff alleges that Franklin failed to disclose claimed secret agreements it had made with specified clients to allow market-timing. By contrast, in the Proposed Amended Complaint the Plaintiff now seeks to allege that Franklin failed to disclose the existence of uncontrollable market-timing in the Franklin Funds by anonymous, unidentifiable traders. These are radically different theories of the case: one is predicated on alleged active wrongdoing by Franklin through secret agreements with known market-timers; the other is predicated on alleged passive inability by Franklin to control anonymous market-timing.

Judge Motz's December 30, 2008 Opinion in both the Putnam and Janus sub-tracks is squarely on point and compels the rejection of the proposed amendment:

> Plaintiffs now assert [as Lead Plaintiff does at bar] that even if the mutual fund defendants did not expressly or tacitly enter into market timing agreements or did not intentionally or recklessly bury their heads in the sand about market timing transactions, defendants are nevertheless liable because they knew, but did not disclose, that despite the efforts they were making to control market-timed transactions, such trades were occurring and causing harm to long-term shareholders in the funds. Before, plaintiffs were asserting that the mutual fund defendants had acted in bad faith in order to increase their own fees by arranging market timing trades or recklessly ignoring their existence. [footnote omitted]. Now plaintiffs are asserting that, even assuming the mutual fund defendants acted in good faith in attempting to control market timing, defendants are liable under Rule 10b-5 because they knowingly failed to disclose a material fact: the existence of uncontrollable market timing.

> Arguably, this theory is sound in principle. However, plaintiffs' claims based upon it come too late. Although abstractly the new claims may seem to constitute only a subtle shift, they substantially change the focus of the litigation that has been pending several years. [footnote omitted]. To permit plaintiffs to amend their amended and second amended complaints would unfairly prejudice defendants. (emphasis supplied)

Those statements and the holding apply with equal force here.[2]

### The Proposed Amended Complaint Asserts an Entirely New Theory

The Plaintiff, in opposing Franklin's Motion to Dismiss in 2005, described its Complaint as arising out of Franklin's **"scheme"** with "certain favored" clients to **allow** them to engage in market-timing which Franklin allegedly could have "stopped" (Plaintiff's Memorandum, pp. 4, 6 and 10, Document 714, Filed 5/2/2005):

> This action arises out of a **scheme** by senior FT executives and certain favored FT clients to enrich themselves at the expense of the other investors in FT's mutual funds. Defendants recklessly **permitted, promoted and profited from allowing select investors to market time FT Funds**. These market timing transactions occurred over an extended period of time and included a substantial number of transactions, all in derogation of the duties of those operating the Funds, and representations made to investors that such market timing would not be allowed in the impacted FT Funds. (emphasis supplied) (*Id.*, p.4)
>
> * * *
>
> As detailed in the Complaint, the **scheme** entered into among certain of the Franklin-Templeton Defendants, including Post, Calugar and other market timers, perpetrated a fraud on investors in the FT Funds, who were led to believe that FT acted to prevent market timing transactions, and, ultimately, cost these investors, potentially, in the hundreds of millions of dollars. (e.g. ¶¶ 2-3, 9, 80-83, 106, 249-50, 261-62.) (*Id.*, p.10)

---

[2] Plaintiff ignores Judge Motz's December 30, 2008 and April 14, 2009 Opinions which are very much on point. We note that if this new theory is permitted to proceed, it would be the only case in the MDL in which it has been allowed to proceed. The asymmetry of such a result is unthinkable.

In contrast, the Plaintiff now seeks to allege in the Proposed Amended Complaint (para. 9) that:

> 9. In addition, although later in the Class Period FT finally did take some belated steps to control the market timing it knew was running rampant in FT Funds, aside from the fact that these steps were halting and inadequate, the FT-affiliated defendants knew that FT lacked the capability to prevent market timing of FT Funds in the hundreds of millions of dollars being done through so-called "omnibus" accounts (essentially, master accounts comprised of multiple individual sub-accounts, batched together and held by brokerages such as Schwab or Fidelity). Indeed, **FT could not even identify who the underlying persons or entities were in these omnibus accounts, let alone stop them from market timing in FT Funds**. Such market timing through "omnibus" accounts comprised a substantial portion of the harmful market timing in FT Funds during the later stages of the Class Period in particular; yet defendants have admitted that they never disclosed to Class members or the investing public that FT was incapable of preventing such market timing, or that the amount thereof was so substantial.

Other allegations on the Plaintiff's entirely new theory are found in paras. 3-4, 43 (particularly, the last two sentences), 84, 97, 156 (particularly, the last sentence), 253 (particularly, the first sentence), 254-257 and 269(e) of the Proposed Amended Complaint. *See* Addendum A for complete text of those proposed changes.

The Plaintiff's argument that the new theory is, in fact, not new, and that the proposed amendment is only "amplifying", "clarifying" or "fleshing-out" the allegations already contained in the Complaint is fallacious. There are absolutely no allegations in the Complaint that set forth the Plaintiff's new theory. Instead, the Complaint complains of alleged secret **agreements** between Franklin and known market-timers.

# ARGUMENT

## I. Plaintiff Fails to Satisfy the Requirements of Rule 15, Fed. R. Civ. P.

Although leave to amend should "be freely given when justice so requires," Fed. R. Civ. P. 15(a), "justice does, after all, have to require it." *Mayle v. Felix*, 545 U.S. 644, 665-66 (2005) (Souter, J., dissenting); *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987), cert. denied, 485 U.S. 977 (1988) ("leave to amend is not to be granted automatically.").

The Court may deny leave to amend for reasons

> "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc."

*Glaser v. Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006), *quoting Foman v. Davis*, 371 U.S. 178, 182 (1962). The Plaintiff's motion for leave to amend should be denied because (1) permitting the amendment would unduly prejudice Franklin; (2) the Plaintiff has unduly delayed seeking the amendment by waiting more than five years after the filing of the action, and six months after Judge Motz considered and rejected the attempt by the Janus and Putnam plaintiffs to make the same amendment; and (3) allowing the amendment here would be contrary to sound public policy and judicial efficiency. *See* Judge Motz's April 14, 2009 Opinion.

### A. Franklin will be Unduly Prejudiced if the Court Permits the Introduction of a New and Different Theory of the Case at this Late Stage of the Action

The prejudice suffered by the non-moving party increases when the plaintiff proposes an amendment late in an action. *See* 6 Wright, Miller and Kane, *Federal Practice and Procedure*, §1488 at p.670 (1990 ed.) ("As a general rule, the risk of

5

substantial prejudice increases with the passage of time"); 3 *Moore's Fed. Practice* §15.15[2] (Matthew Bender 3d ed.) ("Prejudice is especially likely to exist if the amendment involves new theories of recovery or would require additional discovery.").[3]

This action has been pending for over **five years**, and the deadline for fact discovery passed last year. The final fact witness deposition was conducted and completed on December 30, 2008 pursuant to stipulation by the parties. During fact discovery, Franklin produced over two million pages of documents, and produced numerous individuals for depositions. In addition, Franklin and the Plaintiff have participated in numerous depositions of other non-Franklin defendants, non-parties and Plaintiff representatives. The focus of all discovery has been Franklin's alleged agreements with select market-timers, express or tacit, to permit them to time the Franklin Funds, and an alleged failure to disclose those agreements.

If the Court were to permit the Plaintiff to amend the Complaint to allege its new theory of the case, discovery would have to be re-started at great expense and burden to Franklin. Neither the Plaintiff nor Franklin focused on the Plaintiff's new theory during discovery. Indeed, Franklin was unaware that the Plaintiff planned to pursue this new theory. Thus, if allowed, Franklin would have to gather facts regarding the existence and extent of the alleged uncontrollable market-timing in specific funds, as well as facts regarding when and what Franklin allegedly knew about any such alleged uncontrollable market-timing. In contrast, the focal point in now-completed discovery was market-timers and their alleged agreements with Franklin. Franklin would have to re-depose

---

[3] The Plaintiff argues that Franklin will not "be prejudiced by the proposed amendments, which arise out of the same acts and transactions alleged in the original [Complaint]", Plaintiff Memorandum, p. 4. This is simply nonsense. The Proposed Amended Complaint is predicated on transactions by unknown persons who, allegedly, could not be controlled by Franklin; the gravamen of the Complaint, by contrast, is predicated on secret agreements allegedly entered into by Franklin with known market-timers.

witnesses already deposed (some, for several days), as well as depose numerous individuals who have not been deposed because their testimony was not required to defend against the theory of the case that the Plaintiff has been pursuing for the last five years. By way of example, portfolio managers of the Franklin Funds would have to be called as witnesses to rebut the allegations about the existence and significance of anonymous, uncontrollable market-timing in their funds, their awareness (if any) of such timing, and what harm, if any, it may have caused to those Franklin Funds. Their testimony would also be necessary to explain that their strategies for trading shares in the portfolios of their respective Funds were not adversely affected by anonymous, uncontrollable market-timing.

Franklin would also need to seek testimony and discovery on the absence of "scienter" on the part of Franklin. Numerous witnesses, including current and former portfolio managers and drafters of the numerous Fund prospectuses would have to be deposed regarding the proposition that Franklin was aware of the alleged "dilution" caused by the allegedly anonymous, uncontrollable market timing, particularly in the early years of the Class Period.

Increasing the prejudice to Franklin is the fact that some of these potential witnesses would have to be tracked down and subpoenaed. For example, several of the portfolio managers of the Franklin international funds targeted by the Plaintiff are no longer employed by Franklin, including Messrs. Everett, Holowesko, Winters, Murchison and Leonard. Indeed, Messrs. Everett, Murchison and Holowesko do not even reside in the United States, and their testimony would have to be taken abroad.

Yet further prejudice to Franklin would arise from the fact that under the original theory of liability, i.e. that Franklin failed to disclose and, indeed, concealed alleged secret agreements with preferred traders, Franklin's defense was that there was no "agreement" (express or tacit). That defense arguably may not address the new theory, under which the Plaintiff now seeks damages caused by anonymous, uncontrollable timing not involving agreements by Franklin. In the Proposed Amended Complaint, Plaintiff does not allege that Franklin made any agreements with these anonymous traders but, to the contrary, under Plaintiff's new theory, these persons were not even identifiable by Franklin (*see, e.g.* paras. 9, 43, 97, 254, Proposed Amended Complaint).[4]

The December 30, 2008 Opinion by Judge Motz, quoted above, is squarely on point and compels the rejection of the proposed amendment:

> Although abstractly the new claims may seem to constitute only a subtle shift, they substantially change the focus of the litigation that has been pending several years. To permit plaintiffs to amend their amended and second amended complaints would unfairly prejudice defendants. [footnote omitted]

Other courts have regularly denied similar amendments that would have changed (or shifted) the theory underlying their claims. *See, e.g. Deasy*, 833 F.2d at 41; *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994), *cert. den.*, 516 U.S. 810 (1995) (amendment adding new alleged misrepresentations rejected because of prejudice to defendants); *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992), *aff'd on this point en banc*, 37 F.3d 1069, 1073 & n.8 (1994) (amendment "would have established an entirely new

---

[4] The fact that William Post may or may not oppose the Motion to Amend is utterly irrelevant: the new theory of the case has no applicability to him. Post (who is not employed by Franklin at this time) is accused of making a secret agreement with Calugar, a known market-timer. Irrespective of the truth or falsity of that allegation, Post has no "skin in the game" on the proposed amendment and his indifference vel non is utterly irrelevant as to the arguments of Franklin and the Plaintiff, on this amendment. He is nothing more than a bystander on this motion.

factual basis for the plaintiffs' claims and, consequently, would have required that the parties reopen discovery and alter their trial strategies"); *Priddy* v. *Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) ("Putting the defendants 'through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial.'"); *Scognamillo* v. *Credit Suisse First Boston*, 587 F.Supp.2d 1149, 1155-59 (N.D. Cal. 2008).

### B. Plaintiff's Delay in Seeking Leave to Amend is Undue

The Plaintiff filed its Complaint more than **five years** ago, and yet, somehow now argues that it is Franklin that has precluded the Plaintiff from alleging its new theory. As the Fourth Circuit stated in *Deasy*, 833 F.2d at 41:

> The burden rests primarily upon the plaintiff to amend his complaint, not upon the defendant to anticipate a new claim.
>
> Moreover, "a motion to amend **should be made as soon as the necessity for altering the pleading becomes apparent**. A party who delays in seeking an amendment is acting contrary to the spirit of the rule." 6 Wright & Miller, *Federal Practice and Procedure* § 1488 (1971). (emphasis supplied)

Franklin has participated in massive, costly discovery for several years. The alleged facts on which the Plaintiff's new theory of the case is based were (or could have been) known to the Plaintiff years ago. As such, it has had at least several years to file a motion for leave to amend, and should not now be permitted to file the Proposed Amended Complaint at this late date.[5] See *Glaser*, 464 F.3d at 480; *McKnight* v. *Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1998) (denial of motion to amend

---

[5] The Investor Class Order, cited by the Plaintiff at p. 6 of its Memorandum in Support gave leave to amend **as to Bear Stearns** not as to any other party. The Investor Class Order was not a "free pass" to Plaintiff to amend whenever and against whomever it desired to do so.

upheld where the motion was filed a full year after the date of the initial pleading, and the plaintiff had been aware of the information on which his proposed amendment was based); *Scognamillo*, 587 F.Supp.2d at 1157-59.

Shorter periods have been found to constitute an undue delay. *See, e.g. Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (17-month delay); *Little*, 952 F.2d at 846 (more than a year after start of lawsuit); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (eight-month delay).

The Plaintiff's suggestion that it was awaiting errata sheets or other insubstantial discovery to file the Proposed Amended Complaint is, we respectfully submit, disingenuous. No evidence reflected on an errata sheet provides the basis for the new theory.

As Judge Motz found in his April 14, 2009 Opinion about the Janus and Putnam defendants, it is equally the case that Franklin was not on notice of the new theory by occasional questions in depositions. In that Opinion (at p. 2), Judge Motz found:

> .... I do not find that defendants were on notice of the new claims .... The various isolated items upon which plaintiffs rely to support their arguments must be considered against the background of the course of discovery, during which plaintiffs' claims as then stated were that defendants had intentionally or recklessly made material misrepresentations (or omissions) in the fund prospectuses, disguising their express or tacit permission of market timing in the mutual funds they controlled. Thus, **occasional references during discovery to alleged omissions in mutual fund prospectuses of warnings about damages caused to long-term investors by market timing does not in and of itself show that plaintiffs were asserting that defendants faced liability even if they made good faith efforts to control market timing**. (emphasis supplied)

*See also Dravo Corp. v. Ohio Power Co.*, 100 F.R.D. 307, 309-10 (N.D.Ohio 1983)("[t]he Court begins with the premise that a party need not complete its discovery

10

and assemble all of its proof before asserting its [amended pleading]"); *Johnson v. Methodist Medical Center of Illinois*, 10 F.3d 1300, 1303-04 (7th Cir. 1993), *cert. den.*, 511 U.S. 1107 (1994); *Phillips v. Village of Keyport*, 179 F.R.D. 140, 148-49 (D.N.J. 1998). There is just no excuse for the Plaintiff's undue delay in introducing a new, different theory of liability at this late stage.

\* \* \*

The explanation the Plaintiff offers for its delay actually indicates how undue that delay was. The Plaintiff states that "it took into consideration [*inter alia*] the opinions issued by Judge Motz on December 30, 2008 in the Janus and Putnam subtracks, and his April 14, 2009 Opinion in the RS subtrack." Plaintiff's Memorandum in Support, p. 10. Thus, the Plaintiff concedes that it was aware that its new theory had been advanced and rejected over six months before it filed the instant motion. Both the December 30, 2008 and April 14, 2009 Opinions in the Janus and Putnam cases contain an extensive discussion by Judge Motz of the Plaintiff's new theory. Judge Motz refused to allow the Janus and Putnam plaintiffs to introduce the new theory in amended complaints.

### C. Public Policy Weighs Against Granting Leave to Amend

The Plaintiff's motion should also be denied as a matter of public policy and judicial efficiency. As Judge Motz found in his April 14, 2009 Opinion:

> . . . it would be against sound public policy to permit any further amendments now. These MDL proceedings have been pending for over five years, and if I were to grant the requested amendments, considerations of justice and fairness would require that I reopen discovery and summary judgment briefing, resulting in still further delay. These MDL proceedings raise issues that seriously impact upon major financial institutions, the authorities that regulate them, and the investing public. Were I to allow the

>proceedings to further linger because of plaintiffs' failure to assert in any pleading prior to the completion of extensive discovery and the filing of summary judgment motions the claim they now espouse, the federal courts and the multi–district process would properly be subject to severe criticism for failing to efficiently manage and resolve issues of broad public importance on a timely basis. (emphasis supplied)

*Alpha Iota Omega Christian Fraternity* v. *Moeser,* 2006 U.S. Dist. LEXIS 28065, at *31 (M.D.N.C. May 4, 2006) ("Valid reasons to deny leave to amend include … waste of judicial resources…"). *See also Fort Howard Paper Co.,* 901 F.2d at 1380 ("[b]eyond prejudice to the parties, a trial court can deny amendment when concerned with costs that protracted litigation places on the courts. Delay impairs the 'public interest in the prompt resolution of legal disputes.'"); *Boyd* v. *United States,* 861 F.2d 106, 108 (5th Cir. 1988) ("court did not abuse its discretion in denying … motion for leave to amend as untimely filed [as the] request came late in the litigation and would have done little to assist the court in disposing the merits of the case."); *Perrian* v. *O'Grady,* 958 F.2d 192, 195 (7th Cir. 1992) ("The burden to the judicial system can justify a denial of a motion to amend 'even if the amendment would cause no hardship at all to the opposing party.'"); *Freeman* v. *Continental Gin Co.,* 381 F.2d 459, 469 (5th Cir. 1967) ("[a] busy district court need not allow itself to be imposed upon by the presentation of theories seriatim. Liberality in amendment is important to assure a party a fair opportunity to present his claims and defenses, but 'equal attention should be given to the proposition that there must be an end finally to a particular litigation.'").

* * *

The Plaintiff's cases are inapposite: none involves the adverse effect of allowing an amendment on relevant public policy or the burden on the judicial system, both of

which Judge Motz focused on in his April 14, 2009 Opinion. In addition, unlike the case at bar, none involves a delay of this length. *See, e.g. Ward Elec. Serv. v. First Commercial Bank,* 819 F.2d 496, 497 (4th Cir. 1987) (3 days between discovery of facts and motion to amend); *Island Creek Coal Co. v. Lake Shore, Inc.,* 832 F.2d 274, 279-80 (4th Cir. 1987) (three month delay from discovery of new facts); *Davis v. Piper Aircraft Corp,* 615 F.2d 606, 613 (4th Cir. 1980) (four month delay from discovery of new facts).

The Plaintiff's cases also fail to address the prejudice Franklin would suffer from having to defend against the proposed new theory – i.e. the substantial additional expense of re-opening fact discovery, and the possibility that witnesses may not even be able to be located or subpoenaed. *Davis,* 615 F.2d at 613; *Island Creek,* 832 F.2d at 280; *Ward Elec.* 819 F.2d at 997; *Bounds v. Pinnacle Special Police, Inc.,* 2006 U.S. Dist. LEXIS 98170 at *13 (E.D.N.C. Aug. 30, 2006); *Hill v. Brush Engineered Materials, Inc.,* 2007 U.S. Dist. LEXIS 11981 at **15, 16 (D.Md. Feb. 7, 2007); *Harold v. Cendo,* 1997 U.S. App. LEXIS 3230 at *10 (4th Cir. Nov. 26, 1997); *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999); *Medigen of Kentucky v. Public Service Commission of West Virginia,* 985 F.2d 165, 168 (4th Cir. 1993); *Connelly v. Nielsen,* 880 F. Supp. 1100, 1110 (E.D.Va. 1995); *Rowe v. United States Fidelity and Guaranty Co.,* 421 F.2d 937, 944 (4th Cir. 1970).

## Conclusion

The Plaintiff's Motion for Leave to File a Second Consolidated Amended Class Action Complaint should be denied.

Dated: August 21, 2009
New York, New York

                          POLLACK & KAMINSKY

                          By: s/ Daniel A. Pollack
                              Daniel A. Pollack
                              Edward T. McDermott
                              Anthony Zaccaria
                          245 Park Avenue, 27th Fl.
                          New York, NY 10167
                          Tel.: (212) 575-4700
                          *Attorneys for Franklin Defendants*

# Addendum A

This document has been filed under seal.