IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SHARKEY IRO/IRA | * | |
| | * | |
| v. | * | Case No.: 04-MD-15862, 04-MD-1310 |
| | * | |
| FRANKLIN RESOURCES, ET AL. | * | |
| | * | |
| | **** | |

## MEMORANDUM

Lead Plaintiff has filed a Motion for Leave to File a Second Consolidated Amended Class Action Complaint. The motion is granted in part and denied in part.

FACTS AND PROCEDURAL HISTORY

This motion arises in the Franklin Templeton Subtrack of the multi-district litigation *In re Mutual Funds Investment Litigation*. On September 29, 2004, Lead Plaintiff, Deferred Compensation Plan for Employees of Nassau County ("Plaintiff"), on behalf of itself and similarly situated investors in Franklin Templeton mutual funds, filed a Consolidated Amended Class Action Complaint ("CAC") against various entities, and their employees and trustees, that controlled the operation of Franklin Templeton mutual funds ("FT Defendants"). (*See* Cons. Amended Class Action Complaint ("Pl.'s CAC") ¶¶ 15–41, 238–39.) Among others, the CAC also named former Franklin employee William Post as a defendant. (*See id.* at ¶ 46.)

1

The CAC alleged that FT Defendants facilitated and/or intentionally permitted "market timing"[1] in Franklin Templeton mutual funds. (*See id.* at ¶ 2.) More specifically, the CAC alleged that FT Defendants "negotiated to give market timers . . . market timing capacity to trade FT Funds in exchange for leaving millions of dollars in FT hedge funds on a long-term basis." (*Id.* at ¶ 5; *accord id.* at ¶¶ 145–60.) The CAC also accused FT Defendants of "permitting and/or acquiescing in large-scale market timing in FT Funds. . . . [because of] the fees and profits they generated for the FT entity complex." (*Id.* at ¶ 8; *accord id.* at ¶ 3.) Further, "FT prospectuses covering the issuance of shares of the Funds . . . misled investors into believing that the Funds prevented [market timing] through the imposition of various trading restrictions and redemption fees." (*Id.* at ¶ 3.) The CAC therefore asserted that FT Defendants violated federal securities law—including Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5—by knowingly or recklessly failing to disclose to investors that FT Defendants were intentionally permitting market timing in Franklin Templeton mutual funds. (*See id.* at ¶ 278–309.)

The parties have engaged in years of discovery. On June 27, 2008, Judge Andre Davis[2] dismissed claims against many of the original defendants, and ordered that fact discovery end by September 30, 2008. (*See* Stipulation of Extension of Time for Completion of Fact Discovery, *Sharkey IRO/IRA v. Franklin Resources*, 04-md-1310 (June 27, 2008); Investor Class Order, *Sharkey IRO/IRA v. Franklin Resources*, 04-md-1310 (June 27, 2008).) On September 9, 2008, the parties agreed to a stipulation extending discovery to December 31, 2008, though Judge Davis never signed that stipulation. (*See* Mem. Law in Support of Lead Pl.'s Mot. for Leave to File Second Cons. Amended Class Action Complaint ("Pl.'s Mem.") 2–3.) The last fact witness

---

[1] Market timing is "the frequent buying and selling of mutual fund shares to exploit any lag time between changes in the value of the fund's portfolio of securities and the reflection of that change in a mutual fund's share price." *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 845, 852, n.1 (D. Md. 2005) (internal citations and quotations omitted).

[2] This case was transferred to me from Judge Davis earlier this year.

2

deposition was conducted on December 30, 2008. (Franklin Def.'s Mem. Law in Opp. to Pl.'s Mot. (Def.'s Mem.) 6.) FT Defendants filed their Answer on January 5, 2009, though Defendant William Post has yet to file an answer. (Pl.'s Mem. at 3.) Defendants submitted errata sheets amending deposition testimony as recently as April 30, 2009. (*Id.*)

On June 16, 2009, Plaintiff filed a Motion for Leave to File Second Consolidated Amended Class Action Complaint ("Motion to Amend"). Plaintiff's proposed Second Consolidated Amended Class Action Complaint ("Proposed Second Amended Complaint") retains only five of the original thirteen claims: two claims for violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5; one claim for violations of Section 20(a) of the Exchange Act; one claim for violations of Section 37(b) of the Investment Company Act; and one claim for violations of Section 48(a) of the Investment Company Act. (Lead Pl.'s Mot. for Leave, Ex. A ("Pl.'s SCAC") at ¶¶ 274–320.) In light of settlement negotiations and Judge Davis' June 2008 order, the Proposed Second Amended Complaint drops various parties from the action. (*See generally* Pl.'s SCAC.) It also adds "evidentiary detail," obtained through discovery, to the existing theory of the case. (*See* Def.'s Mem. at 1 n.1.; *see generally* Pl.'s SCAC.)

Most notably, the Proposed Second Amended Complaint includes a theory of liability not raised in the CAC: FT Defendants knowingly failed to disclose their *inability* to control market timing. Plaintiff continues to argue that FT Defendants violated the Exchange Act and SEC Rule 10b-5 by knowingly or recklessly failing to disclose agreement(s) authorizing market timing, as well as by failing to disclose that FT Defendants intentionally permitted other market timing. (*See, e.g.*, Pl.'s SCAC at ¶¶ 274–75, 278, 286, 291, 298; *see generally* Pl.'s SCAC.) However, the Proposed Second Amended Complaint also includes a new theory that FT Defendants violated these securities laws by knowingly failing to disclose that FT Defendants were *aware* of

ongoing *unwanted* market timing in Franklin Templeton mutual funds, and, despite genuine efforts to stop it, *could not* prevent or control that unauthorized market timing. (*See, e.g.*, Pl.'s SCAC at ¶¶ 3–4 (emphasis added).)

FT Defendants subsequently filed a Memorandum of Law in Opposition to Plaintiff's Motion.³ FT Defendants object to the addition of this new theory of the liability, but do not object to portions of the Proposed Second Amended Complaint "that (1) drop parties, (2) drop claims, and (3) add so-called 'evidentiary detail' to the existing theory of the case, i.e. failure to disclose alleged secret agreements with known market timers." (*See* Def.'s Mem. at 1 n.1.)

## DISCUSSION

1. Plaintiff's Amendments to CAC which Add a New Theory of Liability

This Court denies Plaintiff's Motion to Amend to include the new theory of liability because it was filed with undue delay and permitting Plaintiff to move forward with the new theory would prejudice FT Defendants.

   a. Denying Motion to Amend is Appropriate when Amendment was Filed with Undue Delay *and* It would Prejudice the Non-Moving Party

After a defendant has served a responsive pleading, a plaintiff may only amend a pleading "with the opposing party's written consent or the court's leave." *See* FED. R. CIV. P. 15(a)(1)(B); *Medigen of Kt., Inc. v. Pub. Serv. Comm'n of W.Va.*, 985 F.2d 164, 167 (4th Cir. 1993) (internal citations omitted). Although this Court "should freely give leave when justice so requires[,]" FED. R. CIV. P. 15(a)(1)(B); *see Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999); *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987), it "retains the power to ensure

---

³ Plaintiff asserts that Defendant William Post "has agreed to defer serving his Answer to the CAC until after Plaintiff serves the Second Amended Complaint, in the interests of efficiency and economy." (Pl.'s Mem. at 5.)

4

that pleadings perform their proper function of framing the issues and facilitating the fair conduct of litigation." *Deasy*, 833 F.2d at 42. "Leave . . . should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards*, 178 F.3d at 242 (internal citations omitted) (emphasis in original). Though mere delay is insufficient to deny leave, *see, e.g.*, *id.* at 243, a court may deny a motion to amend where undue delay *and* prejudice to the non-moving party would result. *See id.* at 242 (emphasis added); *Deasy*, 833 F.2d at 40.

Undue delay may exist when there is no reasonable justification for a delay between the moving party becoming aware of the need to alter the complaint and the actual filing of the motion to amend. *Cf. Deasy*, 833 F.2d at 41 (affirming finding of undue delay in filing a motion just before trial and after the completion of discovery because expert disclosures indicated that the plaintiff had information necessary to amend the complaint three months prior to trial and failed to offer any reason for the delay); *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279–80 (4th Cir. 1987) (though "long," no undue delay for motion filed three and a half years into the litigation and three months after the plaintiff was put on notice of additional facts giving rise to the amendment because "there was a reasonable justification": three months was "a reasonable time . . . to investigate through other sources the information they had secured").

A motion to amend may prejudice the non-moving party when the motion would shift the theory of the case, thereby rendering the non-moving party's prior discovery a misdirected use of resources and compelling the non-moving party to engage in costly additional discovery. *See Deasy*, 833 F.2d at 41–42 (though new claim was "hint[ed]" at in an expert witness statement, affirming trial court's determination that motion to amend would prejudice the defendant—even if trial was continued to provide time to conduct more discovery—because the new claim would

5

"alter substantially the nature of the lawsuit", the "defendant could quite sensibly have decided not to commit her resources to a shadowy claim that plaintiff may or may not have been serious about raising", and the new claim would require gathering proof of an "entirely different character"). *But cf. Johnson v. Orowheat Food Co.*, 785 F.2d 503, 510 (4th Cir. 1986) ("[P]rejudice can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party, but that basis for a finding of prejudice essentially applies where the amendment is offered shortly before or during trial."). It follows that the longer the delay in filing the motion, the more the non-moving party will have wasted resources on misdirected discovery, and the greater the prejudice that may result. *Cf. Deasy*, 833 F.2d at 42 ("Belated claims which change the character of litigation are not favored.").

b.  <u>Plaintiff filed the Motion to Amend with Undue Delay</u>

The Motion to Amend was filed almost five years into the litigation and more than six months after the mutually agreed-upon December 2008 discovery deadline. By its own admission, Plaintiff was aware of facts suggesting FT Defendants could not control market timing in certain Franklin Templeton mutual funds at least fourteen months prior to filing its Motion to Amend. (Reply Mem. of Law in Further Support of Lead Pl.'s Motion ("Pl.'s Reply") 14, n.18.) Further, Plaintiff appears to acknowledge that it was contemplating filing this Motion to Amend as early December 2008. (*See* Def.'s Mem. at 11 (quoting Pl's Mem. at 10 (justifying the delay, in part, by arguing, "Plaintiff also took into consideration the opinions issued by Judge Motz on December 30, 2008 . . . and April 14, 2009."))).) The fact that the Franklin Templeton Subtrack has lagged behind other subtracks—summary judgment motions have yet to be filed, expert reports have not been prepared, and FT Defendant's answer was not filed until January 5,

6

2009—simply does not justify Plaintiff waiting five years into the litigation, at least fourteen months after becoming aware of FT Defendants' inability to control market timing, and at least six months after first contemplating the Motion to Amend.

    c. <u>The Addition of the New Theory of the Case would Prejudice FT Defendants</u>

  Permitting Plaintiff, at this stage in the litigation, to introduce the theory that FT Defendants knowingly or recklessly failed to disclose that they were unable to prevent market timing would prejudice FT Defendants. First, this allegation is in fact a new theory of the case. Plaintiff notes that the CAC alleges FT Defendants intentionally *permitted* market timing even outside of express agreements with market timers. However, the CAC never alleges that FT Defendants were *aware* of their *inability* to prevent market timing even when they genuinely sought to prevent it. Rather, it focuses on FT Defendants' incentives to encourage, allow, and/or ignore certain market timing. (*See generally* Pl.'s CAC.) A substantial and meaningful difference exists between (1) claims based on a knowing failure to disclose either express agreements to allow market timing or the intentional allowance of market timing and (2) claims based on a knowing failure to disclose an inability to control market timing despite good faith efforts to prevent it. As this Court noted when plaintiffs in the Janus and Putnam subtracks moved to add a similar theory, "[a]lthough abstractly the new claims may seem to constitute only a subtle shift, they substantially change the focus of the litigation that has been pending [for] several years." *In re Mut. Funds Inv. Litig.*, 590 F. Supp. 2d 741, 750 (D. Md. 2008).

  Second, FT Defendants lacked notice of this new theory prior to Plaintiff filing the Motion to Amend. This Court noted in the Janus and Putnam subtracks that whether "various isolated items" in discovery put defendants on notice of a new claim "must be considered against

7

the background of the course of discovery[.]" *See In re Mut. Funds Inv. Litig.*, 608 F. Supp. 2d 670, 671 (D. Md. 2009). Plaintiff asserts that FT Defendants were on notice of the uncontrolled market timing theory of liability because "defendants' own witnesses were questioned at length in depositions concerning Franklin Templeton's failure to inform shareholders of the prevalence of market timing . . . and Franklin Templeton's inability to control it." (Pl.'s Mem. at 14.) The mere fact that FT Defendants' witnesses were questioned about FT Defendants' inability to control market time does not by itself mean that FT Defendants should have known that Plaintiff was planning to use that alleged inability, and FT Defendants awareness of it, as a basis for a claim. In fact, Plaintiff notes that FT Defendants' used their inability to control market timing as a *defense* to Plaintiff's claims. (Pl.'s Reply at 11, n.11.) In light of the fact that "[t]he burden rests primarily upon the plaintiff to amend his complaint, not upon the defendant to anticipate a new claim[,]" *see Deasy*, 833 F.2d at 41, the discovery material that Plaintiff points to did not put FT Defendants on notice that Plaintiff's intended to add this new theory.

      Finally, considering that FT Defendants were not previously on notice of a new theory of liability, FT Defendants would in fact be required to engage in costly additional discovery to defend against this theory. Plaintiff argues that new discovery would be unnecessary because this claim is "wholly derived from" depositions, at which FT Defendants' counsel was present, of FT Defendants' own witnesses. (*See* Pl.'s Reply at 4.) This argument is unavailing. At the very least, FT Defendants' counsel would be required depose and re-depose witnesses about the extent of FT Defendants' alleged inability to control the market timing and FT Defendants' alleged awareness of this inability. (*See* Def.'s Mem. at 6–7.) Additionally, allowing Plaintiff to move forward with this new theory would render a portion of the past discovery—which included years of work, numerous depositions, and FT Defendants producing over two million pages of

documents—a waste of resources. Prejudice stemming from requiring a party to engage in additional fact investigation generally only arises when that additional investigation is required on the eve of trial. *See Johnson*, 785 F.2d at 510. However, the unique length and complexity of this multi-district litigation, coupled with FT Defendants' interest in resolving it expeditiously,[4] results in particularly significant prejudice to FT Defendants were they to be required to re-initiate discovery at this stage in the litigation.

For the aforementioned reasons, this Court denies Plaintiff leave to amend the CAC to add the theory of liability first introduced in the Proposed Second Amended Complaint: that FT Defendants knowingly or recklessly failed to disclose that they were unable to prevent market timing even when they attempted in good faith to prevent such market timing.

2. <u>Plaintiff's Amendments that Drop Parties, Drop Claims, and Add Evidentiary Detail to the Existing Theory of the Case</u>

Considering FT Defendants do not object to the amendments "that (1) drop parties, (2) drop claims, and (3) add so-called 'evidentiary detail' to the existing theory of the case, i.e. failure to disclose alleged secret agreements with known market timers[,]" (*see* Def.'s Mem. at 1 n.1.), Plaintiff is granted leave to make such amendments. Additionally, this Court finds there is no prejudice to FT Defendants in allowing Plaintiff to add "evidentiary detail" to the Plaintiff's claim, also included in the CAC, that FT Defendants knowingly failed to disclose that they intentionally permitted certain market timing to occur outside of express agreements with known market timers. This Court therefore grants leave to allow Plaintiff to add that evidentiary detail.

---

[4] As this Court has previously noted, this multi-district mutual fund litigation "raise[s] issues that seriously impact upon major financial institutions, the authorities that regulate them, and the investing public" and this Court must therefore make every effort to "efficiently manage and resolve [these] issued of broad public importance on a timely basis." *See In re Mut. Funds Inv. Litig.*, 608 F. Supp. 2d at 671.

DATE:  10/22/2009                    /s/_____

                                            J. Frederick Motz

                                            United States District Judge