**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

|  |  |  |  |
|---|---|---|---|
| | ) | **MDL No. 1586** | |
| **IN RE MUTUAL FUNDS INVESTMENT** | ) | **Case Nos.** | **04-15861-CBB** |
| **LITIGATION** | ) | | **04-15862-JFM** |
| | ) | | **04-15863-JFM** |
| **[All Settling Sub-Tracks]** | ) | | **04-15864-CBB/JFM** |
| | ) | | |

**PLAINTIFFS' OMNIBUS MEMORANDUM OF LAW**
**IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED SETTLEMENTS**

Dated:  April 21, 2010

# TABLE OF CONTENTS

I.      THE CRITERIA FOR PRELIMINARY APPROVAL OF
        CLASS ACTION SETTLEMENTS .................................................................... 1

II.     THE FORM AND METHOD OF NOTICE TO CLASS MEMBERS.............................. 4

III.    THE STANDARDS FOR CERTIFYING A SETTLEMENT CLASS
        UNDER RULES 23(a) AND 23(b)(3)................................................................ 7

        A.      The Requirements of Rule 23(a)............................................................ 8

                1.      Numerosity.......................................................................... 8

                2.      Commonality........................................................................ 9

                3.      Typicality ........................................................................... 10

                4.      Adequacy ............................................................................ 12

        B.      The Requirements of Rule 23(b)(3)...................................................... 12

                1.      Predominance...................................................................... 13

                2.      Superiority.......................................................................... 13

IV.     NOTICE AND APPROVAL OF FUND DERIVATIVE SETTLEMENTS.................... 15

        A.      The Standards for Providing Notice
                of the Proposed Fund Derivative Settlements...................................... 15

        B.      The Standards for Review and Approval
                of the Proposed Fund Derivative Settlements...................................... 17

V.      THE STANDARDS FOR CERTIFYING AN ERISA CLASS ....................................... 18

        A.      The Requirements of Rule 23(a)........................................................... 18

                1.      Numerosity......................................................................... 18

                2.      Commonality....................................................................... 18

                3.      Typicality ........................................................................... 18

                4.      Adequacy ........................................................................... 19

        B.      The Requirements of Rule 23(b).......................................................... 19

1. The Requirements of Rule 23(b)(1)........................................................... 19

2. The Requirements of Rule 23(b)(2)........................................................... 22

3. The Requirements of Rule 23(b)(3)........................................................... 22

C. The Proposed Notice To The ERISA Classes........................................................ 23

VI. CONCLUSION............................................................................................................ 23

## TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.,*
   No. 05-232, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) .......................................................4

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997)......................................................................................................13, 14

*Banyai v. Mazur,*
   205 F.R.D. 160 (S.D.N.Y. 2002) ...........................................................................................20

*In re BearingPoint, Inc. Sec. Litig.,*
   232 F.R.D. 534 (E.D. Va. 2006) .....................................................................................10, 13

*Beaulieu v. EQ Indus. Servs., Inc.,*
   No. 5:06-CV-00400-BR, 2009 WL 2208131 (E.D.N.C. July 22, 2009) ...................2, 3, 5, 10

*Becher v. Long Island Lighting Co.,*
   164 F.R.D. 144 (E.D.N.Y. 1996) ...........................................................................................21

*Brady v. Thurston Motor Lines,*
   726 F.2d 136 (4th Cir. 1984) ...................................................................................................8

*Bublitz v. E.I. du Pont de Nemours & Co.,*
   202 F.R.D. 251 (S.D. Iowa 2001) ..........................................................................................22

*Bulmash v. Travelers Indem. Co.,*
   257 F.R.D. 84 (D. Md. 2009)..............................................................................9, 10, 12, 13

*Bunnion v. Consol. Rail Corp.,*
   No. Civ. A. 97-4877, 1998 WL 372644 (E.D. Pa. May 14, 1998) .........................................20

*Cent. Wesleyan Coll. v. W.R. Grace & Co.,*
   6 F.3d 177 (4th Cir. 1993) .......................................................................................................8

*Clauser v. Newell Rubbermaid, Inc.,*
   No. CIV. A. 99-5753, 2000 WL 1053395 (E.D. Pa. July 31, 2000).......................................20

*Comer v. Life Ins. Co.,*
   No. 0:08-228-JFA, 2010 WL 233857 (D.S.C. Jan. 14, 2010) .......................................9, 12, 13

*In re Computer Scis. Corp. ERISA Litig.,*
   No. CV 08-02398, 2008 WL 7527872 (C.D. Cal. Dec. 29, 2008) ....................................22, 23

*Cromer Fin. Ltd. v. Berger,*
   205 F.R.D. 113 (S.D.N.Y. 2001) ...........................................................................................14

*Daily Income Fund, Inc. v. Fox*,
    464 U.S. 523 (1984)......................................................................................................15

*DeJulius v. New England Health Care Employees Pension Fund*,
    429 F.3d 935 (10th Cir. 2005) ......................................................................................7

*In re Drexel Burnham Lambert Group, Inc.*
    960 F.2d 285 (2d Cir. 1992)........................................................................................12

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
    No. 98 Civ. 4318 (HB), 2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000)...................11

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)..................................................................................................6, 7

*In re FedEx Ground Package Sys., Inc. Employment Practices Litig.*,
    No. 3:05-MD-527 RM, 2007 U.S. Dist. LEXIS 76798
    (N.D. Ind. Oct. 15, 2007)...........................................................................................23

*Feret v. CoreStates Fin. Corp.*,
    No. CIV. A. 97-6759, 1998 WL 512933 (E.D. Pa. Aug. 18, 1988) .........................20

*Fidel v. Farley*,
    534 F.3d 508 (6th Cir. 2008) ........................................................................................6

*Flinn v. FMC Corp.*,
    528 F.2d 1169 (4th Cir. 1975) ......................................................................................4

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)............................................................................................1

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................................20, 22

*Grice v. PNC Mortgage Corp.*,
    No. Civ A PJM-97-3084, 1998 WL 350581 (D. Md. May 21, 1998) ...............2, 3, 9

*Gruby v. Brady*,
    838 F. Supp. 820 (S.D.N.Y. 1993)........................................................................20, 21

*Grunewald v. Kasperbauer*,
    235 F.R.D. 599 (E.D. Pa. 2006)....................................................................................5

*Gunnells v. Healthplan Servs., Inc.*,
    348 F.3d 417 (4th Cir. 2003) ...................................................................................8, 13

*Harris v. McCrackin*,
    No. 2:03-3845-23, 2006 WL 1897038 (D.S.C. July 10, 2006)..............................4, 10

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    855 F. Supp. 825 (E.D.N.C. 1994).......................................................................2, 3

*Hoxworth v. Blinder, Robinson & Co., Inc.*,
    980 F.2d 912 (3d Cir. 1992)...................................................................................11

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    191 F.R.D. 457 (E.D. Pa. 2000)..................................................................19, 20, 21

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)........................................................................17, 20

*In re Jiffy Lube Sec. Litig.*,
    927 F.2d 155 (4th Cir. 1991) ...........................................................................1, 2, 3

*Jones v. Murphy*,
    256 F.R.D. 519 (D. Md. 2009).........................................................................10, 13

*Kane v. United Indep. Union Welfare Fund*,
    No. 97-1505, 1998 WL 78985 (E.D. Pa. Feb. 24, 1998) ........................................20

*Kernan v. Holiday Universal, Inc.*,
    No. JH90-971, 1990 WL 289505 (D. Md. Aug. 14, 1990)........................................9

*In re Kirshner Med. Corp. Sec. Litig.*,
    139 F.R.D. 74 (D. Md. 1991)...............................................................9, 10, 12, 14

*Klein ex rel. SICOR Inc. v. Salvi*,
    02 Civ. 1862 (AKH), 2004 U.S. Dist. LEXIS 4844
    (S.D.N.Y. Mar. 26, 2004), *aff'd*, 115 Fed. Appx. 515 (2d Cir. 2004) ....................16

*Koch v. Dwyer*,
    No. 98 Civ 5519 (RPP), 2001 U.S. Dist. LEXIS 4085
    (S.D.N.Y. Mar. 23, 2001) .......................................................................................20

*Kolar v. Rite Aid Corp.*,
    No. 01-1229, 2003 WL 1257272 (E.D. Pa. Mar. 11, 2003) ...................................20

*Lewis v. Select Portfolio Servs., Inc.*,
    No. RDB-06-232, 2006 WL 1896176 (D. Md. July 10, 2006).................................6

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
    No. 1:08cv1310 (AJT/JFA), 2009 WL 3094955 (E.D. Va. Sept. 28, 2009) ............1

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985)................................................................................................20

*Mathes v. Roberts*,
    85 F.R.D. 710 (S.D.N.Y. 1980) .......................................................................17

*Maywalt v. Parker & Parsley Petroleum Co.*,
    147 F.R.D. 51 (S.D.N.Y. 1993) .......................................................................11

*Mehling v. N.Y. Life Ins. Co.*,
    246 F.R.D. 467 (E.D. Pa. 2007)........................................................................3

*In re Merck & Co. Sec., Derivative & ERISA Litg.*,
    MDL No. 1658, 2009 WL 331426 (D.N.J. Feb. 10, 2009).............................18, 19

*In re Metro. Life Derivative Litig.*,
    935 F. Supp. 286 (S.D.N.Y. 1996).................................................................16

*In re MicroStrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) .............................................................1, 6

*In re Mid-Atlantic Toyota Antitrust Litig.*,
    564 F. Supp. 1379 (D. Md. 1983) ...................................................................2, 3

*Mitchell-Tracey v. United Gen. Title Ins. Co.*,
    237 F.R.D. 551 (D. Md. 2006)...........................................................8, 9, 10, 12

*Muhammad v. Nat'l City Mortgage, Inc.*,
    No. 2:07-0423, 2008 WL 5377783 (S.D.W.Va. Dec. 19, 2008) ...........................4

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)........................................................................................6

*In re Nissan Motor Corp. Antitrust Litig.*,
    552 F.2d 1088 (5th Cir. 1977) ........................................................................6, 7

*Nolan v. Reliant Equity Investors, LLC*,
    No. 3:08-CV-62, 2009 WL 2461008 (N.D.W.Va. Aug. 10, 2009) .........................9

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)....................................................................................21, 22

*In re PaineWebber Ltd. P'ship Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)...................11

*Peoples v. Wendover Funding, Inc.*,
    179 F.R.D. 492 (D. Md. 1998)........................................................................12

*In re Pittsburgh & Lake Erie R.R. Co. Sec. & Antitrust Litig.*,
    543 F.2d 1058 (3d Cir. 1976)..........................................................................17

*In re PMC-Sierra, Inc. Derivative Litig.*,
    No. C-06-5330-RS, 2010 U.S. Dist. LEXIS 5818 (N.D. Cal. Jan. 26, 2010).........................16

*Pottish v. Divak*,
    71 F. Supp. 737 (S.D.N.Y. 1947)..........................................................................................16

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ...........................................................................................11

*Rankin v. Rots*,
    220 F.R.D. 511 (E.D. Mich. 2004) ........................................................................................20

*Robinson v. Fountainhead Title Group Corp.*,
    257 F.R.D. 92 (D. Md. 2009)..................................................................................................13

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    437 F. Supp. 2d 467 (D. Md. 2006) .........................................................................................2

*S.C. Nat'l Bank v. Stone*,
    139 F.R.D. 325 (D.S.C. 1991) ..........................................................................................12, 14

*S.C. Nat'l Bank v. Stone*,
    139 F.R.D. 335 (D.S.C. 1991) .................................................................................................4

*S.C. Nat'l Bank v. Stone*,
    749 F. Supp. 1419 (D.S.C. 1990)......................................................................................2, 6, 8

*Scardelletti v. Debarr*,
    43 Fed. Appx. 525 (4th Cir. 2002)...........................................................................................1

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994) ...................................................................................................6

*Tedesco v. Mishkin*,
    689 F. Supp. 1327 (S.D.N.Y. 1988)........................................................................................11

*In re Telik, Inc., Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008).......................................................................................4

*In re The Mills Corp. Sec. Litig.*,
    --- F.R.D. ---, 2009 WL 5091931 (E.D. Va. Dec. 23, 2009) ................................................3, 8

*In re The Mills Corp. Sec. Litig.*,
    257 F.R.D. 101 (E.D. Va. 2009) ...................................................................................12, 13, 14

*Thomas v. SmithKline Beecham Corp.*,
    201 F.R.D. 386 (E.D. Pa. 2001)..............................................................................................20

*Twyman v. Rockville Hous. Auth.,*
    99 F.R.D. 314 (D. Md. 1983) .............................................................................. 10

*Unite Nat'l Ret. Fund v. Watts,*
    No. 04-CV-3603 (DMC), 2005 U.S. Dist. LEXIS 26246 (D.N.J. Oct. 27, 2005) ................... 17

*United States v. North Carolina,*
    180 F.3d 574 (4th Cir. 1999) ............................................................................... 3

*In re United Telecomm., Inc. Sec. Litig.,*
    151 F.R.D. 127 (D. Kan. 1993) ............................................................................. 7

*In re UnitedHealth Group Inc. S'holder Derivative Litig.,*
    591 F. Supp. 2d 1023 (D. Minn. 2008) ................................................................. 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
    396 F.3d 96 (2d Cir. 2005) .............................................................................. 4, 5

*In re WorldCom Inc. Sec. Litig.,*
    219 F.R.D. 267 (S.D.N.Y. 2003) ........................................................................ 13

*Zimmerman v. Bell,*
    800 F.2d 386 (4th Cir. 1986) ......................................................................... 15, 17


**STATUTES & RULES**

15 U.S.C. § 78u-4(a)(7) ................................................................................... 4, 6

Fed. R. Civ. P. 23 ........................................................................................... 4, 8

Fed. R. Civ. P. 23(a) ................................................................................. *passim*

Fed. R. Civ. P. 23(b) ..................................................................... 8, 12, 19, 21

Fed. R. Civ. P. 23(b)(1) ............................................................... 19, 20, 21, 22

Fed. R. Civ. P. 23(b)(2) ................................................................................. 22

Fed. R. Civ. P. 23(b)(3) .............................................................................. *passim*

Fed. R. Civ. P. 23(c)(2) ............................................................................ 5, 6, 7

Fed. R. Civ. P. 23(e) ................................................................................. 1, 2, 5

Fed. R. Civ. P. 23.1 ............................................................................. 15, 16, 17

**OTHER AUTHORITIES**

19 AM. JUR. 2d CORP. § 2126 (2010) ............................................................................16

7AA CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL
    PRACTICE & PROCEDURE § 1788 (3d ed. 2010) ........................................................7

7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL
    PRACTICE & PROCEDURE § 1839 (3d ed. 2010) ......................................................16

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2004) ....................................2

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.633 (2004) ....................................5

*Newberg on Class Actions* § 4.01, at 185 (1977) ........................................................19

Lead Plaintiffs, by their undersigned counsel, respectfully submit this memorandum of law in support of their respective motions for preliminary approval of the proposed settlements that they have reached in the Alger, Alliance, Allianz Dresdner, Columbia, Excelsior, Federated, Janus, Invesco, MFS, Nations, One Group/Bank One, Pilgrim Baxter, Putnam, RS, Scudder, and Strong sub-tracks, respectively.  This memorandum sets forth the legal standards applicable to the approval of the proposed settlements and is intended to increase efficiency and reduce any burdens on the Court and any interested parties by eliminating repetition of the applicable legal standards in the memoranda that address matters specific to each sub-track.  Lead Plaintiffs respectfully refer the Court to the separate supplemental briefs filed by the parties in their respective sub-tracks for sub-track specific facts, analysis and additional argument in support of preliminary settlement approval.

I.     **THE CRITERIA FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS**

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class action claims.  Approval of a proposed class action settlement is a matter within the sound discretion of the district court.  *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991); *Scardelletti v. Debarr*, 43 Fed. Appx. 525, 528 (4th Cir. 2002); *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001).  That discretion should be exercised in the context of the strong public policy favoring the settlement of class actions and other complex litigation.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved"); *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1310 (AJT/JFA), 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) ("there is an overriding public interest in favor of settlement,

particularly in class action suits"); *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) (same).

Courts in the Fourth Circuit generally follow a two-step process in reviewing a proposed class action settlement for approval.  In the first step, "the court conducts a preliminary approval or pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval' or, in other words, whether there is 'probable cause' to notify the class of the proposed settlement." *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994); *see Jiffy Lube*, 927 F.2d at 158; *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-00400-BR, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009); *Grice v. PNC Mortgage Corp.*, No. Civ A PJM-97-3084, 1998 WL 350581, at *2 (D. Md. May 21, 1998); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2004).

In the second step, assuming that the court grants preliminary approval and following dissemination of notice to the class, the Court conducts a fairness hearing, at which "all interested parties are afforded an opportunity to be heard on the proposed settlement" and then makes a final determination on approval.  *Horton*, 855 F. Supp. at 827; *see Jiffy Lube*, 927 F.2d at 158-59; *Beaulieu*, 2009 WL 2208131, at *23; *Grice*, 1998 WL 350581, at *2; *Mid-Atlantic Toyota*, 564 F. Supp. at 1384.

In evaluating whether a class settlement warrants final approval, the district court must decide whether the proposed settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 437 F. Supp. 2d 467, 468 (D. Md. 2006); *Horton*, 855 F. Supp. at 827.  In applying this standard, the Fourth Circuit has bifurcated the analysis into two principal components:  (1) considerations of *fairness*, which focus on whether

the proposed settlement was the result of good-faith, arms'-length negotiations, and (2) considerations of *adequacy*, which focus on whether the settlement consideration provided to class members is sufficient in light of the risks and costs of continued litigation.  *See Jiffy Lube*, 927 F.2d at 158-59; *Beaulieu*, 2009 WL 2208131, at *23.  The factors to be considered in assessing the *fairness* of a proposed settlement are:

> (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities class action litigation.

*Jiffy Lube*, 927 F.2d at 159; *see United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999); *In re The Mills Corp. Sec. Litig.*, --- F.R.D. ---, 2009 WL 5091931, at *7 (E.D. Va. Dec. 23, 2009).  The factors to be assessed in determining the *adequacy* of a settlement are:

> (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.

*Jiffy Lube*, 927 F.2d at 159; *see The Mills Corp.*, 2009 WL 5091931, at *7.

At preliminary approval, the Court need only conduct a preliminary review of a proposed settlement to ensure that it "does not disclose grounds to doubt its fairness or other deficiencies," *Grice*, 1998 WL 350581, at *2, and that its terms fall "within the range of possible approval." *Beaulieu*, 2009 WL 2208131, at *23; *see Horton*, 855 F. Supp. at 827; *Mid-Atlantic Toyota*, 564 F. Supp. at 1384 (at the preliminary approval stage, the court should simply make a determination that there is "'probable cause' to submit the proposal to members of the class") (quoting MANUAL FOR COMPLEX LITIGATION § 1.46 (5th ed. 1982)); *see also Mehling v. N.Y. Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007) ("In evaluating a proposed settlement for

preliminary approval . . . the Court is required to determine only whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies . . . and whether it appears to fall within the range of possible approval") (internal quotation marks omitted).

In conducting this preliminary review, the Court should afford a presumption of fairness to settlements that have been negotiated at arms' length by capable and experienced counsel.  *See Harris v. McCrackin*, No. 2:03-3845-23, 2006 WL 1897038, at *5 (D.S.C. July 10, 2006); *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *In re Telik, Inc., Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008).

Similarly, the Court should give substantial weight to the opinion and recommendations of experienced counsel.  *See Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) ("While the opinion and recommendation of experienced counsel is not to be blindly followed . . . such opinion should be given weight in evaluating the proposed settlement."); *Muhammad v. Nat'l City Mortgage, Inc.*, No. 2:07-0423, 2008 WL 5377783, at *4 (S.D.W.Va. Dec. 19, 2008) ("The opinion of class action counsel, with substantial experience in litigation of similar size and scope, is an important consideration"); *In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*, No. 05-232, 2008 WL 4974782, at *9 (E.D. Pa. Nov. 21, 2008) ("A court should give significant weight to the opinion of experienced counsel that the settlement is in the best interests of the class.").  Each of the undersigned counsel here support the approval of the proposed settlements in their respective sub-tracks.

## II.    THE FORM AND METHOD OF NOTICE TO CLASS MEMBERS

The proposed forms and methods of notice to be provided to the Settlement Classes must comply with all the requirements of Rule 23; the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(7); and due process.  Because the notice of pendency

4

of these class actions will occur simultaneously with notice of the settlements, the notice program must comply with both the requirements of Rule 23(c)(2), concerning notice of the pendency of a class action, and Rule 23(e), concerning notice of a settlement of such an action. *See Beaulieu*, 2009 WL 2208131, at *28 (approving combined notice of class action and proposed settlement); *Grunewald v. Kasperbauer*, 235 F.R.D. 599, 609 (E.D. Pa. 2006) (same); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.633 (2004).

   ***Content of the Notices***. Notice of a class action certified under Rule 23(b)(3) "must clearly and concisely state in plain, easily understood language" (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) information about class members' rights to enter an appearance through an attorney; (v) information about class members' rights to exclude themselves from the class; (vi) the timing and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members who do not exclude themselves. Fed. R. Civ. P. 23(c)(2)(B); *see Beaulieu*, 2009 WL 2208131, at *27-*28. In addition, under Rule 23(e), notice of a settlement must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings" *Beaulieu*, 2009 WL 2208131 at *28 (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975)); *see also Wal-Mart*, 396 F.3d at 114 (same). The parties must also identify any agreement made in connection with the proposed settlement. *See* Fed. R. Civ. P. 23(e)(3).

   The PSLRA also imposes certain additional content requirements concerning the notice of settlements of actions governed by that statute, including (a) the amount of the proposed settlement, in the aggregate and on average per share basis; (b) if the parties agree on potentially recoverable damages, a statement concerning the average amount of such potential damages per

share, or if the parties do not agree, a statement concerning the issues on which the parties disagree; (c) the amount of attorneys' fees and costs that will be sought by plaintiffs' counsel; (d) contact information for representatives of plaintiffs' counsel; and (e) a brief statement explaining why the parties are proposing the settlement. *See* 15 U.S.C. § 78u-4(a)(7).

***Method of Notice.*** A class certified under Rule 23(b)(3) must receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The notice must be "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). As long as the method of notice is "reasonably calculated to reach interested parties," *id.* at 318, receipt of actual notice by all class members is not required. *See Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994); *Lewis v. Select Portfolio Servs., Inc.*, No. RDB-06-232, 2006 WL 1896176, at *3 (D. Md. July 10, 2006).

Individual mailing by first-class mail to all class members whose names and addresses are reasonably available, supplemented by publication notice in an effort to reach those class members whose identities or addresses are not reasonably available, has been found to constitute the "best notice practicable" to class members in circumstances involving large classes of geographically dispersed shareholders. *See Eisen*, 417 U.S. at 173-75; *MicroStrategy,* 148 F. Supp. 2d at 669-70; *S.C. Nat'l Bank*, 749 F. Supp. at 1427-28. The "reasonable effort" standard to identify class members requires a consideration of the "anticipated results, costs, and amount involved." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1099 (5th Cir. 1977). Thus, individual notice must be given to class members whose names and addresses are known

to the parties or are capable of being readily identified from business or public records available to the parties; however, a "burdensome search through records" is not required if the records "may prove not to contain any of the information sought" or if the "cost will exceed the anticipated benefits." *Id.* at 1098-99.

The Court has broad discretion to fashion a form and method of notice to class members that is both (1) consistent with the *Eisen* requirement of individual notice to all reasonably identifiable class members, and (2) reasonably tailored to reduce costs in light of the individual circumstances and economic realities of each case. *See generally* 7AA CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1788 (3d ed. 2010) ("the court has great discretion and flexibility in determining what is the best notice procedure to utilize under the circumstances of the case at hand. . . . Judges have come to recognize that they must devise an appropriate notice procedure for each case and may utilize reasonable methods to help reduce the burden and achieve the objectives of notice giving."); *see also In re United Telecomm., Inc. Sec. Litig.*, 151 F.R.D. 127, 129 (D. Kan. 1993) (approving notice accomplished through a self-mailer over an objection that the notice supposedly resembled "junk mail."). Notice that satisfies the "best notice practicable" standard under Rule 23(c)(2)(B) will also satisfy all due process requirements with respect to notice. *See DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) ("The legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar.").

## III.    THE STANDARDS FOR CERTIFYING A SETTLEMENT CLASS UNDER RULES 23(a) AND 23(b)(3)

In granting preliminary settlement approval, the Court should also certify the proposed Settlement Classes for purposes of settlement under Rules 23(a) and (b)(3) of the Federal Rules

of Civil Procedure.   Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *The Mills Corp.*, 2009 WL 5091931, at *21 (quoting *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995)); *S.C. Nat'l Bank*, 749 F. Supp. at 1428 ("settlement classes have proved to be quite useful in resolving major class action disputes") (citations omitted).

To be certified, the proposed class must satisfy all the prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequacy – and one of the subdivisions of Rule 23(b). *See, e.g., Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 555-56 (D. Md. 2006). The practice in the Fourth Circuit is to "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case 'best serve the ends of justice for the affected parties and . . . promote judicial efficiency.'" *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003) (quoting *In re A.H. Robins Co.*, 880 F.2d 709, 740 (4th Cir. 1989), *abrogated on other grounds by Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)).   The Court has considerable discretion in determining whether a proposed class meets the requirements of Rule 23.   *See Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1993); *Mitchell-Tracey*, 237 F.R.D. at 555.

### A.      The Requirements of Rule 23(a)

### 1.      Numerosity

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).   There is no specific minimum number of class members required to meet this numerosity requirement, *see Brady v. Thurston Motor Lines,* 726 F.2d 136, 145 (4th Cir. 1984), but courts in this circuit have repeatedly found that classes much smaller than the Settlement Classes proposed here will satisfy the numerosity requirement.   *See, e.g., Brady,* 726

F.2d at 145 (74 members); *Bulmash v. Travelers Indem. Co.*, 257 F.R.D. 84, 87-88 (D. Md. 2009) (a class estimated at 330 to 500 claimants "easily met" the numerosity requirement); *In re Kirshner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 78 (D. Md. 1991) ("a class of as few as 25 to 30 members raises the presumption that joinder would be impracticable").  Plaintiffs need not prove the exact size of the class, but where general knowledge and common sense indicate that the class is large, the numerosity requirement will be satisfied. *See Mitchell-Tracey*, 237 F.R.D. at 556; *Kernan v. Holiday Universal, Inc.*, No. JH90-971, 1990 WL 289505, at *2 (D. Md. Aug. 14, 1990).   In addition to the number of class members, the Court may consider other factors, such as class members' geographic distribution, the practical difficulties of serving and joining all class members, and the small size of individual claims, in considering whether joinder of all members would be impracticable. *See Nolan v. Reliant Equity Investors, LLC*, No. 3:08-CV-62, 2009 WL 2461008, at *2 (N.D.W.Va. Aug. 10, 2009); *Mitchell-Tracey*, 237 F.R.D. at 556; *Grice*, 1998 WL 350581, at *3.

### 2.    Commonality

Rule 23(a)(2) requires that there be at least one question of law or fact common to the entire class. *See* Fed. R. Civ. P. 23(a)(2); *Comer v. Life Ins. Co.*, No. 0:08-228-JFA, 2010 WL 233857, at *3 (D.S.C. Jan. 14, 2010).   "A common question is one that can be resolved for each class member in a single hearing." *Bulmash*, 257 F.R.D. at 88 (citation omitted).   The commonality requirement is not demanding:  only a single common material issue of law or fact is necessary to satisfy the requirement. *See Comer*, 2010 WL 233857, at *3; *Mitchell-Tracey*, 237 F.R.D. at 557.   Thus, for example, individual factual differences among class members' cases will not preclude certification if class members share the same legal theory. *See Bulmash*, 257 F.R.D. at 88; *Mitchell-Tracey*, 237 F.R.D. at 557.   Generally, the commonality requirement

will be satisfied if the claims of class members arise from the same alleged course of conduct of defendants. *See Beaulieu*, 2009 WL 2208131, at *11; *Harris*, 2006 WL 1897038, at *2.

Here, numerous actions filed in courts around the nation were transferred to the District of Maryland by the Judicial Panel on Multidistrict Litigation in recognition of the similarity of their factual allegations of market timing and late trading in mutual funds, and in recognition of the similar (if not identical) legal theories involved. Each of the settlement classes that Investor Class Plaintiffs seek to certify in each separate sub-track is even more narrowly defined – and even more focused on common issues of law and fact – given that the claims of the class members in each respective sub-track arise from the same alleged course of conduct within the same mutual fund family and involving the same set of defendants within each sub-track, and all such claims within each sub-track are based on identical legal theories.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement demands that "the class claims be fairly encompassed by the class representatives' claims." *Mitchell-Tracey*, 237 F.R.D. at 558. Typicality does not require that all class members' claims be identical. *See In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Va. 2006); *Kirschner Med.,* 139 F.R.D. at 79. The test for determining typicality is whether the class representatives' claims arise from the same event or course of conduct leading to the class claims, and whether the claims are based on the same legal theories. *See Bulmash*, 257 F.R.D. at 88; *Jones v. Murphy*, 256 F.R.D. 519, 522 (D. Md. 2009); *Kirschner Med.,* 139 F.R.D. at 79; *Twyman v. Rockville Hous. Auth.,* 99 F.R.D. 314, 321 (D. Md. 1983). Accordingly, evaluating the typicality requirement generally focuses on the defendants' conduct and whether that conduct affected the class representatives and other class members in the same manner.

It is no bar to typicality that a class representative may have held shares in one specific mutual fund while absent class members owned shares in different funds "so long as the plaintiffs have alleged a single course of wrongful conduct" that affected all the funds. *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318 (HB), 2000 WL 1357509, at *3 (S.D.N.Y. Sept. 20, 2000).   For example, in *Dreyfus*, typicality was satisfied where class representatives held shares in only one of two mutual funds because the common manager of both funds had engaged in the same scheme and had issued nearly identical misrepresentations with respect to both funds. *Id.* at *2-*5; *see also, e.g., Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir. 1992) (although class representatives suing for securities fraud had invested only in certain of the securities at issue, the typicality requirement was satisfied because the claims of all class members arose from defendant's common course of conduct); *In re PaineWebber Ltd. P'ship Litig.*, 171 F.R.D. 104, 123 (S.D.N.Y. 1997) (investors in 20 of 70 limited partnerships could represent investors in all 70 partnerships), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y. 1995) (due to the uniform course of improper conduct by defendants, named plaintiffs' claims were typical of all class members regardless of the investment vehicle in which they invested); *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 56-57 (S.D.N.Y. 1993) (where class representatives had invested in only three of five limited partnerships, but all limited partnerships were affected by the same alleged pattern of fraud, class representatives could represent investors in all five partnerships); *Tedesco v. Mishkin*, 689 F. Supp. 1327, 1334-36 (S.D.N.Y. 1988) (investors in 5 of 14 separate "trust funds" managed by the same defendants could represent investors in all the funds).

### 4.     Adequacy

The class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  To meet this requirement, the named class representatives and their counsel (a) must possess the qualifications and ability to vigorously litigate the case, and (b) must be free of any conflicts of interests with other class members.  *See In re The Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 108 (E.D. Va. 2009); *Bulmash*, 257 F.R.D. at 89; *Mitchell-Tracey*, 237 F.R.D. at 558; *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 325, 330 (D.S.C. 1991).  "The adequacy of plaintiffs' counsel, like that of the individual plaintiffs, is presumed in the absence of specific proof to the contrary."  *Id*. at 330-31.  Where the claims of class representatives are substantially similar or identical to the claims of absent class members, there is little potential for conflicting interests.  *See Comer*, 2010 WL 233857, at *6; *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 499 (D. Md. 1998); *see also In re Drexel Burnham Lambert Group, Inc.* 960 F.2d 285, 291 (2d Cir. 1992) (where plaintiffs and class members all share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and the other class members).

### B.     The Requirements of Rule 23(b)(3)

In addition to the four requirements of Rule 23(a), a certifiable class must also satisfy one of the three subparts of Rule 23(b).  Investor Class Plaintiffs here seek certification of settlement classes under Rule 23(b)(3), which requires that:

> the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating of the controversy.

Fed. R. Civ. P. 23(b)(3).  This rule is designed to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without

sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (internal quotations omitted).

### 1.    Predominance

The predominance inquiry normally focuses "on the legal or factual questions that qualify each class member's case as a genuine controversy . . . [and] tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. As the Supreme Court has noted, predominance is "a test readily met in certain cases alleging . . . securities fraud." *Id*. at 625.

"Predominance will be established if 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *In re WorldCom Inc. Sec. Litig.,* 219 F.R.D. 267, 287-88 (S.D.N.Y. 2003) (citation omitted); *see also Comer*, 2010 WL 233857, at *6; *Bulmash*, 257 F.R.D. at 90; *Jones*, 256 F.R.D. at 522-23.   Courts have held that the predominance inquiry should focus on liability issues, and "the need for individualized proof of damages alone will *not* defeat class certification." *Gunnells*, 348 F.3d at 429; *see also The Mills Corp.*, 257 F.R.D. at 109 ("differences in damages among the potential class members do not generally defeat predominance if liability is common to the class") (citation omitted); *Robinson v. Fountainhead Title Group Corp.*, 257 F.R.D. 92, 95 (D. Md. 2009); *BearingPoint*, 232 F.R.D. at 542.

### 2.    Superiority

Rule 23(b)(3) also requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Matters pertinent to this finding include:   "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the

controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in the managing a class action." *Id.* The superiority requirement is satisfied where:

> [t]he potential class members are both significant in number and geographically dispersed[, and t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions.

*Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 133 (S.D.N.Y. 2001).

Securities law cases in which the proposed class consists of shareholders in widely held public companies or mutual funds provide a paradigmatic example of the superiority of a class action, because such cases typically feature large numbers of geographically dispersed class members, many of whose claims would not be large enough to justify the cost of prosecuting an individual action. *See The Mills Corp.*, 257 F.R.D. at 109 ("Securities fraud actions typically meet the Rule 23(b)(3) requirement because the claims relate to the acts or omissions of the same defendants and damages of individual class members might be too small to provide incentive for the individuals to sue."); *S.C. Nat'l Bank*, 139 F.R.D. at 335; *Kirschner Med.,* 139 F.R.D. at 80 ("Courts have recognized that a class action is the most efficient means of litigating a securities fraud suit where the class 'consists of numerous investors, many of whom in all likelihood have individual claims too small to warrant an individual suit.'") (citation omitted).

Any potential difficulties of managing the proposed class actions in further litigation and at trial need not be considered here because the parties seek to certify the classes for the purposes of settlement. As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." 521 U.S. at 620.

## IV.     NOTICE AND APPROVAL OF FUND DERIVATIVE SETTLEMENTS

As noted above, public interest favors settlement of complex shareholder actions. "Settlements of shareholder derivative actions are particularly favored because such litigation is 'notoriously difficult and unpredictable." *Zimmerman v. Bell*, 800 F.2d 386, 392 (4th Cir. 1986) (internal quotations and citations omitted).

Rule 23.1 of the Federal Rules of Civil Procedure provides that a derivative action may be "settled, voluntarily dismissed, or compromised only with the court's approval [and] [n]otice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c).[1]   Fund Derivative Plaintiffs firmly believe that the notice plan here satisfies the requirements of Rule 23.1 and due process, and the settlements of the Fund Derivative actions are fair and reasonable.

### A.     The Standards for Providing
### Notice of the Proposed Fund Derivative Settlements

Courts generally have broad discretion to select an appropriate notice program under Rule 23.1. Here, Fund Derivative Plaintiffs propose to provide notice to current shareholders through publication in various widely-circulated newspapers and magazines and over the PR newswire and through settlement websites which will be broadly available.  In addition, any direct mail notices sent to class members will inform them of the existence of the derivative settlements as well.  This notice plan is well within accepted parameters for derivative notice, particularly where, as here, sending direct mail notice to all current shareholder would be extremely costly and burdensome.

---

[1] Rule 23.1 of the Federal Rules of Civil Procedure does not apply to Fund Derivative Plaintiff claims under Section 36(b) of the Investment Company Act. *See Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 542 (1984).  However, since most of the settlements of Fund Derivative claims here include release of other federal or state law claims, for purposes of this Omnibus Memorandum Fund Derivative Plaintiffs assume that Rule 23.1 applies to the Fund Derivative settlements.

The notice requirement for derivative settlements under Rule 23.1 is interpreted flexibly. In part, this is due to the fact that shareholders may not opt out of such settlements. Moreover, the involvement of the corporation as a nominal defendant can sometimes provide additional assurance that the settlement is fair, particularly where, as in most cases here, the trustees of the funds have assented to the derivative settlements.

Given the cost and burden of providing notice to all current mutual fund shareholders, notice through publications and websites should be approved here:

> [T]he question whether individual notice to the shareholders or notice by publication may utilized . . . will depend on the facts of each case. . . . If there is an extremely large number of stockholders so that the cost of mailing would be burdensome, the court may decide to allow the notice to be published in appropriate newspapers or periodicals.

7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1839 (3d ed. 2010); *see also* 19 AM. JUR. 2d CORP. § 2126 (2010) ("In those cases where . . . the cost of mailing individual notices would be too burdensome, [the court] may direct that notice be by publication.")

In similar circumstances, courts have looked favorably upon publication and website notice programs. *In re PMC-Sierra, Inc. Derivative Litig.*, No. C-06-5330-RS, 2010 U.S. Dist. LEXIS 5818, at *3-*4 (N.D. Cal. Jan. 26, 2010) (approving notice of derivative settlement by publication and website); *Klein ex rel. SICOR Inc. v. Salvi*, 02 Civ. 1862 (AKH), 2004 U.S. Dist. LEXIS 4844, at *2 (S.D.N.Y. Mar. 26, 2004) (same), *aff'd*, 115 Fed. Appx. 515 (2d Cir. 2004); *In re Metro. Life Derivative Litig.*, 935 F. Supp. 286, 294 n.10 (S.D.N.Y. 1996) (approving publication notice of derivative settlement where mailed notice to ten million policy holders would be impracticable); *Pottish v. Divak*, 71 F. Supp. 737, 739-40 (S.D.N.Y. 1947) (approving publication notice of derivative lawsuit where direct mail would be cost prohibitive); *see also*

16

*Unite Nat'l Ret. Fund v. Watts*, No. 04-CV-3603 (DMC), 2005 U.S. Dist. LEXIS 26246, at *11, *22 (D.N.J. Oct. 27, 2005); *In re Pittsburgh & Lake Erie R.R. Co. Sec. & Antitrust Litig.*, 543 F.2d 1058, 1062 (3d Cir. 1976).

**B.      The Standards for Review and
         Approval of the Proposed Fund Derivative Settlements**

The Court should review the Fund Derivative settlements to determine if they are fair and in the best interests of the affected mutual funds.[2]

Approval of a derivative settlement is within the Court's discretion and should be granted if the settlement "fairly and adequately serves the interests of the corporation on whose behalf it was brought." *Zimmerman*, 800 F.2d at 391 (internal quotations and citation omitted). "The role of the Court, however, is limited to the extent that its business judgment is not to be substituted for that of the parties who worked out the settlement; the only question is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval." *Mathes v. Roberts*, 85 F.R.D. 710, 713 (S.D.N.Y. 1980) (internal quotations and citations omitted).

Further, the Court need not review the Fund Derivative settlements in a vacuum but, rather, should review them in conjunction with the settlements reached in the class actions. "[T]he settlements are inextricably connected, [and] little has occurred independently in this litigation . . . ." *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 189 (E.D. Pa. 2000).

In assessing the proposed Fund Derivative settlements, the Court should consider whether the settlements serve the interests of the mutual funds and the risks of establishing liability and proving damages in the event the case is not settled. *See Zimmerman*, 800 F.2d at 392.

---

[2] While it may not strictly be necessary for the Court to preliminarily approve a derivative settlement, *see In re UnitedHealth Group Inc. S'holder Derivative Litig.*, 591 F. Supp. 2d 1023, 1030 (D. Minn. 2008) (Rule 23.1 merely requires that a settlement be approved after notice to shareholders), a preliminary determination makes sense here given the intertwined nature of the class and derivative settlements and notice programs.

## V.   THE STANDARDS FOR CERTIFYING AN ERISA CLASS

### A.   The Requirements of Rule 23(a)

#### 1.   Numerosity

ERISA Plaintiffs respectfully refer the Court to the standards for establishing numerosity set forth above in Section III.A.1 which apply to the proposed ERISA classes.

#### 2.   Commonality

ERISA Plaintiffs respectfully refer the Court to the general standards for establishing commonality set forth above in Section III.A.2.  ERISA plaintiffs have identified a series of common questions of law and fact in the ERISA actions, including: (a) whether defendants each owed a fiduciary duty to ERISA class members; (b) whether defendants breached their fiduciary duties to ERISA class members by failing to act prudently and solely in the interests of plan participants and beneficiaries; (c) whether defendants violated ERISA; and (d) whether the members of the classes have sustained damages and, if so, what is the proper measure of damages.  Other common questions include whether certain defendants failed to properly monitor their appointees, whether certain individual defendants knew of alleged market timing and the degree to which they informed the other plan fiduciaries about this information, and issues of co-fiduciary liability.  All of these issues are common to the Class.  *See, e.g.*, *In re Merck & Co. Sec., Derivative & ERISA Litg.*, MDL No. 1658, 2009 WL 331426, at *7 (D.N.J. Feb. 10, 2009).

#### 3.   Typicality

ERISA Plaintiffs respectfully refer the Court to the standards for establishing typicality set forth above in Section III.A.3.  Courts have previously held that the typicality requirement is met in connection with a prudence claim where the class representatives rely on the same theory "that [d]efendants breached their fiduciary duties with regard to investment in . . . stock during

18

the class period." *Merck*, 2009 WL 331426, at *9.  Since the issue of the standing of the named

plaintiffs has been resolved in their favor, there is no question that they satisfy the typicality

requirement.

### 4.    Adequacy

ERISA Plaintiffs respectfully refer the Court to the standards for establishing adequacy

set forth above in Section III.A.4, which also apply to the proposed ERISA classes.

### B.    The Requirements of Rule 23(b)

In addition to satisfying all of the criteria of Rule 23(a), a party seeking class certification

must also satisfy one of the requirements of Rule 23(b).  It has oft been noted that the additional

requirements of Rule 23(b) overlap considerably with those of Rule 23(a), and with each other.

*Newberg on Class Actions* § 4.01, at 185 (1977).

### 1.    The Requirements of Rule 23(b)(1)

Under Rule 23(b)(1), a class may be certified if:

(1)    prosecuting separate actions by or against individual class members would
create a risk of:

(A)    inconsistent or varying adjudications with respect to individual
class members that would establish incompatible standards of
conduct for the party opposing the class; or

(B)    adjudications with respect to individual class members that, as a
practical matter, would be dispositive of the interests of the other
members not parties to the individual adjudications or would
substantially impair or impede their ability to protect their interests

Therefore, Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while

23(b)(1)(B) looks to possible prejudice to the putative class members."  *In re Ikon Office*

*Solutions, Inc. Sec. Litig.*, 191 F.R.D. 457, 466 (E.D. Pa. 2000).  Certifications under both

sections of Rule 23(b)(1) are common in ERISA breach of fiduciary duty cases because of

defendants' alleged "unitary treatment" of the individual members of the proposed Class. *Id.*

(citation omitted).   *See also* Fed. R. Civ. P. 23(b)(1)(B), Advisory Comm. Notes to 1996 Amendment (stating that certification under 23(b)(1) is appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries).

Here, the complaints allege breaches of ERISA fiduciary duties.   Therefore, the only remedy available to plan participants is plan-wide relief, including the restoration of losses to the plans.   *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 139-40 (1985).   Thus, actions for breaches of fiduciary duty under ERISA are by law representative actions. "Because of ERISA's distinctive 'representative capacity' and remedial provisions, 'ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class.'"   *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) (citations omitted) (certifying an exactly analogous class of defined contribution plan participants for settlement); *see also Gruby v. Brady*, 838 F. Supp. 820, 828 (S.D.N.Y. 1993) (holding that certification of a class seeking relief for violations of ERISA was proper under Rule 23(b)(1)); *Banyai v. Mazur*, 205 F.R.D. 160, 165 (S.D.N.Y. 2002) (granting class certification under Fed. R. Civ. P. 23(b)(1)).[3]   Given the unique "group-based" relief offered under ERISA for violations of fiduciary duties owed to participants in covered benefit plans, actions such as these are textbook cases for class treatment under Rule 23(b)(1). This basic point was elucidated concisely by the court in *Ikon*, a case in which some of the plaintiff class' claims were breaches of fiduciary duty under ERISA highly analogous to those brought in this action:

---

[3] *See also Rankin v. Rots*, 220 F.R.D. 511, 523 (E.D. Mich. 2004); *Kolar v. Rite Aid Corp.*, No. 01-1229, 2003 WL 1257272, at \*3 (E.D. Pa. Mar. 11, 2003); *Koch v. Dwyer*, No. 98 Civ. 5519 (RPP), 2001 U.S. Dist. LEXIS 4085, at \*14-\*15 (S.D.N.Y. Mar. 23, 2001); *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 397 (E.D. Pa. 2001); *Clauser v. Newell Rubbermaid, Inc.*, No. CIV. A. 99-5753, 2000 WL 1053395, at \*6 (E.D. Pa. July 31, 2000); *Ikon*, 191 F.R.D. at 466-67; *Bunnion v. Consol. Rail Corp.*, No. Civ. A. 97-4877, 1998 WL 372644, at \*13 (E.D. Pa. May 14, 1998); *Kane v. United Indep. Union Welfare Fund*, No. 97-1505, 1998 WL 78985, at \*9 (E.D. Pa. Feb. 24, 1998); *Feret v. CoreStates Fin. Corp.*, No. CIV. A. 97-6759, 1998 WL 512933, at \*13-\*14 (E.D. Pa. Aug. 18, 1988).

> The court agrees that, given the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief. There is also risk of inconsistent dispositions that would prejudice the defendants: contradictory rulings as to whether Ikon had itself acted as a fiduciary, whether the individual defendants had, in this context, acted as fiduciaries, or whether the alleged misrepresentations were material would create difficulties in implementing such decisions.

*Ikon*, 191 F.R.D. at 466 (citations omitted). *See also Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, 153 (E.D.N.Y. 1996) (certifying ERISA fiduciary misrepresentation case under Rule 23(b)(1)(A) because multiple cases "could conceivably result in different courts reaching conflicting decisions").

Because relief under ERISA for violations of fiduciary duties owed to participants in covered benefit plans is to the plan itself, rather than to individuals, actions such as these are entirely appropriate for class treatment under Rule 23(b)(1). This point was succinctly stated in a case in which the plaintiff class also claimed breaches of fiduciary duty under ERISA:

> As plaintiffs are seeking relief on behalf of the Fund as a whole, the Court finds that prosecution of separate actions by individual Members would, indeed, create a risk of adjudications which would be dispositive of the interests of the other members not parties to such adjudications. "Because a plan participant or beneficiary may bring an action to remedy breaches of fiduciary duty only in a representative capacity, such an action affects all participants and beneficiaries, albeit indirectly."

*Gruby*, 838 F. Supp. at 828. Indeed, as the U.S. Supreme Court has recognized, cases such as this are typical examples of Rule 23(b) actions. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999). The *Ortiz* court noted that Rule 23(b)(1)(B) actions guard against the risk of impairing the individual class member's ability to protect their interests, finding that:

> Classic examples of such a risk of impairment may, for example, be found in . . . actions charging a "breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class" of beneficiaries, requiring an accounting or similar procedure "to restore the subject of the trust." In each of these categories, the shared character of rights claimed or relief awarded entails

that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members.

*Ortiz*, 527 U.S. at 833-34 (quoting the Advisory Committee's Notes on Fed R. Civ. P. 23).

### 2.    The Requirements of Rule 23(b)(2)

Under Rule 23(b)(2), a class may be certified if:

[T]he party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . .

Here, the proposed classes also satisfy the requirements of Rule 23(b)(2).  Defendants' conduct (and the relief sought from the effects of it) in an ERISA breach of fiduciary duty case must apply on a class-wide basis to participants of plan as a whole.  *See, e.g.*, *Global Crossing*, 225 F.R.D. at 453 (finding that class in an ERISA breach of fiduciary duty action satisfied all the requirements of Rules 23(a), (b)(1) and (b)(2)).  The benefit to the plan participants, by way of a refurbished and lawfully run retirement plan, "would flow directly and incidentally" from the relief sought by the Plaintiff.  *Bublitz v. E.I. du Pont de Nemours & Co.*, 202 F.R.D. 251, 259 (S.D. Iowa 2001) (certifying a Rule 23(b)(2) class in an ERISA breach of fiduciary duty action and noting that the monetary relief granted flowed directly from the declaratory relief sought by plaintiffs).

### 3.    The Requirements of Rule 23(b)(3)

ERISA Plaintiffs respectfully refer the Court to the discussion of the requirements of Rule 23(b)(3) set forth above in Section III.B.  In ERISA actions (as well as securities actions), questions of law or fact common to the members of the class often predominate over any questions affecting only individual members, and in such cases a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  *See In re Computer Scis. Corp. ERISA Litig.*, No. CV 08-02398, 2008 WL 7527872, at *3-*4 (C.D. Cal. Dec. 29,

2008)   The predominant issue for purposes of liability under ERISA plans is whether the defendants breached their fiduciary duties under ERISA and because this issue arises from a common nucleus of facts, it can be demonstrated by common proof.   Certification is therefore economical and appropriate.   *See, e.g.*, In re FedEx Ground Package Sys., Inc. Employment *Practices Litig.*, No. 3:05-MD-527 RM, 2007 U.S. Dist. LEXIS 76798, at *75-*76 (N.D. Ind. Oct. 15, 2007) (certifying an ERISA class under Rule 23(b)(3)).   Second, resolution of the ERISA actions through the use of the class action device is far superior to litigating hundreds of individual claims where the expense for a single investor in pursuing a separate action would likely exceed the individual's claim.   *See Computer Scis. Corp.*, 2008 WL 7527872, at *4.

C.      **The Proposed Notice To The ERISA Classes**

The proposed form of notice to be provided to the ERISA classes is the same as that provided to the Investor Class Members, as described in the relevant supplemental memoranda and exhibits thereto.   As explained in each of the supplemental memoranda, ERISA Lead Plaintiffs firmly believe that the proposed Notice plans will fully apprise ERISA Class members of the existence of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights.

VI.    **CONCLUSION**

Lead Plaintiffs respectfully request that, for the reasons set forth above and in the separate memoranda that address matters specific to each sub-track, the Court (a) approve their respective motions for preliminary approval of the proposed settlements that they have reached in the Alger, Alliance, Allianz Dresdner, Columbia, Excelsior, Federated, Janus, Invesco, MFS, Nations, One Group/Bank One, Pilgrim Baxter, Putnam, RS, Scudder, and Strong sub-tracks; (b) approve the form and manner of notice to class members and current shareholders as proposed in

each of their respective sub-tracks; and (c) conditionally certify their respective proposed classes

in the respective sub-tracks.

Respectfully submitted,

Dated:  April 21, 2010

**TYDINGS & ROSENBERG LLP**
_____/s/_____
John B. Isbister, Federal Bar No. 00639
100 East Pratt Street, 26th Floor
Baltimore Maryland  21202
Telephone:  (410) 752-9700
Fax:  (410) 727-5460

*Chief Administrative Counsel and Liaison
Counsel for Plaintiffs*

**BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP**
Chad Johnson
William C. Fredericks
Jerald Bien-Willner
John J. Mills
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

*Lead Counsel for the Lead Plaintiffs in the
Invesco, MFS and Pilgrim Baxter Investor
Class Actions*

**BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP**
Michael K. Yarnoff
Jennifer L. Enck
280 King of Prussia Road
Radnor, PA  19087
(610) 667-7706

*Lead Counsel for the Lead Plaintiffs in the
Alliance, Excelsior and Alger Investor Class
Actions*

24

**WOLF POPPER LLP**
Robert M. Kornreich
Chet B. Waldman
Andrew E. Lencyk
845 Third Avenue
New York, NY 10022
(212) 759-4600

*Lead Counsel for the Lead Plaintiffs in the*
*Allianz Dresdner Investor Class Action*

**LABATON SUCHAROW LLP**
Lawrence A. Sucharow
140 Broadway
New York, NY 10005
(212) 907-0700

*Lead Counsel for the Bank of America/*
*Nations Funds Class*

**MILBERG LLP**
Clifford S. Goodstein
Paul Andrejkovics
One Pennsylvania Plaza
New York, New York  10119
Telephone:  (212) 594-5300
Facsimile:  (212) 868-1229

*Lead Counsel for the Lead Plaintiffs in the*
*Columbia and One Group/Bank One Investor*
*Class Actions*

**COTCHETT, PITRE & McCARTHY**
Mark C. Molumphy
840 Malcolm Road
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile: (650) 697-0577

*Lead Class Counsel in the Janus Investor*
*Class Action, on behalf of the Janus Class*
*Action Lead Plaintiff*

**BERNSTEIN LIEBHARD LLP**
U. Seth Ottensoser
Stephanie M. Beige
10 East 40th Street, 22nd Floor
New York, NY 10016
Telephone:  (212) 779-1414
Facsimile:  (212) 779-3218

*Lead Counsel for the Lead Plaintiff in the Federated Investor Class Action*

**ATTORNEY GENERAL FOR THE STATE OF OHIO**
Richard Cordray
Albert G. Lin
30 East Broad Street, 17th Floor
Columbus, Ohio  43215
Telephone:  (614) 728-5454
Facsimile:  (614) 995-0246

**WAITE, SCHNEIDER, BAYLESS, & CHESLEY CO., L.P.A.**
Stanley M. Chesley
James R. Cummins
Terrance L. Goodman
Robert Heuck II
Jean M. Geoppinger
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, Ohio  45202
Telephone:   (513) 621-0267
Facsimile:  (513) 621-0262

*Lead Counsel for Fund Investor Class Lead Plaintiff Ohio Tuition Trust Authority in the Putnam Investor Class Action*

**STRAUSS & TROY, L.P.A.**
Richard S. Wayne
Nicole M. Lundrigan
John M. Levy
The Federal Reserve Building
150 East Fourth Street
Cincinnati, OH  45202-4018
Telephone:  (513) 621-2120
Facsimile:  (513) 629-9426

*Of Counsel to Fund Investor Class Lead Plaintiff Ohio Tuition Trust Authority in the Putnam Investor Class Action*

**STULL, STULL & BRODY**
Jules Brody
James E. Lahm
6 East 45th Street
New York, New York 10017
Telephone:  (212) 687-7230
Facsimile:  (212) 490-2022

*Lead Counsel for Plaintiffs in the RS Investor Class Action*

**BERGER & MONTAGUE, P.C.**
Sherrie R. Savett
Lawrence Deutsch
Glen L. Abramson
1622 Locust Street
Philadelphia, PA 19103
Telephone:  (215) 875-3000

*Lead Counsel for the Lead Plaintiff in the Scudder Investor Class Action*

27

**CHIMICLES & TIKELLIS LLP**
Nicholas E. Chimicles, Esq.
Denise Davis Schwartzman, Esq.
Timothy N. Mathews, Esq.
361 West Lancaster Avenue
Haverford, PA 19041
Telephone:  (610) 642-8500

*Lead Counsel for the Fund Derivative
Plaintiffs in the Excelsior, Janus, One Group,
Pilgrim Baxter, and Strong Derivative
Actions*

**POMERANTZ HAUDEK
GROSSMAN & GROSS**
Stanley M. Grossman
H. Adam Prussin
Jeremy A. Lieberman
100 Park Avenue
New York, NY  10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665

*Lead Counsel for the Fund Derivative
Plaintiffs in the Alliance, Federated, MFS
and Putnam Derivative Actions*

**WOLF HALDENSTEIN ADLER
FEEMAN & HERZ LLP**
Daniel W. Krasner
Mark C. Rifkin
Demet Basar
Paulette Fox
270 Madison Avenue
New York, NY  10016
(212) 545-4600

*Lead Counsel for the Fund Derivative
Plaintiffs in the Alger, Allianz Dresdner,
Columbia, Invesco, Nations, and Scudder
Derivative Actions*

**HARWOOD FEFFER LLP**
Robert I. Harwood
Samuel K. Rosen
488 Madison Avenue
8th Floor
New York, NY  10019
Telephone:  (212) 935-7400
Facsimile:  (212) 753-3630

***ERISA Class Lead Counsel in the Alliance,
Invesco, MFS, Nations, One Group/Bank
One, and Strong Sub-Tracks***

BLBG #435882.20