IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MUTUAL FUNDS INVESTMENT LITIGATION | MDL 1586 |
| IN RE ALLIANCE, FRANKLIN/TEMPLETON, BANK OF AMERICA/NATIONS FUNDS, and PILGRIM BAXTER | Case No. 04-md-15862 (Judge Davis) |
| [Franklin Templeton Subtrack] | |
| Sharkey IRO/IRA v. Franklin Resources, et al. | Case No. 04-md-1310 |

## ANSWER AND AFFIRMATIVE DEFENSES OF FRANKLIN DEFENDANTS TO SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Franklin Resources, Inc., Franklin Advisers, Inc., Franklin/Templeton Distributors, Inc., Franklin Templeton Alternative Strategies, Inc., Franklin Strategic Series, Inc., and Gregory E. Johnson (hereinafter the "Franklin Defendants") deny each and every allegation in the Second Consolidated Amended Class Action Complaint (the "Complaint") about Franklin Defendants, and deny knowledge or information sufficient to form a belief as to the truth of the allegations about other defendants, entities or persons unless expressly admitted or otherwise responded to.

Franklin Defendants assert that the Table of Contents, headings and exhibits in the Complaint are vague and not susceptible of response. To the extent that a response to the Table, headings or exhibits is deemed to be required, Franklin Defendants deny each and every allegation contained therein.

| Paragraph of Complaint: | Response: |
|---|---|
| First Paragraph | Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations about Plaintiff counsel's actions, and respectfully refer to the documents mentioned therein for their complete contents. |
| 1 | Deny, except admit that Plaintiff purports to bring this action as a class action under federal law. |
| 2 | Deny, and assert that non-Franklin persons or entities engaged in deceitful practices which hindered Franklin's ability to detect and deter frequent trading. |
| 3 | Deny, and respectfully refer to the "prospectuses" for their complete contents. |
| 4 | Deny, except admit that some of the Trustees of the Funds sit on multiple Fund boards. |
| 5 | Deny. |
| 6 | Deny, and respectfully refer to the "SEC Consent Order" and the "prospectuses" for their complete contents. |
| 7 | Deny, and respectfully refer to the "website" and Franklin Resources, Inc.'s "Form 10-K for the fiscal year ended September 30, 2003" for their complete contents. |
| 8 | Deny, and assert that non-Franklin persons or entities engaged in deceitful practices which hindered Franklin's ability to detect and deter frequent trading. |
| 9 | Deny, and assert that much of the frequent trading was done through omnibus accounts which were opaque to Franklin. |
| 10 | Deny, except admit that Plaintiff purports to bring this action as a class action, and that Franklin Defendants paid monies in settlements with regulatory and governmental entities. |

MEI 9895349v.1

2

11           Deny.

12           Assert that paragraph 12 contains legal conclusions to which no response is required.

13           Assert that paragraph 13 contains legal conclusions to which no response is required, except admit that the Judicial Panel on Multidistrict Litigation ordered transfer of actions to this District, and respectfully refer to the Orders of that Panel for their complete contents.

14           Assert that paragraph 14 contains legal conclusions to which no response is required. To the extent a response is deemed required, deny.

15           Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations about investments and purchases by the "Plan," and the allegations in sentences one, two, three, four, seven, eight and nine, and respectfully refer to the "Plan Document" for its complete content.

16           Deny, and assert that the Franklin fund complex includes open-end mutual funds in which investors purchase shares, and the Funds purchase securities consistent with their investment goals and objectives, and the allegations in sentence four contain legal conclusions to which no response is required.

17           Deny, and assert that certain Franklin entities receive fees for services they render to the Funds, and that such fees may be based on the amount of assets under management, and respectfully refer to the deposition transcript of Greg Johnson for its complete content.

18           Deny, and assert that the allegations in paragraph 18 are vague and ambiguous and not susceptible of response given, for instance, that they make various allegations concerning corporate structures and ownership without specification of time period, the allegations in the second sentence of sub-paragraph c contains legal conclusions

MEI 9895349v.1

to which no response is required, Franklin Resources, Inc. is the parent holding company of Franklin Advisers, Inc., Franklin/Templeton Distributors, Inc., and Franklin Templeton Services, LLC, and respectfully refer to relevant public filings, the "Management Agreements" and the "Administration Agreements" for their complete contents, including the roles of the fund advisor, administrator and distributor, and the fees paid to them for the services they render to the Funds.

19      Deny, except admit that Franklin Resources is the parent holding company of Franklin Advisers, Inc., Franklin/Templeton Distributors, Inc., Franklin Templeton Services, LLC and other Franklin entities that, at various times, have provided services to non-mutual fund clients, and the allegations in sentences two and three, and respectfully refer to the "Form 10-K filed with the SEC" for its complete content, including the "assets under management."

20      Deny, except admit the allegations in sentences one, two, three and four and the allegation that Franklin Advisers selects securities to be purchased, held or sold by certain Funds, and respectfully refer to the 2003 Form 10-K and the "management agreement" for their complete contents, in particular, the full scope of the services provided by Franklin Advisers.

21      Deny, except admit the allegations in sentence one, and respectfully refer to the "May 2003 Form ADV," and the "registration statements and prospectuses" for their complete contents, including amounts and rates of the referenced management fees and arrangements.

22      Deny, and respectfully refer to the "Management Agreement" for its complete content, including the names of its signatories and their roles at the time.

23      Deny, except admit the allegations in sentences one and two, assert that Franklin Strategic Series is not a properly named defendant per this Court's previous orders, and, as to the documents referenced therein, respectfully refer to them for their complete contents.

MEI 9895349v.1

24        Deny, except admit that the Franklin Strategic Series is a Delaware Statutory Trust, and that Franklin Resources is the parent company of Franklin Advisers and Franklin/Templeton Distributors, and respectfully refer to the "Form N-1As" and "prospectuses" for their complete contents.

25        Deny, and respectfully refer to the "Form N-1A" and "Prospectus" for their complete contents.

26        Assert that paragraph 26 contains legal conclusions to which no response is required. To the extent a response is deemed required, deny.

27        Deny, and respectfully refer to the "SEC filings" for their complete contents.

28        Deny, except admit, on information and belief, that Ashton, Fortunato and Charles B. Johnson played on the same college football team, and respectfully refer to the deposition transcript of Harris Ashton for its complete content.

29        Deny, and assert that the allegations in the first six lines contain legal conclusions to which no response is required, and that the allegations, particularly the reference to "the foregoing individual defendants," are vague and confusing.

30        Deny, except admit that Greg Johnson is an officer of certain Franklin entities, and the nephew of Rupert Johnson, Jr. and Peter Sacardote, the brother of Jennifer Bolt and Chuck E. Johnson, and the son of Charles B. Johnson, and the allegations in sentences one and three.

31        Deny, and respectfully refer to the "Franklin Resources' proxy statement" for its complete content.

32        Admit, and, as to the documents referenced therein, respectfully refer to them for their complete contents.

ME1 9895349v.1

33          Deny, and respectfully refer to the "distribution agreements" for
            their complete contents.

34          Deny, and assert that 12b-1 fees are based on assets under
            management, and respectfully refer to the "2003 Form 10-K" for its
            complete content, including the rates of the referenced fees.

35          Admit, and, as to the documents referenced therein, respectfully
            refer to them for their complete contents.

36          Deny, and respectfully refer to the prospectuses of the Small-Mid
            Cap Growth Fund for fees paid by the Fund.

37          Deny, except assert that Franklin Templeton Alternative Strategies,
            Inc. was a registered investment adviser with offices at 500
            E. Broward Blvd., Ft. Lauderdale, Florida, a subsidiary of Franklin
            Resources, Inc., and a commodity pool operator, and admit the
            allegations in sentences three and four.

38          Deny, except admit that Mr. Post had positions at various times
            with Franklin entities, and respectfully refer to the "documents filed
            with the NASD" for their complete contents, including Mr. Post's
            positions, as well as the date of, and reason for, his separation from
            Franklin.

39          Deny, except admit the allegations in sentence one, and that Mr.
            Charles Johnson is the half-brother of Rupert Johnson, Jr., the
            father of Chuck E. Johnson, Gregory Johnson and Jennifer Bolt,
            and the brother-in-law of Peter Sacardote, and respectfully refer to
            the "Franklin Strategic Series Form N-1A and Prospectus,"
            "Franklin Resources' Definitive Proxy Statement" and the
            "Schedule 13G" for their complete contents, including the positions
            held by Mr. Charles Johnson.

MEI 9895349v.1

40          Deny, except admit the allegations in sentences one and five, assert that Charles Johnson is the half-brother of Rupert Johnson, Jr., and respectfully refer to the "Franklin Strategic Series Form N-1A and Prospectus" and "Franklin Resources' Definitive Proxy Statement" for their complete contents, including the positions held by Rupert Johnson, Jr.

41          Deny, except admit the allegations in sentence one, and respectfully refer to the "Franklin Strategic Series Form N-1A and Prospectus" and the deposition transcript of Harris J. Ashton for their complete contents.

42          Deny, and respectfully refer to the "Form N-1A and Prospectus" for its complete content, including information about current and former trustees of the Funds.

43          Deny, and respectfully refer to the "Form N-1A and Prospectus" for its complete content, including the fee paid to trustees of the Funds.

44          Deny, and respectfully refer to the Form N-1A and prospectuses for their complete contents, including the names of signatories.

45          Deny, except admit the allegations in sentence one, and respectfully refer to the Form N-1A and prospectuses for their complete contents, including the names of the signatories.

46          Deny, except admit that Chuck E. Johnson is the son of Charles B. Johnson, the brother of Greg Johnson and Jennifer Bolt and the nephew of Rupert Johnson, Jr. and Peter Sacerdote, and that he was an officer and/or director of Franklin entities until 2002.

47          Deny, except admit the allegations in sentence three, and respectfully refer to the "Form N-1A registration statements and prospectuses" for their complete contents, including the names of their signatories and Mr. Flanagan's former positions.

MEI 9895349v.1

48      Deny, except admit the allegations in sentence one, and, as to the documents referenced therein, respectfully refer to them for their complete contents.

49      Deny, except admit that Franklin Templeton Strategic Growth Fund, L.P. sold "units" in a non-public offering, Franklin Templeton Alternative Strategies, Inc. has served as "General Partner" to the Fund, Auda has served as "Special Limited Partner" and Calugar or one of his affiliates was a limited partner in the Fund, and respectfully refer to the "Limited Partnership Agreement of Franklin Templeton Strategic Growth Fund, L.P." for its complete content, and deny knowledge or information sufficient to form a belief as to the truth of the allegations in sentence four.

50      Deny knowledge or information sufficient to form a belief as to the truth of the allegations (in particular, the allegations as to what Calugar "admitted"), assert, on information and belief, that "Calugar" was the subject of regulatory action, and respectfully refer to the "SEC complaint," the "District of Nevada Federal Court's" files, the "final judgment" and "plea agreement" for their complete contents.

51      Deny knowledge or information sufficient to form a belief as to the truth of the allegations, and respectfully refer to the "Form BDW" and the "final judgment" for their complete contents.

52      Deny knowledge or information sufficient to form a belief as to the truth of the allegations, and respectfully refer to the "Fourth Amended and Restated Limited Partnership Agreement of DCIP, Limited Partnership" for its complete content.

53      Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding Prudential, and assert that "Prudential" and other non-Franklin persons or entities engaged in and/or facilitated deceitful practices, which hindered Franklin's ability to detect and deter frequent trading.

MEI 9895349v.1

54          Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in sentences one, two, three, four, five, six and the allegation about those entities "engag[ing] in a substantial amount of market timing," and assert that "Prudential" and other non-Franklin persons or entities engaged in and/or facilitated deceitful practices, which hindered Franklin's ability to detect and deter frequent trading.

55          Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in sentences one (as it pertains to Edward Stern), two, three and the allegation in sentence four that Canary "timed" specific Funds referenced therein, and assert that non-Franklin persons and entities (such as Edward Stern/Canary) engaged in and/or facilitated deceitful practices, which hindered Franklin's ability to detect and deter frequent trading.

56          Deny knowledge or information sufficient to form a belief as to the truth of the allegations, except assert that sentence three creates an internal reference convention and is not susceptible to response.

57          Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in sentences two, three and four (in particular, as they relate to non-Franklin persons or entities), and the allegation of "Bear Stearns" "knowingly or recklessly allowing market timers to engage in timing and/or late trading via its clearing platforms for profit," and assert that non-Franklin persons or entities (such as Bear Stearns) engaged in and/or facilitated deceitful practices which hindered Franklin's ability to detect and deter frequent trading.

58          Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in sentence two, and the allegations in sentence one to the extent they apply to non-Franklin persons or entities.

59          Deny knowledge or information sufficient to form a belief as to the truth of the allegations, and assert that non-Franklin persons or entities (such as Alphonso LeBlanc and Bear Stearns) engaged in

and/or facilitated deceitful practices which hindered Franklin's ability to detect and deter frequent trading.

60        Deny, except deny knowledge or information sufficient to form a belief as to truth of the allegations in sentence four about what such "witness" did or did not state about Kaplan's participating in, enabling and "facilitating various market timers' frequent, short-term trading," and the allegations in sentences one, two, three, five and six, assert that non-Franklin persons or entities (like Bear Stearns) engaged in and/or facilitated deceitful practices which hindered Franklin's ability to detect and deter frequent trading, and respectfully refer to the Attorney General's investigation and complaint and the "written agreement" for their complete contents.

61        Deny, and assert that paragraph 61 contains vague and general allegations, particularly "other market timers who were known to FT-affiliated defendants as substantial market timers" and, therefore, not susceptible to a response, and Franklin took many steps and acted in good faith in its effort to detect and deter frequent trading.

62        Deny.

63        Deny knowledge or information sufficient to form a belief as to the truth of the allegations, except admit that certain open end mutual funds, including certain Franklin Funds, are priced daily.

64        Deny.

65        Deny knowledge or information sufficient to form a belief as to the truth of the allegations, and respectfully refer to "Rule 22c-1" for its complete content.

66        Assert that paragraph 66 contains vague and general statements, and legal conclusions to which no response is required. To the extent a response is deemed required, deny, and respectfully refer to "Rule 22c-1" for its complete content.

ME1 9895349v.1

| | |
|---|---|
| 67 | Assert that paragraph 67 contains no allegations specific to Franklin Defendants, and contains vague and general statements and characterizations, a hypothetical example, and legal conclusions to which no response is required. To the extent a response is deemed required, deny knowledge or information sufficient to form a belief as to the truth of the allegations, and respectfully refer to Rule 22c-1 for its complete content. |
| 68 | Assert that paragraph 68 contains no allegations specific to Franklin Defendants, and contains vague and general statements and characterizations and a hypothetical example to which no response is required. To the extent a response is deemed required, deny knowledge or information sufficient to form a belief as to the truth of the allegations, and assert that the term "market timing" has had various meanings through the Class Period and those meanings changed therein. |
| 69 | Assert that paragraph 69 contains vague and general statements and characterizations to which no response is required. To the extent a response is deemed required, deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations about what "one of the major market timers … has asserted," or, indeed, the identity of such "major market timer." |
| 70 | Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in sentence two, and assert that Franklin took many steps and acted in good faith in its efforts to detect and deter frequent trading. |
| 71 | Deny knowledge or information sufficient to form a belief as to the truth of the allegations. |
| 72 | Deny knowledge or information sufficient to form a belief as to the truth of the allegations. |

ME1 9895349v.1

73          Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in sentence one, assert that sentence four contains legal conclusion to which no response is required, and respectfully refer to "Investment Company Act § 1(b)(2)" for its complete content.

74          Deny.

75          Deny, and assert that no response is required to the hypothetical allegations in sentence three.

76          Deny.

77          Deny, except admit, on information and belief, that an article about market timing in international funds was distributed via e-mail among Franklin personnel, deny knowledge or information sufficient to form a belief as to the truth of the allegations in sentence three, and respectfully refer to the "recent study," "internet articles" and "email" for their complete contents.

78          Deny, assert that allegations therein fall outside the purported class period, and respectfully refer to the "various registration statements and prospectuses" for their complete contents.

79          Deny, assert that in October 2000, within weeks of Franklin's implementing changes in the Fund prospectuses in its efforts to detect and deter frequent trading, shareholders, including First Lincoln Holdings, Inc. sued Franklin, and, as to the documents referenced therein, respectfully refer to them for their complete contents.

80          Deny, and, as to the documents referenced therein, respectfully refer to them for their complete contents.

81          Deny.

82          Deny.

MEI 9895349v.1

83          Deny.

84          Deny.

85          Deny, except admit that Franklin Advisers was the subject of an
            SEC Consent Order, and that Franklin paid $50 million in
            connection with the SEC Consent Order, and respectfully refer to
            the "SEC Consent Order" for its complete content.

86          Deny, except admit that certain Franklin entities were the subject of
            an "Administrative Complaint," and respectfully refer to the
            "Administrative Complaint" for its complete content.

87          Deny, except admit that on or about September 20, 2004, the
            Massachusetts Securities Division of the Office of the Secretary of
            the Commonwealth, Franklin Advisers, Inc. and Franklin
            Templeton Alternative Strategies, Inc. entered into a "consent
            order," and, as to the documents referenced therein, respectfully
            refer to them for their complete contents.

88          Deny.

89          Deny.

90          Deny, and respectfully refer to the "prospectuses" for their
            complete contents.

91          Deny, except deny knowledge or information sufficient to form a
            belief as to the truth of the allegations about "Calugar" being
            "implicated," and respectfully refer to the "prospectuses" for their
            complete contents.

92          Deny.

93          Deny, and respectfully refer to the "SEC Consent Order" for its
            complete content.

MEI 9895349v.1

94          Deny, and respectfully refer to the "Form 10-K" and "website" for
            their complete contents, including any statements by Franklin about
            trading by "employees" in Funds.

95          Deny, assert that paragraph 95 contains vague and general
            statements, i.e. "IRAs and other vehicles," and therefore is not
            susceptible to a response, and that much of the frequent trading that
            occurred in the Funds was done through "omnibus accounts" and
            FundServ accounts which were controlled by external broker-
            dealers and were opaque to Franklin.

96          Assert that paragraph 96 contains legal conclusions to which no
            response is required.

97          Deny, assert that language in the Funds' prospectuses varied from
            Fund to Fund and over time during the class period, and, as to the
            documents referenced therein, respectfully refer to them for their
            complete contents.

98          Deny, and respectfully refer to the "prospectuses" of the Franklin
            Small Cap Growth Fund, later known as the Franklin Small Cap
            Growth Fund I and Franklin Small-Mid Cap Growth Fund for their
            complete contents.

99          Deny, and respectfully refer to the "Form N1-A," the deposition
            transcript of Harris Ashton, the "FT First Lincoln Suppl. Mem.
            Opp. To Prelim. Inj.," and the "internal e-mail" for their complete
            contents.

100         Deny, and respectfully refer to the "prospectus" of the Franklin
            Small-Cap Growth Fund I for its complete content.

101         Deny, and respectfully refer to the "prospectuses," "Massachusetts
            Consent Order" and the "FT First Lincoln Opp. Br." for their
            complete contents.

102         Deny, and respectfully refer to the "prospectus" for its complete
            content.

ME1 9895349v.1

103    Deny, and respectfully refer to the "prospectus" for its complete content.

104    Deny, and respectfully refer to the "prospectuses" and "Massachusetts Consent Order" for their complete contents.

105    Deny, and respectfully refer to the "prospectuses" for their complete contents.

106    Deny, and respectfully refer to the "prospectus" for its complete content.

107    Deny, and respectfully refer to the "prospectuses" for their complete contents.

108    Deny, and respectfully refer to the "prospectus" for its complete content.

109    Deny, and respectfully refer to the "prospectuses" for their complete contents.

110    Deny, and respectfully refer to the "prospectus" for its complete content.

111    Deny, assert that the prospectuses contain similar language and respectfully refer to the "prospectuses" for their complete contents.

112    Deny, and respectfully refer to the "prospectuses" for their complete contents.

113    Deny, and respectfully refer to the "prospectuses" for their complete contents.

114    Deny, and, as to the documents referenced therein, respectfully refer to them for their complete contents.

MEI 9895349v.1

115     Deny, and respectfully refer to the "registration statements," "prospectuses," and the "FT First Lincoln Suppl. Mem. Opp. To Prelim. Inj." for their complete contents.

116     Deny, assert that certain trading proposals were received by Franklin entities and, in some instances, brought to the attention of portfolio managers, and respectfully refer to the "prospectuses" and "Consent Order" for their complete contents.

117     Deny, assert that allegations therein fall outside the purported class period, and respectfully refer to the "FT email dated January 14, 1998," deposition transcripts of Harris Ashton and Greg Johnson, prospectuses and "documents produced by FT" for their complete contents.

118     Deny, and respectfully refer to the "letter from FT's St. Petersburg, Florida office," "January 25, 2000 internal email to Ed Jamieson," "email dated February 14, 2000," "December 19, 2002 … email," "FT prospectuses" and "August 25, 1999 email" for their complete contents.

119     Deny, assert that Franklin entities and trustees periodically reviewed the language in the prospectuses, and respectfully refer to the "November 23, 2003 interview" for its complete contents.

120     Deny, assert that allegations therein fall outside the purported class period, and respectfully refer to the "FT prospectuses" for their complete contents.

121     Deny, assert that allegations therein fall outside the purported class period, and respectfully refer to the "Consent Order" for its complete content.

122     Deny, assert that allegations therein fall outside the purported class period, and respectfully refer to the "Consent Order" for its complete content.

MEI 9895349v.1

123          Deny, assert that allegations therein fall outside the purported class period, and respectfully refer to the "Consent Order" for its complete content.

124          Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in sentences one and two, admit that the representative referenced by the SEC was Randal Golden, assert that allegations therein fall outside the purported class period, and respectfully refer to the "prospectus language" for its complete content and the deposition transcript of Randall Golden for its complete content (but not necessarily for its accuracy).

125          Deny, and assert that the allegations therein fall outside the purported class period, and respectfully refer to the "July 1998 email trail," "July 16, 1998 FT internal email," "July 20, 1998 email," "July 22, 1998 email," "August 21, 1998 internal FT memo," and prospectuses for their complete contents.

126          Deny, and respectfully refer to the "August 26, 1999 letter," "internal FT document authored by a market timing desk specialist," "August 8, 2000 FT internal email," deposition transcript of Thomas Johnson," and "August 21, 2000 internal FT email" for their complete contents, and the deposition transcript of Randall Golden for its complete content (but not necessarily for its accuracy).

127          Deny, except assert that allegations therein fall outside the purported class period, deny knowledge or information sufficient to form a belief as to the truth of the allegations in sentence two, the allegation regarding who "LeBlanc placed trades for," and the allegation regarding who he "dealt directly with," and respectfully refer to the deposition transcript of Alphonso LeBlanc for its complete content (but not necessarily for its accuracy) .

128          Deny, and respectfully refer to the deposition transcript of Alphonso LeBlanc for its complete content (but not necessarily for its accuracy).

MEI 9895349v.1

129        Deny, and respectfully refer to the deposition transcript of Alphonso LeBlanc for its complete content (but not necessarily for its accuracy).

130        Deny, and respectfully refer to the deposition transcript of Alphonso LeBlanc for its complete content (but not necessarily for its accuracy).

131        Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegation regarding what "was his [LeBlanc's] job," assert that allegations therein fall outside the purported class period, and respectfully refer to the "March 29, 2000 internal FT email" for its complete content, and the deposition transcript of Alphonso LeBlanc for its complete content (but not necessarily for its accuracy).

132        Deny, and respectfully refer to the deposition transcript of Alphonso LeBlanc for its complete content (but not necessarily for its accuracy).

133        Deny, assert that LeBlanc used deceptive practices to engage in and/or facilitate frequent trading in the Funds, and respectfully refer to the deposition transcript of Alphonso LeBlanc for its complete content (but not necessarily for its accuracy).

134        Deny, and respectfully refer to the "June 23, 2000 email" for its complete content, and the deposition transcript of Alphonso LeBlanc for its complete content (but not necessarily for its accuracy).

135        Deny, except admit that Franklin did direct Alphonso LeBlanc to cease trading in the Funds, assert that Franklin made good faith efforts to detect and deter trading in the Funds by LeBlanc, and LeBlanc used deceptive practices to engage in and/or facilitate frequent trading in the Funds, and respectfully refer to the deposition transcript of Alphonso LeBlanc for its complete content (but not necessarily for its accuracy).

MEI 9895349v.1

136         Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegation that O'Meally and his "team" "traded for well-known market timer clients …," assert that O'Meally and other Prudential brokers used deceptive practices to engage in and/or facilitate frequent trading in the Funds, and Franklin made good faith efforts to detect and deter trading in the Funds by O'Meally, and respectfully refer to the deposition transcript of Frederick O'Meally for its complete content (but not necessarily for its accuracy).

137         Deny, and respectfully refer to the deposition transcript of Frederick O'Meally for its complete content (but not necessarily for its accuracy).

138         Deny, and respectfully refer to the deposition transcript of Frederick O'Meally for its complete content (but not necessarily for its accuracy).

139         Deny, assert that allegations therein fall outside the purported class period, O'Meally and other Prudential brokers used deceptive practices to engage in and/or facilitate frequent trading in the Funds, Franklin made good faith efforts to detect and deter trading in the Funds by O'Meally and other Prudential brokers, and respectfully refer to the "documents produced by FT" for their complete contents, and the deposition transcript of Frederick O'Meally for its complete content (but not necessarily for its accuracy).

140         Deny, except admit that Franklin did direct O'Meally and Prudential to cease trading in the Funds, assert that Franklin made good faith efforts to detect and deter trading in the Funds by O'Meally, and respectfully refer to the deposition transcript of Frederick O'Meally for its complete content  (but not necessarily for its accuracy).

MEI 9895349v.1

141         Deny, assert that O'Meally and other Prudential brokers used deceptive practices to engage in and/or facilitate frequent trading in the Funds, Franklin made good faith efforts to detect and deter trading in the Funds by O'Meally and others, and respectfully refer to the "internal charts" for their complete contents.

142         Deny, assert that various non-Franklin persons or entities (like some of those mentioned in paragraph 142) used deceptive practices to engage in and/or facilitate frequent trading in the Funds, and Franklin made good faith efforts to detect and deter frequent trading in the Funds, and respectfully refer to the December 7, 1999 memo and "September 15, 2000 email" for their complete contents, and the deposition transcripts of Alphonso LeBlanc and Frederick O'Meally for their complete contents (but not necessarily for their accuracy).

143         Deny, and respectfully refer to the "February 28, 2002 internal email" and "prospectuses" for their complete contents.

144         Deny, assert that allegations therein fall outside the purported class period, and respectfully refer to the "emails," "prospectuses" and the deposition transcript of Greg Johnson for their complete contents.

145         Deny, assert that the Consent Order stated that the Franklin Defendants "as a whole has generally sought to detect, discourage, and prevent market timing in its funds. FT began to increase its efforts to control market timing in 1999, at a time when other mutual fund complexes were encouraging timers. FT has rejected many potentially lucrative proposals from market timers," and respectfully refer to the "Consent Order" for its complete content.

146         Deny, and respectfully refer to the "December 19, 2002 email for its complete content.

MEI 9895349v.1

147   Deny, and assert that in 1999, Franklin initiated a study on exchange activity and trading patterns in the Funds, and respectfully refer to the "Consent Order" and the "March 13, 2000 internal email" for their complete contents.

148   Deny, except admit that Franklin did implement steps to "combat" frequent trading, and respectfully refer to the "Consent Order" and the "April 7, 2000 email" for their complete contents.

149   Deny, assert that non-Franklin persons or entities engaged in and/or facilitated deceitful practices, which hindered Franklin's ability to detect and deter frequent trading, and respectfully refer to the deposition transcript of Thomas Johnson for its complete content.

150   Deny, and respectfully refer to the "Consent Order" for its complete content.

151   Deny, assert that trading that occurred through FundServ accounts controlled by external broker-dealers was opaque to Franklin, and respectfully refer to the deposition transcript of Thomas Johnson for its complete content.

152   Deny, and respectfully refer to the "August 8, 2000 memo" for its complete content.

153   Deny, and respectfully refer to the "Consent Order" and the deposition transcript of Thomas Johnson for their complete contents.

154   Deny, except admit that Franklin revised language in Fund prospectuses in or around September 2000 to further reduce frequent trading, and utilized stop codes (among other steps) to deter frequent trading.

155   Deny, and respectfully refer to the "Consent Order" for its complete content.

MEI 9895349v.1

156   Deny, assert that allegations therein fall outside the purported class period, and respectfully refer to the "SEC's findings" for their complete content.

157   Deny, assert that the SEC Consent Order did refer to Hutchinson Securities, and respectfully refer to the "Consent Order," deposition transcript of Thomas Johnson, and the "July 21, 2000 email" for their complete contents.

158   Deny, assert that the allegations therein fall outside the purported class period and respectfully refer to the "October 22, 1997 email" and "January 20, 1998 email" for their complete contents.

159   Deny, assert that the allegations therein fall outside the purported class period, and respectfully refer to the "Consent Order" and "email dated January 20, 1998" for their complete contents.

160   Deny, assert that the allegations therein fall outside the purported class period, and respectfully refer to the "June 30, 1998 email," "series of email exchanges," "email dated July 9, 1998, and "Consent Order" for their complete contents.

161   Deny, and respectfully refer to the "Consent Order" for its complete content.

162   Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations about whether William Post "actively sought" "new investors," and admit that William Post, while employed at Franklin, worked with hedge funds and sought hedge fund investors, and his positions included Vice President of Franklin Templeton Alternative Strategies, Inc.

163   Deny, and respectfully refer to the "internal memorandum" for its complete content.

164   Deny.

165   Deny, assert that an account of Calugar and/or one of his affiliates had been coded and that Franklin barred trading by Calugar and/or

22

one of his affiliates, and respectfully refer to the "Boston Globe article" and "Answer to the Administrative Complaint," which was served on or about February 17, 2004, for their complete contents.

166     Deny, except respectfully refer to the "e-mail dated April 20, 2001" and the "Massachusetts Consent Order" for their complete contents.

167     Deny knowledge or information sufficient to form a belief as to the truth of the allegations about what Calugar "specifically sought" or intended.

168     Deny, except admit that Franklin "did not pay 1% upfront" and respectfully refer to the "e-mails" for their complete contents.

169     Deny, and respectfully refer to the "e-mails" for their complete contents.

170     Deny, except admit that Franklin, through Peter Jones, rejected that proposal of Calugar and respectfully refer to the quoted e-mail and "Answer" for their complete contents.

171     Deny.

172     Deny, and respectfully refer to the "e-mail" for its complete content.

173     Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations about what William Post "pitched" or did not "pitch," and admit, on information and belief, that William Post met with Calugar in or about August 2001 in Las Vegas, and respectfully refer to the Massachusetts Consent Order and "slide presentation" for their complete contents.

174     Deny, and respectfully refer to the "e-mail" for its complete content.

175     Deny, except admit, on information and belief, that "Chuck Johnson" referred to "Charles E. Johnson" and respectfully refer to the "e-mail" for its complete content.

| | |
|---|---|
| 176 | Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations about the "discussions" between Calugar and William Post, and respectfully refer to the "e-mail" for its complete content. |
| 177 | Deny, and respectfully refer to the "e-mail" for its contents. |
| 178 | Deny, and respectfully refer to the "e-mail" and "Massachusetts Consent Order" for their complete contents. |
| 179 | Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations about what Calugar "sought" or intended, and respectfully refer to the prospectuses of the Funds for their complete contents. |
| 180 | Deny, and respectfully refer to the "prospectus disclosure" and "Massachusetts Consent Order" for their complete contents. |
| 181 | Deny, and respectfully refer to the "prospectus" and "Massachusetts Consent Order" for their complete contents. |
| 182 | Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations about what Calugar "understood" or about what Calugar or "other savvy timers did not wish." |
| 183 | Deny knowledge or information sufficient to form a belief as to the truth of the allegations. |
| 184 | Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegation about what Calugar "communicated" to Post, admit that Edward Jamieson was portfolio manager of the Franklin Small Mid-Cap Growth Fund, and that Greg Johnson was an officer of Franklin/Templeton Distributors, Inc. and co-chief executive officer of Franklin Resources, Inc., and is the son of Charles B. Johnson and the brother of Chuck Johnson, and respectfully refer to the "e-mail" for its complete content. |

ME1 9895349v.1

185        Deny, assert that Greg Johnson discussed Calugar's proposed investment with Peter Jones, and respectfully refer to the "website" and "Answer" for their complete contents.

186        Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding what Calugar "specifically seeks" or "his need," and respectfully refer to the "e-mail" and "court filings" for their complete contents.

187        Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegation in sentence one.

188        Deny, and respectfully refer to the "e-mail" for its complete content.

189        Deny knowledge or information sufficient to form a belief as to the truth of the allegations, and respectfully refer to the "e-mail" for its complete content.

190        Deny knowledge or information sufficient to form a belief as to the truth of the allegations, and respectfully refer to the "e-mail" for its complete content.

191        Deny, assert that on or about September 6, 2001, Calugar or one of his "affiliates" made an investment in the Franklin Templeton Strategic Growth Fund, and respectfully refer to the "e-mails" and the "Massachusetts Consent Order" for their complete contents.

192        Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations about SBI's "purpose."

193        Deny knowledge or information sufficient to form a belief as to the truth of the allegations, and respectfully refer to the "e-mail" for its complete content.

194        Deny, and respectfully refer to the "e-mail" for its complete content.

MEI 9895349v.1

195     Deny, except deny knowledge or information sufficient to form a belief as to truth of the allegations in sentence one, and respectfully refer to the "e-mails" for their complete content.

196     Deny, except admit that Calugar or one of his affiliates redeemed out of an account on or about November 9, 2001, and refer to the "e-mail" for its complete content.

197     Deny, except admit that Calugar approached Franklin with a trading proposal, which Franklin rejected, and respectfully refer to the "letter" for its complete content.

198     Deny, and respectfully refer to the "e-mail" for its complete content.

199     Deny to the extent the adjective "additional" suggests that Calugar had timing capacity at Franklin, and deny knowledge or information sufficient to form a belief as to the truth of the other allegations.

200     Deny knowledge or information sufficient to form a belief as to the truth of the allegations.

201     Deny knowledge or information sufficient to form a belief as to the truth of the allegations, and respectfully refer to the "letter" for its complete content.

202     Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence, and respectfully refer to the correspondence, including the "memorandum" for its complete content.

203     Deny knowledge or information sufficient to form a belief as to the truth of the allegation, and respectfully refer to the correspondence for its complete content.

204     Deny knowledge or information sufficient to form a belief as to the truth of the allegations, and respectfully refer to the "e-mail" for its complete content.

ME1 9895349v.1

205        Admit, on information and belief, that in or about August 2002, Calugar or one of his affiliates wrote a letter to Post requesting redemption of the investment in the Franklin Templeton Strategic Growth Fund, and respectfully refer to the "letter" for its complete content.

206        Deny.

207        Deny, except admit, on information and belief, that Post co-authored a memorandum addressed to the "Office of the President" dated August 15, 2002, and, as to the document referenced therein, respectfully refer to it for its complete content.

208        Deny, assert that paragraph 208 contains vague and ambiguous statements such as "Post's business procedures" and "expressed no concerns" which are not susceptible of response, and respectfully refer to the deposition transcripts of Tom Johnson and Peter Jones for their complete contents.

209        Deny knowledge or information sufficient to form a belief as to the truth of the allegations, and, as to the documents referenced therein, respectfully refer to them for their complete contents.

210        Deny knowledge or information sufficient to form a belief as to the truth of the allegations, and, as to the documents referenced therein, respectfully refer to them for their complete contents.

211        Deny.

212        Admit that such "U-5 form" was submitted on or about December 30, 2003, and respectfully refer to the "U-5" form for its complete content.

213        Admit that Mr. Post submitted his resignation on or about December 25, 2003.

214        Admit on information and belief, and respectfully refer to the "SEC Complaint" for its complete content.

ME1 9895349v.1

215        Deny, except admit that Franklin disclosed that it had been the
           subject of an investigation by regulators, deny knowledge or
           information sufficient to form a belief as to the truth of the
           allegation that the SEC complaint against Calugar did not reference
           Franklin Templeton by name, and respectfully refer to the "2003
           Form 10-K" for its complete content.

216        Deny, except admit, on information and belief, that the
           Enforcement Section of the Massachusetts Securities Division of
           the Office of the Secretary of the Commonwealth filed the
           "Massachusetts Administrative Complaint" on or about February 4,
           2004, and respectfully refer to the complaint for its complete
           content.

217        Deny, except deny knowledge or information sufficient to form a
           belief as to the truth of the allegations about what William Galvin
           "stated," and respectfully refer to the "press release" for its
           complete content.

218        Deny, except deny knowledge or information sufficient to form a
           belief as to the truth of the allegations about what the article stated,
           and respectfully refer to the "article" for its complete content.

219        Deny, except deny knowledge or information sufficient to form a
           belief as to the truth of the allegations about what Galvin was
           quoted as stating, and respectfully refer to the "article" for its
           complete content.

220        Deny, except deny knowledge or information sufficient to form a
           belief as to the truth of the allegations in sentences one and two,
           and respectfully refer to the "article" for its complete content.

221        Deny, except deny knowledge or information sufficient to form a
           belief as to the truth of the allegations about what Calugar
           "carefully determined."

ME1 9895349v.1

222    Deny knowledge or information sufficient to form a belief as to the truth of the allegations, and refer to the "plea agreement" and "final judgment" for their complete contents.

223    Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations as they pertain to non-Franklin persons or entities, and assert that various non-Franklin persons or entities (like some of those mentioned in paragraph 223) engaged in and/or facilitated deceptive practices which hindered Franklin's efforts in detecting and deterring frequent trading.

224    Deny, and respectfully refer to the "Frequently Asked Questions" section of "its website" for its complete content.

225    Deny, and respectfully refer to the "communications" for their complete contents.

226    Deny, and respectfully refer to the "internal emails" from 2002 and 2003 and "email … on January 9, 2003" for their complete contents.

227    Deny, except admit that on or about August 2, 2004, the SEC issued a Consent Order stating, in part, that Franklin would pay $50 million, without admitting or denying the "findings," and respectfully refer to the Consent Order for its complete content.

228    Deny, except admit that Franklin agreed to pay $5 million, deny knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence, and respectfully refer to the "Massachusetts Consent Order" and "Calugar's settlements" and "guilty plea" for their complete contents.

229    Deny.

230    Deny, and respectfully refer to the documents referenced therein for their complete contents.

ME1 9895349v.1

231         Deny, and respectfully refer to the "Consent Order" for its complete content.

232         Deny, except admit that Franklin, through its personnel and equipment, did identify and block trading that was deemed market timing, and that Franklin, to the extent it was capable, monitored trading and accounts, including those affiliated with persons deemed "market timers."

233         Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations about the identity of such "witness" and what such "witness" allegedly said, and assert that Franklin worked with personnel from broker-dealer firms, among others, to detect and deter frequent trading, and took many steps and acted in good faith in its efforts to detect and deter frequent trading.

234         Assert that the allegations in paragraph 234 are vague and ambiguous and not susceptible of response.  To the extent that a response is deemed required, deny.

235         Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations about what was "known by mutual fund industry insiders."

236         Deny, and respectfully refer to the "June 2, 2001 memo" for its complete content.

237         Deny, and deny knowledge or information sufficient to form a belief as to the truth of the allegations about the identity of such "witness" and what such "witness" said.

238         Deny knowledge or information sufficient to form a belief as to the truth of the allegations about persons or entities other than Franklin, assert that various persons or entities (like Prudential and its brokers) used deceptive practices to engage in and/or facilitate frequent trading in the Funds, and respectfully refer to the "initial complaint" and "amended complaint" for their complete contents.

ME1 9895349v.1

239         Deny knowledge or information sufficient to form a belief as to the truth of the allegations, and respectfully refer to the "amended complaint" for its complete content.

240         Deny knowledge or information sufficient to form a belief as to the truth of the allegations, and respectfully refer to the "amended complaint" for its complete content, and assert that registered representatives at broker dealers (like Prudential) and others engaged in and/or facilitated deceptive practices which hindered Franklin's efforts in detecting and deterring frequent trading.

241         Deny knowledge or information sufficient to form a belief as to the truth of the allegations, except admit, on information and belief, the allegations in sentences two and three, and respectfully refer to the "Complaint" for its complete content.

242         Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations about other mutual fund companies, admit that Franklin, among other things, issued letters and other correspondence and imposed blocks in its efforts to detect and deter frequent trading, and further admit that brokers disguised their trades and engaged in deceptive practices to evade Franklin's efforts, and respectfully refer to the "Complaint" for its complete content.

243         Deny, except admit that Franklin, among other things, issued numerous letters and other correspondence, imposed redemption fees, and restricted trading in its efforts to deter frequent trading, and further admit that brokers disguised their trades and engaged in deceptive practices to evade Franklin's efforts, and respectfully refer to the "Complaint" for its complete content.

244         Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in sentences two, three and four, and respectfully refer to the "Complaint" for its complete content.

245         Deny, and refer to the "Consent Order" for its complete content.

ME1 9895349v.1

246     Deny, and assert that allegations therein fall outside the purported class period.

247     Deny.

248     Deny.

249     Deny, assert that the Fund Boards flatly prohibited market-timing in a group of international funds and respectfully refer to the "September 10, 2003 memo" for its complete content.

250     Deny, and respectfully refer to the "December 8, 2003 email" for its complete content.

251     Deny, and respectfully refer to the "April 5, 2002 memo," "February 14, 2000 email," "December 6, 2001 email exchange", and "email chain" for their complete contents and addressees.

252     Deny, and respectfully refer to the "December 19, 2002 email" and the deposition transcript of Gregory Johnson for their complete contents.

253     Deny, and respectfully refer to the deposition transcripts of Gregory Johnson and Harris Ashton for their complete contents.

254     Deny, assert that much of the "frequent trading" that occurred at Franklin was done through "omnibus accounts", 401(k) and FundServ accounts which were controlled by external broker-dealers and were opaque to Franklin, and, as to the documents referenced therein, respectfully refer to them for their complete contents.

255     Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations about persons or entities other than Franklin, admit that various persons or entities (such as Bear Stearns) used deceitful practices to engage in and/or facilitate frequent trading in the Funds, and assert that Franklin made good faith efforts to detect and deter frequent trading in the Funds.

ME1 9895349v.1

256         Deny knowledge or information sufficient to form a belief as to the truth of the allegations, and assert that various persons or entities (such as Bear Stearns) used deceitful practices to engage in and/or facilitate frequent trading in the Funds, and Franklin made good faith efforts to detect and deter frequent trading in the Funds.

257         Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations about non-Franklin persons or entities, and assert that various persons or entities (such as Bear Stearns) used deceitful practices to engage in and/or facilitate frequent trading in the Funds, and Franklin made good faith efforts to detect and deter frequent trading in the Funds.

258         Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations about non-Franklin persons or entities, and assert that various persons or entities (such as Bear Stearns) used deceitful practices to engage in and/or facilitate frequent trading in the Funds, and Franklin made good faith efforts to detect and deter frequent trading in the Funds.

259         Deny knowledge or information sufficient to form a belief as to the truth of the allegations, and assert that various persons or entities (such as Bear Stearns) used deceitful practices to engage in and/or facilitate frequent trading in the Funds, and Franklin made good faith efforts to detect and deter frequent trading in the Funds.

260         Deny knowledge or information sufficient to form a belief as to the truth of the allegations.

261         Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations about non-Franklin persons or entities, assert that various persons or entities (such as Bear Stearns and Alphonso LeBlanc) used deceitful practices to engage in and/or facilitate frequent trading in the Funds, and Franklin made good faith efforts to detect and deter frequent trading in the Funds, and respectfully refer to the deposition transcript of Al LeBlanc for its complete content (but not necessarily for its accuracy).

| | |
|---|---|
| 262 | Deny knowledge or information sufficient to form a belief as to the truth of the allegations, except assert that various persons and entities (such as Bear Stearns) used deceptive practices to engage in and/or facilitate frequent trading in the Funds, and Franklin made good faith efforts to detect and deter frequent trading in the Funds. |
| 263 | Deny knowledge or information sufficient to form a belief as to the truth of the allegations. |
| 264 | Deny, and assert that Plaintiff purports to bring this action as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of certain investors. |
| 265 | Deny, except admit that certain Funds are actively traded mutual funds, and that Franklin Small-Mid Cap Growth Fund is actively traded under the ticker FRSGX, and that, as of about October 31, 2003, had net assets of approximately $8.1 billion and many thousands of shareholders. |
| 266 | Deny. |
| 267 | Deny. |
| 268 | Deny. |
| 269 | Incorporate responses contained in the paragraphs above as if fully set forth herein. |
| 270 | Admit that Plaintiff purports to bring such claim. |
| 271-280 | Assert that no response is required because paragraphs 271-280 contain legal conclusions to which no response is required. To the extent that a response is deemed required, deny as to the Franklin Defendants, and deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding non-Franklin defendants. |
| 281 | Incorporate responses contained in the paragraphs above as if fully set forth herein. |

MEI 9895349v.1

| | |
|---|---|
| 282 | Admit that Plaintiff purports to bring such claim. |
| 283-292 | Assert that no response is required because paragraphs 283-292 contain legal conclusions to which no response is required.  To the extent that a response is deemed required, deny as to the Franklin Defendants, and deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding non-Franklin defendants. |
| 293 | Incorporate responses contained in the paragraphs above as if fully set forth herein. |
| 294 | Admit that Plaintiff purports to bring such a claim. |
| 295-303 | Assert that no response is required because paragraphs 295-303 contain legal conclusions to which no response is required.  To the extent that a response is deemed required, deny as to the Franklin Defendants, and deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding non-Franklin defendants, and refer to the "U-5" form for its complete content. |
| 304 | Incorporate responses contained in the paragraphs above as if fully set forth herein. |
| 305 | Admit that Plaintiff purports to bring such a claim. |
| 306-308 | Assert that no response is required because paragraphs 306-308 contain legal conclusions to which no response is required.  To the extent that a response is deemed required, deny. |
| 309 | Incorporate responses contained in the paragraphs above as if fully set forth herein. |
| 310 | Admit that Plaintiffs purport to bring such a claim. |
| 311-317 | Assert that no response is required because paragraphs 311-317 contain legal conclusions to which no response is required.  To the extent that a response is deemed required, deny. |

ME1 9895349v.1

Further, the Franklin Defendants deny the allegations in the "WHERFORE" clause and deny that Plaintiff and purported class are entitled to any relief whatsoever.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

This action is barred because the allegations in the Complaint fail to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Class Action)

Plaintiff cannot satisfy the requirements of Fed. R. Civ. P. 23, and is not entitled to certification of any class.

## THIRD AFFIRMATIVE DEFENSE
### (No Special Agreements)

Plaintiff's claims fail because the Franklin Defendants made no special agreements that allowed exceptions to the Franklin Defendants' policies concerning limits in frequency of trading in Franklin Funds.

## FOURTH AFFIRMATIVE DEFENSE
### (Prospectus Language Not Misleading)

Plaintiff's claims are barred because the Fund prospectuses are not misleading or in any way violative of law.

## FIFTH AFFIRMATIVE DEFENSE
### (No Misrepresentations or Omission)

No misrepresentations, false or misleading statements or omissions were made by or on behalf of the Franklin Defendants that directly or indirectly:  (a) involved material facts, (b) were relied on by the Plaintiff, (c) caused or contributed to any loss or damage incurred by the

MEI 9895349v.1

Plaintiff, (d) were made in connection with the purchase, sale or holding of any security by the Plaintiff, (e) were made with any requisite level of *scienter* or intent to deceive, or (f) would operate as a fraud or deceit upon anyone.

### SIXTH AFFIRMATIVE DEFENSE
### (No Device, Scheme or Artifice to Defraud)

The Franklin Defendants did not employ any device, scheme or artifice to defraud, including any that directly or indirectly:  (a) involved material facts, (b) were relied on by the Plaintiff, (c) caused or contributed to any loss or damage incurred by the Plaintiff, (d) were made in connection with the purchase, sale or holding of any security by the Plaintiff, (e) were made with any requisite level of *scienter* or intent to deceive, or (f) would operate as a fraud or deceit upon anyone.

### SEVENTH AFFIRMATIVE DEFENSE
### (No Act, Practice, Course of Business or Transaction
### that Operated as a Fraud or Deceit)

The Franklin Defendants did not engage in any act, practice, course of business or transaction that operated as a fraud or deceit, including any that directly or indirectly:  (a) involved material facts, (b) were relied on by the Plaintiff, (c) caused or contributed to any loss or damage incurred by the Plaintiff, (d) were made in connection with the purchase, sale or holding of any security by the Plaintiff, (e) were made with any requisite level of *scienter* or intent to deceive, or (f) would operate as a fraud or deceit upon anyone.

### EIGHTH AFFIRMATIVE DEFENSE
### (Insufficient Particularity)

The Complaint, and each claim for relief, fails to plead fraud with sufficient particularity.

ME1 9895349v.1

## NINTH AFFIRMATIVE DEFENSE
### (Good Faith and No Inducement)

Plaintiff's claims are barred because the Franklin Defendants at all times acted in good faith and did not directly or indirectly commit or induce any act or acts constituting a violation of the securities laws.

## TENTH AFFIRMATIVE DEFENSE
### (The Franklin Defendants Acted in Good Faith Without Recklessness or the Intent to Defraud)

At all times relevant to this action, the Franklin Defendants acted in good faith and without recklessness or the intention to defraud, and believed, at the time that any of the alleged omissions were allegedly made, if any in fact were made, that such omissions were not material.

## ELEVENTH AFFIRMATIVE DEFENSE
### (No Breach of Duty)

The Franklin Defendants complied faithfully with all duties of disclosure to which they were subject, if any, and breached no duty of disclosure applicable to them.

## TWELFTH AFFIRMATIVE DEFENSE
### (Superseding/Intervening Cause)

If Plaintiff has sustained any damages, which is expressly denied, the same is the proximate result of some superseding or intervening cause.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Statute of Limitations/Repose)

Plaintiff's claims are barred by the applicable statutes of limitations and/or statutes of repose.

MEI 9895349v.1

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Assumption of Risk, Contributory Negligence, Waiver, Ratification and Estoppel)

Plaintiff's claims are barred by the doctrines of assumption of risk, contributory negligence, waiver, ratification and estoppel.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (No Causation)

The allegations and claims in the Complaint are barred because Plaintiff was not injured by reason of any misrepresentation or omissions or scheme on the part of the Franklin Defendants.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (§ 36(b) Claims Legally Defective)

Plaintiff's claims are not legally cognizable under Section 36(b) of the Investment Company Act.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### (Plaintiff Was Fully Informed of All Material Facts)

Plaintiff, or its authorized representative, agent or advisor was fully informed of all material facts concerning investing in the mutual funds at issue, including the possible effects of market timing, the level and calculation of the fund advisers' compensation, and knowingly entered into its investments. On this basis Plaintiff is estopped and precluded from maintaining this action. The allegations and claims in the Complaint are also barred by the bespeaks caution doctrine.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### (Plaintiff's Claims Barred by 15 U.S.C. § 80a-35(b))

Plaintiff's claims are barred in whole or in part by the one-year period set forth in 15 U.S.C. § 80a-35(b).

MEI 9895349v.1

### NINETEENTH AFFIRMATIVE DEFENSE
**(No Reasonable Reliance)**

To the extent Plaintiff and some or all of the members of the purported class whom Plaintiff purports to represent relied on any communication alleged by Plaintiff to have been misleading, such reliance was not reasonable and/or was reckless, and therefore the Franklin Defendants cannot be held liable for any damages related to any matters referred to in the Complaint.

### TWENTIETH AFFIRMATIVE DEFENSE
**(Offset of Damages)**

Each and every allegation in the Complaint is barred because if damages were sustained by Plaintiff, they must be offset by the benefits rendered to Plaintiff by the Franklin Defendants, others, and/or the same type of conduct which Plaintiff claims was the cause of its alleged damages.

### TWENTY-FIRST AFFIRMATIVE DEFENSE
**(*Res Judicata*)**

Each and every allegation and claim in the Complaint is barred by the doctrine of *res judicata.*

### TWENTY-SECOND AFFIRMATIVE DEFENSE
**(No Standing)**

Plaintiff lacks standing to bring this action.

### TWENTY-THIRD AFFIRMATIVE DEFENSE
**(No Damages)**

The allegations and claims in the Complaint are barred because Plaintiff has not incurred any damages in connection with its purchases, sales and holdings of shares of Franklin Funds. To the extent that Plaintiff has suffered any damages, such damages were not caused by any

conduct of the Franklin Defendants, but resulted in whole or in part from the conduct of persons other than the Franklin Defendants.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE
#### (Plaintiff Already Has Been Compensated)

Plaintiff's claims against the Franklin Defendants are barred because, by virtue of, *inter alia*, regulatory and other settlements, Plaintiff has already been compensated or will be compensated for any alleged damages.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE
#### (Damages Barred)

The damages claimed by Plaintiff against the Franklin Defendants are barred to the extent they exceed the limitations imposed by the Private Litigation Reform Securities Act and other applicable law.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE
#### (Defendants Not Jointly and Severally Liable)

The Franklin Defendants are not jointly and severally liable for any verdict or final judgment obtained by Plaintiff in this action because the Franklin Defendants did not knowingly commit a violation of the securities laws, and, to the extent Plaintiff obtains any verdict or final judgment against the Franklin Defendants in this action, any such verdict or final judgment must be reduced pursuant to Sections 21D(f)(2)(B) and 21D(f)(3) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(f)(2)(b) and 15 U.S.C. § 78u-4(f)(3), such that any liability on the part of the Franklin Defendants shall be limited to the portion of the judgment that corresponds to the percentage of responsibility of the Franklin Defendants.

MEI 9895349v.1

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE
### (Fees are Fair)

The challenged fees are fair and not disproportionately large in relation to the services rendered.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE
### ('40 Act Claims are Derivative)

The claims pursuant to the Investment Company Act of 1940 are derivative claims and are not litigable as a class action.

## TWENTY-NINTH AFFIRMATIVE DEFENSE
### (Fees approved by Trustees and Shareholders)

The Fund Trustees/Directors approved and the shareholders ratified and approved the levels of the challenged fees and their approval and ratification should be given preclusive weight by the Court.

## THIRTIETH AFFIRMATIVE DEFENSE
### (Ratification and Estoppel)

Plaintiff agreed with, accepted, endorsed and otherwise approved the level of challenged fees by continuing to purchase shares, re-investing dividends etc.  Accordingly, it ratified the conduct of the Franklin Defendants and is estopped and otherwise barred from complaining about the level of fees.

## THIRTY-FIRST AFFIRMATIVE DEFENSE
### (Standing to Challenge Fees)

Plaintiff lacks standing to challenge fees paid by Funds other than the Funds in which it is a security holder.

MEI 9895349v.1

### THIRTY-SECOND AFFIRMATIVE DEFENSE
#### (Standing to Challenge Fees)

Plaintiff lacks standing to challenge the level of the fees paid by classes of shares of its respective Funds other than the class of shares which it owns.

### THIRTY-THIRD AFFIRMATIVE DEFENSE
#### (Full Disclosure to Trustees)

The Franklin Defendants fully and timely disclosed all relevant information to the Trustees/Directors regarding the fees paid by the Funds and their approval of the fees is preclusive.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE
#### (Full Disclosure to Plaintiff)

Plaintiff knew, or in the exercise of reasonable care, should have known, all of the relevant information concerning the fees paid by the Funds.  In addition, it was free at all relevant times to sell the shares it owned in the Funds.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE
#### (Adoption of Affirmative Defenses)

The Franklin Defendants hereby adopt by reference any applicable defense pleaded by any other defendant not expressly set forth herein.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE
#### (Reservation of Rights)

The Franklin Defendants hereby give notice that they intend to rely upon such other and further defenses as may become available or apparent during pre-trial proceedings in this case, and hereby reserve their rights to amend their answer and assert such defenses.

ME1 9895349v.1

WHEREFORE, the Franklin Defendants respectfully request that the Court:

1.   dismiss the Complaint with prejudice;

2.   award Franklin Defendants their attorneys' fees and costs; and

3.   grant such other and further relief as it deems just and proper.


Dated:   April 30, 2010
         New York, New York

                                    /s/  Daniel A. Pollack
                                    Daniel A. Pollack
                                    Edward T. McDermott
                                    Anthony Zaccaria
                                    McCARTER & ENGLISH, LLP
                                    245 Park Avenue, 27th Floor
                                    New York, NY 10167
                                    Tel.:  (212) 609-6800
                                    Fax:  (212) 609-6921

                                    *Attorneys for the Franklin Defendants*

MEI 9895349v.1