IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MUTUAL FUNDS INVESTMENT LITIGATION<br>———————————————————— | MDL 1586 |
| IN RE ALLIANCE, FRANKLIN/TEMPLETON, BANK OF AMERICA/NATIONS FUNDS, and PILGRIM BAXTER<br>———————————————————— | Case No. 04-md-15862<br>(Judge Motz) |
| [Franklin Templeton Sub-Track]<br>———————————————————— | |
| Sharkey IRO/IRA v. Franklin Resources, *et al.*<br>———————————————————— | Case No. 04-md-1310 |

**CLASS LEAD PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER PRELIMINARILY APPROVING STIPULATION AND RELEASES AND THIRD PARTY SETTLEMENTS AND ESTABLISHING NOTICE PROCEDURES**

Robert M. Kornreich
Chet B. Waldman
Andrew E. Lencyk
WOLF POPPER LLP
845 Third Avenue
New York, NY 10022
Tel.: (212) 759-4600

*Attorneys for Class Lead Plaintiff*

John B. Isbister, Fed Bar No. 00639
TYDINGS & ROSENBERG LLP
100 East Pratt Street, 26th Floor
Baltimore, MD 21202
Tel: (410) 752-9700

*Plaintiff's Liaison Counsel*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION ....................................................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ..................................................... 3

THE STIPULATION AND THIRD PARTY SETTLEMENTS ................................................... 8

     A.    Resolution Of The Action With The Franklin Defendants ............................... 9

     B.    Cross-Track Bear Stearns Settlement ........................................................... 10

     C.    Cross-Track Canary Settlement .................................................................... 11

     D.    Cross-Track BAS Settlement ........................................................................ 11

     E.    Cross-Track Security Brokerage Settlement ................................................. 12

ARGUMENT ............................................................................................................................ 13

I.     THE STIPULATION AND THE THIRD PARTY SETTLEMENTS
     MEET THE CRITERIA NECESSARY FOR THIS COURT TO GRANT
     PRELIMINARY APPROVAL .................................................................................. 13

     A.    Fairness Considerations Support Preliminary Approval In Light
          Of Experienced Counsel's Careful Analysis And Arm's Length
          Negotiations ................................................................................................. 14

     B.    Adequacy Considerations Support Preliminary Approval Due To
          Significant Risks And Challenges Involved In Continued Litigation ............. 16

II.    THE PROPOSED FORM AND METHOD OF SETTLEMENT
     CLASS NOTICE ARE APPROPRIATE .................................................................. 18

     A.    The Content Of The Long Form Notice Satisfies The Requirements
          Of The PSLRA And Rule 23 ........................................................................ 18

     B.    The Notice Program Meets The Requirements Of Fed. R. Civ. P. 23 ............ 20

III.   THE COURT SHOULD CERTIFY THE CLASS FOR PURPOSES OF
     THE SETTLEMENTS AND THE STIPULATION ................................................... 24

     A.    The Proposed Class Satisfies The Requirements Of Rule 23(a) .................... 25

     B.     The Proposed Class Satisfies The Requirements Of Rule 23(b)(3)................................27

IV.    THE COURT SHOULD APPROVE THE FORM OF NOTICE OF THE
        DERIVATIVE SETTLEMENTS WITH CANARY AND BAS ............................................28

CONCLUSION..............................................................................................................................29

## TABLE OF AUTHORITIES

### CASES

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997)........................................................................................27

*In re Antibiotic Antitrust Actions*,
    333 F. Supp. 291 (S.D.N.Y. 1971)................................................................23

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
    No. 3:08-MD-01998, 2009 U.S. Dist. LEXIS 119870 (W.D. Ky. Dec. 22, 2009)...... 22-23

*In re Global Crossing Sec. and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................24

*Milliron v. T-Mobile U.S.A., Inc.*,
    No. 08-4149, 2009 U.S. Dist. LEXIS 101201 (D.N.J. Sept. 10, 2009)............................23

*In re The Mills Corp. Sec. Litig.*,
    257 F.R.D. 101 (E.D. Va. 2009) ....................................................................28

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) ..........................................................22

### OTHER AUTHORITIES

H.R. Conf. Rep. 104-369, *as reprinted in* 1995 U.S.C.C.A.N. 730 .............................................24

S. Rep. 104-98, *as reprinted in* 1995 U.S.C.C.A.N. 679..............................................................24

SEC Release Nos. 34-56135; IC-27911; File No. S7-03-07 (July 26, 2007) ................................23

### STATUTES AND RULES

Fed. R. Civ. P. 23 et seq..................................................................................13, 18, 19, 20, 27, 28

Investment Company Act of 1940, et seq................................................................................4, 25

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 et seq. ...................18, 19, 23

Securities Exchange Act of 1934, § 10(b) ...................................................................................25

Securities Exchange Act of 1934, § 20(a) ...................................................................................25

Securities Act of 1933, et seq. ......................................................................................................4

# INTRODUCTION

Class Lead Plaintiff in the Franklin Templeton Sub-Track of this litigation, the Deferred Compensation Plan for Employees of Nassau County ("Plaintiff"), has reached agreements to resolve this class action (the "Action") with (i) the Franklin Defendants[1] by means of a Stipulation and Releases, and (ii) certain "Third Party Settlements" with the Third Party Settling Defendants (defined below).  In addition, the plaintiffs in the parallel derivative action in the Franklin Sub-Track (the "Derivative Action") ("Derivative Plaintiffs") are signatories to the BAS and Canary Master Agreement and Severed Agreements (defined below), and the Derivative Action, with regard to those partial settlements only, is also being resolved.[2]

The proposed Third Party Settlements collectively provide for payment of $4,437,368 in cash (the "Settlement Fund").  The Settlement Fund is comprised of (i) $4,074,000 in cash paid on behalf of Bear Stearns & Co. Inc. and certain of its affiliates and successor entities ("Bear Stearns"); (ii) $185,783 in cash, plus $37,700 contributed toward the costs of notice and administration of the Settlement Fund, paid on behalf of Banc of America Securities LLC ("BAS"); (iii) $45,000 paid on behalf of Canary Capital Partners, LLC and certain affiliated entities and Edward Stern (collectively, "Canary"), and (iv) $94,885 paid on behalf of Security Brokerage, Inc., DCIP, L.P., RCIP, L.P., the Security Brokerage, Inc. Profit Sharing Trust, now known as the Calugar Corporation Profit Sharing Trust, and any successors thereto, and Daniel G. Calugar ("Calugar") (collectively, "Security Brokerage") (together with Bear Stearns, BAS,

---

[1] The "Franklin Defendants" include Franklin Resources, Inc., Franklin Advisers, Inc., Franklin/Templeton Distributors, Inc., and Franklin Templeton Alternative Strategies, Inc. (f/k/a Franklin Templeton Asset Strategies, LLC and Franklin Templeton Alternative Strategies, LLC and since merged into Templeton Worldwide, Inc.).

[2] The Derivative Plaintiffs are not signatories to the Stipulation and Releases with the Franklin Defendants, or the Bear Stearns Master Agreement, the Bear Stearns Severed Agreement, or the Security Brokerage MOU (each defined below), and those agreements thus do not apply to the Derivative Action.

and Canary, the "Third Party Settling Defendants"). The Class (and to the extent applicable, as provided below, the Class Funds (defined below)) will also receive interest accrued on the Settlement Fund (the "Gross Settlement Fund"). In addition, the Franklin Defendants have agreed to contribute the sum of $2.75 million in cash toward the costs of distribution (including costs of notice and settlement administration) of the Settlements (the "Franklin Contribution"), pursuant to the Stipulation and Releases dated March 14, 2011 (the "Stipulation") entered in the above-captioned action, subject to certain limitations and the Court's approval, representing an additional benefit to the Class (the Franklin Contribution, together with the Gross Settlement Fund, are referred to herein as the "Class Benefit") for a total Class Benefit of $7,187,368. Because the Franklin Contribution will pay for all or most of the notice and administration costs, a substantially higher percentage of the Gross Settlement Fund will be disbursed to Class Members with valid claims.[3]

Plaintiff respectfully moves this Court for entry of an Order granting (a) preliminary approval of the Stipulation with the Franklin Defendants and the Third Party Settlements with the Third Party Settling Defendants, pursuant to Rules 23(a), (b)(3), (e), and (g) of the Federal Rules of Civil Procedure; (b) certification of this Action as a class action for purposes of the Stipulation and Third Party Settlements only; (c) scheduling of dates leading to, and including, a final hearing on the fairness, reasonableness, and adequacy of the Stipulation and Third Party Settlements; and (d) approval of the form of Notice of Pendency and Proposed Settlement and/or Dismissal of Class Action, Partial Settlement of Derivative Action With Respect to the Canary and BAS Defendants, Motion for Attorneys' Fees and Expenses and Settlement Hearing (the

---

[3] Plaintiff has entered into settlement agreements with the Third Party Settling Defendants (the "Third Party Stipulations"). Additionally, pursuant to the terms of their settlement with the Office of the New York State Attorney General ("OAG"), Canary paid thirty million dollars ($30,000,000) into an interest bearing escrow account. A total of $90,000 plus interest (the "OAG Amount") has been allocated to Class Members of this litigation.

"Long Form Notice"), the notice for publication in various newspapers/newswires (the "Publication Notice"), and the short-form notice (the "Summary Postcard Notice") being mailed directly to Class Members (as defined in the Long-Form Notice) (collectively, the "Notice Program").

Plaintiff believes that the Third Party Settlements and the Stipulation are a laudable result for Plaintiff and the proposed Class under the circumstances, detailed below, including the fact that certain of the claims against the Defendants have been dismissed and the Franklin Defendants were granted partial summary judgment as to other claims, that amply merits preliminary approval.  In addition, the Notice Program complies with all requirements of form and method of dissemination (and is substantially similar to the notice programs previously approved by the Court in the other sub-tracks of the *In re Mutual Funds Investment Litigation*), and the proposed Class, for settlement purposes only, satisfies all the prerequisites for certification.  Plaintiff, therefore, respectfully requests that the Court grant preliminary approval of the Third Party Settlements and Stipulation, approve the Notice Program and, individually, the proposed forms and method of dissemination of the Long Form Notice, the Publication Notice, and the Summary Postcard Notice, and certify the Class for purposes of the Third Party Settlements and Stipulation.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

As this Court is aware, a series of putative securities class action complaints were filed against Franklin Resources, Inc., certain of its affiliates, and certain non-Franklin-related entities, in several federal district courts throughout the country, alleging market-timing and/or late trading in the Funds in violation of the federal securities laws.  A series of derivative cases was also filed arising out of the same alleged underlying wrongdoing.  These cases were similar to

others filed against other mutual fund families, alleging market-timing and/or late trading practices.

On February 20, 2004, the Judicial Panel on Multi-District Litigation issued an order centralizing the various actions in one multi-district docket in the United States District Court for the District of Maryland (the "MDL Actions"), and the Court assigned each of four Judges a separate track of the MDL Actions, with multiple mutual fund families assigned to sub-tracks within each track. The Franklin Sub-Track was assigned to the Honorable Andre M. Davis and, in September 2009, reassigned to this Court. On May 25, 2004, the Court issued a case management order, *inter alia*, appointing the Deferred Compensation Plan for Employees of Nassau County as "Lead Plaintiff" for the consolidated class claims and its selection of Wolf Popper LLP as lead class counsel for the Franklin Templeton Sub-Track ("Class Lead Counsel"). Chimicles & Tikellis LLP, were appointed as Derivative Lead Counsel in the Derivative Action.

On September 29, 2004, an amended complaint ("Complaint") was filed in the Action against persons affiliated with the Funds, including the investment advisor to the Funds and its affiliates, as well as certain unaffiliated entities, including alleged market-timers and other parties that were alleged to have participated in or facilitated the market timers' trading of the Funds.[4] An amended complaint was also filed by plaintiffs in the Derivative Action. On February 25, 2005, certain defendants moved to dismiss the Complaint, and on March 7, 2005, most of the Franklin Defendants, the Third Party Defendants, and certain other defendants filed supplemental memoranda in support of their motions to dismiss the Complaint.

On August 25, 2005, this Court issued an opinion and order addressing common

---

[4] Plaintiff asserted claims in the Complaint under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act"), Sections 34(b), 36(a), 36(b) and 48(a) of the Investment Company Act of 1940 ("ICA"), and state law.

("omnibus") issues presented in the class actions in the MDL Actions.  In light of this order,

then-presiding Judge Davis permitted the parties in the Franklin Sub-Track to engage in formal

discovery, but did not yet enter a formal order on the motions to dismiss.  On July 3, 2007,

several fund company defendants in the MDL Actions, including Franklin, again filed a joint

motion to dismiss certain claims for lack of standing.  On October 19, 2007, Judge Motz denied

that motion in part.  On June 27, 2008, Judge Davis entered the Investor Class Order, denying in

part and granting in part the motions to dismiss the Complaint.

In the meantime, certain of the parties continued to pursue formal discovery.  Among

other things, these parties served document requests, and responses thereto, and Plaintiff engaged

in extensive document discovery and deposition discovery of the Franklin Defendants, and

certain other parties and non-parties.  Plaintiff also obtained trading data in the Funds for

analysis, with the assistance of an expert consultant retained in these MDL 1586 Actions, to

determine potential damages alleged in this Action.

On October 22, 2009, after the case was reassigned to this Court, the Court granted in

part and denied in part Plaintiff's request to amend the consolidated amended class action

complaint, and on January 11, 2010, Plaintiff filed the Second Consolidated Amended Class

Action Complaint ("Second Amended Complaint").  In its order, the Court ruled, among other

things, that Plaintiff could not assert claims for the Franklin Defendants' alleged knowing or

reckless failure to disclose that they were unable to prevent market timing where they made good

faith efforts to prevent it.

Plaintiff initially brought claims against all of the mutual funds in the Franklin Funds

which were allegedly harmed by market timing and/or late trading.  After further investigation

and discovery during the course of this litigation, as well as analysis of alleged damages by

Plaintiff's consultant, Plaintiff concluded that the evidence indicated that only those Class members who purchased or held the Class Funds[5] had potentially suffered any significant damages from market-timing, and that there had not been any late trading which had taken place in the Franklin Funds.

While discovery was ongoing, Plaintiff and the Franklin Defendants began to discuss a possible settlement of the Action.  Initial discussions between counsel for Plaintiff and the Franklin Defendants did not result in settlement.  However, around this time, Plaintiff also entered into discussions and negotiations for settlements with the Third Party Defendants of its claims in the Franklin Sub-Track, which led to memoranda of understanding with the respective Third Party Defendants.  Ultimately, Plaintiff entered into the Third Party Settlements, by stipulations dated on or about January 15, 2010, and January 26, 2010.[6]  The amounts contributed to the Gross Settlement Fund by these settlements are being held in escrow and have been earning interest.  Plaintiffs in the Derivative Action entered into the Third Party Settlements with Canary and BAS only.[7]

On March 24, 2010, following completion of fact discovery, the Franklin Defendants moved for partial summary judgment of Plaintiff's claims, and on June 24, 2010, Plaintiff filed a cross-motion for partial summary judgment against the Franklin Defendants.  On December 9,

---

[5] The Class Funds are:  Templeton Foreign Fund; Templeton Developing Markets Trust; Templeton Global Smaller Companies Fund; Templeton Global Opportunities Trust; Franklin California Growth Fund (effective 9/1/02, name changed to Franklin Flex Cap Growth Fund); Templeton Greater European Fund (effective 8/1/99, name changed to Templeton International Fund; effective 8/1/01, name changed to Templeton International (Ex EM) Fund; and effective 4/25/07, merged into Templeton Foreign Fund); Franklin Small Cap Growth Fund (effective 9/1/01, name changed to Franklin Small-Mid Cap Growth Fund); Templeton World Fund; Templeton Growth Fund, Inc.; Franklin California Tax-Free Income Fund; Franklin Federal Tax-Free Income Fund; and Templeton Pacific Growth Fund (effective 5/8/03, merged into Templeton Foreign Fund).

[6] Plaintiffs in the MFS, Alliance, Columbia and Franklin sub-tracks had previously entered into a Memorandum of Understanding, discussed below, with Security Brokerage, and with BAS.  *See infra.*

[7] The remainder of the Derivative Action is currently stayed.

2010, this Court issued an opinion and order granting the Franklin Defendants' partial summary judgment of the claims in the Second Amended Complaint, and denying Plaintiff's cross-motion. Although a portion of the claims survived the summary judgment phase, during the Summer of 2010, the Franklin Defendants' counsel informed Class Lead Counsel that certain regulatory settlements of market timing allegations brought by the U.S. Securities and Exchange Commission ("SEC") and other regulators against the Franklin Defendants and certain other entities would provide shareholders of Franklin Funds in excess of $100 million, in the aggregate. This would likely substantially offset any alleged damages claims in this Action. These proceeds have been distributed separately by administrators retained by the SEC and are not part of these Settlements or the Stipulation. The Class Benefit from the Gross Settlement Fund and Franklin Contribution is in addition to the amounts recovered in the regulatory proceedings.

In light of these factors, and considering again the estimates of alleged damages in this case prepared by their damage consultants, Plaintiff and Class Lead Counsel concluded that the compensation from the regulatory settlements, as well as the Settlements with the Third Party Defendants already secured by Plaintiff and Class Lead Counsel flowing to Class Members, would indeed have a substantial possibility of more than offsetting any amount of additional alleged Class damages that could be proven by establishing those remaining claims that the Court had not dismissed, at any future trial. The Franklin Defendants made known that their next step was to move for summary judgment on the remaining claims in the Action on the ground that any alleged damages related to those claims had been more than compensated by Franklin and other defendants in the regulatory settlements and Plaintiff's Settlements with the Third Party Defendants. Under the terms of the regulatory settlements and applicable law, it was

highly likely that Franklin would be entitled to an offset against any alleged damages owed by the Franklin Defendants in this Action, at least by the amount these defendants had paid to resolve the regulatory actions, meaning that the remaining claims could be dismissed outright by the Court for lack of any damages not already paid by Franklin, as had occurred in certain other sub-tracks in this MDL litigation.

Following ongoing and extensive discussions and arm's-length negotiations, Plaintiff entered into an "Aide Memoire" setting forth the principal terms of the resolution of the remaining claims in this Action with the Franklin Defendants on December 21, 2010. The Court thereafter ordered a stay of the Action against the Franklin Defendants. Plaintiff subsequently negotiated the detailed terms of the Stipulation with the Franklin Defendants. The Stipulation with the Franklin Defendants, and the stipulations of settlement reached with the Third Party Settling Defendants, are collectively referred to as the "Stipulations."

## THE STIPULATION AND THIRD PARTY SETTLEMENTS

The Stipulation and Third Party Settlements for which Plaintiff seeks preliminary approval are comprised of Plaintiff's resolution of the Class Action with the Franklin Defendants, and the cross-track settlements with Bear Stearns, Canary, BAS and Calugar. With regard to each of the cross-track settlements with Bear Stearns, Canary and BAS, a separate Master Agreement of Settlement ("Master Agreement"), dealing with a global settlement of the entire MDL proceeding against those entities, and a separate Severed Settlement Agreement ("Severed Agreement"), in connection with the Franklin Sub-Track specifically, have been executed with each of these entities.[8] Each Master Agreement sets forth terms relevant to the

---

[8] The terms "Master Agreement" and "Severed Settlement Agreement" are defined in each of the Bear Stearns, Canary and BAS Master Agreements. Each of the Master Agreements in this MDL 1586 litigation with Bear Stearns, Canary and BAS, as well as the Severed Settlement Agreements in the Franklin Sub-Track, is submitted herewith in the Appendix to this Memorandum.

separate Severed Agreements, provides the aggregate total cross-track settlement amount, and sets forth the percentage of the aggregate total settlement amount that will be paid in connection with each settlement.  The Severed Agreements disclose the specific terms of each sub-track settlement.  With regard to the Security Brokerage settlement, a Memorandum of Understanding dated October 5, 2005 resolved the claims against certain of the Security Brokerage parties with respect to the class claims in the Franklin Templeton Sub-Track, and three other sub-tracks. However, insofar as the amount allocated to the Franklin Sub-Track based on a damage consultant retained by plaintiffs in the MDL Actions was relatively very small, Plaintiff in the Franklin Sub-Track did not proceed to additional formalization of the agreement with Security Brokerage; however, the amount allocated to the Class in this Sub-Track has been paid by Security Brokerage and is being held in escrow and is being held for the benefit of the Class herein.

### A.    Resolution Of The Action With The Franklin Defendants

In consideration for the full and final release and dismissal with prejudice of the claims of Class Members[9] who had invested in the Class Funds, the Franklin Defendants have agreed to contribute up to $2.75 million in cash, together with any income or interest earned thereon, toward the costs of distribution (including costs of notice and settlement administration) of the Third Party Settlements (the "Franklin Contribution") in the Class Action, subject to certain limitations.  Because the Franklin Contribution will pay for all, or most, of the notice and administration costs, a substantially higher percentage of the Gross Settlement Fund will be disbursed to Class Members with valid claims, representing a significant benefit to the Class.

In exchange for the payments to be made by the Franklin Defendants, the Franklin

---

[9] The term "Class" is defined as purchasers and/or holders of shares in the Class Funds during the Class Period (February 6, 1999 through February 4, 2004).  Members of the Class are defined as "Class Members."

Released Parties[10] will receive a release of all Released Claims[11] that Class Members may have or could bring against the Franklin Released Parties.  The Released Claims are essentially any and all claims concerning market timing and/or late trading with respect to any of the Class Funds during the Class Period, including any such claims regarding the Class Funds that:  (a) were or could have been brought in the Class Complaint, the Action or the Transferred Actions; (b) relate to the subject matters of the Class Complaint, Action or Transferred Actions; or (c) relate to the facts underlying the Class Complaint, Action or Transferred Actions.[12]  No individual claims for damages are being released by Class Members (other than Plaintiff) with respect to any mutual funds that comprise the Franklin Funds that are not one of the Class Funds.

### B.    Cross-Track Bear Stearns Settlement

In addition to the Stipulation with the Franklin Defendants, Plaintiff has entered into a cross-track settlement with Bear Stearns.  Plaintiff is a party to the Master Agreement of Settlement with the Bear Stearns Defendants, entered into between certain class plaintiffs and the Bear Stearns Defendants on or about January 15, 2010 (the "Bear Stearns Master Agreement").  The Bear Stearns Master Agreement provides that Bear Stearns will pay a total settlement amount of $14 million, 29.1% of which will be paid in settlement of the class claims in the

---

[10] The Franklin Released Parties are: (1) the Franklin Defendants and their parent entities, associates, affiliates or subsidiaries, and each and all of their respective past or present officers, directors, associates, agents, representatives, employees, attorneys, financial or investment advisors, advisors, consultants, accountants, investment bankers, commercial bankers, trustees, insurers, co-insurers and re-insurers, general or limited partners or partnerships, limited liability companies, members, predecessors, successors and assigns, the FSS trust, the past or present FSS trustees, and all Franklin Funds and all present and past trustees, directors and officers of all Franklin Funds, (2) all other entities that provided advisory, distribution, management, administration, transfer agency or other services to any of the Franklin Funds, and (3) to the extent not included in (1) and (2), all Persons named in or subject to the Tolling Agreements entered into by the parties during this Action.

All capitalized terms herein shall have the meaning defined in the Stipulation, unless otherwise indicated.

[11] The definition of Released Claims is set forth in paragraph 1(ggg) of the Stipulation, and included in the response to question 12 of the Long Form Notice, *What am I Giving Up By Staying in the Class?*

[12] Provided, however, that nothing in the Stipulation or Proposed Final Order and Judgment shall be deemed to affect the claims asserted in the Derivative Action, other than the claims asserted therein against the Canary Entities and BAS.

Franklin Sub-Track.  Thus, as set forth in detail in the Franklin-Templeton/Bear Stearns Severed Agreement and Stipulation of Settlement, dated January 15, 2010 (the "Bear Stearns Severed Agreement"), in consideration for a stay of litigation against the Bear Stearns Released Parties,[13] and the dismissal with prejudice and release of specified claims asserted in the this Action, the Bear Stearns Defendants are contributing a total sum of $4,074,000, plus interest, to the Gross Settlement Fund.[14]

### C.   Cross-Track Canary Settlement

Plaintiff and Derivative Plaintiffs have also entered into a cross-track settlement with Canary.  Plaintiff, together with class plaintiffs and fund derivative plaintiffs in other subtracks and the Canary Defendants, entered into the Master Agreement of Settlement with Canary Defendants on January 19, 2010 (the "Canary Master Agreement").  The Canary Master Agreement provides that Canary has paid a total settlement amount of $15 million, 0.3% of which is paid in settlement of claims in the Franklin Templeton Sub-Track.  The Franklin-Templeton/Canary Severed Agreement and Stipulation of Settlement, dated January 16, 2010 (the "Canary Severed Agreement") sets forth, in detail, that the expected settlement sum of $45,000, plus interest, is being paid in exchange for a continued stay of the litigation, and dismissal with prejudice and release of certain claims in the Franklin Sub-Track.[15]

### D.   Cross-Track BAS Settlement

Plaintiff and Derivative Plaintiffs, together with class plaintiffs and fund derivative plaintiffs in other subtracks, have also entered into a cross-track settlement with BAS by entering

---

[13] The term "Bear Stearns Released Parties" is defined in the Bear Stearns Severed Agreement.

[14] As noted above, plaintiffs in the Derivative Action are not signatories to the Bear Stearns Master Agreement or the Bear Stearns Severed Agreement, and those agreements do not apply to the Derivative Action.

[15] Unlike the Stipulation and the Bear Stearns settlement, the Derivative Plaintiffs are parties to the Canary Master Agreement and Canary Severed Agreement.

into the Master Agreement of Settlement with Banc of America Securities LLC on January 28, 2010 (the "BAS Master Agreement").  The BAS Master Agreement provides that BAS paid a total amount of $15.5 million in settlement of the claims asserted against it across the various funds, and that 1.3% of the total settlement amount shall be paid to settle claims asserted in the Franklin Sub-Track.  As set forth in the Franklin-Templeton /BAS Severed Agreement and Stipulation of Settlement (the "BAS Severed Agreement"), dated on or about May 17, 2011, BAS' payment of approximately 1.3% of the total BAS settlement amount, or $185,783, plus interest, and its contribution of $37,700 toward settlement notice and administration costs, is provided in exchange for the continued stay of the litigation, as well as the dismissal with prejudice and release of certain claims in the Franklin Sub-Track.[16]

### E. Cross-Track Security Brokerage Settlement

Finally, Plaintiff, along with class plaintiffs in the MFS, Alliance, and Columbia Sub-Tracks, executed a binding Memorandum of Understanding with Security Brokerage, on October 5, 2005 (the "Security Brokerage MOU"), providing $87,500,000 in settlement of class claims in these sub-tracks, subject to allocation among the plaintiff parties entitled to participate in the settlement, in exchange for the release of claims against the Security Brokerage persons/entities. Upon further analysis by the damage consultant retained by plaintiffs in these MDL Actions, the amount allocable to the Franklin Sub-Track was determined to be 0.10% of the total Security Brokerage settlement amount, or $87,500, which, in light of the interest accrued since the settlement proceeds have been held in escrow following the October 5, 2005 MOU, is now $94,885.  Due to the relatively small amount allocated to the Franklin Sub-Track, compared to the other three sub-tracks participating in the Security Brokerage settlement, further stipulations

---

[16] The Derivative Plaintiffs are parties to the BAS Master Agreement and BAS Severed Agreement.

were not entered into between Plaintiff and Security Brokerage, but the settlement amount

allocated to the Franklin Sub-Track has been received and is being held in escrow for the benefit

of Franklin shareholders in the Class Funds.

## ARGUMENT

I.   **THE STIPULATION AND THE THIRD PARTY SETTLEMENTS MEET THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL**

Although the Court has discretion in connection with the approval of a proposed class

action settlement, that discretion should be exercised in the context of the "overriding public

interest in favor of settlement, particularly in class actions." *See* Plaintiffs' Omnibus

Memorandum of Law in Support of Preliminary Approval of Proposed Settlements ("Plaintiffs'

Omnibus Memorandum") at 1-2.[17]

In the first of the two-part process that Courts in the Fourth Circuit generally undertake

when reviewing a proposed class action settlement for preliminary approval, the Court

determines whether the proposed settlement is "within the range of possible approval or, in other

words, whether there is probable cause to notify the class of the proposed settlement." *See*

Plaintiffs' Omnibus Memorandum at 2.  In the second step, following a final fairness hearing

upon notice to Class members, the Court evaluates whether the proposed settlement is "fair,

reasonable and adequate." *Id.*  In applying this standard, the Fourth Circuit has bifurcated the

analysis into two principal components – considerations of fairness,[18] and considerations of

---

[17] Plaintiff respectfully refers the Court to Plaintiffs' Omnibus Memorandum, filed with the Court on April 21, 2010 (Dkt # 1275), which sets forth in detail the legal standards applicable to the preliminary approval of the proposed Settlement of class and derivatice actions, the form and method of notice to Class members and current shareholders, and the certification of a settlement class under Rules 23(a) and (b)(3) of the Fed. R. Civ. P. (hereinafter referred to as "Rule 23(a)" and "Rule 23(b)(3)").  Citations to Plaintiffs' Omnibus Memorandum refer both to the pages specifically referenced, as well as the legal authorities cited therein.

[18] The "fairness" consideration focuses on whether the proposed settlement was the result of good-faith, arm's-length negotiations, taking into account:  (1) the posture of the case at the time settlement was proposed, (2) the

adequacy.[19]

As detailed below, the proposed Stipulation and Third Party Settlements are the product of serious, informed, and non-collusive negotiations among counsel with extensive experience in securities class action litigation, following a thorough analysis of the strengths and weaknesses of the legal and factual issues in the Action, which has spanned seven (7) years, and the risks associated with continued litigation after the partial summary judgment decision rendered by the Court.  The proposed resolution of the Action is well within the range of what might be approved as fair, reasonable and adequate, and meets the criteria to be preliminarily approved in light of the circumstances of the case.

A.    **Fairness Considerations Support Preliminary Approval In Light Of Experienced Counsel's Careful Analysis And Arm's-Length Negotiations**

The proposed resolution of the Action as contemplated in the Stipulation and Third Party Settlements (the "Resolution") is the result of lengthy and hard-fought negotiations, which literally lasted for years between the parties, and was reached only after substantial briefing on motions to dismiss, a motion to amend the complaint (denied in part), and partial summary judgment, extensive document discovery, numerous depositions, and Plaintiff's expert consultant's analysis of alleged damages.  The Resolution was also reached well after most of the Defendants settled claims brought against them relating to shareholder market timing by various government regulators, and obtained significant recoveries beyond the regulatory settlements.  In

---

extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities class action litigation.  Plaintiffs' Omnibus Memorandum at 3.

[19] The "adequacy" inquiry focuses on whether the consideration provided to class members is sufficient in light of the risks of continued litigation, and is determined based on an assessment of the following factors:  (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.  Plaintiffs' Omnibus Memorandum at 3.

addition, both Plaintiff's and Defendants' counsel have extensive experience in securities class action litigation.

More specifically, settlement discussions with various parties in the Action commenced in 2005, although discussions to resolve the Action with the Franklin Defendants did not proceed beyond general conversations until early Spring 2010.  Settlement discussions were on-and-off since that time and were impacted by various rulings by the Court in this Action, including its recent partial summary judgment ruling, as well as rulings in the other MDL market timing actions, Plaintiff's consultant's damage analyses, and a comparison of settlements which had already been reached in other MDL market timing cases of varying strengths, as well as certain of the Defendants' settlements with the government arising out of conduct giving rise to the Action.

The Resolution was reached only after the claims and issues in the Action were narrowed by the Court's August 25, 2005 Order addressing common issues presented in the MDL Actions; Judge Davis's June 27, 2008 Investor Class Order ruling on the motions to dismiss in the Franklin Sub-Track; the October 22, 2009 ruling granting in part, and denying in part, Plaintiff's motion to amend the consolidated amended class action complaint; and the Order dated December 9, 2010 granting the Franklin Defendants' partial summary judgment motion and denying Plaintiff's cross-motion for summary judgment.

In addition, Plaintiff's willingness to enter into the Resolution was greatly influenced by the fact that the settlements by many of the Defendants with government regulators, primarily the SEC, returned such a substantial portion of the potential alleged damages calculated by Plaintiff's damage consultant, ERS Group ("ERS") (now Financial Scholars Group), that the resulting offset from such government settlements would have substantially lessened, if not

15

entirely eradicated, any further recoverable damages for the Class in this Action had the case proceeded through a trial.[20]

As explained in Plaintiffs' Omnibus Memorandum, a presumption of fairness should be afforded to the Resolution here, which has been negotiated at arm's length by capable and experienced counsel.  *See* Plaintiffs' Omnibus Memorandum at 4.

**B.    Adequacy Considerations Support Preliminary Approval Due To Significant Risks And Challenges Involved In Continued Litigation**

Although Plaintiff has always remained confident in its ability to successfully establish Defendants' liability at trial relating to so-called "arranged market timing," Plaintiff recognizes the complex issues, significant risks, and uncertainty that are involved in securities class actions in general, and this Action specifically.

As discovery in the Action progressed over the course of many years, significant risks became apparent in this litigation.  As an initial matter, especially after the Court's partial summary judgment ruling, the Action is not as large as many of the other MDL market timing cases.  Moreover, at the time the Stipulation was entered into, Plaintiff was aware that in each market timing sub-track case that had proceeded to a summary judgment adjudication, like this one, the plaintiff(s) had lost.  Furthermore, as previously stated, Plaintiff was well aware of the fact that Franklin Fund shareholders had recovered in excess of $100 million through the regulatory settlements, which would substantially, if not entirely, offset a damages recovery in this Action.  These factors shed light on the result Plaintiff could realistically expect to achieve in this litigation.

In reaching the Resolution, Plaintiff considered the additional risk that it would not be

---

[20] ERS was also retained by class plaintiffs in each of the MDL market timing cases, and was, therefore, intimately familiar with these market timing cases and the issues involved.

able to overturn on any eventual appeal this Court's December 9, 2010 Order granting the

Franklin Defendants' Partial Summary Judgment Motion and denying Plaintiff's Cross-Motion

for Summary Judgment.  In addition, even regarding the "arranged" market timing allegations

that remained in the case after the Court's partial summary judgment ruling, Plaintiff faced

significant challenges regarding scienter, the issues of standing (which have been hotly contested

between the Parties), and it remained uncertain whether the Court would decide these issues in

Plaintiff's favor.

    As to damages, based on Plaintiff's analysis of the legal and factual issues pertaining to

proof of damages (after this Court's recent rulings, and considering the monies already recovered

by the Class through the regulatory settlements), including discussions and analyses provided by

damages consultant ERS, the Resolution, which provides a benefit to the Class of $7,187,368

plus interest, represents an immediate recovery of a material percentage of the alleged potentially

recoverable alleged damages suffered by the Class.  In light of the fact that Plaintiff's estimate of

provable alleged damages assumes Plaintiff's claims would survive (i) another anticipated

summary judgment motion by the Franklin Defendants claiming that the offsets from the

governmental settlements would be greater than the potentially recoverable alleged damages

remaining after the partial summary judgment decision, and (ii) the significant defenses to

scienter and standing, among other issues, not to mention the considerable additional expenses

and duration of continued litigation, there can be no question as to the adequacy of the

Resolution.

    The proposed Resolution of the Action also has no obvious deficiencies that preclude

preliminary approval.  The Resolution does not improperly grant preferential treatment to

Plaintiff or any segment of the Class.  Each Class Member's recovery, including Plaintiff's

recovery, will be determined by the Plan of Allocation, which is set forth and explained in the Notice.

Given the significant challenges and risks Plaintiffs would face in continued litigation, the approximate Class Benefit of approximately $7.2 million from the present and former Defendants – plus interest – is well within the range of possible approval.

## II.     THE PROPOSED FORM AND METHOD OF SETTLEMENT CLASS NOTICE ARE APPROPRIATE

### A.     The Content Of The Long Form Notice Satisfies The Requirements Of The PSLRA And Rule 23

As discussed in Plaintiffs' Omnibus Memorandum, the proposed form and method of notice to be provided to the Class must comply with all the requirements of Rule 23, the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(7), and due process.  Plaintiffs' Omnibus Memorandum at 4-7.  The Long Form Notice (attached as Exhibit 1-C hereto) here meets each of these requirements, including:

- A cover page summarizing the information contained in the Long Form Notice. 15 U.S.C. § 78u-4(a)(7); *see* Long Form Notice, cover page;

- A statement of plaintiff recovery, including a $4,437,368 cash payment on behalf of the Third Party Settling Defendants, plus interest accrued on the Settlement Fund, and the Franklin Contribution of $2.75 million in cash toward the costs of distribution (including costs of notice and settlement administration) of the Third Party Settlements.  Per share recovery estimates for each of the Class Funds will be provided in the Final Long Form Notice, as calculated by Plaintiff's damages consultant, when data recently or still in the process of being finalized or transferred to said consultant is analyzed (assuming (1) the full and correct outstanding share balances in each of the Class Funds are provided for each year of the Class Period; (2) all members of the Class ("Class Members") who are required to file claims in fact file their claim; and (3) all claims have the maximum recognized loss).  15 U.S.C. § 78u-4(a)(7)(B); *see* Long Form Notice, "*Settlement Amount and Statement of Recovery*", pp. 2-3, and Responses to Questions 4 and 8 ("*Why is there a Resolution of the Class Action?*" and "*What do the Settlements and the Stipulation provide?*").  The Long Form Notice further explains that under the Plan of Allocation, the actual amount recovered will vary based on (1) the number of claims filed; (2) the particular Class Fund(s) in which

the Class Member held shares; (3) when Class Members purchased their shares in the Class Funds during the Class Period; (4) whether Class Members either sold their shares in the Class Funds during the Class Period, or held their shares past the end of the Class Period; (5) administrative costs, including the costs of notice, for the Action that will come from the Net Settlement Fund (defined therein) and others which may be borne therefrom under certain circumstances; and (6) the amount awarded by the Court for attorneys' fees, costs, and expenses.  15 U.S.C. § 78u-4(a)(7)(A); *see* Long Form Notice, *"Settlement Amount and Statement of Recovery"*, pp. 2-3, and Responses to Questions 8 and 9 (*"What do the Settlements and Stipulation provide*?" and *"How much will my payment be*?");

- A statement of the potential outcome of the case.  15 U.S.C. § 78u-4(a)(7)(B); *see* Long Form Notice, *"The Circumstances of the Settlement"*, p. 6, and Question 2 (*"What is this lawsuit About?"*);

- A statement of attorneys' fees or costs sought, including a summary of this information on the cover page.  15 U.S.C. § 78u-4(a)(7)(C); *see* Long Form Notice, *"Fees and Expenses,"* pp. 4-5, and Response to Question 17 (*"How will the lawyers be paid?"*);

- Information on how to contact the Claims Administrator and/or Investor Lead Counsel, including names, addresses, and telephone numbers.  15 U.S.C. § 78u-4(a)(7)(D); *see* Long Form Notice, *"More Information,"* p. 6, and Response to Question 24 (*"Are there more details about the Settlements and Stipulation?"*); and

- A discussion of the reasons for the Resolution, including the factors Class Lead Plaintiff and Defendants considered in reaching the Resolution.  15 U.S.C. § 78u-4(a)(7)(E); *see* Long Form Notice, *"The Circumstances of the Settlement,"* p. 6, and Response to Question 4 (*"Why is there a resolution of the Class Action?"*).

The Summary Postcard Notice to be mailed directly to the Class, and the Publication Notice, will direct Class members and holders of the Class Funds to the proposed Long Form Notice, which will be available at www.mutualfundsettlements.com/franklin, which hyperlinks to the resolution of the Action (the "Website"), and provides all of the information required by the PSLRA.

The Long Form Notice also satisfies the requirements of Rule 23(c)(2)(B) by setting forth in plain, easily understandable language:

- the nature of the action, *see* Long Form Notice, Response to Question 2 ("*What is this lawsuit about?*");

- the Class definition, *see* Long Form Notice and Responses to Questions 5 and 6 ("*How do I know if I am part of the Class?*" and "*What are the exceptions to being included?*");

- a description of the claims at issue and the defenses to those claims, *see* Long Form Notice, "*The Class Action Lawsuit,*" p. 4, and "*The Circumstances of the Settlements,*" p. 6, and Responses to Questions 2 and 4 ("*What is this lawsuit about?*" and "*Why is there a resolution of the Class Action?*");

- the ability of Class Members to enter an appearance through counsel, *see* Long Form Notice, Responses to Questions 16 and 19 ("*Do I have a lawyer in this case?*" and "*How do I tell the Court that I do not like the Settlements or the Stipulation?*");

- Class Members' ability to be excluded and the process for exclusion from the Class, *see* Long Form Notice, Response to Question 13 ("*How do I exclude myself from the Settlements and Stipulation?*"); and

- the binding effect of the Resolution on Class Members, *see* Long Form Notice, Responses to Questions 12, 15 and 23 ("*What am I giving up by staying in the Class?*," "*If I do not exclude myself, can I sue the Defendants for the same thing later?*," and "*What happens if I do nothing at all?*").

The Long Form Notice also provides clear information about the time, date and location of the Fairness Hearing and the process for submitting an objection to the Settlements, the Stipulation, and other relief to be requested by Plaintiffs. Long Form Notice at 35 ("*When and Where Will the Court Decide Whether to Approve the Settlements and the Stipulation?*").

**B.  The Notice Program Meets The Requirements Of Fed. R. Civ. P. 23**

The Stipulation sets forth a Notice Program that is consistent with constitutional due process and the requirements of Rules 23(c)(2)(B) and 23(e)(1).[21]  As previously noted, subject

---

[21] Rule 23(c)(2)(B) requires that "the court must direct the best notice to class members that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Rule 23(e)(1) provides that in a settlement "[t]he Court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  The other elements of Rule 23(e) are also met where the parties have:  (i) requested that the settlement be finally approved "only after a hearing and on finding that it is fair, reasonable and adequate" as required by Rule 23(e)(2); (ii) filed the stipulation of settlement, with exhibits thereto, in satisfaction of

to Court approval, the Notice Forms will include:  (i) the summary notice ("Summary Postcard Notice") to be mailed to Class Members that will set forth in summary fashion the terms of the Settlements and the Stipulation and that will be printed on a mailer consisting of a two-sided 4.25" x 6" postcard printed on both sides (attached as Exhibit 1-A hereto); (ii) the more detailed "Long Form Notice" to be posted on that portion of the Website established for the Franklin Sub-Track to which all potential Class Members and holders of the Class Funds will be referred, and that will set forth in greater detail the terms of the Resolution in the Franklin Sub-Track, as described above, and that will include, among other things, a summary of the Plan of Allocation and copies of the settlement agreements and the Stipulation in the Franklin Sub-Track; and (iii) the "Publication Notice" to be published in the national edition of *The Wall Street Journal*, *Investor's Business Daily*, and a press release issued through *PR Newswire* to both its US1 and Financial Markets newslines.

Rust Consulting, Inc. ("Rust Consulting" or the "Claims Administrator") has been retained to administer the Notice Program and the process whereby the Gross Settlement Fund will be administered and distributed (the "Notice and Claims Process").  Rust Consulting is an experienced and diligent administrator who will cause the Summary Postcard Notice to be mailed by first class mail to every Class Member who can be identified through reasonable effort.  This will be accomplished largely by using information identifying the record holders of mutual fund shares in the Class Funds during the Class Period provided by the Franklin Defendants and by sending notice to financial intermediaries who held shares as nominees (e.g., Charles Schwab, Morgan Stanley and Merrill Lynch) (collectively, the "Omnibus Account Providers"), for dissemination to their clients who purchased and/or held mutual fund shares in

---

Rule 23(e)(3); and (iii) provided in the notice information alerting Class members of their right to object to the Settlements and Stipulation prior to the Fairness Hearing, in satisfaction of Rule 23(e)(5).

the Class Funds during the Class Period.[22]  To further encourage their support and cooperation in ensuring the broadest possible distribution to all potential members of the Class, the Long Form Notice informs these nominees and broker-dealers that they "may obtain reimbursement for reasonable administrative costs actually incurred in connection with" furnishing names and addresses to the Claims Administrator or mailing the Summary Postcard Notice themselves.  *See, e.g.*, Long Form Notice, p. 36, *"Special Notice to Nominees.*"

In addition to mailing the Summary Postcard Notice, the Publication Notice (attached as Exhibit 1-B hereto) will be published in *The Wall Street Journal* ("WSJ"), *Investor Business Daily ("IBD")*, and over a national, business-oriented wire service, summarizing the Resolution of the Action and directing potential Class Members and holders of the Class Funds to the Website to obtain the Long Form Notice and Proof of Claim.  As discussed below, these procedures, together comprising the Notice Program, constitute the "best notice practicable"[23] under the circumstances and should be approved by the Court.

Numerous courts, including this Court in several of the MDL 1586 sub-tracks, have approved the use of a postcard summary notice mailed directly to class members, supplemented by a publication notice, which direct potential class members to a website and toll-free telephone number where they can obtain the full, long form notice.  *See, e.g., Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1375 (S.D. Fla. 2007) (approving notice program under Rule 23 where the proposed postcard notice "directed Class members to visit the Settlement Website and/or call the Settlement Hotline for more information."); *In re Countrywide Fin. Corp. Customer Data Sec.*

---

[22] Alternatively, the Omnibus Account Providers may forward lists of their customers who may be Class Members to the Claims Administrator who would then directly mail the Summary Postcard Notice to such persons/entities.

[23] "Individual mailing by first-class mail to all class members whose current addresses are reasonably available, supplemented by publication notice in an effort to reach those class members whose addresses are not available, has been found to constitute the best notice practicable to class members in circumstances involving large classes of geographically dispersed shareholders or other similar classes."  Plaintiffs' Omnibus Memorandum at 6.

*Breach Litig.*, No. 3:08-MD-01998, 2009 U.S. Dist. LEXIS 119870, at *47-48 (W.D. Ky. Dec. 22, 2009) (approving a notice program under Rule 23 where "summary notices, summary postcard notice, and publication notice provide necessary information and direct class members to a website or toll free number to obtain additional information."); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 U.S. Dist. LEXIS 101201, at *12 (D.N.J. Sept. 10, 2009) (approving a notice program with a directly mailed postcard notice and publication notice that referred class members to a website and toll-free number for additional information, and describing the notice as "robust, thorough, and included all of the essential elements necessary to properly apprise absent Class members of their rights") (footnote omitted); *In re Antibiotic Antitrust Actions*, 333 F. Supp. 291, 293 (S.D.N.Y. 1971) (approving use of postcard notice).[24]

The use of a mailed postcard notice, supplemented by a publication notice, which directs Class Members to a settlement website and toll-free phone number where they can obtain the full, Long Form Notice, is fully compliant with the PSLRA. The Summary Postcard Notice contains in summary form each of the five categories of statements required by 15 U.S.C. § 78u-4(a)(7). Specifically, the Summary Postcard Notice contains:

- **Statement of Plaintiff Recovery (on aggregate and average per share basis):** *"Certain Third-Party Defendants have contributed $4,437,368 to a Settlement Fund, plus interest (the "Gross Settlement Fund"), and the Franklin Defendants will contribute up to $2.75 million to pay for the costs of notice and administration of that Fund (the "Franklin Contribution"). The Gross Settlement Fund will pay Class Members who are eligible to receive more than $10 according to a Settlement formula. The exact amount, if any, of your payment will be determined according to a Court-approved Plan of Allocation (available at the website listed below), and varies by the specific Franklin Mutual Fund you owned. Your payment may be reduced on a proportional basis if the claims exceed the amount available in the Settlement Fund. The estimated per share recovery ranges from 0.004¢ to 4.232¢."*;

---

[24] The SEC has also endorsed the use of a similar "notice and access" model for the dissemination of proxy materials to the shareholders of public companies, whereby a succinct notice is mailed to shareholders, informing them that full copies of lengthy proxy materials are available for them to access online, replacing the prior practice of directly mailing complete sets of proxy materials to shareholders. *See* SEC Release Nos. 34-56135; IC-27911; File No. S7-03-07 (July 26, 2007).

- **Statement of Potential Outcome of Case:**  *"The Defendants deny they did anything wrong.  The parties disagree on how much money, if any, could have been won if the case went to trial.";*

- **Statement of Attorneys' Fees or Costs Sought (on aggregate and average per share basis):**  *"Plaintiffs' Counsel will request attorneys' fees of up to 25% of the Gross Settlement Fund and/or Franklin Contribution, and expenses of up to $445,000 (ranges from 0.001¢ to 1.350¢ per share), and the Plaintiff Class representative may ask for up to $50,000 for its expenses.  These expenses will be paid directly from the Gross Settlement Fund.";*

- **Identification of lawyers' representatives who will be reasonably available to answer questions from class members:**  The name, address and telephone number of Rust Consulting, which has been selected by Plaintiff's Counsel to handle the claims administration, is provided, and Class Members are directed to the settlement Website for further contact information, including the names and contact information of specific Plaintiff's Counsel; and

- **Reasons for settlement:**  *"The Defendants deny they did anything wrong.  The parties disagree on how much money, if any, could have been won if the case went to trial.  The Resolution resolves the case against the Defendants, and will pay money to eligible Class Members."*

Effectively, the proposed Summary Postcard Notice contains all the information required under the PSLRA to be included in the summary cover sheet to the Long Form Notice.  *See*, *e.g.*, *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 450 (S.D.N.Y. 2004) (approving the use of a summary publication notice in a PSLRA case).[25]

## III.   THE COURT SHOULD CERTIFY THE CLASS FOR PURPOSES OF THE SETTLEMENTS AND THE STIPULATION

As explained in Plaintiffs' Omnibus Memorandum, the Fourth Circuit Courts liberally construe Rule 23 in order to certify classes for purposes of settlement.  *See* Plaintiffs' Omnibus Memorandum at 8.  Because the proposed Class satisfies all the prerequisites of Rule 23(a) –

---

[25] The Parties are not aware of any reported PSLRA case rejecting the use of a summary postcard notice.  Indeed, the use of a mailed postcard notice directing class members to a website and toll-free website to obtain a full, long form notice is consistent with the PSLRA legislative history.  Both the Senate and House Conference Committee reports regarding the PSLRA expressed concern with class settlement notices being both incomplete and unnecessarily complex.  H.R. Conf. Rep. 104-369, *as reprinted in* 1995 U.S.C.C.A.N. 730, at 735 ("Class members frequently lack meaningful information about the terms of the proposed settlement.  Class members often receive insufficient notice of the terms of a proposed settlement and, thus, have no basis to evaluate the settlement.  As one bar association advised the Senate Securities Subcommittee, 'settlement notices provided to class members are often obtuse and confusing, and should be written in plain English.'"); *see also* S. Rep. 104-98, *as reprinted in* 1995 U.S.C.C.A.N. 679, 691 (expressing similar policy concerns).

numerosity, commonality, typicality, and adequacy – and one of the subdivisions of Rule 23(b),[26] this Court should certify the Class for purposes of settlement and pursuant to the Stipulation.

### A.      The Proposed Class Satisfies The Requirements Of Rule 23(a)

First, the Class easily satisfies Rule 23(a)'s numerosity requirement.  The damages consultant retained to formulate the Plan of Allocation estimates that over 5 billion shares in the Class Funds were held during the Class Period.  These shares were held by millions of Class Members and represent an amount that is certainly adequate to demonstrate numerosity.[27] Although there is no specific minimum number of class members required to satisfy this requirement, courts in this Circuit have repeatedly found that significantly smaller classes than the Class proposed here will satisfy the numerosity requirement.  *See id.* at 8 (citing cases where classes of 25 to 30 and 46 to 60 members were held to satisfy the numerosity requirement). Here, it is clear that the Class is so numerous that joinder of all Class Members is impracticable.

Second, the Second Amended Class Action Complaint recites a number of central legal and factual questions that are common to all Class Members.  *See* Second Amended Class Action Complaint at ¶ 266.  Those common questions include:  (1) whether certain defendants violated Sections 10(b) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder, and whether certain defendants were control persons who are further liable for violations of Section 10(b) by their controlled persons under Section 20(a) of the Exchange Act; (2) whether certain defendants violated Section 36(b) of the ICA; (3) whether the prospectuses at issue omitted and/or

---

[26] The requirements of Rule 23(a) and Rule 23(b)(3) are detailed in Plaintiffs' Omnibus Memorandum.  *See id.* at 8-14.

[27] The exact number of Class Members is unknown, because Franklin does not have full information as to how many persons or entities indirectly held shares in the Class Funds during the Class Period through Omnibus Account Providers.

misrepresented material facts about the Class Funds; (4) Whether certain defendants knew of and permitted, or recklessly disregarded in permitting, or failed in good faith to stop, market timing in Franklin Funds, including any market timing arrangements; and (5) whether Plaintiff and the other members of the Class sustained damages because of Defendants' conduct, and the appropriate measure of damages.  Thus, Rule 23(a)(2)'s commonality requirement is plainly satisfied.

Third, the Class also satisfies Rule 23(a)'s typicality requirement, which focuses on whether the class representatives' claims arise from the same event or course of conduct leading to the class claims, and whether the claims are based on the same legal theories.  *See* Plaintiffs' Omnibus Memorandum at 10-11.  As explained in Plaintiffs' Omnibus Memorandum, it is no bar to typicality that a class representative may have held shares in one specific mutual fund while absent class members owned shares in different funds, as long as all the funds were affected by the same alleged common course of conduct by defendants.  *See id.*  Here, Plaintiff alleges that certain Defendants disseminated misleading statements omitting material information concerning the Funds' policies regarding market timing by shareholders.  *See, e.g.,* Second Amended Class Action Complaint at ¶¶ 97-115.  Plaintiff alleges that as a result of Defendants' wrongful conduct, Plaintiff and other purchasers may have been damaged in various, similar ways during the Class Period.  *See, e.g., id.* at ¶¶ 74-77.  As the claims of Plaintiff and Class Members arise from the same alleged course of conduct and rise or fall on the same legal theory, the typicality requirement has been satisfied here.

Fourth, Plaintiff satisfies Rule 23(a)'s adequacy requirement because its counsel is experienced and able to vigorously litigate the Action, and Plaintiff's interests do not conflict with the interests of other Class Members.  As with absent Class Members, Plaintiff either

purchased or held shares of Class Funds it alleges to have been damaged by Defendants'

misleading statements and omissions concerning the Funds' policies regarding market timing by

shareholders.  The representative Plaintiff has had no disabling relationship with any of the

Defendants.  Furthermore, as the firm resume of Lead Counsel reflects, Wolf Popper LLP is

eminently qualified, and Lead Counsel has further demonstrated its adequacy by successfully

prosecuting and settling this matter on favorable terms, given the circumstances.

**B.      The Proposed Class Satisfies The Requirements Of Rule 23(b)(3)**

In addition to satisfying the four requirements of Rule 23(a), the proposed Class is

certifiable under Rule 23(b)(3) because "the questions of law or fact common to class members

predominate over any questions affecting only individual members," and "a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy."  Rule

23(b)(3).[28]

The Class satisfies the predominance requirement because it is difficult to discern any

alleged liability issues not shared by all Class Members.  Notably, the U.S. Supreme Court has

emphasized that "[p]redominance is a test readily met in certain cases alleging consumer or

securities fraud or violations of the antitrust laws."  *Amchem Prods. v. Windsor*, 521 U.S. 591,

625 (1997).  In this case, Defendants' alleged liability principally arises from their dissemination

of misleading statements to all Class Members concerning the Funds' policies regarding market

timing by shareholders.  These are the central issues in the case and predominate over any

individual issues that may exist.

Finally, the Class satisfies Rule 23(b)(3)'s superiority requirement because a class action

is the only effective way to litigate the claims in this Action.  As a result of the significant costs

---

[28] The predominance and superiority requirements of Rule 23(b)(3) are discussed in depth in Plaintiffs' Omnibus Memorandum at 13-14.

associated with prosecuting the Action, no Class Member in the seven years this Action has been

pending has expressed an interest in prosecuting claims individually.  Additionally, all of the

initial actions brought against the Defendants have been consolidated and are pending before this

Court.  Furthermore, although manageability of this Action is not at issue as Plaintiff is seeking

certification of a Class for purposes of the Settlements and the Stipulation, this litigation would

present no apparent issues that weigh against the certification of the Class.  Indeed, as the courts

in the Fourth Circuit have noted, "[s]ecurities fraud actions typically meet the Rule 23(b)(3)

requirement because the claims relate to acts or omissions of the same defendants and damages

of individual class members might be too small to provide incentive for the individuals to sue."

*See* Plaintiffs' Omnibus Memorandum at 14, *quoting In re The Mills Corp. Sec. Litig.*, 257

F.R.D. 101, 109 (E.D. Va. 2009), and discussing additional authority.

## IV.      THE COURT SHOULD APPROVE THE FORM OF NOTICE OF THE DERIVATIVE SETTLEMENTS WITH CANARY AND BAS

As discussed in Plaintiffs' Omnibus Memorandum, Rule 23.1(c) governs notice in a

derivative action, and requires that "notice of a proposed settlement, voluntary dismissal, or

compromise must be given to shareholders or members in the manner that the court orders."

Courts generally have broad discretion to select an appropriate notice program under Rule 23.1.

In circumstances similar to those here, courts have looked favorably upon publication and

website notice programs.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court preliminarily approve the Settlements and the Stipulation and enter the Proposed Order Preliminarily Approving the Stipulation and Releases and Settlements of Class Action and Partial Settlement of Derivative Action With Respect to the Canary and BAS Defendants and Establishing Notice Procedures in the form submitted.

Dated:  May 24, 2011

**WOLF POPPER LLP**

By:  _/s/ Chet B. Waldman_____
Robert M. Kornreich
Chet B. Waldman
Andrew E. Lencyk
845 Third Avenue
New York, NY 10022
Phone: (212) 759-4600
Fax: (212) 486-2093

*Class Lead Counsel in the Franklin Templeton Sub-Track, on behalf of Class Lead Plaintiff the Deferred Compensation Plan for Employees of Nassau County and the Class*

**TYDINGS & ROSENBERG LLP**

By:  /s/ John B. Isbister
100 East Pratt Street, 26th Floor
Baltimore, MD  21202
Phone:  (410) 752-9700

*Plaintiff's Liaison Counsel*