IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MUTUAL FUNDS INVESTMENT LITIGATION | MDL 1586 |
| IN RE ALLIANCE, FRANKLIN/TEMPLETON, BANK OF AMERICA/NATIONS FUNDS, and PILGRIM BAXTER | Case No. 04-md-15862 (Judge J. Frederick Motz) |
| [Franklin Templeton Subtrack] | |
| *McAlvey et al. v. Franklin Resources, et al.* | Case No. JFM-04-1274 |

MEMORANDUM

Lead Fund Derivative Plaintiffs ("Derivative Plaintiffs") in the Franklin Templeton subtrack of this Mutual Funds MDL have filed a motion for a temporary stay of the proceedings in this fund derivative action pending resolution of the appeal of this Court's decision granting summary judgment and dismissing the derivative action in the Janus subtrack. *See Steinberg v. Janus Capital Mgmt.*, 681 F. Supp. 2d 622 (D. Md. 2010). For the following reasons, Derivative Plaintiffs' motion to stay is granted.

I. BACKGROUND

Derivative Plaintiffs have sued the Franklin Templeton Defendants ("FT Defendants") under Section 36(b) the Investment Company Act of 1940, 15 U.S.C. § 80a-35(b). Derivative Plaintiffs are shareholders who bring their claims on behalf of the Franklin Templeton family of mutual funds ("FT Funds"). They allege that the FT Defendants breached their fiduciary duty to the FT Funds by allowing various entities to engage in market timing, thereby increasing the advisory fees the FT Defendants received. In January 2010, in another fund derivative action

filed in the Janus subtrack of this same MDL, I granted summary judgment to the defendants on comparable Section 36(b) claims. *Steinberg v. Janus Capital Mgmt. LLC*, 681 F. Supp. 2d 622 (D. Md. 2010). That decision has been appealed to the Fourth Circuit and, having been fully briefed, is scheduled for oral argument in less than one month on September 20, 2011. More recently, in a similar fund derivative action in the Putnam subtrack of this MDL, I issued an order staying proceedings pending the outcome of the *Steinberg* appeal. *Zuber v. Putnam Inv. Mgmt. LLC*, JFM-04-564, 2011 U.S. Dist. LEXIS 42845 (D. Md. Apr. 20, 2011). Derivative Plaintiffs in this action now move for a stay order identical to that issued in *Zuber*.

A stay order would not be a new to this case. Indeed, on January 12, 2010, the FT Defendants and Derivative Plaintiffs entered into a stipulated agreement to stay proceedings in this action pending the resolution of the FT Defendants' motion for partial summary judgment in the investor class action of this subtrack. (Stipulation and Order Regarding Schedule, Jan. 12, 2010, ECF No. 1254.) Following my decision to grant partial summary judgment to the FT Defendants in that case, the parties stipulated to a further stay of proceedings pending the Fourth Circuit's decision on the *Steinberg* appeal in the Janus subtrack. (Stipulation and Order Regarding Schedule, Dec. 21, 2010, ECF No. 1395.) However, this stay agreement provided that "[e]ither party may withdraw from the Stipulation upon thirty days' written notice to the other side." (*Id.*) On June 9, 2011, the FT Defendants served notice of their withdrawal from the stipulation. (Notice of Withdrawal, June 15, 2010, ECF No. 1421.)

II.  ANALYSIS

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Air Line*

2

*Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) (same). Determining whether to stay proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55. In striking this balance, courts look to factors such as the length of the requested stay, the hardship that that the movant would face if the motion were denied, the burden a stay would impose on the nonmovant, and whether the stay would promote judicial economy by avoiding duplicative litigation. *See, e.g., Vasvari v. Rite Aid Corp.*, No. 09-cv-2069, 2010 U.S. Dist. LEXIS 86361, at *5 (M.D. Pa. Aug. 23, 2010); *see also Brandt v. BP PLC*, No. 10-cv-1460, 2010 U.S. Dist. LEXIS 70507, at *5 (D.S.C. July 14, 2010).

As mentioned above, in April of this year I issued an order staying proceedings in the fund derivative action in the Putnam subtrack pending the outcome of the Fourth Circuit's decision in *Steinberg*. *Zuber*, 2011 U.S. Dist. LEXIS 42845. In a memorandum accompanying that order, I noted that "because the *Steinberg* case has already been fully briefed on appeal and is ready to be argued before the Fourth Circuit, the length of the stay should not be inordinate." *Id.* at *7-8. The same reasoning applies with even greater force to the instant case, as we are now less than one month from the date of *Steinberg*'s oral argument before the Fourth Circuit. Thus, whereas the length of the stay in *Zuber* was not "inordinate," the duration of the requested stay here will be even shorter. Additionally, as discussed below, at least some of the issues raised in the *Steinberg* appeal would likely bear on the FT Defendants' contemplated summary judgment motion. As such, staying proceedings in this matter pending the Fourth Circuit's decision would both promote judicial economy and avoid the possibility of inconsistent rulings. And finally, just as in *Zuber*, the proposed stay would impose a minimal burden on the FT Defendants in this case, as there is no danger of spoliation of evidence, and the stay can always be lifted if emergency relief is required. *See Brandt*, 2010 U.S. Dist. LEXIS 70507, at *6. In

sum, the relatively short duration of the proposed stay, the benefit of promoting judicial efficiency, and the minimal burden imposed on FT Defendants all weigh heavily in favor of granting Derivative Plaintiffs' motion to stay these proceedings.

Nonetheless, the FT Defendants make three arguments in opposition to the requested stay. First, they claim that they have "a contractual right to proceed" with the litigation of this case. (Defs.' Opp'n 2.) Second, they assert that "[n]o judicial efficiency would result from a stay" because they believe that the issues on appeal in *Steinberg* would not bear on their contemplated motion for summary judgment. (*Id.* at 3.) And third, they argue that the requested stay would prejudice them by "unnecessarily and unfairly delay[ing] resolution of this action." (*Id.* at 6.) For the following reasons, I find each of these reasons to be unpersuasive.

The FT Defendants first contend that the motion to stay must be denied because the withdrawal provision of the stipulated stay agreement entered into by the parties in December 2010 gives them "a contractual right to proceed" at this time.[1] (Defs.' Opp'n 2.) This argument is thoroughly unconvincing. Although the withdrawal provision permitted the FT Defendants to withdraw from the stipulation, it certainly does not give them a blanket right to force this Court to move forward at this time. As mentioned above, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket," *Landis*, 299 U.S. at 254, and this power is in no way limited by the existence of a now obsolete stipulated stay agreement between litigants. Of course, the FT Defendants are entitled to oppose a motion to stay, as they have done here, but I reject any suggestion that their earlier stipulation has diminished this Court's control over its own docket in any way.

---

[1] The exact language of the stipulation reads as follows: "Either party may withdraw from the Stipulation upon thirty days' written notice to the other side." (Stipulation and Order Regarding Schedule, Dec. 21, 2010, ECF No. 1395.)

The FT Defendants next argue that the requested stay "will not result in any judicial efficiency" because they do not believe that the issues raised in the *Steinberg* appeal would bear on their contemplated summary judgment motion. In order to understand this argument, a brief summary of Section 36(b)'s liability scheme may be helpful. Section 36(b) states that investment advisers "have a fiduciary duty with respect to the receipt of compensation for services" and provides a private cause of action for breach of this duty. 15 U.S.C. § 80a-35(b). The Supreme Court recently clarified that a violation of Section 36(b) occurs when an investment adviser "charge[s] a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Jones v. Harris Assocs. L.P.*, 130 S. Ct. 1418, 1426 (2010). However, Section 36(b) limits a plaintiff's recovery to actual damages incurred in the one year period preceding the filing of the suit, and a plaintiff may not recover any damages for harm suffered outside of this one year "look-back period." 15 U.S.C. § 80a-35(b)(3) ("No award of damages shall be recoverable for any period prior to one year before the action was instituted.")

The FT Defendants assert that they did not have any market timing arrangements in the one year prior to the filing of this action and that absent such arrangements, "there is no basis for liability during the one-year 'look-back' period."[2] (Defs.' Opp'n 4.) Stated differently, the argument is that Derivative Plaintiffs cannot recover damages under Section 36(b) because the FT Defendants did not engage in arranged market timing during the look-back period. Given their belief that the absence of arranged market timing during the look-back period would be dispositive of Derivative Plaintiffs' claims, the FT Defendants assert that "none of [the issues on appeal in *Steinberg*] is involved in the Franklin Templeton Defendants' proposed summary

---

[2] The parties agree that the relevant statutory look-back period ran from September 29, 2003 to September 29, 2004. (Defs.' Opp'n 1.)

judgment motion."[3] (*Id.* at 3.) Accordingly, they contend that there is no need to wait for the Fourth Circuit's decision in *Steinberg* because the requested stay "will not result in any judicial efficiency." (*Id.*)

This argument is unconvincing, as it is apparent that at least some of the issues before the Fourth Circuit in *Steinberg* would bear directly on the FT Defendants' contemplated motion for summary judgment. For example, one of the issues on appeal in *Steinberg* is "whether 'flight damages' are recoverable" under Section 36(b).[4] (Defs.' Opp'n 3.) It is undisputed that to the extent that flight damages are recoverable, they occurred in the months leading up to the filing of this action in 2004 (i.e., within the one year look-back period). Accordingly, if the Fourth Circuit were to reverse my ruling and hold that flight damages constitute actual damages recoverable under Section 36(b), then the FT Defendants may be adjudged liable to Derivative Plaintiffs even absent arranged market timing during that time.[5] In this situation, the availability

---

[3] The parties agree that the *Steinberg* appeal presents four issues:
> (1) whether rescission is an available remedy for violation of §36(b) of the Investment Company Act and, if so, whether that remedy would include disgorgement of the adviser's profits earned under the agreement; (2) whether an investor can bring a claim under §36(b) only with respect to the "fund" in which he or she invested or, rather, can sue on behalf of the entire investment company of which the fund is a part; (3) whether, and to what extent, the disgorgement and penalties the Putnam defendants have already paid to regulators can be counted against the damages recoverable in the derivative action under § 36(b); and (4) whether "Flight Damages" are recoverable.

(Defs.' Opp'n 3 [quoting Pls.' Mem. 2-3].)

[4] As used by the parties in this action, the term "flight damages" refers to the alleged harm to the FT Funds caused not by market timing itself, but by the negative publicity resulting from the public disclosure of the market timing scandal and associated regulatory investigation. On appeal is my ruling that flight damages are not recoverable under Section 36(b). *Steinberg*, 681 F. Supp. 2d at 629.

[5] The parties dispute whether a 36(b) action will lie if a defendant's wrongful conduct (such as arranged market timing) occurs more than one year prior to filing of the suit, but the plaintiff later suffers damages traceable to the defendant's conduct within the look-back period. The FT Defendants contend that a 36(b) action may not be maintained unless the wrongful

6

of flight damages would preclude the FT Defendants from obtaining summary judgment in their proposed motion. On the other hand, if the Fourth Circuit affirms my rulings in *Steinberg*, Derivative Plaintiffs admit that they "will likely voluntarily dismiss their lawsuit." (Pls.' Mem. 5.) Given this scenario, the FT Defendants' contemplated summary judgment motion would be mooted entirely. It is therefore evident that regardless of whether the Fourth Circuit rules for or against the Janus plaintiffs in *Steinberg*, the outcome of the appeal would bear directly on the issues raised by the FT Defendants' proposed motion for summary judgment. Accordingly, staying proceedings in this subtrack until the Fourth Circuit rules on the *Steinberg* appeal would both promote judicial efficiency and avoid the possibility of inconsistent rulings.

The FT Defendants also assert that a stay would be inappropriate because it would "unnecessarily and unfairly delay resolution of this action." (Defs.' Opp'n 6.) I am unpersuaded by this argument for several reasons. First, I note that other than a brief mention of "the continuing 'overhang' of ongoing litigation" that would result from a stay, the FT Defendants provide no explanation as to how or why they would be prejudiced by a stay. (*Id.*) Indeed, from January 2010 to June 2011—a period of approximately eighteen months—the FT Defendants expressly agreed to stay this action rather than filing any dispositive motion. (*See* Stipulation and Order Regarding Schedule, Jan. 12, 2010, ECF No. 1254; Stipulation and Order Regarding Schedule, Dec. 21, 2010, ECF No. 1395.) I find it unlikely that the FT Defendants, who are sophisticated litigants represented by very able counsel, would have twice entered into stay

---

*conduct* occurs during the look-back period, but Derivative Plaintiffs reason that "it is only necessary that recoverable *damages* occurred within the relevant time period." (Pls.' Mem. 4.) Although I need not resolve this dispute in deciding the instant motion, I note that at least one court has recently held that under Section 36(b), "the sole temporal limitation imposed is *only on those damages* that were incurred prior to the filing of suit." *In re Federated Mut. Funds Excessive Fee Litig.*, No. 04-cv-352, 2011 U.S. Dist. LEXIS 28132, *10 (W.D. Pa. Mar. 8, 2011) (emphasis added).

7

agreements if they were truly prejudiced in a meaningful way by the "overhang of ongoing litigation." Moreover, as discussed above, the length of the requested stay should not be unreasonable. It is true, as the FT Defendants point out, that "there is no guarantee that the Fourth Circuit will issue a ruling in 2011," (Defs.' Opp'n 6), but the fact that the *Steinberg* appeal is scheduled for oral argument in just a few weeks indicates that the duration of the requested stay is unlikely to be lengthy.[6] Consequently, the prejudice, if any, caused to the FT Defendants by the requested stay will be minimal and does not warrant a denial of requested stay.

For all of the foregoing reasons, Derivative Plaintiffs' motion for a stay of these proceedings is granted. A separate order is being entered herewith implementing this decision.

Date: August ___, 2011           _____/s/_____
                                 J. Frederick Motz
                                 United States District Judge

---

[6] In this sense, the instant case is easily distinguishable from *Doe v. Bayer Corp.*, 367 F. Supp. 2d 904 (M.D.N.C. 2005), upon which the FT Defendants rely. The *Doe* court denied a requested stay when the lead case had not even published a schedule of proceedings and resolution of the case "could go on for years." *Id.* at 916. As the *Steinberg* appeal is obviously much further along in the litigation process, the FT Defendants' reliance on *Doe* is unfounded.