IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MUTUAL FUNDS INVESTMENT LITIGATION<br>———————————————————— | MDL 1586 |
| IN RE ALLIANCE, FRANKLIN/TEMPLETON, BANK OF AMERICA/NATIONS FUNDS, and PILGRIM BAXTER<br>———————————————————— | Case No. 04-md-15862<br>(Judge Motz) |
| [Franklin Templeton Sub-Track]<br>———————————————————— | |
| Sharkey IRO/IRA v. Franklin Resources, *et al.*<br>———————————————————— | Case No. 04-md-1310 |

**CLASS LEAD PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF FINAL APPROVAL OF STIPULATION AND RELEASES AND THIRD PARTY SETTLEMENTS, PLAN OF ALLOCATION, CLASS CERTIFICATION, AND AWARD OF ATTORNEYS' FEES, LEAD PLAINTIFF AWARD, AND REIMBURSEMENT OF EXPENSES, AND IN RESPONSE TO THE OBJECTIONS OF FRED AND FRANCES SMITH OF THE COMPETITIVE ENTERPRISE INSTITUTE, PAMELA SWEENEY, AND DON STUREK**

Robert M. Kornreich
Chet B. Waldman
Andrew E. Lencyk
WOLF POPPER LLP
845 Third Avenue
New York, NY  10022
Tel.:   (212) 759-4600

*Attorneys for Class Lead Plaintiff*

John B. Isbister, Fed Bar No. 00639
TYDINGS & ROSENBERG LLP
100 East Pratt Street, 26th Floor
Baltimore, MD 21202
Tel.:   (410) 752-9700

*Plaintiff's Liaison Counsel*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ii

I.    PRELIMINARY STATEMENT ......................................................1

II.   ARGUMENT ...................................................................................2

    A.    The Ideologically Driven Smith Objection Is Substantively Meritless ...2

    1.    The Smiths' Arguments Related to the Plan of Allocation are
        Meritless.................................................................................................3

    2.    The Smiths' Objection to the Resolution and the Fee and Expense
        Request Ignores the Facts .......................................................................4

        a)   The Fee Sought is a Small Fraction of Counsel's Actual
            Lodestar, and This Was Neither a Frivolous Case, Nor Settled
            Cheaply for a Quick Fee ....................................................................4

        b)   Plaintiff's Counsel is Properly Entitled to a Fee Award Based on
            The Entire Class Benefit Obtained ....................................................8

    3.    The Smiths' Complaints About the Notice are Unfounded ....................14

    B.    The Sweeney Objection Should be Overruled.........................................17

    C.    The Sturek Objection Should Be Overruled ...........................................20

CONCLUSION................................................................................................21

# TABLE OF AUTHORITIES

## CASES

*In re Aqua Dots Prods. Liab. Litig.*,
   No. 10-3847, 2011 U.S. App. LEXIS 17039 (7th Cir. Aug. 17, 2011) ............................13

*In re AT&T Corp. Sec. Litig.*,
   455 F.3d 160 (3d Cir. 2006)..............................................................................................10

*Barber v. Kimbrell's, Inc.*,
   577 F.2d 216 (4th Cir.1978) ...............................................................................................6

*In re Diet Drugs Prod. Liab. Litig.*,
   582 F.3d 524  (3d Cir. 2009)...............................................................................................6

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)................................................................................................17

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y.2004) .........................................................................................4

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000).................................................................................................6

*Horton v. Merrill Lynch, Pierce, Fenner & Smith*,
   855 F. Supp. 825 (E.D.N.C. 1994).....................................................................................10

*In re Jiffy Lube Sec. Litig.*,
   927 F.2d 155 (4th Cir. 1991) .........................................................................................6, 17

*Johnston v. Comerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996) .................................................................................................9

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   No. 02 MDL 1484 (JFK), 2007 WL 4526593 (S.D.N.Y Dec. 20, 2007) ............................4

*In re MicroStrategy, Inc., Sec. Litig.*,
   172 F. Supp. 2d 778 (E.D. Va. 2001) .........................................................................5, 6, 9

*Mills v. Electric Auto-Lite Co.*,
   396 U.S. 375 (1970)..............................................................................................................9

*In re Mills Corp. Sec. Litig.*,
   265 F.R.D. 246 (E.D. Va. 2009) ..........................................................................10, 12, 17

*Muhammad v. Nat'l City Mortg., Inc.*,
    No. 2:07-0423, 2008 WL 5377783 (S.D. W. Va. Dec. 19, 2008) ................................9, 10

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978)........................................................................................................10

*Parker v. Time Warner Entm't Co., L.P.*,
    631 F. Supp. 2d 242 (E.D.N.Y. 2009) ...........................................................................10

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ....................................................................................6, 10

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    461 F. Supp. 2d 383 (D. Md. 2006)............................................................................5, 11

*In re Sprint Corp. ERISA Litig.*,
    443 F. Supp. 2d 1249 (D. Kan. 2006)...............................................................................4

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ......................................................................................9, 14

*In re Wells Fargo Sec., Litig.*,
    157 F.R.D. 467 (N.D. Cal. 1994)....................................................................................12

## OTHER AUTHORITIES

3 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 10:14 (4th ed. 2002) ........4

2 Joseph M. McLaughlin, MCLAUGHLIN ON CLASS ACTIONS § 6:22 (6th ed.) ..............................4

## STATUTES AND RULES

Fed. R. Civ. P. 23 .................................................................................................................12

Fed. R. Civ. P. 23(e)(3)........................................................................................................17

H.R. Conf. Rep. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 .........................................6

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 .........................5, 10, 13, 14

## I.   PRELIMINARY STATEMENT

As part of the notice program implemented pursuant to the Court's June 9, 2001 Order Preliminarily Approving The Stipulation And Releases And Settlements Of Class Action And Settlement Of Derivative Action With Respect To The Canary And BAS Defendants And Establishing Notice Procedures ("Preliminary Approval Order"), well over 4,200,000 individual notices have been mailed to potential Class[1] members, in addition to publication and other notice. Despite this massive notice program, since the filing of Plaintiff's Opening Mem. on September 23 – when there were no pending objections – only three objections have been received, none of which sets forth a sufficient basis to reject any aspect of the Resolution or Plaintiff's fee and expense application.

The first is an objection by Mr. & Mrs. Fred and Frances Smith.  Mr. Smith is co-founder of the Competitive Enterprise Institute ("CEI"), a libertarian think tank, where Mrs. Smith is an adjunct scholar and board member.  Their counsel for this objection is the general counsel of CEI.  As shown below, their objection is primarily based on their ideological view of society and macroeconomics, and simply ignores the factual background and merits of this Resolution, as well as relevant law, which are detailed in Plaintiff's Opening Mem. and supporting papers.  The second objection is by Pamela A. Sachtjen Sweeney.  Ms. Sweeney's objection, apparently made by the law firm of her husband who has recently taken to filing similar objections to other settlements, does not indicate whether she purchased or held any of the Class Funds and, therefore, whether she is a Class Member with standing to make an objection.  Nonetheless, this objection appears to be "boilerplate," prepared from a model used by her husband to object to a

---

[1] Capitalized terms not defined herein shall have the meanings as defined in Class Lead Plaintiff's Memorandum In Support Of Final Approval Of Stipulation And Releases And Third Party Settlements, Plan Of Allocation, Class Certification, And Award Of Attorneys' Fees, Lead Plaintiff Award, And Reimbursement Of Expenses (Dkt # 1436(1)) ("Plaintiff's Opening Mem.").

different settlement which is plainly inapplicable to the facts of this case. Finally, Don Sturek

sent a letter which also fails to indicate whether he owned any Class Funds. His complaint

appears to center generally on what he terms "junk mail" and "joke" settlements. As set forth

below, the specific bases for his objection confuse the Resolution presented here with other types

of settlements, and are inapplicable.

Because each of the objections has no merit on the facts of this case, the proposed

Resolution and fee and expense application should be finally approved.

## II.    ARGUMENT

### A.    The Ideologically Driven Smith Objection Is Substantively Meritless

Fred L. Smith, Jr. is a lobbyist and the director and founder of CEI, a Washington, DC-

based libertarian think tank, established to fight big government and government regulations,

through public advocacy and/or litigation.[2]  Frances Smith is an adjunct scholar and a director of

CEI.  *See* http://cei.org/adjunct-scholar/fran-smith.  Their attorney for this objection, Sam

Kazman, is CEI's General Counsel.  *See* http://cei.org/staff ("In addition to being CEI's General

Counsel, Mr. Kazman heads CEI's Death By Regulation project.  This project focuses on raising

public awareness of the often hidden costs of government overregulation.").  CEI's libertarian,

anti-regulation philosophy and advocacy is amply visible throughout its website, http://cei.org.

The Smiths' objection in this case is clearly driven by their ideological agenda to advance

their views regarding what is the optimum social and economic order.  While their arguments

may make for interesting debate in think tanks and policy discussion forums, they do not reflect

---

[2]  *See, e.g.*, http://en.wikipedia.org/wiki/Competitive_Enterprise_Institute.  The CEI's self-description stresses that it is "dedicated to advancing the principles of limited government" and "mak[ing] the uncompromising case for economic freedom".  http://cei.org/about-cei.  Mr. Smith makes public appearances and writes articles advocating his positions, such as "Global Warming and Other Eco-Myths" (*see* http://cei.org/expert/fred-l-smith-jr.), and "Eco-Socialism: Threat to Liberty Around the World" (http://cei.org/pdf/3818.pdf).  *See also* Mr. Smith's article, "Business Must Fight for Economic Freedom", http://cei.org/studies-other-studies/business-must-fight-economic-freedom.

the state of the law on the issues before the Court in deciding whether to grant final approval of

Plaintiff's application, nor do they address the actual factual background of this proposed

Resolution.  As set forth below, the facts detailed in Plaintiff's Opening Mem., which are

completely ignored by the Smiths' objection, clearly support final approval of the Resolution and

fee and expense application and warrant overruling the Smiths' objection.

### 1.    The Smiths' Arguments Related to the Plan of Allocation are Meritless

The Smiths first complain generally that they "will ... receive zero" in the Resolution due

to the $10 minimum distribution threshold.[3]  However, the Plan of Allocation, like most plans of

allocation routinely approved by courts, is designed to compensate class members on a *pro rata*

basis, in proportion to their losses.  Thus, like the plans approved in other settlements in these

MDL Actions, it seeks to provide the greatest compensation to those who suffered the greatest

alleged damages, based on their holdings during the class period.  *See* Plaintiff's Opening Mem.

at 26-27; Waldman Decl. ¶¶ 21-25.  Further, like most plans approved in these MDL Actions

(and related SEC regulatory settlements, including the Franklin regulatory settlement), and in

many other settlements, it provides for a minimum distribution cut-off (here, a relatively low

threshold of $10), to avoid the economically irrational situation where the cost of paying out a

claim would eclipse the benefit to the Class Member.  *See* Long Form Notice, pp. 13, 18; Exhibit

A to Stipulation and Releases (Dkt # 1413(8)).[4]  The Plan of Allocation and distribution

---

[3] This is simply an assumption on their part and not necessarily the case.  The Court-appointed Claims
Administrator, Rust Consulting, Inc. ("Rust"), which has administered several other settlements in these MDL
Actions, as well as certain of the SEC regulatory settlements involving alleged market timing, employing similar
methods, is only in the early stages of processing claims, and the final payout to Class Members will depend on,
among other things, the amount of claims submitted, which is still far from determined at this stage, as the claims
deadline is December 12, 2011.

[4] This Court has upheld minimum distribution requirements in overruling the objection of Lu Anne Lo Monte,
represented by Theodore Bechtold, Esq., to the prior settlements in the MDL Actions), as striking an economically
rational balance of providing more meaningful compensation to class members with higher alleged damages, while
avoiding dissipating the settlement funds by incurring disproportionate mailing costs for *de minimis* claims.  *See,
e.g.,* Order Approving Plan of Distribution in the Strong Sub-Track, 04-md-15864-CCB, Dkt # 1083 (entered Oct.

threshold here are therefore entirely rational, and the Smiths' complaint that under them they will get zero, is -- in addition to being premature -- a function of the size of their claim relative to that of other Class Members.[5]

  **2.**  **The Smiths' Objection to the Resolution and the Fee and Expense Request Ignores the Facts**

    **a)**  **The Fee Sought is a Small Fraction of Counsel's Actual Lodestar, and This Was Neither a Frivolous Case, Nor Settled Cheaply for a Quick Fee**

  The crux of the Smiths' objection is aimed at the attorneys' fee request.  However, in their zeal to advocate their socio-economic view of such settlements, the Smiths ignore the facts of this case and the law as set forth in Plaintiff's Opening Mem., the Waldman Decl., and other supporting papers, and fail to consider the merits of the Resolution and fee and expense

---

25, 2010) (Blake, J.) (overruling Lo Monte objection); *see also* Memorandum in Allianz Dresdner Sub-Track, 1:04-md-15863-JFM, Dkt #3581, at pp. 4-5 (and corresponding Order, Dkt #3582) (entered Mar. 23, 2011) (Motz, J.) (overruling objection of Kimberly J. Clifton on this ground).  *See also In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 4526593, at *12 (S.D.N.Y Dec. 20, 2007) (approving $50 minimum distribution amount and noting that "courts have approved minimum payouts in class action settlements in order to foster the efficient administration of the settlement."); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1268 (D. Kan. 2006) ($25 minimum approved); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y.2004) ("[c]lass counsel are entitled to use their discretion to conclude that, at some point, the need to avoid excessive expense to the class as a whole outweighs the minimal loss to the claimants who are not receiving their *de minimis* amounts of relief"); *see generally* 3 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 10:14, at 512 n.12 (4th ed. 2002); 2 JOSEPH M. MCLAUGHLIN, MCLAUGHLIN ON CLASS ACTIONS § 6:22 (6th ed.).

[5] To the extent the Smiths object (Letter, p.2) that "[i]t is unclear where this money will go, if not us," the Plan of Allocation set forth in the Long Form Notice is quite clear that an Authorized Claimant's Recognized Claim "will be adjusted on a *pro rata* basis, based on the available amount in the Net Settlement Funds", as explained on pp. 12-13 of the Long Form Notice (as well as the Plan of Allocation parameters attached to the Stipulation and Releases and posted on the Settlement Website).  Thus, money saved on not paying out *de minimis* claims will go to Class Members with larger claims.  The Long Form Notice also makes clear that, if there are any monies left over after a distribution, due to uncashed checks, etc., they will go to the Class Funds (*e.g.*, pp.10-11), which will inure to the benefit of those Funds' shareholders (presumably including the Smiths, if they still hold one of these Funds), but *in no event* will they revert to the Franklin Defendants.

The Smiths' complaint about being required to authorize their financial intermediary to disclose records to the Claims Administrator "though we have no chance of receiving money" is also meritless.  This is done for the benefit of Class Members so that the Claims Administrator can obtain records to calculate claims and provide a payment to Class Members if they are eligible.  In any event, there is no undue burden attached to such authorization, and the Smiths have provided it.

application based on the record, facts and proceedings in this Action.[6]

While the Smiths are correct that, under the PSLRA, any fee and expense award must be "reasonable", their objection ignores (i) the relevant law regarding how a court determines what is a "reasonable" fee in a PSLRA case, and (ii) the relevant facts demonstrating that the requested fee is reasonable in this case.  Notwithstanding that the PSLRA, 15 U.S.C. § 78u-4(a)(6), refers to a fee being a reasonable "percentage," as cases in this Circuit (and elsewhere) hold, consistent with the PSLRA's legislative history, the PSLRA does not mandate a particular method to determine the reasonableness of attorneys' fees or expense awards, and what is a "reasonable" fee is determined on a flexible, case-by-case approach, based on the circumstances of each particular fee and expense request.  *See, e.g., In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 385 (D. Md. 2006);[7] *In re MicroStrategy, Inc., Sec. Litig.*, 172 F. Supp. 2d 778, 785-86 (E.D. Va. 2001) ("[g]iven that the PSLRA does not prescribe a methodology for computing fees and expenses, courts faced with the task of assessing the reasonableness of a request for fees and expenses in a PSLRA case have the flexibility to make use of whatever methodology may seem appropriate in the circumstances.").[8]  Thus, courts in this Circuit have

---

[6] It is clear, from the Smiths' citation to the up-to-date expense reimbursement request figures cited in their letter, that they read Plaintiff's Opening Mem. (as those figures were not available prior to its filing).  It is unfortunate that the Smiths appear to have paid little or no attention to the rest of Plaintiff's brief, or accompanying papers, such as the Waldman Decl., because they set forth at length the factual background of this case which obviates and rebuts most, if not all, of the purported bases for the Smiths' objection.

[7] As the Court observed in *Royal Ahold*, 461 F. Supp. 2d at 385:

The [PSLRA] does not, however, prescribe a method of calculating the award or set any specific percentage that must be applied. While the Fourth Circuit has not yet definitively addressed the issue, other district judges in this circuit have suggested a flexible analysis that uses the percentage of recovery method but applies the lodestar method as a cross-check, recognizing that "both are useful tools for trial courts to use to inform and calibrate a judgment as to a fair and reasonable PSLRA fee award."  [Citations omitted.]

[8] *MicroStrategy* cited the PSLRA Conference Committee Report on this point:

By not fixing the percentage of fees and costs counsel may receive, the Conference Committee intends to give the court flexibility in determining what is reasonable on a case-by-case basis. The Conference Committee does not intend to prohibit use of the lodestar approach as a means of calculating attorney's fees. The provision focuses on the final amount of fees awarded, not the means by which such fees are

used a percentage approach, with a lodestar cross-check, applying the *Jiffy Lube/Barber* factors[9] to determine whether a requested fee is "reasonable" under the circumstances of the particular case.[10]

In assessing the reasonableness of the requested fee first, and perhaps most strikingly, the Smiths completely ignore that Plaintiff's counsel's total fee request represents a ***negative 76% multiple*** to Class Lead Counsel's time spent on this litigation (and an approximately ***negative 78% multiple*** to all Class Counsel's lodestar).  Waldman Decl. ¶ 27; Plaintiff's Opening Mem., pp. 32, 44.  Thus, the attorneys will be receiving less than 25% of the market value of their time in the case.  To suggest this is some windfall is absurd, and contrary to the objective facts.

In an attempt to support their argument that the requested fee is a windfall, the Smiths proffer a purely theoretical argument, having little to do with this case, and ignore the merits of this case compared with the Class Benefit.  Essentially, their argument is that, either (i) this case was a nuisance-type case, which should never have been brought, and the attorneys should not be

---

calculated.

*MicroStrategy,* 172 F. Supp. 2d at 785 n.18, *quoting* H.R. Conf. Rep. 104-369, at 36 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (emphasis in opinion).  *See also Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000) ("[a]lthough the [PSLRA] provision requires reasonable fees and expenses, it does not mandate a particular approach to determining fees").

[9] These factors are set forth in Plaintiff's Opening Mem. and in Plaintiffs' Omnibus Memorandum of Law in Support of Applications for Attorneys' Fees and Reimbursement of Expenses, filed in Sub-Tracks on September 14, 2010 (*e.g.*, No. 04-15862, Dkt. # 1342), incorporated by reference into Plaintiff's Opening Mem. ("Plaintiffs' Omnibus Fee Mem."); *see also MicroStrategy*, 172 F. Supp. 2d at 786-88 & n.23.

[10] *See also In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 545 n.42 (3d Cir. 2009) ("lodestar crosscheck [may be used] as a means of assessing whether the percentage-of-recovery award is too high or too low.") (emphasis added).  As set forth in Plaintiffs' Omnibus Fee Mem. (Dkt. # 1342), at pp. 1-2, courts hold that plaintiffs' counsel are entitled to reasonable compensation for the benefits they obtained, and that such awards serve to create an incentive for skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and thus, discourage future misconduct.  *See MicroStrategy*, 172 F. Supp. 2d at 788 ("reasonable" attorneys' fee awards under PSLRA must be sufficient "to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class in a securities fraud case"); *accord Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (goal of fee awards is to "'ensur[e] that competent counsel continue to be willing to undertake risky, complex, and novel litigation'") (citation omitted).  Plaintiff's counsel included all other counsel in its petition and do not seek an additional 1.25% fee award for Liaison Counsel, as was sought and awarded in most of the other Sub-Tracks.  Nor is counsel seeking compensation for time spent supervising settlement administration, which has been and is expected to continue to be substantial.

rewarded with a fee for bringing a case which was essentially frivolous when filed; or, alternatively, (ii) this was a strong case, which the attorneys wrongfully settled for a paltry sum, and therefore should not be rewarded with a fee. [11]  In fact, both of these assumptions are grossly mistaken in this case.

When the first complaint was filed against Franklin in November 2003, to plaintiffs it had all the appearances of a very strong case.  Indeed, the New York Attorney General had recently brought related claims against a group of traders for alleged wrongful market timing trading in various mutual funds, and a series of regulatory actions followed against a number of other mutual fund families, brokerage houses and traders, alleging similar claims.  Thereafter, in February 2004, the Commonwealth of Massachusetts filed an Administrative Complaint against Franklin, and on August 2, 2004, the SEC initiated proceedings against Franklin, both of which resulted in the payment of substantial monies to the regulators by Franklin.  The Smiths' bald assertion that this was an obviously meritless case that counsel brought only for nuisance value is plainly uninformed.

Similarly, the Smiths' simplistic suggestion that, if this was not a nuisance case, it must have been a very strong case that counsel settled on the cheap for some nefarious reason (*e.g.*, to make a quick fee), is equally misinformed.  First, it is absurd to suggest that counsel would litigate this case as hard as they did for almost seven years, incurring such a substantial hit to their lodestar, if all along they simply intended to settle the case for a paltry sum to make a quick fee (*i.e.*, if that had been their intention, they presumably would have done it years ago rather than invest substantially more time and resources in the case with no expectation of recouping them).  Second, the argument again ignores the entire factual background of this litigation.  As

---

[11] This argument underpins both the Smiths' objection to the fee and expense request (Smith Letter, pp. 2-4), and their argument that "The Attorneys Are Not Adequate Class Representatives [sic]" (*id.*, pp. 4-5).

Plaintiff's Opening Mem. and the Waldman Decl. repeatedly make clear, the two main drivers of

the Resolution were:  (i) Plaintiff's counsel learned in the Summer of 2010 that the allocations

from regulatory settlements with Prudential and Bear Stearns to Franklin Fund shareholders was

very significant, totaling well over $100 million (when including what the Franklin Defendants

paid to the regulators), which would likely substantially offset any alleged damages claims in

this Action; and (ii) the Court's granting of the Franklin Defendants' motion for partial summary

judgment on December 9, 2010, and denial of Plaintiff's cross-motion for partial summary

judgment, effectively disposed of a significant portion of the case.  These two facts were

unknowable to Plaintiff's counsel at the outset of the case, and remained so until last year.[12]

Thus, objectors' contention, in the alternative, that this was a strong case that Lead Counsel

intended to settle cheaply for a quick fee is simply wrong.  The Smiths misapprehend (or choose

to ignore) the merits and factual background of this Resolution and litigation.

        **b)**        **Plaintiff's Counsel is Properly Entitled to a Fee Award Based on the Entire Class Benefit Obtained**

The Smiths' argument that fees should not be awarded based on the benefit paid by

Franklin of $2.75 million for notice and administration costs is not supported by authority, and is

illogical and specious.

As set forth in Plaintiff's Opening Mem., under the common benefit doctrine, even in the

absence of a specific monetary fund, where the litigation has conferred a substantial benefit on the

---

[12] Indeed, even after Lead Counsel learned in Summer of 2010 of the likely set-off of well over $100 million, they did not enter into a potential Resolution of the case at that time and instead aggressively sought to continue to litigate the case in an attempt to establish Franklin's liability for the maximum breadth of claims and market timing trading activity, that might sustain a finding of damages above the over-$100 million potential set-off, culminating in the full submission of the motions and cross-motions for summary judgment.  When this Court rejected Plaintiff's theory that the Franklin Defendants were liable for market timing about which they knew, but allegedly did not take sufficient steps to stop, Plaintiff's effort to ensure that the Class claims had alleged damages in excess of the regulatory set-offs was severely compromised, and Lead Counsel focused its efforts on maximizing the benefit it could obtain for the Class under the circumstances, which Lead Counsel submit resulted in a favorable resolution.

members of an ascertainable class, an award of fees will be made to spread the cost of counsel proportionally among such members. *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 (1970). *See also Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) (sustaining district court award of attorneys' fees based on settlement benefit including notice costs paid by defendants, noting that "where the defendant pays the justifiable cost of notice to the class," it is "reasonable" to "include that cost in a putative common fund benefiting the plaintiffs for all purposes, including the calculation of attorneys' fees," and remanding on other grounds); *Muhammad v. Nat'l City Mortg., Inc.*, No. 2:07-0423, 2008 WL 5377783, at *6, 9, 10 (S.D. W. Va. Dec. 19, 2008) (awarding attorneys' fees of one-third of gross settlement amount, including all settlement notice and administration expenses ); *MicroStrategy*, 172 F. Supp. 2d at 790 & n.38 (calculating "reasonable" fee under PSLRA based on amount "that would have been deposited in the fund before the deduction for notice costs advanced by PwC", *i.e.*, including the amount contributed for notice costs).[13] Judge Motz entered precisely such an order in the Allianz Dresdner Sub-Track of this MDL litigation. *See* Order Awarding Fees and Expenses to Plaintiffs' Counsel and the Plaintiff's Award in Connection With the Settlement in Allianz Dresdner Sub-Track ("Allianz Dresdner Fee and Expense Order"), Case 1:04-md-15863-JFM, Dkt # 3590, entered April 26, 2011 (awarding 25% fee from total settlement benefit, including amount contributed by defendants to notice and administration costs); *see also* Order Awarding Fees and Expenses to Plaintiffs' Counsel and Lead Plaintiff in Scudder Sub-Track ("Scudder Fee and Expense Order"), Case 1:04-md-15861-CCB, Dkt # 1404, entered Oct. 25, 2010 (28% fee award (29.25% including all counsel) based on

---

[13] *See* al*so Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) (noting in analyzing fee request that defendants' agreement to pay attorneys' fees may properly be considered part of settlement fund based on which attorneys could seek a percentage-of-recovery, noting that "Although under the terms of [the relevant] settlement agreement, attorney fees technically derive from the defendant rather than out of the class' recovery, in essence the entire settlement amount comes from the same source.  The award to the class and the agreement on attorney fees represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery.").

$13.966 million gross settlement fund, which included an amount contributed by defendant Banc of America Securities to pay for notice and administration costs) (*see* Scudder notice, at http://www.scuddermutualfundlitigation.com/LinkClick.aspx?fileticket=vQHetxEViyE %3d&tabid=173&mid=764).[14]

Lead Counsel's ability to negotiate the Franklin Defendants' agreement to contribute $2.75 million cash toward the costs of notice and administration, was a clear and direct financial benefit obtained for the Class, since in most class action settlements – and the vast majority of the settlements in these MDL Actions – the settlement fund itself (rather than defendants) bears the costs of notice and administration, which dollar-for-dollar reduces the amount available for the Class.[15]  Had Lead Counsel not negotiated Franklin's $2.75 million contribution, the notice

---

[14] There is abundant case law indicating that the PSLRA's provision that the fee award should be based on the amount "actually paid to the class" permits an award of fees based on the total cash settlement benefits, regardless of whether the payment was made by the settlement fund, or in part by a defendant to third parties for costs for which the class was liable.  *See, e.g., Powers*, 229 F.3d at 1258 (district court did not err in calculating attorneys' fees as a percentage of gross recovery and not net recovery, and observing that "the choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable"); *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 264-66 (E.D. Va. 2009) (awarding $36,495,000 in fees under PSLRA, or 18% of the gross settlement fund (representing a 1.3 multiple to lodestar), plus reimbursement of expenses of $3,094,764.86 to Lead Counsel and $42,419.50 to Lead Plaintiffs); Allianz Dresdner Fee and Expense Order, 04-md-15863, Dkt # 3590 (awarding 25% fee from gross settlement fund, plus expenses); Scudder Fee and Expense Order, 04-md-15861-CCB, Dkt # 1404 (29.25% total fee award plus reimbursement of $1,042,076.40 in reimbursement of litigation expenses, plus lead plaintiff award); *MicroStrategy*, 172 F.Supp.2d at 790 & n.38; *see also Muhammad*, 2008 WL 5377783, at *6, 9, 10 (in granting final approval of settlement, court awarded attorneys' fees totaling one-third of gross settlement amount); *Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825, 827, 834 (E.D.N.C. 1994) (granting final approval of settlement calling for distribution of attorney fee award from gross settlement sum).  Indeed, to Plaintiff's knowledge, in none of the other Sub-Tracks were out-of-pocket expenses – much less notice and administration expenses – deducted from the gross settlement fund before determining the percentage fee award.

Courts in other circuits agree.  *See, e.g., In re AT&T Corp Sec. Litig.*, 455 F.3d 160, 172 n.8 (3d Cir. 2006) (rejecting objector's view that attorneys' fees must be calculated based on the net settlement amount, noting that "[e]xpenses are generally considered and reimbursed separately from attorneys' fees"); *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 269-70, 277 (E.D.N.Y. 2009) (evaluating fee award against total settlement value, which included administrative costs paid by defendants).  Whatever denominator is used as the basis for the percentage method, the relevant question is whether the attorneys' fees awarded are reasonable (*see Powers*, 229 F.3d at 1258).  This is particularly so, where, as here, the fee requested is far below counsel's lodestar, and counsel have not been paid (or had their expenses reimbursed) since this litigation was begun over seven years ago.  The Smiths cite no case to the contrary.

[15] *See, e.g.,Oppenheimer Fund, Inc, v. Sanders*, 437 U.S. 340, 349 (1978) ("'The usual rule is that a plaintiff must initially bear the cost of notice to the class.'") (citation omitted).

and administration costs would have been borne by the Gross Settlement Fund (*see, e.g.*, Long Form Notice pp. 2, 5), as in most other class actions, reducing the amount available for the Class. The $2.75 million Franklin Contribution was made in cash, such that the monies being paid toward notice and administration costs truly are fungible with respect to whether they came from Franklin directly or from Franklin through the Gross Settlement Fund.

Moreover, consistent with Lead Counsel's expectation after negotiating price quotations with Rust (which remained partly contingent on the exact number of claimants), that amount is very likely to be fully exhausted by the notice and administration process.  And, in the event it is not, contrary to the Smiths' mistaken supposition, there is *no right of reversion* to the Franklin Defendants.  *See, e.g.*, Long Form Notice, p. 11.  As the Long Form Notice makes clear, if any monies remain undistributed to the Class, or if any of the $2.75 million Franklin Contribution is unused for notice and administration costs, any such monies do not revert to the Franklin Defendants, but, in part, will go to the Class Funds themselves, benefitting current shareholders of those Funds (potentially including the Smiths), and, in part, will offset costs of the settlement fund.  *Id.*  Thus, under any fair analysis, Plaintiffs' counsel is entitled to a fee based on the entire benefit obtained herein.[16]

The Smiths' contention that Plaintiffs' counsel should not be reimbursed their out-of-pocket expenses in addition to their greatly discounted fee request is also without merit. Where, as here, under the lodestar approach, Plaintiffs' counsel is collectively seeking less than

---

[16] Even if the Court were to accept the Smiths' contention that defendants' payment to third parties for notice and settlement administration should not be counted as a benefit to the class, the fee requested here would be reasonable given the lodestar cross-check.  Indeed, in the other fee award cases cited above, in Plaintiff's Opening Mem., and in Plaintiffs' Omnibus Fee Mem., the fee percentages represented by the award would have been much higher if notice and administration costs were to be excluded from the settlement benefit.  Even where a court has excluded notice and administration costs and awarded a percentage of the net settlement distributed, the fee represented a substantial multiple of lodestar – the opposite of the instant case.  *See Royal Ahold*, 461 F. Supp. 2d at 385 (2.57 multiplier for fee of $130.6 million).  *Compare Scudder, supra* (29.25% awarded of gross settlement benefit, including amount contributed to notice costs paid by a defendant, plus expenses, where the fee represented a negative multiplier to lodestar).

22% of their lodestar, seeking reimbursement of actual out-of-pocket expenses (more than a third of which consisted of necessary damage consultant fees incurred in essentially every other sub-track in these MDL Actions) is certainly reasonable under the circumstances (nor have the Smiths cited case law to the contrary). Again, to suggest that the fee request together with the reimbursement of necessary out-of-pocket expenses results in any windfall for Plaintiff's counsel under the circumstances is a gross distortion. *Compare, e.g.*, *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 265 & n.9 (E.D. Va. 2009) (awarding reimbursement of expenses totaling $3,094,764.86 in addition to fees of $36,495,000, with the fees representing a 1.3 multiplier to lodestar); Scudder Fee and Expense Order, 04-md-15861, Dkt # 1404 (28% fee award plus reimbursement of $1,042,076.40 in reimbursement of litigation expenses).[17]

The Smiths next suggest that Plaintiff's counsel obtained no benefit to the Class from their negotiation of the $2.75 million Franklin Contribution, because, they contend, the notice and administration procedure is a benefit only to *defendants* in class actions. This argument stands reality on its head. As an initial matter, Class Notice *must* be given – it is required constitutionally, and by Fed. R. Civ. P. 23, and it generally must be borne by plaintiffs. *See supra*, p.10 n.15. Further, notice clearly benefits Class members, as it is the only way they can find out about their right to file a proof of claim and participate in a settlement, opt-out, object, or otherwise exercise rights they may have with respect to a settlement. Similarly, the claims administration process is for the benefit of class members, to provide a mechanism for them to receive compensation in a fair and orderly manner. The reality that, as a by-product of a

---

[17] *Cf. also* Order Awarding Fees and Expenses to Plaintiffs' Counsel in Connection With the Settlements in the Strong Sub-Track, 04-md-15864, Dkt # 1084 (entered Oct. 25, 2010) (Blake, J.) ($540,412.39 in expenses awarded in addition to fee request in a case that did not reach summary judgment); Order Awarding Fees and Expenses to Plaintiffs' Counsel in Connection With the Settlements in the One Group Sub-Track, 04-md-15863, Dkt # 3526 (entered Oct. 25, 2010) (Motz, J.) ($545,015.37 in expenses awarded in addition to fee request in case that did not reach summary judgment); *see also* additional cases cited *supra* note 14.

constitutional due process requirement and Rule 23's requirements implemented for the benefit

of class members, a defendant may also benefit from obtaining *res judicata* for having complied

with such requirements, is beside the point, and detracts nothing from the fact that Plaintiff's

counsel obtained this $2.75 million benefit which otherwise would have had to be borne by the

Gross Settlement Fund.

The Smiths' remaining arguments fare no better.  The Smiths' analogy that notice cannot

be considered a class benefit because otherwise the mere issuance of notice could be considered

settlement consideration, together with their strained hypothetical of a $100 token *cy pres*

settlement (Smith Letter, p.3), have nothing to do with this Action.  Nor is their allusion to the

Class Action Fairness Act pertinent to this case, which is brought under the PSLRA.[18]

The Smiths' citation to *In re Wells Fargo Sec., Litig.*, 157 F.R.D. 467 (N.D. Cal. 1994), a

district court case outside this circuit, considering a lead plaintiff motion under theories generally

unique to the judge in that case, is hardly persuasive, and does not speak to the situation here.[19]

In fact, in this case, counsel had every incentive to keep notice and administration expenses low

---

[18] *In re Aqua Dots Prods. Liab. Litig.*, No. 10-3847, 2011 U.S. App. LEXIS 17039 (7th Cir. Aug. 17, 2011), cited by the Smiths, dealt with a very different situation, in reviewing a decision on class certification, not a settlement or fee request.  Plaintiffs there sued defendants to provide a product refund to all claimants who purchased a product, when defendants had already voluntarily made a product refund program available to any purchaser of the product.  The Seventh Circuit found that the district court had relied on the wrong subsection of Rule 23 in analyzing the issue from the standpoint of the "superiority" of the existing refund program to a class action, but affirmed on the basis that a representative who chose to duplicate a voluntary, extra-litigation remedy that remained available to all putative class members, with one that entailed high transaction costs (including expensive notice costs to seek out all product purchasers, who could not be readily traced, as well as attorneys' fees) but provided nothing additional, was not adequately protecting the class members' interests. *Id.* at *4-8.  Here, the Action was not brought to obtain the same remedy that defendants voluntarily offered outside the judicial process (there was none), and it has obtained a significant total recovery for the Class which otherwise would not have been obtained for the Class.

[19] As is widely known, the presiding Judge in that case – Vaughn Walker – typically employed a competitive bidding process in selecting lead counsel in PSLRA cases.  If this Court had wanted to go that route here, it presumably would have done so at that stage.  In any event, putting competing counsel through such a process to find the strongest incentives/disincentives *prospectively*, is different than reviewing how a case has been actually litigated.  The Smiths can point to no fact to dispute that Plaintiff's counsel made every effort to keep expenses here as low as possible, and indeed they are quite low for a case that was litigated through summary judgment, with significant expert fees, and with a very large class to be provided notice.

(*inter alia*, to avoid any criticism), and in fact fought hard to keep them low.  As just one example, Lead Counsel advocated for, and the Court approved, a Postcard Notice mailing, which had very little precedent in PSLRA class actions, in order to save very substantial notice mailing costs.  At the same time, counsel had nothing whatsoever to gain from high notice and administration expenses – especially insofar as there is no right of reversion to defendants of any part of the $2.75 million Franklin Contribution, and any unused portion thereof will go to the Class Funds or to pay off other expenses to be borne by the settlement fund.  In any event, this Court has approved precisely the same type of fee and expense reimbursement request in, *e.g.*, the Allianz Dresdner Sub-Track (25% fee award of settlement benefit, including defendants' agreement to pay for most of the notice and administration costs, plus reimbursement of out-of-pocket expenses).  Allianz Dresdner Fee and Expense Order, 04-md-15863, Dkt #3590; *see also Staton*, 327 F.3d at 975 (noting that "[t]he post-settlement cost of providing notice to the class can reasonably be considered a benefit to the class. Also, where, as here, it is the defendant who pays for the notice, we may assume that the inherent incentives to minimize the cost involved are sufficient. Additionally, the court's supervision of the form of notice and the method of communication assures that the costs expended are contained."); Scudder Fee and Expense Order, 04-md-15861-CCB, Dkt # 1404, ¶¶ 3, 5(a) (28% fee award based on gross settlement fund that class members "will benefit from", including amount contributed by a defendant toward notice and administration costs).[20]

### 3.   The Smiths' Complaints About the Notice are Unfounded

The Smiths also state that the Notice process was "shoddy," did not provide adequate

---

[20] This Court has also approved reimbursement of the Lead Plaintiff's time spent on the litigation at the exact same rate of $150 per hour as sought herein on behalf of Lead Plaintiff, the Deferred Compensation Board for Employees of Nassau County.  *See* Allianz Dresdner Fee and Expense Order, 04-md-15863, Dkt #3590.

time to retain counsel, and did not provide adequate notice about the fees and expenses sought. These contentions are without merit.

First, Plaintiff rejects any suggestion that the notice program here was inadequate. To the contrary, the Court-approved notice process here was very robust, and provided more than sufficient notice, and more facts and details than most notices in class action settlements. The Long Form Notice itself was 22 pages long, and posted on a Settlement Website. Class Members also received a postcard notice, directing them to the Settlement Website, and providing a toll-free number to the Claims Administrator to answer any more detailed questions. They were also provided contact information for Plaintiff's counsel, whom they could contact with any additional questions or follow-up, as many (but not the Smiths) have done. The notice mailing was timely as it had commenced by the date set forth in the Court's Preliminary Approval Order. Notice was also timely published in *The Wall Street Journal*, and *Investor's Business Daily*, and a nationwide press release was issued over the PR Newswire, in compliance with the Preliminary Approval Order. Even if it took some time for certain Class Members to receive their mailing, this does not mean the Notice program was "shoddy", or did not constitute the best notice practicable under the circumstances. Rather, as is sometimes the case, financial intermediaries, who were requested to provide their clients' names and addresses to the Claims Administrator within 10 days, consistent with ¶ 19 of the Preliminary Approval Order (*see* Swanson Aff. ¶ 6), may take longer to provide those names and addresses to the Claims Administrator. In any event, it is disingenuous for the Smiths to complain that the notice program was inadequate and in the next breath complain that the costs of notice and administration are too high.

Second, consistent with the timely issuance of Notice pursuant to the Preliminary

Approval Order, the Smiths did have time to retain counsel, who in turn drafted a lengthy letter-brief, submitted comfortably ahead of the objection/opt-out deadline.  Moreover, the time frame between the notice mailing and the objection/opt-out deadline here is consistent with that provided in the other sub-tracks in these MDL Actions.

Third, the Smiths' suggestion that the Notice did not disclose the amount of fees and expenses is simply untrue.  The Notice clearly stated that counsel would be applying for a total fee (encompassing all counsel) of no more than 25% of the Class Benefit, and clearly stated what that Class Benefit was.  Long Form Notice, pp. 2-3; 20.  Thus, the Long Form Notice states (at p. 20), "[All Plaintiffs' counsel] will jointly apply to the Court for attorneys' fees in no event to exceed 25% of the Class Benefit ($4,437,368 plus the costs of distribution (including costs of notice and settlement administration) that the Franklin Defendants have agreed to pay, approximated at $2.75 million, plus interest earned thereon) and for reimbursement of their expenses advanced in connection with the Action up to an amount of $445,000, plus interest on both amounts at the same rate as earned by the Settlement Fund."  This plainly discloses the potential fee request, as the Smiths easily summarize in their letter.  As for expenses, because there was no final expense number available at the time of preliminary approval, the Notice stated the request may be *up to* $445,000.  In fact, while only the Smiths (out of over 4.2 million Notice recipients) objected in any respect to the expense reimbursement request, the actual amount requested to be reimbursed was $341,892.21, over $100,000 *lower* than the Notice indicated; thus, if anything, the Notice overstated the amount of the expense reimbursement request.  Similarly, although only the Smiths took any issue with the Plaintiff's Award, the Notice stated that Plaintiff may seek up to $50,000 for a Plaintiff's Award (Long Form Notice, pp. 3, 20), while the actual request when the final numbers were tabulated was for $26,885, or

only about *half* of the amount disclosed in the Notice.[21]

Finally, the Smiths' contention that the Resolution violates Rule 23(e)(3) for failure to disclose a "secret agreement" is misguided.  Like most class action settlements, the parties agreed to a provision concerning opt-out thresholds, that, if reached, might trigger rights to cancel and terminate the compromise reached.[22]  Rule 23(e)(3) only provides that parties "file a statement identifying any agreement made in connection with the proposal."  The parties have done exactly that, having filed the Stipulation and Releases with the Court, which plainly "identifies" and also describes the Side Letter with the Franklin Defendants.  Stipulation and Releases, Dkt #1413(8), ¶ 23(a)-(c).  This a routine practice in class action settlements, was disclosed in the Long Form Notice (at p. 19), and the Smiths grasp at straws in seeking to make something of it.  Notably, they cite no authority to support their argument.

### B.    The Sweeney Objection Should Be Overruled

Objector Pamela A. Sweeney, of Madison, WI, appears to be the wife of attorney Patrick S. Sweeney, of Sweeney & Sweeney, S.C., in Madison.  Mr. Sweeney apparently aspires to be a

---

[21] In attempt to explain away the tiny amount of objections in proportion to the amount of mailed notices and potential Class Members, the Smiths cite a few dated cases from outside this circuit, decided in different contexts, for the proposition that a paucity of objections does not indicate assent, although even the cases they cite tend to work against them, *see, e.g., In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785, 812 (3d Cir. 1995) (number and vociferousness of the objectors is a factor to consider in weighing reasonableness of proposed settlement).  The "reaction of the class" (or "degree of opposition") has been recognized in this Circuit as one of the factors used to evaluate the terms of a settlement and fee and expense request.  *See, e.g., In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991) (citation omitted); *Mills Corp.*, 265 F.R.D. at 261-62 (where only two of 128,000 potential class members (here, three of well over 4.2 million) objected, court noted that "[t]he reaction of the Class thus far strongly indicates that the result achieved is a desirable one").  As shown in Plaintiff's Opening Mem. (at 23-24, 41-42), Plaintiffs' Omnibus Mem., Dkt # 1341 (at 13-14), and Plaintiffs' Omnibus Fee Mem., Dkt #1342 (at 7), the weight of authority, and common sense, indicate that, while not fully dispositive, the remarkable lack of objections here, particularly given the volume of notices mailed (only 3 objections out of over 4.2 million mailed notices, not counting the widely circulated publication notices), is powerful evidence of assent, or at a minimum, lack of significant disagreement.  *See, e.g., Mills Corp.*, 265 F.R.D. at 262.

[22] Such agreements are typically not filed with the court unless there is a dispute between the signatories regarding their interpretation or application for, *inter alia*, the obvious reason that publicizing a specific numeric threshold creates a target that may incentivize those with less-than-sincere interests to harvest sufficient objections to threaten the settlement and hold it up for extortive purposes, rather than object because they are opposed to the settlement.

professional objector having recently filed similar objections to class action settlements.  *See, e.g.*, August 18, 2011 letter objection of Tom Blanchard filed by Mr. Sweeney in *Kardonick v. JP Morgan Chase & Co.*, Case No. 10-cv-23235 (S.D. Fla.) (attached as Ex. A hereto) (which objection was overruled, 10-cv-23235 (S.D. Fla. Sept. 16, 2011) (Dkt # 384, ¶ 12).[23]  Indeed, Mr. Sweeney's August 18, 2011 objection to the JP Morgan Chase settlement takes a remarkably similar form to his "client's" objection in this litigation.  However, even a cursory review of Ms. Sweeney's boilerplate objection letter here shows that her objection bears little relation or relevance to this case.

Initially, it must be pointed out that Ms. Sweeney's objection provides no evidence that she held any shares in one of the Class Funds covered by this Resolution, and therefore, whether she has any standing to make any objection in violation of this Court's Preliminary Approval Order, ¶¶ 27, 29.  A Proof of Claim form (apparently filled out in the handwriting of someone other than the signatory in Part V thereof, which in turn does not match the signature on the objection letter or on p. 3 of the Claim form), has no indication of what Fund she owns.

In any event, her specific objections are either not relevant to this litigation, or so devoid of substance or vague as to be meaningless.  Those objections which may have some bearing here have been addressed in response to the Smith objection above.  Nonetheless, Plaintiff attempts to provide below a summary and response to the alleged bases for Ms. Sweeney's objections (numbered #1 - #13, correspondingly).

# 1 (failure to require reliable oversight of claims administration process).  The objection letter provides no elaboration as to how the Resolution falls short on this ground, and it is wrong as a matter of fact.  Rust has served as claims administrator in similar settlements in these MDL Actions.  The papers submitted in support of the Resolution, including the Swanson Affidavit, detail the claims administration procedure, under Lead Counsel's active supervision (*see, e.g.*,

---

[23] Mr. Sweeney also filed an objection as counsel in *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 2:08-MD-01999 (E.D. Wisc.), on June 4, 2010, which was denied on August 16, 2010 (*see id.*, Dkt # 382).

Waldman Decl., ¶¶ 28-29), and the Court retains jurisdiction over it.

#2 (time frames allegedly benefit defendants and counsel).  No explanation of how this is so. The time frames are similar to those employed in the other MDL Actions.

#3 (no amount of attorneys' fees are withheld to assure class counsel's continued oversight in implementing settlement).  There is no such requirement, nor is there any reason to believe it is necessary in this case.

#4 (attorneys' fees are too high).  No elaboration is provided; nonetheless, this issue is addressed in response to the Smith objection above.

# 5 (claims process is cumbersome, and designed to deprive class members of the relief which the Settlement Agreement purports to provide).  No explanation of how this is so.  As set forth above, and in Plaintiff's Opening Mem., under the Plan of Allocation, all proceeds will be disbursed, and there is no reversion to defendants.

#6 (fee award should be limited to lodestar).  As evident from Plaintiff's Opening Mem. and the response to the Smith objection above, Plaintiff's counsel would welcome a fee award giving them their lodestar, but are only asking for one that gives them less than one-quarter of their lodestar. Ms. Sweeney has obviously not read the relevant papers on this motion.

#7 (fee request is not reasonable in light of insufficient documentation).  Plaintiff's counsel have provided significant documentation concerning their requested fee award but, in any event, this is of little relevance given that counsel is seeking such a substantial discount to their lodestar here (a negative multiplier of over 76%).[24]

#8 (the relief purportedly creates a conflict of interest among Class Members).  There is no indication whatsoever of how or why this could be the case in the context of this Action.

#9 ("Some *cy pres* funds are not delineated in the notice").  This is another example of the objector not reading the relevant papers and basing the objection on a boilerplate model.  There are no *cy pres* funds in this case; as stated above, the Long Form Notice is clear that any undistributed funds due to uncashed checks, etc. will go to the Class Funds (to the benefit of Class Members who still hold the Class Funds).

#10 (attorneys' fees are too high).  Same as #4 above (addressed in response to Smith objection above).

#11 ("There is a great disparity between Class Members as to awards").  No basis is offered for this assertion.  The Plan of Allocation provides for compensation of Class Members on a *pro rata* basis, in proportion to their losses, as set forth above, which is an eminently fair and universally recognized basis for providing compensation to class members.

---

[24] *See Royal Ahold*, 461 F. Supp. 2d at 385 (documentation need not be scrutinized where lodestar used as cross-check).

#12 ("Notice is inadequate in that no alleged violated statutes are referenced"; no briefing schedule is included and objector's only remedy is to write a letter).  This similarly indicates that the objector has not read the Long Form Notice, which cites the allegedly violated statutes plainly (*see, e.g.*, Long Form Notice, pp. 7-8).  The Notice clearly states the objection requirements and deadline, there is a briefing schedule set forth in the Preliminary Approval Order, and no more is required.

#13 (objector joins in and adopts "all other objections which are based on sufficient precedent and theories of equity and law").  This catch-all basis is so broad as to be meaningless, and simply seeks to piggy-back on any other objections that may have merit (of which there are none in this case).

In sum, none of the bases for the Sweeney objection have any merit, and it should be rejected.

### C.      The Sturek Objection Should Be Overruled

Don Sturek has submitted a letter affirmatively asking to be included in the Resolution. However, in his letter he asserts that this should be an "opt in" settlement and "not an opt out if you don't respond to your junk mail circular."  Sturek Letter, p. 1.  Mr. Sturek then indicates that those people who ignore such "junk mail" should be considered to have "opted OUT".  *Id.* Sturek also states that everyone who "opts in" should automatically get a payment (and that the "original clients" should not get a recovery automatically while everyone else has to submit paperwork).  *Id.*

First, Sturek has not asserted or provided any evidence whether he held any Class Funds such that he would have standing to make an objection.  Second, as the Court is aware, by its nature, this is a Rule 23(b)(3) class situation, which presents an "opt out" settlement procedure. Although, as Plaintiff's Opening Mem. and the Long Form Notice make clear, some Class Members (those who held their Class Fund shares directly with Franklin) may get a payment without submitting any paperwork, a claims procedure is required for others for whom neither the Claims Administrator nor Franklin have the relevant data, as it was in the other MDL

Actions.  These claimants cannot get their payments automatically, but must be subject to the

Plan of Allocation, to ensure they are eligible for their payments, and, due to the limited amount

of the recovery available to claimants, must receive their recovery on a *pro rata* basis, in

proportion to their losses (and subject to the minimum distribution threshold for the reasons set

forth above).  The "original clients" are subject to these rules for recovery just like every other

Class Member.

Plaintiff respectfully submits that the Sturek objection should also be overruled.[25]

## III.   CONCLUSION

For the foregoing reasons, as well as those set forth in Plaintiffs' Opening Mem. and

supporting papers, and the entire record herein, the objections of Fred L. and Frances B. Smith,

Pamela A. Sachtjen Sweeney, and Don Sturek should be overruled, and the Resolution and fee

and expense reimbursement request, and request for a Lead Plaintiff's award, should be finally

approved in all respects.

Dated: October 14, 2011

**WOLF POPPER LLP**

By:   /s/ Chet B. Waldman
Robert M. Kornreich
Chet B. Waldman
Andrew E. Lencyk
845 Third Avenue
New York, NY  10022
Tel:  (212) 759-4600
Fax: (212) 486-2093

*Lead Class Counsel in the Franklin Templeton*
*Sub-Track, on behalf of Class Lead Plaintiff,*
*the Deferred Compensation Plan for Employees*
*of Nassau County, and the Class*

**TYDINGS & ROSENBERG LLP**

By:   /s/ John B. Isbister
John B. Isbister, Fed Bar No. 00639
100 East Pratt Street, 26th Floor
Baltimore, MD 21202
Tel:   (410) 752-9700
Fax:  (410) 727-5460

*Liaison Counsel*

---

[25] Steve R. Sawyer submitted letters (Dkt #1437) that do not raise any specific objection or request any specific relief related to this lawsuit, nor has he apparently held any of the Class Funds; accordingly, Plaintiff does not address his general comments here.  There have been no objections by any institutional shareholders.