**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| IN RE MUTUAL FUNDS INVESTMENT LITIGATION | MDL 1586 |
| Alliance Sub-track | 1:04-MD-15862 (AMD) |

**MEMORANDUM IN SUPPORT OF CLASS PLAINTIFFS' MOTION FOR
DISTRIBUTION OF SETTLEMENT PROCEEDS IN THE ALLIANCE SUB-TRACK**

Court-appointed Investor Class Plaintiffs and ERISA Class Plaintiff (together, "Class Plaintiffs"), by and through their undersigned counsel, hereby submit this memorandum in support of their motion for an order pursuant to Federal Rule of Civil Procedure 23(e), that would approve the plan for distribution of the Net Settlement Fund and the OAG/Canary Fund to the Investor Class, ERISA[1] Class and Class Funds, as set forth in the accompanying Affidavit of Eric S. Schachter in Support of Motion for Distribution of Settlement Proceeds in the Alliance Sub-Track (the "Schachter Affidavit") submitted on behalf of Rust Consulting, Inc. ("Rust" or the "Claims Administrator"), the Court-approved claims administrator for the settlements obtained in the Alliance Sub-track of MDL 1586 – *In re Mutual Funds Investment Litigation* (the "Action").[2]

**PROCEDURAL HISTORY AND BACKGROUND ON SETTLEMENTS**

Investor Class Plaintiffs (on behalf of the Investor Class), ERISA Class Plaintiff (on behalf of the ERISA Class), Fund Derivative Plaintiffs (derivatively on behalf of the mutual

---

[1] "ERISA" refers to the Employee Retirement Income Security Act of 1974, Pub.L. 93-406, 88 Stat. 829.

[2] Unless otherwise defined, all capitalized terms used herein shall have the meanings set forth in the accompanying Schachter Affidavit and the Orders and Final Judgments entered in the Action on October 25, 2010 (Dkt. Nos. 1371-1375) (collectively, the "Judgments") which incorporate by reference the defined terms and definitions in the Preliminary Approval Order (Dkt. No. 1284) and the respective stipulations of settlement filed with the Court in the Action (Dkt. Nos. 1276-9, 1276-11, 1276-14, 1276-17 and 1276-20) (the "Stipulations").

funds in the AllianceBernstein family of mutual funds advised by Alliance Capital Management, L.P. (the "AllianceBernstein Funds"))[3] and the Settling Entities (as defined below) (together, the "Parties") entered into five separate settlements embodied in the following Stipulations (the "Settlements"), resulting in a global settlement of all claims asserted in the Action:

- the Stipulation and Agreement of Settlement dated November 4, 2009 entered into between Investor Class Plaintiffs, ERISA Class Plaintiff and Fund Derivative Plaintiffs (collectively, "Plaintiffs") and the Alliance Settling Defendants (*i.e.*, Alliance Capital Management Holding, L.P., Alliance Capital Management L.P., Alliance Capital Management Corporation (n/k/a AllianceBernstein Corporation), AXA Financial, Inc., AXA S.A., Equitable Life Assurance Society of the United States, n/k/a AXA Equitable Life Insurance Company, AllianceBernstein Investment Research and Management, Inc. (n/k/a AllianceBernstein Investments, Inc.), Alliance Global Investor Services, Inc. (n/k/a AllianceBernstein Investor Services, Inc.), each of the AllianceBernstein Funds, and each of the current and former subsidiaries, affiliates, officers, directors and trustees of the foregoing institutions, companies and AllianceBernstein Funds (which, for purposes of the settlement, include all individuals currently or formerly associated with any of the Alliance Settling Defendants or any of the AllianceBernstein Funds));

- the Alliance/Bear Stearns Severed Agreement and Stipulation of Settlement dated January 15, 2010 entered into between Investor Class Plaintiffs and the Bear Stearns Defendants (*i.e.*, Bear, Stearns & Co. Inc., Bear, Stearns Securities

---

[3] In connection with settlement, Investor Lead Counsel hired an expert to examine the trading records of the AllianceBernstein Funds and to investigate which of the AllianceBernstein Funds, if any, and thereby their holders, had been potentially damaged, and, after a thorough review, Investor Lead Counsel's expert concluded that only the following mutual funds had been potentially damaged as a result of market-timing and/or late trading: (i) Alliance International Fund, (ii) AllianceBernstein Americas Government Income Trust, (iii) AllianceBernstein Balanced Shares, (iv) AllianceBernstein Bond Fund – AllianceBernstein Corporate Bond Portfolio, (v) AllianceBernstein Disciplined Value Fund, (vi) AllianceBernstein Emerging Market Debt Fund, (vii) AllianceBernstein Global Small Cap Fund, (viii) The AllianceBernstein Portfolios - AllianceBernstein Growth Fund, (ix) AllianceBernstein Growth and Income Fund, (x) AllianceBernstein High Yield Fund, (xi) AllianceBernstein Mid-Cap Growth Fund, (xii) Alliance National Municipal Income Fund, (xiii) AllianceBernstein New Europe Fund, (xiv) AllianceBernstein Premier Growth Fund, (xv) AllianceBernstein Real Estate Investment Fund, (xvi) AllianceBernstein Quasar Fund, (xvii) AllianceBernstein Trust – AllianceBernstein Small Cap Value Fund, (xviii) AllianceBernstein Technology Fund, and (xix) AllianceBernstein Bond Fund – AllianceBernstein U.S. Government Portfolio (collectively, the "Class Fund"). The foregoing fund names reflect the names of the funds as of the end of the Class Period. Fund names at the time the Notice was mailed, as well as prior names existing during the Class Period, can be found on the Appendix attached to both Notices.

Corp, The Bear Stearns Companies Inc., currently known as J.P. Morgan Securities Inc., J.P. Morgan Clearing Corp. and The Bear Stearns Companies LLC, respectively) and the Master Agreement of Settlement with Bear Stearns Defendants;

- the AllianceBernstein/Security Brokerage Severed Agreement and Stipulation of Settlement dated January 15, 2010 entered into between Investor Class Plaintiffs and the Security Brokerage Defendants (*i.e.*, Daniel G. Calugar and Security Brokerage, Inc. (now known as Symphonic Alpha, LLC)) and the Master Agreement with the Security Brokerage Parties;

- the AllianceBernstein/Canary Severed Agreement and Stipulation of Settlement dated January 15, 2010 entered into between Investor Class Plaintiffs and the Canary Defendants (*i.e.*, Canary Capital Partners, LLC, Canary Capital Partners, Ltd., Canary Investment Management, LLC and Edward J. Stern) and the Master Agreement of Settlement with Canary Defendants; and

- the Alliance/BAS Severed Agreement and Stipulation of Settlement dated January 28, 2010 entered into between Investor Class Plaintiffs, Fund Derivative Plaintiffs and Banc of America Securities LLC and related entities ("BAS") and the Master Agreement of Settlement with Banc of America Securities LLC.[4]

The Settlements provide for the total payment of $74,586,650 in cash (the "Settlement Fund"), plus interest earned thereon. Specifically, the Settlement Fund is comprised of: (i) $30,000,000 paid on behalf of the Alliance Settling Defendants, (ii) $6,458,400 paid on behalf of BAS,[5] (iii) $1,232,000 paid on behalf of the Bear Stearns Defendants, (iv) $35,831,250 paid on behalf of the Security Brokerage Defendants; and (v) $1,065,000 paid on behalf of the Canary Defendants. These funds have been escrowed and are currently earning interest. The Settlement Fund, net of any taxes on the income thereof, and net of any funds used to pay Court-awarded attorneys' fees and expenses and other costs, including notice and administrative costs, is the Net Settlement Fund. In addition to the Net Settlement Fund, Rust will also distribute $2,130,000

---

[4] The Alliance Settling Defendants, Bear Stearns Defendants, Security Brokerage Defendants, Canary Defendants and BAS are collectively referred to herein as the "Settling Entities."

[5] The $6,458,400 paid on behalf of BAS is comprised of a $5,440,500 principal settlement amount and a $1,017,900 contribution towards the costs of notice and administration of the settlement.

plus interest obtained by the Office of the New York Attorney General in a settlement with the Canary Defendants (the "OAG/Canary Fund").

The notice campaign was conducted in accordance with the Court's Preliminary Order for Notice and Hearing in Connection With Settlement Proceedings in the Alliance Sub-Track dated May 19, 2010 (the "Preliminary Approval Order").  By its Preliminary Approval Order, the Court directed that the Notice of Pendency and Proposed Settlements of Securities Class, Derivative and ERISA Class Actions, Motion for Attorneys' Fees and Expenses, and Settlement Hearing (the "Notice") be mailed to all identifiable members of the Classes.  In addition to the mailed Notice, Plaintiffs also utilized the Internet to facilitate notice to the Classes and current shareholders of the AllianceBernstein Funds.  Specifically, Rust constructed an extensive informational website for the Settlements, [www.AllianceMutualFundLitigation.com](www.AllianceMutualFundLitigation.com) (the "Alliance Settlement Website"), on which Rust posted the Long-Form Notice of Pendency and Proposed Settlements of Securities Class, Derivative and ERISA Class Actions, Motion for Attorneys' Fees and Expenses, and Settlement Hearing (the "Long Form Notice"), a more detailed version of the mailed Notice which included the Court-approved plan for allocating the settlement proceeds (the "Plan of Allocation"), and the Proof of Claim and Release form ("Claim Form").  Further, a "global" summary notice – serving to generally inform the public of the proposed settlements reached in sixteen of the seventeen mutual fund sub-tracks involved in the MDL Action -  was published in *People* Magazine, *The Wall Street Journal*, the *New York Times* and via *PR Newswire*, and disseminated through the use of targeted web-based "banner ads."

In addition, pursuant to the Preliminary Approval Order, the Court preliminarily certified, solely for purposes of effectuating the Settlements, the Investor Class pursuant to Rule 23 of the Federal Rules of Civil Procedure consisting of all persons who, during the period from October

4

1, 1998 to September 30, 2003, inclusive, purchased and/or held shares in any mutual fund in the AllianceBernstein family of mutual funds advised or managed by Alliance Capital Management, L.P. that was adversely affected by market timing and/or late trading,[6] and the ERISA Class consisting of all persons who were participants in or beneficiaries of the Alliance Plan (*i.e.*, any profit sharing plan for the employees of Alliance Capital Management, L.P. or AllianceBernstein L.P. whose participants included members of the ERISA Class) at any time between October 2, 1998 and September 30, 2003 and whose accounts included investments in the Class Funds and Alliance Holding Units.  Excluded from the Classes are defendants, members of the immediate family of each of the individual defendants, any subsidiary, affiliate, director, officer, or employee of any of the defendants, any entity in which any excluded person or entity has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person or entity.[7]

Thereafter, the Court held a hearing on October 21, 2010 to consider, among other things, whether the proposed Settlements should be granted final approval.  By its Judgments entered on October 25, 2010, the Court, among other things, reaffirmed its certification of the Classes and approved the Settlements as fair, reasonable and adequate and in the best interests of the Classes and the AllianceBernstein Funds.  In addition, the notice procedures were declared to be proper, and the Action was dismissed with prejudice.  By its Order Approving Plan of Allocation of Settlement Proceeds in the Alliance Sub-Track entered on October 25, 2010, the Court approved

---

[6] Investor Lead Counsel brought the class action to represent and pursue the claims of all holders of shares in those AllianceBernstein Funds alleged to have been damaged by market-timing or late trading during the Class Period.

[7] Also excluded from the Investor Class are all persons and entities who excluded themselves from the Settlements by timely requesting exclusion in accordance with the requirements set forth in the Long Form Notice (as set forth on Exhibits 1 or 2 to the Judgments). Members of the ERISA Class were not permitted to opt-out of the ERISA Class.

the Plan of Allocation as set forth in the Long Form Notice, along with the claims process for administering the Plan of Allocation.

Moreover, the Court approved the retention of Rust to facilitate notice, to administer the Settlements, to perform all analyses and accounting procedures in connection with the claims submitted, and to effectuate distribution of the Net Settlement Fund and OAG/Canary Fund. Rust has consented to the jurisdiction of this Court.

### THE SETTLEMENT FUND

Pursuant to the Stipulations, the Settling Entities have deposited $74,586,650 (plus interest) into an escrow account maintained by HSBC Bank on behalf of the Classes and the Class Funds (the "Alliance Escrow Account").[8] In total, $3,133,664.52 in income has been earned on the settlement proceeds since the date of the initial deposit into the Alliance Escrow Account. In addition, the following expenses have been paid from the Settlement Fund: (i) a total of $3,000,000 in administrative expenses;[9] (ii) $1,086,414.96 in taxes and tax related expenses;[10] and (iii) $17,991,836.85 in attorneys' fees and expenses awarded by the Court.[11] On

---

[8] The settlement amounts paid by the cross-track defendants involved in the Alliance Sub-Track (*i.e.*, BAS, the Bear Stearns Defendants, the Security Brokerage Defendants and the Canary Defendants) were funded and held in various escrow accounts prior to being transferred to the Alliance Escrow Account. Any interest earned on these settlement amounts (attributable to the Alliance Sub-Track) during this time was also transferred to the Alliance Escrow Account (*i.e.*, $3,115,415.54).

[9] In addition to the $2,963,417.03 paid to Rust from the Settlement Fund (*see* Section titled "Fees and Expenses of Claims Administrator and Taxes" below), (i) $36,582.97 was paid to The Garden City Group, Inc. representing the Alliance Sub-Track's share of the global publication program for the MDL 1586 – *In re Mutual Funds Investment Litigation*.

[10] This amount reflects $1,105,000.00 in tax payments, $2,100.00 in tax related expenses (*e.g.*, tax return preparation); and tax refunds totaling $20,685.04.

[11] Pursuant to the Court's Order Awarding Attorneys' Fees and Expenses in the Alliance Sub-Track entered on October 25, 2010, the Court awarded 20% of the Settlement Fund to Lead Counsel (*i.e.*, $14,917,330), 1.25% of the Settlement Fund to Liaison Counsel (*i.e.*,

or about May 6, 2011, the OAG/Canary Fund plus interest (*i.e.*, $2,507,595.66) was deposited into the escrow account. As of December 5, 2012, the balance of the Alliance Escrow Account was $61,265,073.91.

## CLAIMS ADMINISTRATION

In accordance with the mailed Notice and the Long Form Notice (together, the "Notices"), all Investor Class Members[12] wishing to participate in the Settlements were required to complete a Claim Form and to mail the Claim Form, together with supporting documentation, to the post office box identified in the Notices, which was maintained by Rust, postmarked no later than December 8, 2010.[13] Employees of Rust have carefully reviewed, processed and analyzed all of the Claim Forms submitted, and have responded in a prompt manner to all

---

$932,333.13), and $739,313.18 in expenses plus interest on such amounts, which at the time of award calculated to $1,402,860.54.

[12] As set forth in the Notices, members of the ERISA Class were not required to submit Claim Forms. The Alliance Plan was considered to be a member of the Investor Class for purposes of the Settlements and submitted a Claim Form on behalf of the Alliance Plan and its participants.

[13] With respect to supporting documentation, Investor Class Members were required to submit documentation to show the number of shares they held in the Class Funds at or around each year-end of the Class Period. In an effort to assist potential claimants in obtaining this information, Rust, pursuant to the directive of Investor Lead Counsel and AllianceBernstein, established a data portal on the Alliance Settlement Website to assist potential claimants who did not have or were unable to locate records of their holdings in the Class Funds during the Class Period (the "Alliance Data Portal"). The Alliance Data Portal enabled potential claimants who held shares of the Class Funds directly with AllianceBernstein to access and print a statement of their year-end share balance positions during the Class Period in each of the Class Funds ("Holding Statements") and use these Holding Statements as supporting documentation for their Claim Form. Rust also made Holding Statements available for mailing to potential claimants upon request. Schachter Aff. at ¶5. Further, to assist potential claimants who did not retain their Class Period records and who were unable to access this information via the Alliance Data Portal, the Alliance Settlement Website provided additional suggestions on how to obtain the necessary holding documentation. Moreover, Rust gave Investor Class Members who provided incomplete or partial documentation the benefit of the doubt in order to permit as many Investor Class Members as possible to share in the proceeds of the Net Settlement Fund. *Id*. at ¶5, fn 7.

7

claimant inquiries regarding the Action, the Settlements and the procedures for completing and submitting claims. Schachter Aff. at ¶10.

## CLAIM DEFICIENCIES AND REJECTED CLAIMS

As set forth in the accompanying Schachter Affidavit, for all submitted claims that were determined to be intrinsically ineligible (*i.e.*, claims that cannot be cured by submitting additional information) or duplicative of another submitted claim, Rust mailed a "Notice of Ineligibility" to the claimant advising him, her or it of the ineligibility/rejection of their claim. *See* Schachter Aff. at ¶14. For all submitted claims that were determined to be deficient primarily due to missing information and/or documentation needed to calculate losses pursuant to the Plan of Allocation, Rust mailed a "Notice of Deficiency" to the claimant advising him, her or it of the deficiency(s) with the claim and what was necessary to complete the claim. Schachter Aff. at ¶15.[14] Electronically submitted claims that were determined to be ineligible or deficient were notified of their ineligibility or deficiency by means of a Transaction Report. Schachter Aff. at ¶16. Both the Notice of Ineligibility and Notice of Deficiency, as well as the Transaction Reports, advised claimants that they had the right to contest Rust's determination of the ineligibility of their claims, or their claims' deficiency(ies), within twenty days and could submit their dispute to the Court for resolution. Schachter Aff. at ¶18. There are no outstanding requests for the Court's review of any submitted claim. *Id*.

---

[14] Sample Notices of Ineligibility and a sample Notice of Deficiency are attached to the Schachter Affidavit as Exhibits C and D, respectively.

## ADMINISTRATIVE DETERMINATIONS
## WITH RESPECT TO SUBMITTED CLAIMS

### I.     Submitted Claims Recommended for Acceptance

A total of 77,850 claims were submitted in connection with the Settlements, 67,560 of which are being recommended for acceptance. Schachter Aff. at ¶21. Of the total claims submitted, a total of 66,272 valid claims were submitted timely (*i.e.*, postmarked on or before the claims submission deadline of December 8, 2010). Schachter Aff. at ¶21 (a); *see also* Exhibit G to the Schachter Affidavit listing all valid and timely submitted claims, in claim number order. In addition, a total of 1,288 otherwise valid claims were submitted after the December 8, 2010 claims submission deadline, but no later than October 31, 2012 (the "Late Claims").[15] Schachter Aff. at ¶21(b); *see also* Exhibit H to the Schachter Affidavit listing all otherwise valid claims submitted after December 8, 2010, in claim number order. No valid claim received by October 31, 2012 has been rejected simply for being postmarked after the December 8, 2010 claim submission deadline. *Id*. According to its analysis, Rust has found 67,560 of the total claims submitted to be proper and considered valid. Schachter Aff. at ¶21 Accordingly, Class Plaintiffs respectfully request that this Court approve Rust's administrative determination(s) with respect to the accepted claims listed on Exhibits G and H to the Schachter Affidavit.

### II.    Submitted Claims Recommended for Rejection

Rust has also rejected 10,290 claims. Schachter Aff. at ¶19; *see also* Exhibit F to the Schachter Affidavit listing all ineligible claimants and the reason(s) for rejection. Paragraph 19 of the Schachter Affidavit sets forth the specific reasons for the rejection of these claims: (i)

---

[15] Class Plaintiffs respectfully request the Court to approve October 31, 2012 as the final cut-off date after which no additional claims may be accepted so that there may be a proportional distribution of the Net Settlement Fund and OAG/Canary Fund and the distribution may be accomplished. Schachter Aff. at ¶21(d).

9

5,982 claims were rejected because the claims did not calculate to a Recognized Claim pursuant to the Court-approved Plan of Allocation set forth in the Long Form Notice; (ii) 2,016 claims were rejected because the claims indicate no eligible holdings in the Class Funds; (iii) 1,801 claims were rejected because the claims were duplicates of previously submitted claims; (iv) 461 claims were rejected because the claims provided insufficient information or documentation to support the claim; and (v) 30 claims were rejected because the claims were voluntarily withdrawn by the claimant. Schachter Aff. at ¶19. Accordingly, Class Plaintiffs respectfully request that this Court approve Rust's administrative determinations with respect to the rejected claims listed on Exhibit F to the Schachter Affidavit.

## FEES AND EXPENSES OF CLAIMS ADMINISTRATOR AND TAXES

In accordance with Rust's agreement with Plaintiffs' Counsel to act as the claims administrator in connection with the Settlements of the Action, Rust is responsible for, among other things, mailing notice to the Classes, processing Claim Forms, and allocating and distributing the Net Settlement Fund and OAG/Canary Fund to eligible claimants. As set forth in the accompanying Schachter Affidavit, Rust's fees and expenses incurred to date in connection with the administration of the Settlements and expected to be incurred through the distribution of the settlement proceeds amount to $5,469,724.85. Schachter Aff. at ¶¶29-30; *see also* Exhibit I to the Schachter Affidavit (attaching copies of Rust's invoices for its outstanding administration fees and expenses).[16] To date, Rust has received payments from the Settlement Fund totaling $2,963,417.03. Accordingly, Rust's unreimbursed fees and expenses total $2,506,307.82 to be paid from the Settlement Fund. *Id*.

---

[16] Of the $5,469,724.85 in costs incurred or expected to be incurred by Rust, $3,774,087.16 relates to print, postage, broker reimbursement and other expense resulting from in part the mailing of over 5.1 copies of the Notice. Schachter Aff. at ¶30.

In addition, the Settlement Fund was invested principally in short term United States Agency or Treasury Securities or mutual funds invested solely in such securities. Under the provisions of §1.468B of the Internal Revenue Code, taxes must be paid on the Settlement Fund. To date, $1,086,414.96 in taxes (including $2,100 in tax related expenses) have been paid from the Settlement Fund. Monies payable to the Internal Revenue Service at the time of distribution on the interest earned on the settlement proceeds, if any, will be withheld from payment to the Classes and immediately paid to the Internal Revenue Service.

Class Plaintiffs respectfully request that the Court approve payment of Rust's unreimbursed fees and expenses and direct payment of Rust's unreimbursed fees and expenses, as well as any taxes due, prior to distribution of the Net Settlement Fund to the Class.

## DISTRIBUTION PROCESS

The Net Settlement Fund and OAG/Canary Fund are ready to be distributed at this time.[17] Class Plaintiffs therefore respectfully request the Court direct Rust to distribute the Net Settlement Fund and OAG/Canary Fund to the claimants whose claims Rust has administratively determined to be valid (including claims received after the December 8, 2010 submission deadline but no later than October 31, 2012), as listed on Exhibits G and H to the Schachter Affidavit (the "Authorized Claimants"). Pursuant to the Long Form Notice, if these administrative determinations are approved, each of these claimants will receive a *pro rata* share of the Net Settlement Fund and OAG/Canary Fund based on his, her, or its Recognized Claim compared to the total Recognized Claims of all accepted claimants.

---

[17] As set forth in the Long Form Notice, "[t]he Settling Entities do not have any responsibility or liability with respect to claims administration, the management, investment or distribution of the Settlement Fund, the Net Settlement Fund or the OAG/Canary recovery, or the Plan of Allocation."

11

It may be expected that not all of the checks sent to the 67,560 Authorized Claimants will be cashed promptly, and that not all of the Authorized Claimants will be located. Pursuant to the Plan of Allocation, if any funds remain in the Net Settlement Fund because of uncashed distributions or other reasons, then, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants cash their distribution checks, any balance remaining in the Net Settlement Fund one (1) year after the initial distribution of such funds shall be distributed to the Class Funds, in proportion to the harm to each fund as determined by Investor Lead Counsel's expert.

## RELEASE OF CLAIMS

Class Plaintiffs respectfully request this Court release and discharge all persons who are involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claim Forms submitted in this Action, or who are otherwise involved in the administration or taxation of the Settlement Fund, the Net Settlement Fund, or the OAG/Canary Fund from any and all claims arising out of such involvement, and, pursuant to the release terms of the Settlements, bar all members of the Class Members, whether or not they are to receive payment from the Net Settlement Fund and OAG/Canary Fund, from making any further claim against the Net Settlement Fund and the OAG/Canary Fund or the parties released pursuant to the Settlements beyond the amount allocated to them by the Settlements as approved by the Court.

## RECORD RETENTION AND DESTRUCTION

Class Plaintiffs respectfully request that the Court authorize Rust to destroy the paper and electronic copies of the claims and all supporting documentation three (3) years after the distribution of the Net Settlement Fund and OAG/Canary Fund.

## CONCLUSION

Based on the foregoing, Class Plaintiffs respectfully request that the Court approve the Motion for Distribution of Settlement Proceeds in the Alliance Sub-Track and enter the [Proposed] Order Authorizing Distribution of Settlement Proceeds in the Alliance Sub-Track submitted herewith.

DATED: December 5, 2012                         Respectfully submitted,

                                      **KESSLER TOPAZ**
                                         **MELTZER & CHECK, LLP**

                                        /s/ Michael K. Yarnoff
                                      Michael K. Yarnoff
                                      Jennifer L. Enck
                                      280 King of Prussia Road
                                      Radnor, PA  19087
                                      Telephone:  (610) 667-7706
                                      Facsimile:   (610) 667-7056

                                      *Investor Lead Counsel for Plaintiffs*
                                      *in the MDL Alliance Sub-track*


                                      **HARWOOD FEFFER LLP**

                                        /s/ Samuel K. Rosen
                                      Robert I. Harwood
                                      Samuel K. Rosen
                                      488 Madison Avenue
                                      8th Floor
                                      New York, NY  10019
                                      Telephone:  (212) 935-7400
                                      Facsimile:   (212) 753-3630

                                      *ERISA Class Counsel for Plaintiffs*
                                      *in the MDL Alliance Sub-track*