IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MUTUAL FUNDS INVESTMENT LITIGATION <br> _____ | MDL 1586 |
| IN RE ALLIANCE, FRANKLIN/TEMPLETON, BANK OF AMERICA/NATIONS FUNDS, and PILGRIM BAXTER <br> _____ | Case No. 04-md-15862 <br> (Judge Motz) |
| [Franklin Templeton Sub-Track] <br> _____ | |
| Sharkey IRO/IRA v. Franklin Resources, *et al.* <br> _____ | Case No. 04-md-1310 |

**CLASS LEAD PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR APPROVAL OF DISTRIBUTION PLAN**

Robert M. Kornreich
Chet B. Waldman
Andrew E. Lencyk
WOLF POPPER LLP
845 Third Avenue, 12th Floor
New York, NY  10022
Tel.:    (212) 759-4600

*Attorneys for Class Lead Plaintiff*

John B. Isbister, Fed Bar No. 00639
TYDINGS & ROSENBERG LLP
100 East Pratt Street, 26th Floor
Baltimore, MD 21202
Tel:     (410) 752-9700

*Plaintiff's Liaison Counsel*

Court-appointed Class Lead Plaintiff, the Deferred Compensation Plan for Employees of Nassau County ("Lead Plaintiff" or "Plaintiff"), pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, respectfully submits this memorandum in support of its motion (the "Motion") for entry of a [Proposed] Order Approving Distribution Plan (the "Distribution Order") in the Franklin Templeton Sub-Track of MDL-1586 – *In re Mutual Funds Investment Litigation* (the "Action").   In further support of the Motion, Lead Plaintiff submits the accompanying Declaration of Julie Swanson in Support of Motion for Approval of Distribution Plan (the "Swanson Declaration" or "Swanson Decl."), on behalf of the Court-approved Claims Administrator, Rust Consulting, Inc. ("Rust").[1]

## INTRODUCTION

If granted, the Motion will permit the distribution of settlement proceeds to members of the Class ("Class Members") whose Claims are accepted by the Court.   More specifically, the proposed Distribution Order will, among other things: (i) approve Rust's administrative determinations (a) accepting and excluding/rejecting the Proofs of Claim submitted in the Action, and (b) accepting and excluding/rejecting Claims of Class Members who held shares of Class Funds directly with Franklin, based on records provided by Franklin;[2] (ii) direct the distribution of the Net Monetary Amount and the OAG/Canary Fund (defined below) to Claimants whose Claims, or Proofs of Claim (if required, have been accepted as valid and approved by the Court; (iii) direct that distribution checks state that the check must be cashed

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Swanson Declaration or the Final Order and Judgment Approving Settlements and the Stipulation and Releases and Dismissing Actions Against the Defendants, entered in the Action on December 9, 2011 ("Final Order and Judgment") (Dkt. No. 129) (which incorporates by reference the defined terms in the Stipulation and Releases dated March 14, 2011 and filed with this Court on May 24, 2011 (Dkt. No. #1413(8)) (the "Stipulation")).

[2] Pursuant to the Stipulations and Notice, Class Members who held shares of the Class Funds directly with Franklin were not required to submit a Proof of Claim to be considered for potential participation in the Settlements.  Those Class Members will be mailed checks directly assuming they have a damages allocation of over $10, as set forth below.  The Class Funds are defined in the Stipulation and are listed *infra*, note 8.

within 90 days after the issue date; (iv) direct that Authorized Claimants will forfeit all recovery from the settlement proceeds if they fail to cash their distribution checks in a timely manner; (v) adopt the recommended plan for the funds remaining following the Distribution; (vi) release claims related to the claims administration process; (vii) approve Rust's fees and expenses incurred and to be incurred in connection with the administration of the Settlements; (viii) authorize destruction of Proof of Claim forms after the Distribution and records of shareholders who held Class Funds directly with Franklin; and (ix) provide that the Court retains jurisdiction to consider any further applications concerning the administration of the Settlements, and such other and further relief as the Court deems appropriate.

## BACKGROUND

Primarily between July 2009 and January 2010, the parties finalized the terms of the respective Third Party Settlements resolving the claims asserted in the Action against Bear Stearns, Canary, Security Brokerage, and BAS.[3]   Subsequently, between December 2010 and March 2011, Plaintiff and the Franklin Defendants finalized the terms of the Stipulation.[4] Pursuant to the Third Party Settlements, a total of $4,437,368 in cash[5] has been paid into escrow for the benefit of the Settlement Class.[6]   An additional $90,000 plus interest, which was obtained

---

[3] Plaintiff entered into settlement agreements with the Third Party Settling Defendants (the "Third Party Stipulations"), which were filed with the Court on May 24, 2011 as Exhibits 2-6 to the Appendix to the Franklin Preliminary Approval Mem., Dkt. #1413(9)-(14). The BAS settlement agreement was also reached in principle during the January 2010 time period, but certain details were left for later resolution, such that the BAS severed settlement stipulation was executed in May 2011.

[4] The Stipulation was filed with the Court on May 24, 2011 as Exhibit 1 to the Appendix to the Franklin Preliminary Approval Mem. (Dkt. No. #1413(8).)  The Third Party Stipulations and the Stipulation are collectively referred to as the "Stipulations."

[5] The $4,437,368 cash payment includes $37,700 contributed toward the costs of notice and administration of the Monetary Amount, paid on behalf of Banc of America Securities LLC ("BAS").  The "Monetary Amount" to be distributed to the Authorized Claimants does not include any amounts contributed toward the costs of notice and administration of the Monetary Amount.

[6] As detailed in the Notice to the Class and current shareholders, pursuant to the Court-approved Plan of Allocation, any Net Monetary Amount (a/k/a Net Settlement Funds) remaining following an initial distribution to eligible

by the Office of the New York State Attorney General in its settlement with the Canary Defendants (the "OAG/Canary Fund"), has been transferred to an escrow account controlled by Class Lead Counsel, pending distribution to the Class. Pursuant to the Stipulation, the Franklin Defendants also contributed the sum of $2.75 million in cash toward the costs of distribution (including costs of notice and settlement administration) of the Settlements (the "Franklin Contribution").[7] The $4,437,368 total amount paid by the Third Party Settling Defendants, plus the $2.75 million Franklin Contribution, yield a total benefit to the Class of $7,187,368, plus applicable interest (the "Class Benefit").

On June 9, 2011, the Court entered an Order Preliminarily Approving the Stipulation and Releases and Settlements of Class Action and Settlement of Derivative Action With Respect to the Canary and BAS Defendants and Establishing Notice Procedures (Dkt. No. 1420) (the "Preliminary Approval Order"), which approved Class Lead Counsel's selection of Rust as the Claims Administrator for the Settlements. Pursuant to the Preliminary Approval Order, Rust was retained to, among other things, print and mail copies of the Notice to Class Members, publish the Publication Notice, process the Proofs of Claim submitted in the Action, process Claims for Class Members who do not need to submit Proofs of Claim, and effectuate the distribution of the settlement proceeds.

On October 25, 2011, the Court held a hearing to consider the proposed Settlements and Stipulation and, in the Final Order and Judgment dated December 9, 2011, the Court approved the Settlements and Stipulation as set forth in the respective Stipulations, and directed the parties to implement and consummate the Settlements and Stipulation in accordance with the terms and

members of the Class, due to uncashed distributions or otherwise, will be distributed to the Class Funds themselves, or their successor funds.

[7] Because the Franklin Contribution has paid for most of the notice and administration costs, a substantially higher percentage of the Gross Settlement Fund will be disbursed to Class Members with valid claims.

provisions of the respective Stipulations.  Dkt. No. 129.  In the Final Order and Judgment, the Court also certified a Class, for purposes of the Settlements and Stipulation, consisting of "every Person who, during the period February 6, 1999, through February 4, 2004, inclusive (the "Class Period"), purchased, owned or held shares in any Class Funds."[8]  Final Order and Judgment ¶ 5.

The Effective Date of each of the Settlements and the Stipulation has occurred, and the Claims Administrator has completed the processing of the Proofs of Claim submitted in the Action, as well as the Claims of Class Members who do not need to submit Proofs of Claim. Accordingly, pursuant to the Preliminary Approval Order and the Stipulations, the Net Monetary Amount and OAG/Canary Fund may be distributed to the Authorized Claimants upon entry of an appropriate order by the Court.

## CLAIMS ADMINISTRATION

As set forth in the accompanying Swanson Declaration, Rust mailed 4,824,515 copies of the Notice to potential Class Members in this Action.  *See* Swanson Decl. ¶ 4. Under the terms of the Preliminary Approval Order and the Notice, all Class Members wishing to participate in the distribution of the Net Monetary Amount who held shares of the Class Funds through a Financial Intermediary/Omnibus Account (such as a brokerage account and/or "networked" account) were required to submit their Proofs of Claims by December 12, 2011. As detailed in the

---

[8] The Class Funds are:  Templeton Foreign Fund; Templeton Developing Markets Trust; Templeton Global Smaller Companies Fund; Templeton Global Opportunities Trust; Franklin California Growth Fund (effective 9/1/02, name changed to Franklin Flex Cap Growth Fund); Templeton Greater European Fund (effective 8/1/99, name changed to Templeton International Fund; effective 8/1/01, name changed to Templeton International (Ex EM) Fund; and effective 4/25/07, merged into Templeton Foreign Fund); Franklin Small Cap Growth Fund (effective 9/1/01, name changed to Franklin Small-Mid Cap Growth Fund); Templeton World Fund; Templeton Growth Fund, Inc.; Franklin California Tax-Free Income Fund; Franklin Federal Tax-Free Income Fund; and Templeton Pacific Growth Fund (effective 5/8/03, merged into Templeton Foreign Fund).   Final Order and Judgment, ¶ 5, n.4.

The Defendants in the Actions and certain other persons and entities are excluded from the Class by definition as set forth in the Final Order and Judgment, ¶ 5.

accompanying Swanson Declaration, Rust has processed 5,399,512 Claims in this Action. Swanson Decl. ¶ 6.

As more fully described in the Swanson Declaration, Rust and Class Lead Counsel developed a streamlined and flexible claims process in an effort to permit as many Class Members to participate in the Settlements as possible. *See* Swanson Decl. ¶¶ 4-9 and Exhibit A thereto. Class Members who purchased or held their Class Fund shares directly with Franklin were not required to submit a Proof of Claim at all. Instead, Rust was able to determine their eligibility for payment based on records obtained from Franklin. Swanson Decl. ¶¶ 6-8 & n.8. In all, Rust obtained from Franklin and reviewed approximately 2,554,360 shareholder accounts in this category to determine eligibility for payment. Swanson Decl. ¶ 6 n.8.

Class Members who did not invest directly with Franklin Templeton, but instead invested in Class Funds through a Financial Intermediary/Omnibus Account (e.g., a brokerage account) were required to submit brokerage statements or other supporting documentation to verify their Class Period holdings and establish their membership in the Class. Swanson Decl. ¶¶ 4, 7-9 and Exhibit A thereto. For some Class Members, these Claim Forms were submitted by banks, nominees, or other representatives on behalf of their customers or clients. Swanson Decl. ¶ 7. However, with respect to all Class Members, the Court-approved documentation requirement was flexible by design, and Class Members were encouraged to submit the best documentation they reasonably had or could obtain concerning their ownership of the Class Funds. Swanson Decl., ¶ 4 & n.7, 5, and Exhibit A thereto. The goal of this relaxed documentation requirement has been to permit as many Class Members to participate in the Settlements as possible, while still protecting the substantial interest of the Settlement Class in avoiding payment of fraudulent claims.

Rust also placed a great emphasis on, and devoted significant resources to, assisting Claimants with deficient, but potentially meritorious, Claims to cure their submissions so that they would be able to participate in the distribution of the settlement proceeds.  *See* Swanson Decl. ¶¶ 5, 13-17.  With respect to wholly deficient Proofs of Claim (for example, if the Proof of Claim had no supporting documentation or was unsigned), Rust mailed a "Notice of Deficiency" letter to the claimant describing the deficiency(ies) with his, her or its Proof of Claim and stating what, if anything, was necessary to cure the Claim.  *See* Swanson Decl. ¶ 14.  Rust also mailed "Notice of Deficiency" letters to claimants whose Proofs of Claim were determined to be partially deficient (for example, if the claimant was missing supporting documentation for part of the Proof of Claim, or the claimant did not supply enough documentation to calculate his, her or its Recognized Claim pursuant to the Plan of Allocation), advising the claimant of the deficiency(ies) in the Proof of Claim and stating what was necessary to cure the deficient condition(s) and complete the Claim.  *See* Swanson Decl. ¶ 14.[9]

In addition, Rust determined that certain Claims were intrinsically ineligible such that they could not be cured by submitting additional information (unless the ineligible status were successfully contested on some ground).  For Claims determined to be either (a) entirely ineligible (for example, the Claim Form did not indicate any holdings in the Class Funds) or (b) partially ineligible (for example, the Claim Form included both holdings in a Fund other than a Class Fund and holdings in an eligible Class Fund), Rust mailed a letter entitled "Notice of Ineligibility."  Swanson Decl. ¶ 13.  This letter also advised Claimant that if he, she, or it did not agree with the ineligible status of his, her or its Claim, Claimant could contest his, her or its

---

[9] Copies of sample rejection letters are attached as an exhibit to the Swanson Declaration.  Swanson Decl. ¶¶ 13-15 and Exhibits B-D thereto.

status by providing evidence of eligibility, or the Claim would be rejected, in whole or in part. Swanson Decl. ¶ 13.

All rejection letters advised the Claimant that he, she or it had the right, within thirty (30) days after the mailing of the rejection letter, to contest the rejection of the Claim.  Swanson Decl. ¶¶ 13-15, and Exhibits B, C, D thereto.  As set forth in the Swanson Declaration, as of February 10, 2012 (the "Late Filing Deadline), Rust mailed 2,913 Notices of Ineligibility and 410 Notices of Deficiency.  Swanson Decl. ¶¶ 13-14.  To date, all Claimants who have expressed disagreement with the determinations made by Rust as stated in the Notices of Deficiency, Notices of Ineligibility or Notices of Ineligibility for Nominees were able to provide additional information or documentation in support of their Claims to Rust such that the Claims were ultimately deemed eligible or the Claimant agreed with the ineligible status, and a summary resolution by the Court is not necessary. Swanson Decl. ¶ 17.  As a result, there are currently no outstanding requests for the Court to review any of the Claims submitted.

All told, as set forth in the Swanson Declaration, of the 5,399,512 Claims, Rust has determined that 940,533 are acceptable in whole or in part, and that 4,458,979 should be wholly excluded or rejected because they are ineligible, wholly deficient, have no Recognized Claim when calculated in accordance with the Court-approved Plan of Allocation, or were omnibus or networked accounts administered by a broker, dealer, or other Financial Intermediary, for which a Claim Form had to be filed by or for the underlying beneficial owner.  Swanson Decl. ¶¶ 18-20.[10]

Of the 5,399,512 Claims, 571 Proofs of Claim were submitted after the Court approved claims filing deadline of December 12, 2011, but were, except for the late submission, otherwise

---

[10] Rust maintains a schedule of all the ineligible accounts and Claimants, by Claim Number, including the reason(s) why each was excluded or rejected.  Due to the extraordinarily large volume, Rust is not submitting a list of all such accounts/Claims along with the Swanson Declaration, but providing a summary thereof consistent with Federal Rule of Evidence 1006.   Swanson, Decl. ¶¶ 18, 20.  Should the Court or any of the parties wish to examine the complete schedule, Rust will make it available upon request.  *Id.*, ¶¶ 18, 20(c).

eligible.  Swanson Decl. ¶ 20(b)-(c) (the "Late But Otherwise Eligible Claims").  While these 571 claims were late, they were received while the processing of timely Claims was ongoing, and due to the amount of time needed to process the timely claims received, the processing of these late Claims have not and will not delay the completion of the claims administration process or the distribution of the settlement proceeds.  Swanson Decl. ¶ 20(d).  Class Lead Plaintiff believes that, when the equities are balanced, it would be unfair to prevent an otherwise eligible claim from participating in the distribution of the settlement proceeds solely because it was submitted after the Court-approved claims filing deadline, when it was submitted while Claims were still being processed.  In particular, the filing of late claims is often through no fault of the individual Claimant (e.g., broker intermediaries often fail to timely forward the necessary materials to the Claimants, for a variety of reasons).  Accordingly, Class Lead Plaintiff requests that the Court approve Rust's administrative determination to accept these Late But Otherwise Eligible Claims.

In order to facilitate the efficient distribution of the Net Monetary Amount and OAG/Canary Fund, however, there must be a final cut-off after which no other Claims may be accepted. Accordingly, Class Lead Plaintiff respectfully requests that the Order entered by the Court provide that no Proof of Claim received after February 28, 2013 be eligible for payment for any reason whatsoever.  *See* Swanson Decl. ¶ 20(e).

Class Lead Plaintiff further requests that the Court approve Rust's administrative determinations accepting and excluding/rejecting Claims as set forth in the Swanson Declaration.

## FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

In accordance with Rust's agreement with Class Lead Counsel to act as the Claims Administrator, Rust was responsible for, among other things, mailing and publishing notice to

the Settlement Class, processing the Proofs of Claims submitted in the Action, as well as the claims of Class Members who held shares of Class Funds directly with Franklin, and allocating and distributing the Net Monetary Amount and the OAG/Canary Fund to Authorized Claimants. As set forth in the Swanson Declaration, Rust's fees and expenses for its work performed and to be performed on behalf of the Class total $3,000,000.  Swanson Decl. ¶¶ 28-29.  To date, Rust has received payments totaling $2,885,076.61. *Id*. ¶ 29. Accordingly, there is a balance due to Rust of $114,923.39, which amount includes Rust's anticipated fees and expenses for the distribution of the settlement proceeds. *Id*. Class Lead Plaintiff respectfully requests that the Court approve all of Rust's fees and expenses.[11]

## DISTRIBUTION OF THE NET MONETARY AMOUNT AND THE OAG/CANARY FUND

As set forth in detail in the Swanson Declaration, and consistent with the Preliminary Approval Order and the Stipulations, Rust has completed the processing of all Claims submitted in the Action, and all Claimants whose Claims have been excluded or rejected, in whole or in part, have been notified and provided the opportunity to contest such exclusion/rejection. Accordingly, pursuant to the terms of the Preliminary Approval Order and the Stipulations, Class Lead Plaintiff, on notice to Defendants' counsel, respectfully moves for an order approving Rust's administrative determinations concerning the acceptance and exclusion/rejection of the Claims submitted herein and approving a plan for distribution of the Net Monetary Amount and OAG/Canary Fund to Authorized Claimants.[12]

---

[11] Class Lead Counsel and Rust negotiated an agreement whereby Rust agreed to certain cost savings and to cap its fees and costs charged in connection with the settlement administration at $3 million.  Given the large number of Class members and claims in this case, this has resulted in a significant discount from Rust's usual and customary charges, to the benefit of the Class.

[12] Under the terms of the Stipulations, the Defendants and their attorneys have no responsibility for the Claims Administrator's determinations pertaining to payments from the settlement proceeds. *See, e.g.,* Stipulation, ¶ 18, Canary Stipulation, ¶¶ 28-29, BAS Stipulation ¶¶ 29-30, Bear Stearns Stipulation ¶¶ 30-31.

Class Lead Plaintiff respectfully requests that the Court authorize and direct the distribution of the Net Monetary Amount and the OAG/Canary Fund to those Authorized Claimants identified in paragraphs 18 and 20 of the Swanson Declaration. Under the Court-approved Plan of Allocation and as set forth in the Swanson Declaration (¶¶ 23-24), Rust will distribute 100% of the available balance of the Net Monetary Amount (after deducting all payments previously allowed and requested herein and after deducting payment of the costs of preparing appropriate tax returns and any escrow fees) and 100% of the available balance of the OAG/Canary Fund (after the payment of the costs of preparing appropriate tax returns and any escrow fees) to the Authorized Claimants who would receive a distribution amount of at least $10.00 based on their Recognized Claims in comparison to the total Recognized Claims of all Authorized Claimants (the "Distribution").

## DISPOSITION OF ANY UNCLAIMED/UNCASHED BALANCE

Consistent with the Court-approved Plan of Allocation, in order to encourage Authorized Claimants to cash their Distribution checks promptly and to avoid or reduce future expenses relating to uncashed checks, all of the Distribution checks will bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." In an effort to have as many Authorized Claimants as possible cash their checks, Rust will perform follow-up with Authorized Claimants who initially fail to cash their Distribution checks. *See* Swanson Decl. ¶¶ 24-25.

Consistent with the Court-approved Plan of Allocation, if any amount of the Net Monetary Amount remains undistributed after distribution of the Net Monetary Amount to Authorized Claimants on account of a lack of current addresses or forwarding addresses or otherwise after reasonable and diligent efforts by the Claims Administrator, or any returned or

uncashed checks, such undistributed amounts shall be distributed to the Class Funds, or their successor funds.

## <u>RELEASE OF CLAIMS</u>

In order to allow the full and final distribution of the Net Monetary Amount and the OAG/Canary Fund, it is necessary to bar any further claims against the Net Monetary Amount and the OAG/Canary Fund beyond the amount allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims/Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Monetary Amount, the Net Monetary Amount or the OAG/Canary Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, Class Lead Plaintiff respectfully requests that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims/Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Monetary Amount, the Net Monetary Amount, or the OAG/Canary Fund, from any and all claims arising out of such involvement, and bar all Class Members, whether or not they receive payment from the Settlement funds, from making any further claims against the Net Monetary Amount, the OAG/Canary Fund, Class Lead Plaintiff, Class Lead Counsel, the Franklin Released Parties (as defined in the Stipulation) and their counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Class Lead Plaintiff or Class Lead Counsel in connection with the administration or taxation of the Monetary Amount, Net Monetary Amount or OAG/Canary Fund beyond the amount allocated to Authorized Claimants.

## CONCLUSION

For the foregoing reasons, Class Lead Plaintiff respectfully requests that its Motion for Approval of Distribution Plan be approved and the proposed Order Approving Distribution Plan be entered.

Dated:  April 11, 2013

Respectfully submitted,

**WOLF POPPER LLP**

By:  /s/ Chet B. Waldman
Robert M. Kornreich
Chet B. Waldman
Andrew E. Lencyk
845 Third Avenue
New York, NY 10022
Phone: (212) 759-4600
Fax: (212) 486-2093

*Class Lead Counsel in the Franklin Templeton Sub-Track, on behalf of Class Lead Plaintiff the Deferred Compensation Plan for Employees of Nassau County and the Class*

**TYDINGS & ROSENBERG LLP**

By:  /s/ John B. Isbister
100 East Pratt Street, 26th Floor
Baltimore, MD  21202
Phone:  (410) 752-9700

*Plaintiff's Liaison Counsel*